IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CATHERINE ALEXANDER,                                )
                                                    )
                                                    )
            Plaintiff,                              )
                                                    )          Case no: 3:18-cv-0966-MJR-DGW
v.                                                  )
                                                    )          JURY TRIAL DEMANDED
TAKE-TWO INTERACTIVE SOFTWARE, INC.;  )
2K GAMES, INC.; 2K SPORTS INC.;                     )
WORLD WRESTLING ENTERTAINMENT,        )
INC.; VISUAL CONCEPTS ENTERTAINMENT;  )
YUKE'S CO., LTD.; and YUKE'S LA INC.,              )
                                                    )
            Defendants.                             )
                                                    **)**


**CATHERINE ALEXANDER'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ...................................................................................................................... 1

   I.   PLAINTIFF'S COPYRIGHT APPLICATIONS PROVIDE JURISDICTION. ............... 3
   II.  PLAINTIFF'S COMPLAINT PROPERLY COMPLIES WITH RULE 8(a). ................. 6
     A.   Plaintiff's Complaint Clearly Identifies the Copyrighted Works at Issue ................... 6
     B.   Given The Early Stage of Litigation, Alexander's Complaint Includes Sufficient Statements for Claims of Direct, Contributory, and Vicarious Infringement ............... 7
        1.  Direct Copyright Infringement ..................................................................... 8
        2.  Contributory Infringement ........................................................................... 8
        3.  Vicarious Infringement ............................................................................... 10
   III.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS YUKE'S AND WWE ...................................................................................................................... 11
     A.   This Court Has Proper Specific Personal Jurisdiction Over WWE ........................ 11
        1.  This Court Has Proper Specific Personal Jurisdiction Over WWE Under The *Calder* Effects Test Because WWE Has Purposefully Directed Its Activities at Illinois ........ 11
        2.  Assuming WWE Does Not Meet the *Calder* Effect's Test, Personal Jurisdiction Is Still Proper Because Plaintiff Has Made A Sufficient Prima Facie Case For Specific Personal Jurisdiction Over WWE ............................................................... 14
        3.  Alexander Requests Leave to Amend Her Complaint After Receipt of Defendants' Personal Jurisdiction Discovery Responses .......................................................... 16
     B.   This Court Has Proper Specific Personal Jurisdiction Over Yuke's ........................ 16
        1.  Defendant Yuke's Has Availed Itself of Illinois Though Developing And Producing The Infringing Games ................................................................................ 16
        2.  Defendant Yuke's Is Likely Subject to Jurisdiction In Illinois Under Fed. R. Civ. P. 4(k)(2) ................................................................................................... 17
        3.  Since Alexander Has Made A Prima Facie Case For Personal Jurisdiction Over Yuke's, An Evidentiary Hearing Is Required Before Dismissal ............................ 19

CONCLUSION .................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apple Barrel Prods., Inc. v. Beard,*
   730 F.2d 384 (5th Cir. 1984) ................................................................. 4

*Automation By Design, Inc. v. Raybestos Prod. Co.,*
   463 F.3d 749 (7th Cir. 2006) ................................................................. 6

*Bank of Am., N.A. v. Knight,*
   725 F.3d 815 (7th Cir. 2013) ................................................................. 8

*Bausch v. Stryker Corp.,*
   630 F.3d 546 (7th Cir. 2010) ................................................................. 8

*Brooks v. Ross,*
   578 F.3d 574 (7th Cir.2009) ................................................................. 9

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP, and HAB, Inc.,*
   329 F.3d 923 (7th Cir. 2003) ................................................................. 14

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) ............................................................................. 18

*Calder v. Jone*s, 465 U.S. 783 (1984) ...................................................... 14

*Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.,*
   440 F.3d 870 (7th Cir. 2006) ................................................................. 13

*Chicago Bd. of Educ. v. Substance, Inc.,*
   354 F.3d 624 (7th Cir. 2003) ................................................................. 3, 4

*Cinema Concepts Theatre Serv. Co. v. Filmack Studios,*
   1989 WL 55092 (N.D. Ill. May 17, 1989) ............................................. 12

*Colo'n v. Akil,*
   449 Fed. Appx. 511 (7th Cir. 2011) ...................................................... 20

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp,*
   606 F.3d 612 (9th Cir. 2010) ................................................................. 3, 4, 5, 6

*CSS, Inc. v. Herrington,*
   2016 WL 4425192 (S.D.W. Va. Aug. 18, 2016) ................................... 3

*Design Basics, LLC v. Best Built, Inc.,*
    2016 WL 4691601 (E.D. Wis. Sept. 7, 2016) ........................................................ 11

*E.E.O.C. v. Concentra Health Servs., Inc.,*
    496 F.3d 773 (7th Cir. 2007) ................................................................................... 12

*Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,*
    499 U.S. 1286 (1991) ................................................................................................. 9

*Felland v. Clifton,* 682 F.3d 665 (7th Cir. 2012) .................................................... 14, 16

*Fraserside IP L.L.C. v. Netvertising Ltd.,*
    902 F. Supp. 2d 1165 (N.D. Iowa 2012) ................................................................. 21

*Gaiman v. McFarlane,*
    360 F.3d 644 (7th Cir. 2004) ................................................................................. 3, 6

*GC2 Inc. v. Intl. Game Tech. PLC,*
    255 F. Supp. 3d 812 (N.D. Ill. 2017) ..................................................................... 2, 9

*GCIU–Emp'r Ret. Fund v. Goldfarb Corp.,*
    565 F.3d 1018 (7th Cir. 2009) ................................................................................. 13

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,*
    443 F.2d 1159 (2d Cir. 1971) ................................................................................. 11

*Hard Drive Prods., Inc. v. Does 1-55,*
    2011 WL 4889094 (N.D. Ill. Oct. 12, 2011) ......................................................... 4, 5, 6

