## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CATHERINE ALEXANDER, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | |
| ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, ) | Case No. 3:18-cv-00966-MJR-DGW |
| INC.; 2K GAMES, INC.; 2K SPORTS INC.; ) | |
| WORLD WRESTLING ENTERTAINMENT, ) | |
| INC.; VISUAL CONCEPTS ) | |
| ENTERTAINMENT; YUKE'S CO., LTD.; ) | |
| YUKES LA INC., ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

---

### WORLD WRESTLING ENTERTAINMENT, INC.'S
### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST
### AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

---

Michael J. Nester (49410)
DONOVAN ROSE NESTER P.C.
15 North 1st Street, Suite A
Belleville, Illinois 62220
Telephone:  (618) 212-6500
Email:  mnester@drnpc.com

Jerry S. McDevitt (pro hac vice)
Curtis B. Krasik (pro hac vice)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone: (412) 355-6500
Facsimile: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

*Counsel for Defendant World Wrestling Entertainment, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND..................................................................................................3

    A.    Plaintiff's Original Complaint.................................................................3

    B.    Plaintiff Failed to Meaningfully Respond to the Arguments Asserted in
          WWE's Motion to Dismiss Plaintiff's Original Complaint for Lack of Personal
          Jurisdiction ...............................................................................................3

    C.    Plaintiff's First Amended Complaint .......................................................6

III.  ARGUMENT ........................................................................................................7

    A.    Standard of Review....................................................................................7

    B.    This Court Lacks Personal Jurisdiction Over WWE ................................9

        1.    Plaintiff Has Not Demonstrated, and Cannot Demonstrate, this Court's
            General Jurisdiction Over WWE ................................................9

        2.    Plaintiff Has Not Demonstrated, and Cannot Demonstrate, this Court's
            Specific Jurisdiction Over WWE................................................9

            a.    Plaintiff Has Failed to Establish that WWE Purposefully
                Directed Any Activities Toward Illinois From Which Plaintiff's
                Claim Arose ...................................................................9

            b.    WWE's Re-Sale of the Video Games Through WWE's Website
                Cannot Establish Specific Jurisdiction Over WWE......................13

            c.    Plaintiff's Residence in Illinois Is Insufficient to Establish
                 Specific Jurisdiction Over WWE................................................14

IV.   CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
   751 F.3d 796 (7th Cir. 2014) ..................................................... 7-8, 9, 13

*Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520
   (7th Cir. 2018) ............................................................................ 7, 13-14

*be2 LLC v. Ivanov*, 642 F.2d 555 (7th Cir. 2011) ...................................13, 17

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773 (2017) .............................5, 11

*Brook v. McCormley*, 873 F.3d 549 (7th Cir. 2017) ............................................ *passim*

*Calder v. Jones*, 465 U.S. 783 (1984) .................................................................. *passim*

*Colo'n v. Akil*, 449 Fed. Appx. 511 (7th Cir. 2011) ......................................... 11-12, 19

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ...........................................................9, 13

*GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018 (7th Cir. 2009)...................................8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 95 (2011)........................................7

*Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 WL 245910
   (N.D. Ill. Jan. 21, 2016) .........................................................................14

*Johnson v. Barrier*, No. 15-CV-03928, 2016 WL 3520157
   (N.D. Ill. June 28, 2016) ........................................................... *passim*

*Labtest Int'l, Inc. v. Centre Testing Int'l Corp.*, 766 F. Supp. 2d 854
   (N.D. Ill. 2011).........................................................................................7

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. Of Houston
   Metroplex, P.A.*, 623 F.3d 440 (7th Cir. 2010) ......................................15, 16, 19, 20

*Novelty, Inc. v. RCB Distrib., Inc.*, No. 1:08-cv-0418-DFH-WTL,
   2008 WL 2705532 (S.D. Ind. July 9, 2008).....................................................16, 17

*Original Creations, Inc. v. Ready America, Inc.*, 836 F. Supp. 2d 711
   (N.D. Ill. 2011)............................................................................... 5-6, 13

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003)..... 3-4, 8, 9, 10

*RAR, Inc. v. Turner Diesel, Ltd.*, 107 F. 3d 1272 (7th Cir. 1997)........................................... 19-20

*Richter v. INSTAR Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000 (N.D. Ill. 2009) ...............................16

*Telemedicine Solutions LLC v. WoundRight Technologies, LLC*,
   27 F. Supp. 3d 883 (N.D. Ill. 2014) ...................................................................... 15, 17-18, 19

*Toma v. Motley Crue, Inc.*, No. 11 C 6766, 2012 WL 4793508
   (N.D. Ill. Oct. 9, 2012) ...........................................................................................12, 16

*Tomelleri v. MEDL Mobile, Inc.*, No. 2:14-CV-02113-JAR, 2015 WL 1957801
   (D. Kan. Apr. 29, 2015) ...........................................................................................16

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) .......................................................... *passim*

*Walker v. Macy's Merch. Grp., Inc.*, No. 14 C 2513, 2016 WL 6089736
   (N.D. Ill. Oct. 12, 2016) ........................................................................................ 11-12