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.,*
    955 F.2d 1143 (7th Cir. 1992) ................................................................................. 11

*In re Aimster Copyright Litig.,*
    252 F. Supp. 2d 638 (N.D. Ill. 2002) ..................................................................... 10

*In re Aimster Copyright Litig.,*
    334 F.3d 643 (7th Cir. 2003) ................................................................................. 10

*ISI Intern., Inc. v. Borden Ladner Gervais LLP,*
    256 F.3d 548 (7th Cir. 2001), as amended (July 2, 2001) ..................................... 21

*Johnson v. Barrier,*
    15-CV-03928, 2016 WL 3520157 (N.D. Ill. June 28, 2016) ............................... 13, 15

*Kraft Chemical Company v. Salicylates and Chemicals Private Limited,*
    149 F.Supp.3d 897 (N.D. Ill. 2015) ....................................................................... 22

iii

*Lead IT Corp. v. Tallapalli,*
   12-CV-3099, 2013 WL 375592 (C.D. Ill. Jan. 30, 2013) ........................................... 6

*Leventhal v. Schenberg,*
   917 F. Supp. 2d 837 (N.D. Ill. 2013) ..................................................................... 4

*Panoramic Stock Images, Ltd. v. John Wiley & Sons,* Inc.,
   963 F. Supp. 2d 842 (N.D. Ill. 2013) ................................................................. 4, 5

*Panoramic Stock Images, Ltd. v. Pearson Education, Inc.,*
   2013 WL 2357586 (N.D. Ill. 2013) ....................................................................... 5

*Panoramic Stock Images, Ltd. v. The McGraw-Hill Cos., Inc.,*
   961 F. Supp. 2d 918 (N.D. Ill. 2013) ..................................................................... 4

*Philos Techs., Inc. v. Philos & D, Inc.,*
   802 F.3d 905 (7th Cir. 2015) ............................................................................... 22

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.,*
   338 F.3d 773 (7th Cir. 2003) ............................................................................... 13

*Rehabcare Grp. E., Inc., v. CC Care, LLC,*
   2016 WL 2595108 (N.D. Ill. May 4, 2016) ........................................................... 12

*Rigsby v. Am. Family Mut. Ins. Co.,*
   2014 WL 1515493 (W.D. Wis. Apr. 17, 2014) ........................................................ 5

*Robbins v. Svehla,*
   No. 16-CV-532-JDP, 2016 WL 6900719 (W.D. Wis. Nov. 22, 2016) ...................... 5

*Snap-On Inc. v. Robert Bosch, LLC,*
   2013 WL 5423844 (N.D. Ill. Sept. 26, 2013) ...................................................... 20

*Solid Oak Sketches, LLC v. 2K Games, Inc.,*
   2018 WL 1626145 (S.D. N.Y. 2018) ..................................................................... 1

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico,*
   563 F.3d 1285 (Fed. Cir. 2009) ........................................................................... 21

*Telemedicine Solutions LLC v. WoundRight Technologies, LLC.*
   27 F.Supp.3d 883 (N.D. Ill. 2014) ....................................................................... 16

*Textor v. Bd. of Regents of N. Ill. Univ.,*
   711 F.2d 1387 (7th Cir. 1983) ............................................................................. 13

*United Technologies Corp. v. Mazer*,

    556 F.3d 1260 (11th Cir. 2009) .................................................................. 18

*Walden v. Fiore*,

    571 U.S. 277 (2014) .................................................................................... 15

*Weller v. Flynn*,

    2018 WL 2299240 (N.D. Ill. 2018) ...................................................... 17, 19

*Windy City Mktg., Inc. v. Places Advert., Inc.*,

    2008 WL 11399117 (N.D. Ill. Sept. 25, 2008) ............................................ 7

**Statutes**

17 U.S.C § 504 ......................................................................................................... 1

17 U.S.C. § 411 .................................................................................................... 4, 5

17 U.S.C. § 505 ....................................................................................................... 2

**Other Authorities**

2 Pat. L. Fundamentals § 6:70 (2d ed.) ................................................................... 1

**Rules**

Fed. R. Civ. P. 12 ................................................................... 1, 3, 11, 15, 16

Fed. R. Civ. P. 4 ................................................................................................... 18

Fed. R. Civ. P. 8 ............................................................................................... 6, 20

**Treatises**

2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16 ....................................... 4

Catherine Alexander ("Alexander") hereby responds to the motions to dismiss filed by all Defendants, (Doc. 49), and the separate motion to dismiss filed by Defendant WWE,[1] (Doc. 51.). Defendants argue that Alexander failed to state a claim under 12(b)(6) and that this Court lacks personal jurisdiction over Defendants Yuke's and Yuke's LA (collectively, "Yuke's") and WWE under 12(b)(2). As explained below, Alexander states a claim for copyright infringement, and WWE and Yuke's are subject to personal jurisdiction.

## **ARGUMENT**

While not relevant to their motions, Defendants suggest that Alexander's claim improperly asserts a "monopoly" over the depiction of Randy Orton as he appears in real life. (Doc. 52, 1.) The claims asserted here are recognized under the law.  Alexander is not the first plaintiff to assert such claims or the first to assert such claims against these Defendants. *See Solid Oak Sketches, LLC v. 2K Games, Inc.*, 2018 WL 1626145 (S.D. N.Y. 2018) (tattoos are protectable works, the copying of which in a videogame survives a motion to dismiss); 2 Pat. L. Fundamentals § 6:70 (2d ed.).

Alexander submitted copyright registration applications for each work before filing this suit. Copies of applications are attached to this response. (Ex. 1-6.) The Seventh Circuit has adopted the "application approach," which allows plaintiffs to file suit before receiving a response from the U.S. Copyright Office. Therefore, Alexander properly brought suit after filing her copyright applications and need not wait for registrations.