*Weller v. Flynn*, No. 17-cv-8799, 2018 WL 2299240 (N.D. Ill. May 21, 2018) ............. 8, 9-10, 12

*Wilson v. Nouvag GMBH*, No. 15-CV-11700, 2018 WL 1565602
   (N.D. Ill. Mar. 30, 2018) ........................................................................................10

## Other Authorities

5 Patry on Copyright § 17:167 .............................................................................17

Fed. R. Civ. P. 12 ..............................................................................................3

## I.      <u>INTRODUCTION</u>

Plaintiff alleges that she owns a federal copyright in various tattoos she inked on the body of World Wrestling Entertainment, Inc. ("WWE") Superstar, Randy Orton, and that the accurate depiction of Randy Orton as he appears in real-life — with his tattoos — in the videogames WWE 2K16, WWE 2K17, and WWE 2K18 (the "Video Games") constitutes willful copyright infringement.  The implication of Plaintiff's claim is that she effectively would own a monopoly over the realistic depiction of Randy Orton in any media.  This outcome is legally and practically implausible.

Notwithstanding the problematic issues raised by the merits of Plaintiff's claims, the claims asserted against WWE in her First Amended Complaint, like those in her original complaint, can — and should — be dismissed for the straightforward reason that this Court lacks personal jurisdiction over WWE.  The Court's lack of personal jurisdiction over WWE has been made manifest by Plaintiff's inability to cure the jurisdictional defects WWE identified in its motion to dismiss Plaintiff's original complaint.  Despite having the opportunity to review WWE's jurisdictional arguments in the prior round of motion to dismiss briefing, serving jurisdictional discovery to which WWE fully responded, and then filing the First Amended Complaint armed with the knowledge of WWE's jurisdictional arguments as well as the jurisdictional discovery provided by WWE, the First Amended Complaint merely adds six (6) new jurisdictional allegations which do nothing to cure the jurisdictional defects that WWE previously identified.  On the contrary, these allegations actually confirm that ***WWE did not purposefully direct any activities toward Illinois from which Plaintiff's claim arose***, which is necessary (and lacking) to establish personal jurisdiction over WWE.

In short, WWE is subject to neither general nor specific jurisdiction in Illinois.  As for general jurisdiction, WWE is a Delaware corporation with its principal place of business in Connecticut and consequently, under recent U.S. Supreme Court precedent, WWE is not "at home" in Illinois so as to be subject to general jurisdiction.  As for specific jurisdiction, the First Amended Complaint fails to allege *any* litigation-specific conduct of WWE in, or purposefully directed towards, Illinois — much less that WWE's "suit-related conduct . . . create[s] a *substantial* connection with the forum State," which the Supreme Court has ruled is necessary for a court to exercise specific jurisdiction consistent with due process.  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (emphasis added).

At bottom, Plaintiff appears to contend that the mere fact that Plaintiff allegedly resides in Illinois and therefore allegedly was injured in Illinois as a result of Defendants' alleged copyright infringement is sufficient to subject WWE and the other Defendants to personal jurisdiction in Illinois.  However, the Supreme Court and the Seventh Circuit have rejected this very argument.  "The mere fact that a defendant's conduct affects a plaintiff with connections to the forum State is not sufficient to establish jurisdiction."  *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017); *see also Walden*, 134 S. Ct. at 1125 ("[M]ere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").  In the absence of specifically-pled jurisdictional facts establishing that WWE's contacts to Illinois directly relating to the copyright infringement claims at issue "create a substantial connection with the forum state," *Walden*, 134 S. Ct. at 1121, the Court cannot exercise personal jurisdiction over WWE consistent with due process.

In addition to the Court's lack of jurisdiction over WWE, so as not to unnecessarily burden the Court with duplicative filings, WWE adopts and incorporates by reference herein the arguments for dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) asserted in the Memorandum of Law in Support of Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., Visual Concepts Entertainment, Yuke's Co., Ltd., and Yuke's LA, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint.

## II.  BACKGROUND

### A.  Plaintiff's Original Complaint

Plaintiff filed her original complaint in this action on April 17, 2018.  On July 9, 2018, WWE filed a motion to dismiss for lack of personal jurisdiction in response to Plaintiff's original complaint.  *See* Doc. 51.  After being served with WWE's motion to dismiss, and having the benefit of seeing WWE's jurisdictional arguments, on July 18, 2018, Plaintiff served jurisdictional discovery on WWE consisting of 31 Requests for Admission ("RFAs") and 4 Interrogatories ("IROGs").  WWE fully responded to Plaintiff's discovery requests on August 17, 2018.  Plaintiff has neither claimed that WWE's responses to its jurisdictional discovery were inadequate nor asked for additional jurisdictional discovery.