Further, Alexander did not request attorneys' fees or statutory damages in her Complaint. Alexander requests actual damages, Defendants' profits attributable to the infringement, costs, and for such other relief the Court deems proper at that time. (*See* Doc. 1, ¶ 91 ("Pursuant to 17

---

[1] WWE incorporated by reference the motion filed by the other defendants.  This opposition responds to all of the motions.

U.S.C § 504, Plaintiff is entitled to recover actual damages and Defendants' profits attributable to the infringement."); ¶ 91(d) ("An award under 17 U.S.C. § 505 allowing recovery of the full costs of this action; and"); ¶ 91(e) ("For such and other relief as the Court deems just and proper under the circumstances.").)  Therefore, that portion of Defendants motion is moot.

Alexander's complaint gives Defendants sufficient notice as to the works they infringe. Defendants have first-hand knowledge of the tattoos on the Orton character in WWE 2K16, WWE 2K17, and WWE 2K18 (the "Infringing Games") because they coded the copies into the Infringing Games and advertised or distributed the games. Defendants are also aware of the tattoos through their relationships with Randy Orton. The copyright applications provided to Defendants through discovery and attached here show the exact tattoos at issue. (Ex. 1-6.) Alexander has alleged that each Defendant played a direct, contributory, and vicarious role in the infringement, and without discovery, Alexander would have to guess at the Defendants' specific roles. Pleading in the alternative is allowed under the applicable rules. *See e.g. GC2 Inc. v. Intl. Game Tech. PLC*, 255 F. Supp. 3d 812, 826 (N.D. Ill. 2017).

Yuke's and WWE are subject to specific personal jurisdiction in Illinois. Alexander does not allege that ether Defendant is subject to general personal jurisdiction in Illinois. WWE's infringement-related contacts with Illinois, in particular its effective denial of Alexander's rights to her works through its $450 license offer, establish personal jurisdiction over WWE. Yuke's knew or should have known of the sales, distribution, promotion, and marketing of the Infringing Games through its concerted collaboration with the other Defendants, including WWE. Alexander has submitted a prima facie case for specific personal jurisdiction over both WWE and Yuke's, and is entitled to discovery or an evidentiary hearing.

## I.     PLAINTIFF'S COPYRIGHT APPLICATIONS PROVIDE JURISDICTION.

Defendants seek dismissal because Alexander has not yet received registrations for her copyrights.  However, Defendants misstate the law of this Circuit as endorsing the "registration approach" over the "application approach." (Doc. 50, at 9, n. 1) ("[T]he law of *this* Circuit requires that the Copyright Office grant or refuse the copyright application before a suit is filed.") (emphasis in original) (citing *Gaiman v. McFarlane*, 360 F.3d 644, 654-55 (7th Cir. 2004)). But the Seventh Circuit's decision in *Chicago Bd. of Educ. v. Substance, Inc.*, settles the debate in favor of the application approach, as noted by other circuits. 354 F.3d 624, 631 (7th Cir. 2003); *see e.g.  Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 615 (9th Cir. 2010) (the Seventh Circuit "ha[s] adopted the application approach").[2] Seventh Circuit district courts overwhelmingly follow the application approach. *See Panoramic Stock Images, Ltd. v. The McGraw-Hill Cos., Inc.*, 961 F. Supp. 2d 918, 927 (N.D. Ill. 2013) ("[T]he court understands the cases in this Circuit to adopt the application approach."); *Hard Drive Prods., Inc. v. Does 1-55*, 2011 WL 4889094, at *4 (N.D. Ill. Oct. 12, 2011) ("Defendant concedes that the Seventh Circuit follows the application approach.").

"In the absence of controlling authority from the Seventh Circuit, the court is persuaded that the application approach is correct." *Panoramic Stock Images, Ltd. v. John Wiley & Sons*, Inc., 963 F. Supp. 2d 842, 849-50 (N.D. Ill. 2013). Several cases decided after the cases cited by Defendants have addressed the precise "application v. registration" issue presently before this Court, on a Rule 12(b)(6) motion to dismiss, and *chose* to follow the application approach. *See*

---

[2] *See also CSS, Inc. v. Herrington*, 2016 WL 4425192, at *2 (S.D.W. Va. Aug. 18, 2016) ("The Fifth, Seventh, and Ninth Circuits have taken the "application approach," ruling that a party's filing of an application with the Copyright Office constitutes "registration" under the Act. *See Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386–87 (5th Cir. 1984); *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 631 (7th Cir. 2003); *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 621 (9th Cir. 2010)").

*e.g. Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 845 (N.D. Ill. 2013) ("No more [than plaintiff's allegation that it had filed a copyright application] is required at this stage of the litigation."); *Panoramic Stock Images, Ltd. v. Pearson Education, Inc.*, 2013 WL 2357586 at *2 (N.D. Ill. 2013) ("Although it has yet to expressly rule on the issue, the Seventh Circuit appears to follow the application approach, whereby receipt by the Copyright Office of a complete application satisfies Section 411(a).").

While Alexander is aware of at least one recent case[3] not cited by Defendants that adheres to the registration approach based on the statutory text of 17 U.S.C. § 411, the statute "does [not] [sic] answer the question of what it means to 'register' the copyright. *Rigsby v. Am. Family Mut. Ins. Co.*, 2014 WL 1515493, at *3 (W.D. Wis. Apr. 17, 2014). Under the application approach, courts have held that the date of "registration" is the date the Copyright Office receives the copyright application. *Hard Drive Prods., Inc.*, 2011 WL 4889094, at *4. Numerous textual and policy arguments support the validity of this approach,[4] while the registration approach's strict interpretation of the text leads to a "strange scheme." *John Wiley & Sons, Inc.*, 963 F. Supp. 2d at 850. As the leading treatise on copyright explains: "[G]iven that the claimant ... will ultimately be allowed to proceed regardless of how the Copyright Office treats the application, it makes little sense to create a period of 'legal limbo' in which suit is barred." *See* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][1][a][i] (2008).