### B.  Plaintiff Failed to Meaningfully Respond to the Arguments Asserted in WWE's Motion to Dismiss Plaintiff's Original Complaint for Lack of Personal Jurisdiction

On August 8, 2018, Plaintiff filed a Memorandum in Opposition to Defendants' Motions to Dismiss (the "Oppposition").  *See* Doc. 57.  In her Opposition, Plaintiff conceded with respect to WWE's motion to dismiss for lack of personal jurisdiction that once the defendant has submitted has submitted affidavits in opposition to the exercise of jurisdiction — as WWE did in support of its motion to dismiss the original complaint through the Declaration of Edward M. Kiang (Doc. 52-1) — "the plaintiff must go beyond the pleadings and submit affirmative

evidence supporting the exercise of jurisdiction."  Doc. 57 at 11 (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003)).  Despite conceding this requirement, Plaintiff failed to submit any affirmative evidence in support of this Court's jurisdiction over WWE and consequently WWE was entitled to dismissal for lack of personal jurisdiction as a matter of Seventh Circuit law.

Aside from failing to satisfy the evidentiary burden necessary to sustain this Court's jurisdiction over WWE in response to WWE's motion to dismiss, Plaintiff principally argued — unsuccessfully — that WWE should be subject to this Court's jurisdiction under the *Calder* effects test because Plaintiff allegedly resides in Illinois.  *See* Doc. 57 at 11-14.  However, Plaintiff completely ignored the controlling law that "[t]he mere fact that a defendant's conduct affects a plaintiff with connections to the forum State is not sufficient to establish jurisdiction." *Brook*, 873 F.3d at 552; *see also Walden*, 134 S. Ct. at 1122 ("[T]he plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). Moreover, Plaintiff's assertion that WWE supposedly "kn[ew] that the effects of its actions would be felt by Alexander in Illinois" because she allegedly "contacted WWE about the Infringing Games from Illinois" in 2009 is unsupported by any shred of factual basis that she, in fact, (i) contacted WWE in 2009; (ii) resided in Illinois in 2009; or, assuming *arguendo* (i) and (ii) were true, (iii) WWE had any knowledge that she resided in Illinois then or now.  On the contrary, Plaintiff's unsupported assertion is squarely contradicted by the testimony of Edward M. Kiang, WWE's Vice President of Interactive Media Licensing since 2013, that prior to the filing of this lawsuit he was not aware that Randy Orton was tattooed by Plaintiff or that Plaintiff allegedly lives in Illinois.  Declaration of Edward M. Kiang, Ex. 1 at ¶¶ 10-11.  Mr. Kiang

further testified in his Declaration that during his tenure as Vice President of Interactive Media Licensing the consumer products group, including, in particular, the interactive licensing team that is responsible for the Video Games, likewise was not informed that Randy Orton was tattooed by Plaintiff or that Plaintiff allegedly lives in Illinois.  *Id.*, Ex. 1 at ¶¶ 12-13.  Thus, prior to the filing of this lawsuit, the relevant employees at WWE did not even know of Plaintiff's existence, much less that she allegedly lives in Illinois.

Plaintiff's other arguments in opposition to WWE's motion to dismiss for lack of personal jurisdiction were that WWE supposedly admitted in Kiang's declaration that (a) it held certain "promotional events" in Illinois in 2016, 2017, and 2018; and (b) it offered the Video Games for sale on its website.  *See* Doc. 57 at 12, 14-15.  With regard to the "promotional events," Plaintiff conspicuously ignored that the "events" referenced in Mr. Kiang's Declaration were WWE live shows promoted in Illinois arenas that have nothing to do with the Video Games at issue.  The U.S. Supreme Court has made clear that such contacts with Illinois unconnected to the alleged infringement of Plaintiff's copyrights in certain of Randy Orton's tattoos are irrelevant to the Court's specific jurisdiction analysis.  *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) ("When there is no such connection [between the forum and the underlying controversy], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.").  With regard to alleged sales — actually, WWE's re-sale of limited quantities of the Video Games purchased at wholesale (Kiang Dec., Ex. 1 at ¶ 7) — of the Video Games through WWE's website, which Mr. Kiang testified in his Declaration is accessible to Illinois residents to the same extent that the website is accessible throughout the entire United States (*id.*, Ex. 1 at ¶ 9), Plaintiff did not even attempt to address that "Seventh Circuit law . . . is clear that Internet sales, without something more, are not enough

5

[to establish personal jurisdiction]." *Original Creations, Inc. v. Ready America, Inc.*, 836 F. Supp. 2d 711, 715 (N.D. Ill. 2011).

C.      **Plaintiff's First Amended Complaint**

On September 5, 2018, Plaintiff filed a motion for leave to file an amended complaint with a proposed amended complaint attached.  *See* Doc. 65.  After the Court granted Plaintiff's motion for leave (Doc. 75), on October 2, 2018, Plaintiff filed her First Amended Complaint. *See* Doc. 76.  Plaintiff's First Amended Complaint includes precisely six (6) new allegations with respect to WWE under the heading "Additional Jurisdictional Facts."  Those allegations are as follows:

> 34.     Defendant WWE operates a website that offers various WWE-branded products for sale.

> 35.     Defendant WWE has purchased the Infringing Games and sold them through WWE's website.

> 36.     Defendant WWE's website is accessible in the United States, including by Illinois residents.

> 37.     Defendant WWE benefits financially from sales of the Infringing Games across the United States, including sales in Illinois.

> 38.     Defendant WWE was aware at the time that the Infringing Games were sold that Randy Orton was displayed in the Games as he appears in real life, including with his tattoos.