---

[3] *See e.g. Robbins v. Svehla*, No. 16-CV-532-JDP, 2016 WL 6900719, at *2 (W.D. Wis. Nov. 22, 2016) (finding that the "sound policy arguments for the application approach [] do not count for much in the face of statutory text with a clear meaning," but noting that the policy reasons for the application approach did not support extending flexibility to putative class counsel bringing claims on behalf on numerous defendants).
[4] *See Cosmetic Ideas*, 606 F.3d at 619-21.

Defendants rely on the statement in *Gaiman*, 360 F.3d at 655, that "[t]he significance of registration is that it is a prerequisite to a suit to enforce a copyright." But in *Gaiman*, the case reached the Seventh Circuit not on a motion to dismiss for lack of a registration, but after a judgment was entered on a jury verdict. *Id.*, at 648. More importantly, *Gaiman* "[was] not a suit for infringement," but was brought to determine whether the plaintiff was a joint author to certain copyrights. *Id.*, at 648, 52. Therefore, the text quoted by Defendants is dicta.[5]

Defendants further allege that assuming this Circuit follows the application approach, Alexander has not sufficiently alleged that she has taken "all necessary steps to register the copyright at issue" (Doc. 50, at 6, n. 1) (citing *Cosmetic Ideas*, 606 F. 3d, at 622). But Defendants have "put the cart before the horse." *Hard Drive Productions*, 2011 WL 4889094, at *4. At the pleading stage, Alexander "must only provide enough factual allegations to raise a right to relief above the speculative level," and Alexander's "allegations that [she] has filed an application with the Copyright Office satisfies the registration requirement of § 411(a)." *Id*. Defendants concede that Alexander alleged that she "submitted applications to register copyrights on each of the aforementioned works on March 15, 2018." (Doc. 1, ¶ 57.) Given that Alexander properly deposited her applications for registration with the Copyright Office prior to filing the instant suit, forcing Alexander to commence this suit anew would be "perverse and wasteful of judicial resources." *Windy City Mktg., Inc. v. Places Advert., Inc.*, 2008 WL 11399117, at *2 (N.D. Ill. Sept. 25, 2008).

---

[5] The other Seventh Circuit case cited by Defendants is also dicta because the plaintiff had registered its copyrights in that case. *Automation By Design, Inc. v. Raybestos Prod. Co.*, 463 F.3d 749, 753 (7th Cir. 2006); s*ee also Lead IT Corp. v. Tallapalli*, 12-CV-3099, 2013 WL 375592, at *3 (C.D. Ill. Jan. 30, 2013) (finding defendant's receipt of a certificate of registration renders it unnecessary to determine whether the application or registration approach should apply in cases for copyright infringement).

## II.     PLAINTIFF'S COMPLAINT PROPERLY COMPLIES WITH RULE 8(a).

Defendants assert that Alexander "has not alleged sufficient facts against each separate Defendant to establish direct, vicarious, or contributory infringement under the Copyright Act." (Doc. 50, at 6). However, Federal Rule of Civil Procedure 8 (a) only requires that a pleading contain a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). Here, based on the early stage of litigation and lack of discovery, Alexander has asserted claims sufficient allegations of direct, indirect, contributory and/or vicarious infringement for each Defendant based on available public information. Notably, Defendants cite no authority that one cannot allege direct and indirect infringement against multiple Defendants. However, if this court still finds the assertions to be lacking, Alexander hereby respectfully requests leave to amend her Complaint after the Defendants respond to Alexander's limited discovery requests served on July 18, 2018 to more precisely allege which Defendants are liable for each type of infringement.

### A.     Plaintiff's Complaint Clearly Identifies the Copyrighted Works at Issue

Alexander's Complaint describes her works in a clear and unambiguous way. The complaint specifically states that Alexander created tattoos consisting of a bible verse, a dove, a rose, skulls and tribal tattoos. (Doc. 1, ¶¶ 41-56.) As Defendants note, "a determination of infringement often turns on the details and particular elements of the plaintiff's work." (Doc. 50, at 7). Defendants are aware of the specific details and elements of Alexander's works because they copied them, *with specific detail*, into the Infringing Games. To resolve any confusion, Alexander has attached her copyright applications to this motion, which include photo

representations illustrating Alexander's expressive work. (Ex. 1-6).  These were also provided to Defendants with Alexander's Rule 26 disclosures.

Defendants contend that Alexander's Complaint should be dismissed because they lack sufficient notice of any wrongdoing and argue that Alexander's Complaint is "vague" and "confusing." (Doc. 50, 7.) However, Alexander's claim is quite simple: Defendants copied Alexander's original works into the Infringing Games without Alexander's consent.

**B.    Given The Early Stage of Litigation, Alexander's Complaint Includes Sufficient Statements for Claims of Direct, Contributory, and Vicarious Infringement**

Based on the evidence available to Alexander at this time, she has sufficiently asserted direct, contributory, and/or vicarious infringement claims for each Defendant. At this time, Alexander cannot specifically describe the in-depth role of each Defendant nor does the law require it. Alexander's assertions are sufficient given that "a plaintiff's pleading burden should be commensurate with the amount of information available to them." *Bausch v. Stryker Corp.,* 630 F.3d 546, 561 (7th Cir. 2010).

Based on publically available information, each Defendant had either a developmental, marketing, or promotional role in the Infringing Games. (*See* Doc. 1, ¶¶ 16-22.)  Defendants argue that each defendant has a right to know what they specifically did wrong. (Doc. 50, at 8) (citing *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).) Alexander has met this requirement despite the lack of discovery. Further, the plaintiff in *Bank of Am., N.A.,* amended their complaint twice before the court dismissed the case. 725 F.3d., at 818; s*ee Brooks v. Ross,* 578 F.3d 574, 582 (7th Cir.2009) (noting that collective pleading is permissible where it is clear that the plaintiff is directing their allegations "at all of the defendants"). Here, Alexander has alternatively plead direct and indirect liability against all defendants. *See GC2 Inc. v. Intl. Game*

*Tech. PLC*, 255 F. Supp. 3d 812, 826 (N.D. Ill. 2017) (permitting plaintiff to plead alternative, or even inconsistent, direct and vicarious copyright infringement claims). Defendants cite no cases holding this is improper.