> 39.     Defendant WWE reviewed the depiction of intellectual property owned or controlled by WWE and the WWE brand in the content of the Infringing Games.

As noted at the outset, these new allegations — each based on information WWE affirmatively provided in response to Plaintiff's jurisdictional discovery and/or in Mr. Kiang's Declaration that WWE submitted in support of its motion to dismiss and re-submits in support of its motion to dismiss Plaintiff's First Amended Complaint — confirm that WWE did not purposefully direct any activities toward Illinois from which Plaintiff's claim arose, let alone that

6

WWE's suit-related conduct "create[d] a *substantial* connection with the forum State," which would be necessary for the Court to exercise personal jurisdiction over WWE. *Walden*, 134 S. Ct. at 1121.

## III.   <u>ARGUMENT</u>

### A.   <u>Standard of Review</u>

In federal question cases, where the federal statute at issue does not authorize nationwide service of process, personal jurisdiction is governed by the law of the forum state. *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 521-22 (7th Cir. 2018). "The Copyright Act does not provide for nationwide service of process;" as such, personal jurisdiction is governed by Illinois law. *Labtest Int'l, Inc. v. Centre Testing Int'l Corp.*, 766 F. Supp. 2d 854, 858 (N.D. Ill. 2011). "The Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment . . . . Thus, the state statutory and federal constitutional requirements merge." *Brook*, 873 F.3d at 552. "The Due Process Clause of the Fourteenth Amendment limits the power of a court to render a judgment over nonresident defendants." *Id.* "To determine this constitutional limitation, courts must determine whether the defendant had sufficient 'minimum contacts [. . .] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (citation omitted).

Personal jurisdiction can be either "general" or "specific." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 95, 919 (2011). General jurisdiction "is proper only in the limited number of fora in which the defendant can be said to be 'at home.' For a corporation, such places include the state of incorporation and the state of the principal place of business." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th

Cir. 2014).  In contrast, specific jurisdiction "refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Brook*, 873 F.3d at 552 (citation omitted); *see also Advanced Tactical Ordnance Sys.*, 751 F.3d at 801 ("Specific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state.") (emphasis in original).  Thus, "[t]he inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" *Brook*, 873 F.3d at 552 (quoting *Walden*, 134 S. Ct. at 1122).  "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121.

When a "defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found.*, 338 F.3d at 782.  In analyzing a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "courts may consider matters outside of the pleadings." *Johnson v. Barrier*, No. 15-CV-03928, 2016 WL 3520157, at *2 (N.D. Ill. June 28, 2016).  Where the issue is decided on the basis of written materials rather than an evidentiary hearing, the plaintiff bears "the burden of making a *prima facie* case for personal jurisdiction." *Id.* (citation omitted).  "If the defendant offers evidence challenging personal jurisdiction, the plaintiff may not rest on the pleadings. . . . This Court accepts 'as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff.'" *Weller v. Flynn*, No. 17-cv-8799, 2018 WL 2299240, at *5 (N.D. Ill. May 21, 2018) (quoting *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009)).

**B.** **This Court Lacks Personal Jurisdiction Over WWE**

    **1.** **Plaintiff Has Not Demonstrated, and Cannot Demonstrate, this Court's General Jurisdiction Over WWE**

WWE is not subject to this Court's general jurisdiction.  As noted, general jurisdiction "is proper only in the limited number of fora in which the defendant can be said to be 'at home.' For a corporation, such places include the state of incorporation and the state of principal place of business."  *Advanced Tactical Ordnance Sys.*, 751 F.3d at 800; *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.").  Because general jurisdiction allows a defendant to be sued in the forum "in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world," the constitutional requirement for general jurisdiction is very high and "'considerably more stringent' than that required for specific jurisdiction."  *Purdue Research Found.*, 338 F.3d at 787 (citation omitted) (emphasis in original).

Here, Plaintiff admits that WWE is incorporated in Delaware and headquartered in Connecticut.  *See* FAC ¶¶ 9, 10.  Having admitted that Illinois is not a paradigm forum in which WWE is "at home" to subject it to general jurisdiction, the First Amended Complaint is otherwise devoid of facts to support the notion that WWE is "at home" in Illinois.  Accordingly, Plaintiff has failed to demonstrate the Court's general jurisdiction over WWE.

    **2.** **Plaintiff Has Not Demonstrated, and Cannot Demonstrate, this Court's Specific Jurisdiction Over WWE**

        **a.** **Plaintiff Has Failed to Establish that WWE Purposefully Directed Any Activities Toward Illinois From Which Plaintiff's Claim Arose**

Specific jurisdiction is only appropriate where (1) Defendant "'purposefully directed' [its] activities at Illinois or purposefully availed [itself] 'of the privilege of conducting business'

in Illinois; and (2) Plaintiff's injury arises out of [the Defendant's] forum-related activities."

*Weller*, 2018 WL 2299240, at *7 (citation omitted).  The plaintiff must show that each

defendant's individual contacts with the forum state meet this standard.  *See Purdue Research*

*Found.*, 338 F.3d at 784 ("[E]ach defendant's contacts with the forum State must be assessed

individually.") (citations omitted).