### 1.     Direct Copyright Infringement

Direct copyright infringement claims require: (1) ownership of a valid copyright in the work and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 1286, 1295 (1991). Alexander's original works are attached as exhibits to this response. (Ex. 1-6.) The copyright applications make clear that the tattoo works at issue are original. (*Id.*) Next, Alexander's Complaint alleges that the tattoos created by Alexander are the same or substantially similar to the tattoos that appear on the Orton character in the Infringing Games. (*Id.*, ¶¶ 65, 70, 74.) The Infringing Games were developed by Take-Two, Visual Concepts, Yuke's, Yuke's LA, (*Id.*, ¶¶ 16, 20-22), and promoted, distributed, marketed, and published by Take-Two, 2K Games, 2K Sports and WWE, (*Id.*, ¶¶ 16-19.). Further, WWE's Affidavit admits that WWE has an interactive licensing team that was responsible for the Infringing Games. (*See* Doc. 52-1, ¶ 12.) Therefore, every Defendant is directly liable for their infringing activities.

### 2.     Contributory Infringement

Contributory infringement occurs when the defendant, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing activity of another party. *In re Aimster Copyright Litig.,* 252 F. Supp. 2d 638, 649 (N.D. Ill. 2002), *aff'd,* 334 F.3d 643 (7th Cir. 2003). At this early stage of pleading, it is appropriate to assert a claim of contributory infringement against each Defendant because each Defendant played a role in bringing the Infringing Games to market.

Alexander's Complaint states that Alexander contacted WWE in 2009 about the reproduction of Mr. Orton's tattoos and WWE offered Alexander $450 for rights to reproduce the tattoos, which Alexander declined. (Doc. 1, ¶¶ 58-60.) The Infringing Games were released to the public beginning in 2015, (*id.*, ¶ 62), and WWE's Interactive Licensing team was responsible for the Infringing Games. (*See* Doc. 52-1, ¶12.) Therefore, WWE induced, caused, or materially contributed to the infringing activity of the other Defendants, with knowledge of the infringing activity.

Defendants urge this court to prematurely dismiss this case because they believe Alexander fails to allege specific facts. (*See* Doc. 50 at 10). Alexander alleges that "Defendants knew or should have known that the copyrighted works were original works of authorship." (Doc. 1, ¶ 76.) Further, Alexander alleges that Defendants developed, produced, marketed and published the Infringing Games. (*See* Doc. 1, ¶¶ 16-18; 20-22.) Alexander cannot specifically state all infringing activities of each Defendant without discovery. Defendants' public websites do not divulge specific operational procedures or the specific titles in relation to the Infringing Games. Further, as developers, producers, marketers, and publishers, Defendants were actively involved in copying Alexander's works had knowledge of the infringement.

Defendants cite *Design Basics, LLC v. Best Built, Inc.,* 2016 WL 4691601, at *2 (E.D. Wis. Sept. 7, 2016) (dismissing claim where plaintiff failed to allege sufficient claim for joint, contributory, or vicarious infringement). The present case is distinguishable. In *Design Basics, LLC*, the plaintiff's complaint contained only one factual allegation against the defendant. *Id*. Here, multiple factual allegations in Alexander's Complaint support Defendants' knowledge of and contribution to the Infringing Games. (Doc. 1, ¶¶ 58-60; 62; 67; 71; 76.) Thus, Alexander's Complaint sufficiently alleges claims of contributory infringement.

9

### 3.    Vicarious Infringement

Vicarious infringement occurs where the defendant has a controlling relationship with the infringer and benefits financially from the infringement.  *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.,* 955 F.2d 1143, 1150 (7th Cir. 1992); *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc*., 443 F.2d 1159, 1162 (2d Cir. 1971). Defendants released and promoted the Infringing Games. (Doc. 1, ¶¶ 62, 67, 71.) Therefore, this Court may reasonably infer that Defendants exercised control over the infringing activity and benefited financially therefrom.

Defendants cite *Cinema Concepts Theatre Serv. Co. v. Filmack Studios,* where the court dismissed contributory and vicarious infringement claims because "no factual allegations" were established. 1989 WL 55092, at *1-2 (N.D. Ill. May 17, 1989). There, plaintiff could not connect several individual defendants to the larger organization that infringed plaintiff's rights. Unlike in *Filmack Studios*, here, Defendants are business organizations that have a direct connection with the creation and distribution of the Infringing Games. (Doc. 1, ¶¶ 16-22.)  Defendants developed, promoted, distribute, and marketed the Infringing Games, and thus, Defendants activities are directly connected to Alexander's assertions of infringement. Defendants also rely on *Rehabcare Grp. E., Inc., v. CC Care, LLC*, 2016 WL 2595108, at *6 (N.D. Ill. May 4, 2016) (dismissing promissory estoppel claim where plaintiff alleged 'defendants' made general promises). Here, Alexander clearly identifies the Infringing Games in her single count of copyright infringement.

Consequently, Alexander has described her copyright claim in sufficient detail to give the Defendants "fair notice of what the…claim is and the grounds upon which it rests." *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007). To the extent this Court finds Alexander's allegations deficient in specificity or otherwise finds that additional evidence would

assist the Court in ruling on the Defendants' motion to dismiss, Alexander respectfully request leave to amend the complaint at the conclusion of the limited discovery requests submitted to the Defendants on July 18, 2018.