    Plaintiff asserted the following jurisdictional allegations in the original complaint and re-

asserts them in the First Amended Complaint:

> 28.    Defendants have engaged in conduct, giving rise to the claims herein, that
> satisfies the Illinois long-arm statute, including the commission of tortious acts
> within this State and the commission of tortious acts outside of this State knowing
> and intending that such acts would interfere with Illinois interests and cause injury
> within Illinois.  Moreover, Defendants have purposefully availed themselves of
> the jurisdiction of this Court by transacting business in this District and the State
> of Illinois concerning the copyrighted works at issue.

> 29.    The Defendants transacted business in this State.

> 30.    The Defendants developed, promoted, distributed and marketed the
> Infringing Games, and contracted to supply the Infringing Games in this State.

> 31.    Each of the Infringing Games have been sold in this State.

*See* FAC ¶¶ 29-31.  Such conclusory and boilerplate allegations as to the Defendants ***collectively***

fail to demonstrate that WWE ***individually*** purposefully directed any activities toward Illinois

from which Plaintiff's claim arose.  *See Wilson v. Nouvag GMBH,* No. 15-CV-11700, 2018 WL

1565602, at *2 (N.D. Ill. Mar. 30, 2018) ("Factual assertions that amount only to 'vague

generalizations or unsupported allegations,' are insufficient to support personal jurisdiction.");

*see also Weller*, 2018 WL 2299240, at *7 (finding "Plaintiff's general allegation that all

Defendants caused some injury in Illinois and/or targeted Illinois" insufficient to establish

personal jurisdiction).

    In the First Amended Complaint, Plaintiff added the six (6) new allegations with respect

to WWE referenced above under the heading "Additional Jurisdictional Facts." Specifically,

Plaintiff alleges that:

> 34. Defendant WWE operates a website that offers various WWE-branded products for sale.
>
> 35. Defendant WWE has purchased the Infringing Games and sold them through WWE's website.
>
> 36. Defendant WWE's website is accessible in the United States, including by Illinois residents.
>
> 37. Defendant WWE benefits financially from sales of the Infringing Games across the United States, including sales in Illinois.
>
> 38. Defendant WWE was aware at the time that the Infringing Games were sold that Randy Orton was displayed in the Games as he appears in real life, including with his tattoos.
>
> 39. Defendant WWE reviewed the depiction of intellectual property owned or controlled by WWE and the WWE brand in the content of the Infringing Games.

*See* FAC ¶¶ 34-39.

Taken together, Plaintiff's jurisdictional allegations against WWE continue to fail to

demonstrate **any** specific activities that WWE has supposedly undertaken in Illinois with respect

to the claims at issue. In point of fact, WWE has **no** role in the distribution or sale of the Video

Games through retail outlets. *See* Kiang Dec., Ex. 1 at ¶ 6.[1] Courts in the Seventh Circuit have

---

[1] WWE's scant contacts with Illinois are predominately limited to (i) the promotion of a handful of WWE live events held in Illinois each year — specifically, WWE promoted 13 shows in Illinois in 2016, 14 shows in 2017, and 11 shows in 2018; (ii) the availability of WWE programming, both through television and the WWE Network, to the same extent that such programming is available throughout the entire United States; and (iii) the accessibility of WWE's website, www.wwe.com, to the same extent that the website is accessible throughout the entire United States. *See* Kiang Dec., Ex. 1 at ¶ 9. As noted above, such contacts with Illinois unconnected to the alleged infringement of Plaintiff's copyrights in certain of Randy Orton's tattoos in the Video Games are irrelevant to the Court's specific jurisdiction analysis. *See Bristol-Myers Squibb*, 137 S. Ct. at 1781 ("When there is no such connection [between the forum and the underlying controversy], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."); *see also Walker v. Macy's Merch. Grp., Inc.*, No. 14 C 2513, 2016 WL 6089736, at *3 (N.D. Ill. Oct. 12, 2016) ("The exercise of specific jurisdiction over an out-of-state

11

consistently found no specific jurisdiction over out-of-state defendants on copyright infringement claims where the defendants, like WWE, did not direct the allegedly infringing activity toward Illinois.  *See Colo'n v. Akil*, 449 Fed. Appx. 511, 514 (7th Cir. 2011) (affirming district court's finding of no specific jurisdiction over defendants based on lack of evidence that they had anything to do with the broadcast of the allegedly infringing work in the forum state); *Weller*, 2018 WL 2299240, at *7 (finding no specific jurisdiction over producer in copyright infringement suit where they "played some role in the film's production and it was distributed globally, including in Illinois," but ultimately "made no creative contributions to the film's storyline, exercised no control over the film's production, never visited Illinois in connection with the film, and played no role in distributing or advertising the film"); *Johnson*, 2016 WL 3520157, at *5 (finding no specific jurisdiction over record label because plaintiff "fail[ed] to show that UMG — as opposed to any distribution affiliate — purposefully directed its activities toward Illinois"); *Toma v. Motley Crue, Inc.*, No. 11 C 6766, 2012 WL 4793508, at *2-3 (N.D. Ill. Oct. 9, 2012) (finding no specific jurisdiction over music group that allegedly used plaintiff's copyrighted photograph on album cover without permission because group did not "aim" its allegedly infringing conduct at Illinois).