## III.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS YUKE'S AND WWE

If the court rules on a 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Courts "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). Any dispute concerning relevant facts is resolved in the plaintiff's favor. *Id.* at 782–83; s*ee Johnson v. Barrier*, 15-CV-03928, 2016 WL 3520157, at *4 (N.D. Ill. June 28, 2016) (Defendant submitted affidavit refuting plaintiff's allegations; the court allowed jurisdictional discovery.).

### A.   This Court Has Proper Specific Personal Jurisdiction Over WWE

WWE is subject to personal jurisdiction because it expressly aimed its infringing activity at Alexander in Illinois and otherwise purposely availed itself of Illinois.

#### 1.   This Court Has Proper Specific Personal Jurisdiction Over WWE Under The *Calder* Effects Test Because WWE Has Purposefully Directed Its Activities at Illinois

The *Calder v. Jones* "effects test" is used to determine if personal jurisdiction is proper in cases of intentional actions. 465 U.S. 783 (1984). Three requirements distilled from *Calder* determine whether conduct is "purposefully directed" at the forum state for purposes of specific personal jurisdiction: (1) intentional conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt – that is, the plaintiff would be injured – in the forum state. *Felland v. Clifton,* 682 F.3d 665, 674-675 (7th Cir. 2012). WWE claims that copyright infringement is not an intentional tort. *See* (Doc. 52, 10, 11.)  However the Seventh Circuit has held that it is. *Bucklew v. Hawkins, Ash, Baptie & Co., LLP, and HAB, Inc.*, 329 F.3d 923, 931 (7th Cir. 2003).

Here, WWE committed an intentional tort in Illinois by playing a central role in facilitating the creation, advertising, and selling of the Infringing Games. By holding live promotional events selling the Infringing Games to residents in Illinois, WWE expressly directed its activities toward Illinois. Further, when Alexander contacted WWE about WWE's reproduction of Alexander's work on a number of WWE's products, WWE effectively denied Alexander's rights to her copyrights in the tattoos by offering a mere $450.00. (Doc. 1, ¶ 58.) Based on this interaction, this Court may reasonably infer that WWE knew Alexander's injury would be felt in Illinois. (*See Id*.) WWE's assertion of its rights over Alexander's, knowing its infringing activities would harm Alexander in Illinois, amounts to intentional actions aimed at the forum state. Therefore, under *Calder*, WWE is subject to personal jurisdiction in Illinois.

WWE claims *Johnson v. Barrier* is a "particularly instructive" authority on "expressly aimed" activities. *See* (Doc 52, 12.) However, *Johnson* is distinguishable. There, Defendant's sole contact with Illinois was sales to Illinois residents through its website. *Johnson v. Barrier*, 2016 WL 3520157 at *5 (N.D. Ill. 2016). The court dismissed the case because sales through

12

defendant's website "cannot, alone, establish specific personal jurisdiction." *Id.* Here, WWE has done more that make sales to Illinois residents through its website. WWE has purposefully availed itself to the Illinois consumer base through its promotional events. Further, WWE's discovery responses will likely demonstrate that WWE's connection to Illinois does not constitute the "random, fortuitous, or attenuated" contacts, which courts have deemed insufficient to confer personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014).

WWE asserts that it had no reason to know that the effects of its actions would be felt by Alexander in Illinois even though Alexander contacted WWE about the Infringing Games from Illinois. (*See* Doc. 52, 13.) To support this notion, WWE references *Telemedicine,* which held that a cease and desist letter was not sufficient to show "express aiming" at a forum state. *Telemedicine Solutions LLC v. WoundRight Technologies, LLC.* 27 F.Supp.3d 883, 897 (N.D. Ill. 2014). However, in *Telemedicine*, the court was specifically referring to the "expressly aiming activities" prong of the *Calder* Effect's test. This holding bears little weight on the knowledge prong of the test. As noted above, the "expressly aiming activities" prong is satisfied here by the promotional events WWE has held and continues to hold in Illinois and its sales to Illinois residents.

WWE's denial of Alexander's rights in her works shows that WWE knew its infringing activities would be felt by Alexander in Illinois. In *Felland*, the court held that defendant's contact with plaintiff was enough to fulfil the knowledge prong for the Calder's "effects test." *Felland,* 682 F.3d at 676. There, a real estate developer met a couple from Wisconsin, convinced them to purchase a condominium in Arizona, and sent them several letters, emails, and phone calls to assuage their doubts about the prospects of the development. *Id.* at 671. The couple filed suit in Wisconsin. *Id.* at 671. Based on this correspondence, the circuit court found "no doubt

that [defendant] knew the alleged harm would be felt in Wisconsin." *Id.* at 675.  Here, there is no

doubt that WWE knew that its actions would be felt by Alexander in Illinois. Despite WWE's

contention that it had no knowledge that Alexander lived in Illinois, WWE offers no evidence

contradicting the assertion that Alexander contacted WWE in 2009 regarding the Infringing

Games. Under *Felland*, WWE's communication with Alexander establishes WWE's knowledge

that the effects of its actions would be felt in Illinois.

> **2.      Assuming WWE Does Not Meet the *Calder* Effect's Test, Personal Jurisdiction Is Still Proper Because Plaintiff Has Made A Sufficient Prima Facie Case For Specific Personal Jurisdiction Over WWE**

Even without jurisdictional discovery responses, Alexander has demonstrated that WWE

has sufficient minimum contacts with Illinois. Alexander served personal jurisdiction discovery

requests on WWE and Yuke's on July 18, for which responses are due on August 18.