At most, Plaintiff alleges that WWE purchased (limited quantities of) the Video Games at wholesale and offered them for re-sale through WWE's website, www.wwe.com.  As noted, however, WWE's website is accessible in Illinois to the same extent that it is accessible throughout the entire United States and WWE does not specifically target its website toward Illinois or any other state in the United States.  *See* Kiang Dec., Ex. 1 at ¶¶ 8-9.  Thus, to find that WWE is subject to this Court's specific jurisdiction based on nothing more than the

---

defendant requires that the defendant's contacts with the forum state directly relate to the challenged conduct or transaction.")

accessibility of its website in Illinois would mean that WWE is subject to specific personal jurisdiction in every state in the United States.  For the reasons described in Section III.2.b below, this is not the law.  *See Advanced Tactical Ordnance Sys.*, 751 F.3d at 803 ("Having an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible.  To hold otherwise would offend 'traditional notions of fair play and substantial justice.'"

**b.    WWE's Re-Sale of the Video Games Through WWE's Website
Cannot Establish Specific Jurisdiction Over WWE**

WWE has purchased limited quantities of the Video Games at wholesale and offered them for re-sale through WWE's website.  *See* Kiang Dec., Ex. 1 at ¶ 7.  Such re-sale of the Video Games through WWE's website cannot establish specific jurisdiction over WWE.  "Seventh Circuit law . . . is clear that Internet sales, without something more, are not enough [to establish personal jurisdiction]." *Original Creations*, 836 F. Supp. 2d at 715.  The Seventh Circuit has recognized that "if having an interactive website were enough . . . a plaintiff could sue everywhere.  Such result would violate the principles on which *Walden* and *Daimler* rest. Having an 'interactive website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible.  To hold otherwise would offend 'traditional notions of fair play and substantial justice.'" *Advanced Tactical Ordnance Sys.*, 751 F.3d at 803 (citation omitted).  Thus, "[i]f the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, *but does not target,* the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *See be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (emphasis added); *see also Ariel Investments, LLC*, 881 F.3d at 522 ("Knowing about a potential for harm in a particular state is not the same as acting *in* that state — and it takes the latter to

13

permit personal jurisdiction under state law.") .

WWE does not specifically target its website toward Illinois (or any other state in the United States). *See* Kiang Dec., Ex. 1 at ¶ 8. In the absence of evidence that WWE specifically targeted Illinois for sales of the Video Games through its website, Plaintiff has not met her burden of proving that WWE has the requisite minimum contacts with Illinois sufficient to satisfy due process. *See Johnson*, 2016 WL 3520157, at *5 (dismissing case because "Plaintiff offer[ed] no evidence of geographically-focused targeting that could subject [defendant] to personal jurisdiction on the basis of its alleged online sales"); *Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) ("Because plaintiff does not allege that Facebook targets its alleged biometric collection activities at Illinois residents, the fact that its site is accessible to Illinois residents does not confer specific jurisdiction over Facebook.").

### c.     Plaintiff's Residence in Illinois Is Insufficient to Establish Specific Jurisdiction Over WWE

Lacking allegations of any actual activities by WWE purposefully directed toward Illinois, Plaintiff's assertion of personal jurisdiction over WWE appears to be fundamentally based on the fact that Plaintiff lives in Illinois and, therefore, supposedly was harmed in the state. This precise argument, however, has been squarely rejected by the Supreme Court and the Seventh Circuit.

Significantly, "[t]he mere fact that a defendant's conduct affects a plaintiff with connections to the forum State is not sufficient to establish jurisdiction." *Brook*, 873 F.3d at 552; *see also Walden*, 134 S. Ct. at 1122 ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). Instead, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State."

*Walden*, 134 S. Ct. at 1122 (emphasis in original).  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  *Id.* at 1123.

Consistent with these principles, in *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court articulated the "express aiming" test as a means to establish personal jurisdiction for intentional torts.  Under this test, a plaintiff must establish:  "(1) intentional conduct (or 'intentional and allegedly tortious conduct'); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt — that is, the plaintiff would be injured — in the forum state."  *Telemedicine Solutions LLC v. WoundRight Technologies, LLC*, 27 F. Supp. 3d 883, 893 (N.D. Ill. 2014) (citation omitted).  As applied by the Seventh Circuit,  the express aiming test "focuses attention on whether the defendant intentionally aimed its conduct at the forum state, rather than on the possibly incidental and constitutionally irrelevant effects of that conduct on the plaintiff."  *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. Of Houston Metroplex, P.A.*, 623 F.3d 440, 445 n.1 (7th Cir. 2010).