WWE submitted an affidavit rejecting the notion that it has played any "role in the

distribution or sale of the Video Games through retail outlets." (Doc 52-1, ¶ 6.) However, even if

WWE played no role in the sale of the Infringing Games in *retail* outlets, WWE has purposefully

availed itself to the residents of Illinois through other outlets. Apart from denying retail sales,

WWE makes no assertions in its affidavit disputing its role in the production, advertising,

marketing, and sale of the Infringing Games. WWE admitted to selling the Infringing Games in

Illinois. To what extent is unclear at this point because Alexander has not yet received WWE's

responses to jurisdictional discovery. Even without WWE's discovery responses, Alexander has

succeeded in making out a prima facie case of personal jurisdiction. Accordingly, this Court

should deny Defendant's 12(b)(2) motion to dismiss.

WWE relies on *Weller v. Flynn* to argue lack of specific personal jurisdiction. (*See* Doc.

52, 4, 5, 6, 7.) There, defendants stated in affidavits that they made no creative contributions to

14

the infringing products, exercised no control over its production, never visited Illinois in connection with the infringing product, and played no role in distributing or advertising the infringing product. *Weller v. Flynn*, 2018 WL 2299240 *1 (N.D. Ill. 2018). Based on these facts, the court determined that plaintiff failed to make out a prima facie case for personal jurisdiction. *Id.* at *7. Here, unlike in *Weller*, WWE has taken specific actions toward Illinois. WWE admits that it offered the Infringing Games for sale on its website and makes no mention in its affidavit about its role in the development, production, or advertising of the Infringing Games. (*See* Doc. 52-1, ¶ 7.)  WWE (while knowing of Alexander's claim of copyright ownership) allowed the other Defendants to use WWE's name and trademarks, as well as Mr. Orton's likeness, on the Infringing Games.  This inference should be drawn in Alexander's favor.

Further, WWE admits in its affidavit that the company held 13 promotional events in 2016, 14 promotional events in 2017, and 11 promotional events in 2018. (Doc 52-1, ¶ 9.) Even if these shows were not directly related to the sale of the Infringing Games, they allowed WWE to promote its products including the Infringing Games and to avail itself to Illinois consumers. These regular events make clear that WWE has a strong consumer base with residents of Illinois. Under the "purposeful availment" standard set out by *Burger King Corp. v. Rudzewicz*, these events and WWE's website fulfil the requirements to satisfy specific personal jurisdiction. 471 U.S. 462 (1985).

WWE admissions in its affidavit combined with Alexanders Complaint provide sufficient basis for a prima facie showing of specific personal jurisdiction. For these reasons, WWE's motion to dismiss for lack of personal jurisdiction should be denied.

### 3.   Alexander Requests Leave to Amend Her Complaint After Receipt of Defendants' Personal Jurisdiction Discovery Responses

As noted above, Alexander has not received responses to requests and does not expect to receive responses until August 18, 2018. In *United Technologies*, the 11th Circuit found that the plaintiff failed to take reasonable steps to seek discovery or a deferral of a ruling pending discovery. *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009). "The district court, therefore, did not so much deny discovery as it dismissed the case before discovery was taken." *Id.* at 1280. Here, Alexander took reasonable steps to immediately serve jurisdictional discovery as noted in the case scheduling order. Therefore, if this Court grants WWE's 12(b)(2) motion to dismiss, Alexander hereby respectfully requests that this Court grant Alexander leave to amend her complaint *after* she receives WWE's discovery responses.

### B.   This Court Has Proper Specific Personal Jurisdiction Over Yuke's

Defendant Yuke's has not submitted any evidence in its motion. Therefore, Alexander does need not go beyond the pleadings to support the exercise of jurisdiction. The pleadings show, and Yuke's does not dispute, that Yuke's developed, promoted, distributed, and marketed the Infringing Games. (Doc. 1, ¶ 30). This Court may infer that Yuke's knew or should have known of the sales, distribution, promotion, and marketing of the Infringing Games through its concerted collaboration with the other Defendants.

### 1.   Defendant Yuke's Has Availed Itself of Illinois Though Developing And Producing The Infringing Games

Although Yuke's acknowledges Plaintiff's personal jurisdiction allegations, it nonetheless argues that Alexander has plead no facts to establish specific jurisdiction over Yuke's. (Doc. 50, 17.) Yuke's then proceeds to cite Seventh Circuit cases in which the court lacked jurisdiction over defendants with contacts supposedly greater than those Alexander

16

alleges with respect to Yuke's. *Weller v. Flynn*, cited by Defendants, is easily distinguishable. 2018 WL 2299240, at *7. As Defendants note, the producers of the TV show at issue made no creative contributions to the film's storyline, exercised no control over the film's production, never visited Illinois in connection with the film, and played no role in distributing or advertising the film. *Id*. at 7. Here, Alexander has alleged that Yuke's developed, promoted, distributed, and marketed the Infringing Games, including the copies of the tattoos. (Doc. 1, ¶ 30). Therefore, Yuke's has purposely availed itself of the U.S. market, including Illinois. Further, Yuke's directly harmed Alexander in Illinois through its infringing activities.

Yuke's role in distributing the Infringing Games and its knowledge of Alexander's tattoos acquired through its relationship with WWE preclude dismissal. In *Colo'n v. Akil*,[6] plaintiff alleged that a television episode produced by defendants infringed plaintiff's copyright. 449 Fed. Appx. 511, 512 (7th Cir. 2011). The court rejected allegations of intentional copyright infringement because none of the defendants had anything to do with the Indiana broadcast of the episode and none had heard of plaintiff before her lawsuit. *Id*. Therefore she could not show that defendants acted with the knowledge that they might cause harm to plaintiff in Indiana. *Id*. at 514. Unlike in *Colo'n*, at least one of the Defendants, WWE, had specific knowledge of Alexander's tattoos in 2009, well before the infringing activity alleged in the Complaint. (Doc. 1, ¶¶ 58-59.)