In *Walden*, the Supreme Court specifically rejected the argument that specific jurisdiction over a defendant was established under *Calder*'s "express aiming test" because the plaintiff allegedly suffered injury as a result of the defendant's allegedly tortious conduct while residing in the forum state, the Supreme Court held:

> *Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum.  Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.  The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

*Walden*, 134 S. Ct. at 1125;  *see also Mobile Anesthesiologists Chicago*, 623 F.3d at 445  ("[W]e

rejected the contention that *Calder* meant 'any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff.'"); *Toma*, 2012 WL 4793508, at *5 ("Our Court of Appeals has required plaintiffs to establish 'something more' than an injury in the forum state to support personal jurisdiction under *Calder*: the plaintiff must also establish 'tortious conduct *specifically directed* at the forum, making the forum the focal point of the tort.'") (emphasis in original). "Without intentional actions causing foreseeable harm in the forum state, there can be no personal jurisdiction under the [*Calder*] test." *Novelty, Inc. v. RCB Distrib., Inc.*, No. 1:08-cv-0418-DFH-WTL, 2008 WL 2705532, at *3-4 (S.D. Ind. July 9, 2008).

WWE is not, and cannot be, subject to specific jurisdiction under the "express aiming" test on the copyright infringement claims at issue. As a threshold matter, courts have refused to apply the "express aiming" test to copyright claims in the first instance on the grounds that copyright infringement is not an intentional tort. *See Richter v. INSTAR Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1011 (N.D. Ill. 2009) ("[I]n stark contrast to *Calder* and *Janmark*, this case does not concern an intentional tort. Copyright infringement does not require any particular state of mind."); *Novelty*, 2008 WL 2705532, at *4 ("[C]opyright infringement[ ] may occur unintentionally."); *see also Tomelleri v. MEDL Mobile, Inc.*, No. 2:14-CV-02113-JAR, 2015 WL 1957801, at *5 (D. Kan. Apr. 29, 2015) ("Copyright infringement . . . is a strict liability tort, not an intentional tort. As such, it is difficult to see how unintentional copyright infringement could satisfy the third prong of *Calder*'s effects test: a defendant can scarcely be deemed to have acted 'with knowledge that the brunt of the injury would be felt in the forum state' where the defendant did not intend to cause injury in the forum state — or anywhere else — at all."). A leading copyright treatise has similarly criticized the use of *Calder*'s "express aiming" test as a

basis for personal jurisdiction over foreign defendants, noting it is "deeply distressing to see courts flagrantly disregarding copyright's long-standing nature [as a strict liability tort] in order to manipulate their own exercise of jurisdiction . . . .  Calling copyright [infringement] an intentional tort doesn't make it one; it isn't, and it is well past the time when we should acknowledge that this emperor has no clothes and never has had any clothes:  not only common sense and decency lead to this admission; constitutional due process concerns require it."  5 Patry on Copyright § 17:167.  Plaintiff's claim of copyright infringement does not morph into an intentional tort for purposes of the "express aiming" test just because Plaintiff has alleged that WWE "knowingly and willfully infringed Plaintiff's copyright" under 17 U.S.C. § 504.  *See* FAC ¶ 96.  "This statute has no bearing on personal jurisdiction, and the statutory standard differs from what constitutional due process requires." *Novelty*, 2008 WL 2705532, at *4 n.2 (finding that an allegation of willfulness under § 504 did not convert plaintiff's claim of copyright infringement into an intentional tort).

Assuming *arguendo* the Court were to find that Plaintiff has alleged an intentional tort, Plaintiff nonetheless cannot establish jurisdiction under the "express aiming" test because Plaintiff has failed to establish that WWE "expressly aim[ed]" any allegedly infringing conduct toward Illinois.  Notably, the mere availability of the Video Games through WWE's website does not rise to the level of "express aiming" under *Calder*.  *See be2 LLC*, 642 F.3d at 559 (explaining that "a defendant must in some way target the forum state's market"); *Johnson*, 2016 WL 3520157, at *5 ("[A]llegations concerning the sale of [allegedly infringing] products through [defendant's] website cannot, alone, establish specific jurisdiction over [defendant] . . . . Here, Plaintiff offers no evidence of geographically-focused targeting that could subject [defendant] to personal jurisdiction on the basis of its alleged online sales."); *Telemedicine*, 27 F.

Supp. 3d at 900 (finding defendant did not "expressly aim" its conduct at Illinois because "[n]one of Defendant's alleged contacts — its website, Facebook page, Twitter feed, and conference-based marketing efforts — was targeted or aimed at Illinois, or prompted any more than happenstance interactions with Illinois residents or businesses.").

In this regard, the Northern District of Illinois' opinion in *Johnson* is particularly instructive.  In *Johnson*, the plaintiff sued, among other defendants, UMG Recordings, Inc. ("UMG"), for copyright infringement and other torts arising out of the alleged use of a sample of plaintiff's sound recording in a song created by defendant-artists Eric B. and Rakim, and allegedly distributed and sold by UMG in Illinois through brick and mortar retailers and on the internet including through UMG's own website.  *Johnson*, 2016 WL 3520157, at *1-3.  The Honorable Amy J. St. Eve granted UMG's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.  *See id.* at *5.  As pertinent here, the court found that, (a) with respect to brick and mortar retailers, the plaintiff "fail[ed] to show that UMG — as opposed to any distribution affiliate — purposefully directed its activities toward Illinois" (*id.* at *4), and (b) because plaintiff "offer[ed] no evidence of geographically-focused targeting" of Illinois, the "allegations concerning the sale of 'Juice' products through UMG's website cannot, alone, establish specific jurisdiction over UMG" in Illinois  (*id.* at *5).  This same reasoning should apply to preclude specific jurisdiction over WWE here.