### 2.    Defendant Yuke's Is Likely Subject to Jurisdiction In Illinois Under Fed. R. Civ. P. 4(k)(2)

Without the benefit of discovery responses from Yuke's, Alexander does not know the specific role Yuke's played in targeting Illinois or in creating the copies within the Infringing Games. Rule 4(k)(2) serves as a federal long-arm statute, which allows a district court to exercise

---

[6] Yuke's does not cite this case in its motion to dismiss.

personal jurisdiction over a foreign defendant whose contacts with the United States, but not

with the forum state, satisfy due process. *Snap-On Inc. v. Robert Bosch, LLC*, 2013 WL

5423844, at *6 (N.D. Ill. Sept. 26, 2013) (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com

de Equip. Medico*, 563 F.3d 1285, 1296 (Fed. Cir. 2009)). Rule 4(k)(2) permits a court to

exercise personal jurisdiction over a defendant if: (1) the plaintiff's claim arises under federal

law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction;

and (3) the exercise of jurisdiction comports with due process. *Synthes*, 563 F.3d, at 1293-94.

Rule 4(k)(2) allows the plaintiff to aggregate a defendant's contacts with the entire nation as

opposed to an individual forum state. *Id*; *see also ISI Intern., Inc. v. Borden Ladner Gervais LLP*,

256 F.3d 548, 552 (7th Cir. 2001), as amended (July 2, 2001) (Rule 4(k)(2) recognizes the

greater powers of the United States as a whole.).

  Even if Yuke's has not purposely availed itself of Illinois, its contacts with the United

States support personal jurisdiction in Illinois under Rule 4(k)(2). Alexander's copyright claims

arise under federal law and Yuke's has not admitted that it is subject to personal jurisdiction in

another U.S. state, satisfying the first two prongs of Rule 4(k)(2). The due process analysis under

the third prong Rule 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis,

the only difference lies in that the forum under analysis shifts to the United States as a whole.

*Fraserside IP L.L.C. v. Netvertising Ltd.*, 902 F. Supp. 2d 1165, 1179 (N.D. Iowa 2012)

(granting jurisdictional discovery in copyright infringement suit where information concerning

Hungarian defendants' contacts with the United States were available to plaintiff only through

discovery). At this time, Alexander lacks information regarding Yuke's infringement-related

contacts with the U.S. However, Yuke's has purposefully availed itself of benefits in the (U.S.)

forum through U.S. sales of the Infringing Games. Finally, Yuke's could reasonably foresee suit in the U.S., the largest market for the Infringing Games.

3.   **Since Alexander Has Made A Prima Facie Case For Personal Jurisdiction Over Yuke's, An Evidentiary Hearing Is Required Before Dismissal**

If material facts about personal jurisdiction are in dispute, the court "must hold an evidentiary hearing to resolve them." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015). Therefore, if the Court is inclined to grant Yuke's motion, Alexander requests an evidentiary hearing to determine whether Yuke's is subject to personal jurisdiction. *See Kraft Chemical Company v. Salicylates and Chemicals Private Limited*, 149 F.Supp.3d 897 (N.D. Ill. 2015) (requiring evidentiary hearing to resolve, on motion to dismiss for lack of personal jurisdiction, whether an Indian corporation's alleged breach of the agreement allowed Illinois court to exercise specific jurisdiction).

An evidentiary hearing would allow Alexander to determine whether Yuke's maintains any offices, employees, or equipment in the U.S. Further, Alexander could inquire into what role Yuke's played in creating, developing, publishing, distributing, promoting, advertising, marketing, and selling the games in the U.S.

## CONCLUSION

Alexander stated a claim for copyright infringement against Defendants. The Seventh Circuit has adopted the "application approach," which allows plaintiffs to file suit before receiving a response from the U.S. Copyright Office. Alexander's Complaint gave Defendants sufficient notice as to the infringement.

Further, Alexander has properly plead direct, contributory, and vicarious liability. At the pleading stage, these allegations sufficiently notify Defendants of their infringing activities as

required by Rule 8(a). Therefore, this Court should deny Defendants' motion to dismiss for failure to state a claim. Alternatively, Alexander requests leave to supplement her factual allegations upon receipt of jurisdictional discovery.

This Court has specific personal jurisdiction over Defendants Yuke's and WWE. Yuke's has not provided an affidavit contradicting Alexander's jurisdictional allegations in her Complaint and Alexander lacks further knowledge of Yuke's contacts with Illinois or with the U.S. Therefore, Alexander requests an evidentiary hearing, or in the alternative, leave to amend her complaint after receipt of jurisdictional discovery.

This Court has specific personal jurisdiction over WWE under the *Calder* "effects test." Alexander has demonstrated that WWE took intentional actions expressly aimed at the residents of Illinois with knowledge that Alexander would feel the effects of WWE's actions in Illinois. Alternatively, Alexander has established a prima facie case of specific personal jurisdiction over WWE through its role in distributing the game including though website sales to Illinois residents and through promotional activities specifically directed at Illinois residents. If this Court grants WWE's motion, Alexander requests leave to amend her complaint upon receipt of jurisdictional discovery. Alexander respectfully requests all other relief this Court deems proper.

Dated:  August 8, 2018          Respectfully submitted,

         */s/ Anthony G. Simon*
         Anthony G. Simon, IL 6209056
         Benjamin R. Askew, IL 6291366
         Anthony R. Friedman, IL 6299795
         **THE SIMON LAW FIRM, P.C.**
         800 Market Street, Suite 1700
         St. Louis, Missouri  63101
         Phone:  (314) 241-2929
         Fax:  (314) 241-2029
         asimon@simonlawpc.com
         basekew@simonlawpc.com
         afriedman@simonlawpc.com

         R. Seth Crompton
         **THE HOLLAND LAW FIRM**
         300 N Tucker, Suite 801
         St. Louis, Missouri 63101
         scrompton@allfela.com
         Phone: (314) 241-8111
         Facsimile: (314) 241-5554

         *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served upon all counsel of record this 8th day of August 2018 via the Court's CM/ECF system.

         */s/ Anthony G. Simon*

21