Finally, the "express aiming" test requires "the defendant's knowledge that the effects would be felt — that is, the plaintiff would be injured — in the forum state."  *Telemedicine*, 27 F. Supp. 3d at 893 (citation omitted).  In this case, however, WWE had no knowledge that Plaintiff would allegedly be injured in Illinois.  Although Plaintiff avers that she contacted WWE in 2009, there is no allegation that she informed WWE that she lived in Illinois – even assuming

18

Plaintiff resided in Illinois in 2009 — or that WWE otherwise knew the location of her residence.  Courts have found that such generalized allegations of knowledge are insufficient under *Calder*.  *See, e.g.*, *Telemedicine*, 27 F. Supp. 3d at 897 ("To find express aiming based solely on the defendant's receipt of [a cease and desist] letter would make any defendant accused of an intentional tort subject to personal jurisdiction in the plaintiff's home state as soon as the defendant learns what that state is.  *Calder* requires more.") (citing *Mobile Anesthesiologists Chicago*, 623 F.3d at 447).  In fact, Mr. Kiang, WWE's Vice President of Interactive Media Licensing since 2013, was not aware prior to the filing of this lawsuit that Randy Orton was tattooed by Plaintiff or that Plaintiff allegedly lives in Illinois.  *See* Kiang Dec., Ex. 1 at ¶¶ 10-11.  Nor was WWE's consumer products group, including, in particular, the interactive licensing team that is responsible for the Video Games, informed that Randy Orton was tattooed by Plaintiff, let alone that she allegedly lives in Illinois.  *See id.* at ¶¶ 12, 13.

As such, there is no allegation, and no basis from which to reasonably infer, that WWE had knowledge that the effects of any alleged injury relating to the Video Games — WWE 2K16, WWE 2K17, and WWE 2K18 were each released during Mr. Kiang's tenure as WWE's Vice President of Interactive Media Licensing — would be felt in Illinois.  *See Colo'n*, 449 Fed. Appx. at 514 (affirming district court's finding of no specific jurisdiction because plaintiff "did not show that the defendants acted 'with the knowledge that they would cause harm to the plaintiff there' . . . since the evidence was undisputed that none of the defendants knew of her or her script before [the plaintiff] filed her suit") (quoting *Mobile Anesthesiologists Chicago*, 623 F.3d at 445); *Novelty*, 2008 WL 2705532, at *3  ("Without intentional actions causing foreseeable harm in the forum state, there can be no personal jurisdiction under the [express

aiming] test.  Potential defendants should not come under the power of distant courts by

chance.") (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F. 3d 1272, 1278 (7th Cir. 1997)).

## IV.    CONCLUSION

For all of the foregoing reasons, this Court lacks personal jurisdiction over WWE and,

therefore, all claims against WWE asserted in Plaintiff's First Amended Complaint should be

dismissed with prejudice.

Dated:  October 23, 2018                              Respectfully submitted,

                                                      _ /s/  Curtis B. Krasik_              _____
                                                      Jerry S. McDevitt (pro hac vice)
                                                      Curtis B. Krasik (pro hac vice)
                                                      K&L GATES LLP
                                                      K&L Gates Center
                                                      210 Sixth Avenue
                                                      Pittsburgh, PA 15222
                                                      Phone: (412) 355-6500
                                                      Email: jerry.mcdevitt@klgates.com
                                                      Email: curtis.krasik@klgates.com

                                                      Michael J. Nester (49410)
                                                      DONOVAN ROSE NESTER P.C.
                                                      15 North 1st Street, Suite A
                                                      Belleville, Illinois 62220
                                                      Phone:  (618) 212-6500
                                                      Email:  mnester@drnpc.com

                                                      *Attorneys for Defendant World Wrestling*
                                                      *Entertainment, Inc.*

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on October 23, 2018, I electronically filed the foregoing Memorandum of Law in Support of Motion to Dismiss First Amended Complaint for Lack of Personal Jurisdiction with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Anthony G. Simon | asimon@simonlawpc.com |
| Benjamin R. Askew | baskew@simonlawpc.com |
| Anthony R. Friedman | afriedman@simonlawpc.com |
| R. Seth Crompton | scrimpton@allfela.com |

*Attorneys for Plaintiff*

| | |
|---|---|
| Dale M. Cendali | dale.cendali@kirkland.com |
| Joshua L. Simmons | joshua.simmons@kirkland.com |

*Attorneys for Defendants 2K Games, Inc., 2K Sports, Inc., Take-Two Interactive Software, Inc., Visual Concepts Entertainment, Yuke's Co. Ltd., and Yuke's LA, Inc.*

    */s/ Curtis B. Krasik*
Curtis B. Krasik (pro hac vice)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Email: curtis.krasik@klgates.com

*Attorney for Defendant World Wrestling Entertainment, Inc.*