IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CATHERINE ALEXANDER,                    )
                                        )
                                        )
           Plaintiff,                   )
                                        )          Case no: 3:18-cv-0966-MJR-DGW
v.                                      )
                                        )          JURY TRIAL DEMANDED
TAKE-TWO INTERACTIVE SOFTWARE, INC.;    )
2K GAMES, INC.; 2K SPORTS INC.;         )
WORLD WRESTLING ENTERTAINMENT,          )
INC.; VISUAL CONCEPTS ENTERTAINMENT;    )
YUKE'S CO., LTD.; and YUKE'S LA INC.,   )
                                        )
           Defendants.                  )
                                        )

**CATHERINE ALEXANDER'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

ARGUMENT .............................................................................................1

I.   PLAINTIFF'S COPYRIGHT APPLICATIONS PROVIDE JURISDICTION. ...............3

II.  PLAINTIFF'S AMENDED COMPLAINT PROPERLY COMPLIES WITH RULE 8(a).6

   A.   Plaintiff's Amended Complaint Clearly Identifies the Copyrighted Works at Issue ..... 6

   B.   Given The Early Stage of Litigation, Alexander's Amended Complaint Includes Sufficient Statements for Claims of Direct, Contributory, and Vicarious Infringement 7

     1.   Direct Copyright Infringement ...................................................................8

     2.   Contributory Infringement ........................................................................9

     3.   Vicarious Infringement ...........................................................................10

III. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS YUKE'S AND WWE....................................................................................................11

   A.   This Court Has Proper Specific Personal Jurisdiction Over WWE..............................12

     1.   This Court Has Proper Specific Personal Jurisdiction Over WWE Under The *Calder* Effects Test Because WWE Has Purposefully Directed Its Activities at Illinois........12

     2.   Assuming WWE Does Not Meet the *Calder* Effect's Test, Personal Jurisdiction Is Still Proper Because Plaintiff Has Made A Sufficient Prima Facie Case For Specific Personal Jurisdiction Over WWE ...............................................................16

   B.   This Court Has Proper Specific Personal Jurisdiction Over Yuke's ...........................18

     1.   Defendant Yuke's Has Availed Itself of Illinois Though Developing And Producing The Infringing Games ..............................................................................18

     2.   Defendant Yuke's Is Likely Subject to Jurisdiction In Illinois Under Fed. R. Civ. P. 4(k)(2) ................................................................................................20

     3.   Since Alexander Has Made A Prima Facie Case For Personal Jurisdiction Over Yuke's, An Evidentiary Hearing Is Required Before Dismissal............................................21

CONCLUSION.......................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apple Barrel Prods., Inc. v. Beard,*
   730 F.2d 384 (5th Cir. 1984) ..................................................................4

*Automation By Design, Inc. v. Raybestos Prod. Co.,*
   463 F.3d 749 (7th Cir. 2006) ..................................................................6

*Bank of Am., N.A. v. Knight,*
   725 F.3d 815 (7th Cir. 2013) ..................................................................8

*Bausch v. Stryker Corp.,*
   630 F.3d 546 (7th Cir. 2010) ..................................................................8

*Brooks v. Ross,*
   578 F.3d 574 (7th Cir.2009) ..................................................................9

*Brystol-Myers Squibb Co. v. Superior Ct. of Cal.,*
   137 S. Ct. 1773 (2017).........................................................................20

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP, and HAB, Inc.,*
   329 F.3d 923 (7th Cir. 2003) ................................................................15

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985).............................................................................20

*Calder v. Jones,*
   465 U.S. 783 (1984)....................................................15, 16, 17, 26

*Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.,*
   440 F.3d 870 (7th Cir. 2006) ................................................................14

*Chicago Bd. of Educ. v. Substance, Inc.,*
   354 F.3d 624 (7th Cir. 2003) ............................................................3, 4

*Cinema Concepts Theatre Serv. Co. v. Filmack Studios,*
   1989 WL 55092 (N.D. Ill. May 17, 1989) ............................................13

*Colo'n v. Akil,*
   449 Fed. Appx. 511 (7th Cir. 2011)......................................................23

*CSS, Inc. v. Herrington,*
   2016 WL 4425192 (S.D.W. Va. Aug. 18, 2016) ....................................4

*Design Basics, LLC v. Best Built, Inc.,*
   2016 WL 4691601 (E.D. Wis. Sept. 7, 2016)........................................12

*E.E.O.C. v. Concentra Health Servs., Inc.,*
   496 F.3d 773 (7th Cir. 2007) ............................................................................. 13

*Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,*
   499 U.S. 1286 (1991) ........................................................................................ 10

*Felland v. Clifton,*
   682 F.3d 665 (7th Cir. 2012) ...................................................................... 15, 17

*Fraserside IP L.L.C. v. Netvertising Ltd.,*
   902 F. Supp. 2d 1165 (N.D. Iowa 2012) ........................................................... 24

*Gaiman v. McFarlane,*
   360 F.3d 644 (7th Cir. 2004) ........................................................................... 3, 6

*GC2 Inc. v. Intl. Game Tech. PLC,*
   255 F. Supp. 3d 812 (N.D. Ill. 2017) ............................................................... 2, 9

*GCIU–Emp'r Ret. Fund v. Goldfarb Corp.,*
   565 F.3d 1018 (7th Cir. 2009) ......................................................................... 14

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,*
   443 F.2d 1159 (2d Cir. 1971) ........................................................................... 12

*Hard Drive Prods., Inc. v. Does 1-55,*
   2011 WL 4889094 (N.D. Ill. Oct. 12, 2011) ................................................. 4, 5, 6

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.,*
   955 F.2d 1143 (7th Cir. 1992) ......................................................................... 12

*Holman v. Indiana,*
   211 F.3d 399, (7th Cir. 2000) ............................................................................ 9

*In re Aimster Copyright Litig.,*
   252 F. Supp. 2d 638 (N.D. Ill. 2002) ............................................................... 11

*In re Aimster Copyright Litig.,*
   334 F.3d 643 (7th Cir. 2003) ........................................................................... 11

*ISI Intern., Inc. v. Borden Ladner Gervais LLP,*
   256 F.3d 548 (7th Cir. 2001), as amended (July 2, 2001) ................................ 24

*Johnson v. Barrier,*
   15-CV-03928, 2016 WL 3520157 (N.D. Ill. June 28, 2016) ......................... 14, 16

*Kraft Chemical Company v. Salicylates and Chemicals Private Limited,*
   149 F.Supp.3d 897 (N.D. Ill. 2015) ................................................................. 25

*Lead IT Corp. v. Tallapalli*,
   12-CV-3099, 2013 WL 375592 (C.D. Ill. Jan. 30, 2013) .......................................6

*Leventhal v. Schenberg*,
   917 F. Supp. 2d 837 (N.D. Ill. 2013) ....................................................................4

*Panoramic Stock Images, Ltd. v. John Wiley & Sons*, Inc.,
   963 F. Supp. 2d 842 (N.D. Ill. 2013) .................................................................4, 5

*Panoramic Stock Images, Ltd. v. Pearson Education, Inc.*,
   2013 WL 2357586 (N.D. Ill. 2013) ........................................................................5

*Panoramic Stock Images, Ltd. v. The McGraw-Hill Cos., Inc.*,
   961 F. Supp. 2d 918 (N.D. Ill. 2013) .....................................................................4

*Philos Techs., Inc. v. Philos & D, Inc.*,
   802 F.3d 905 (7th Cir. 2015) ...............................................................................25

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003) ...............................................................................14

*Rehabcare Grp. E., Inc., v. CC Care, LLC*,
   2016 WL 2595108 (N.D. Ill. May 4, 2016) ...........................................................13

*Rigsby v. Am. Family Mut. Ins. Co.*,
   2014 WL 1515493 (W.D. Wis. Apr. 17, 2014) .......................................................5

*Snap-On Inc. v. Robert Bosch, LLC*,
   2013 WL 5423844 (N.D. Ill. Sept. 26, 2013) ........................................................23

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
   2018 WL 1626145 (S.D. N.Y. 2018) ........................................................................1

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
   563 F.3d 1285 (Fed. Cir. 2009) ...........................................................................23

*Telemedicine Solutions LLC v. WoundRight Technologies, LLC*.
   27 F.Supp.3d 883 (N.D. Ill. 2014) .......................................................................17

*Textor v. Bd. of Regents of N. Ill. Univ.*,
   711 F.2d 1387 (7th Cir. 1983) .............................................................................14

*Walden v. Fiore*,
   571 U.S. 277 (2014)..............................................................................................16

*Weller v. Flynn*,
   2018 WL 2299240 (N.D. Ill. 2018) ..................................................................19, 22

*Windy City Mktg., Inc. v. Places Advert., Inc.*,
   2008 WL 11399117 (N.D. Ill. Sept. 25, 2008) ........................................................................7

**Statutes**

17 U.S.C § 504 ........................................................................................................................2

17 U.S.C. § 411 ...................................................................................................................4, 5

17 U.S.C. § 505 ........................................................................................................................2

**Other Authorities**

2 Pat. L. Fundamentals § 6:70 (2d ed.) ...................................................................................1

**Rules**

Fed. R. Civ. P. 12 ...........................................................................................................1, 4, 11

Fed. R. Civ. P. 4 .....................................................................................................................20

Fed. R. Civ. P. 8 ................................................................................................................6, 22

**Treatises**

2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16 ................................4

Catherine Alexander ("Alexander") hereby responds to the motions to dismiss filed by all Defendants, (Doc. 89), and the separate motion to dismiss filed by Defendant WWE,[1] (Doc. 91.). These motions are filed in response to Alexander's First Amended Complaint ("FAC"), which was filed after additional jurisdictional information was discovered. Defendants again argue that the FAC fails to state a claim under 12(b)(6) and that this Court lacks personal jurisdiction over Defendants Yuke's and Yuke's LA (collectively, "Yuke's") and WWE under 12(b)(2). As explained below, Alexander states a claim for copyright infringement, and WWE and Yuke's are subject to personal jurisdiction.

## <u>ARGUMENT</u>

While not relevant to their motions, Defendants suggest that Alexander's claim improperly asserts a "monopoly" over the depiction of Randy Orton as he appears in real life. (Doc. 92, 1.) The claims asserted here are recognized under the law.  Alexander is not the first plaintiff to assert such claims or the first to assert such claims against these Defendants. *See Solid Oak Sketches, LLC v. 2K Games, Inc.*, 2018 WL 1626145 (S.D. N.Y. 2018) (tattoos are protectable works, the copying of which in a videogame survives a motion to dismiss); 2 Pat. L. Fundamentals § 6:70 (2d ed.).

Alexander submitted copyright registration applications for each work before filing this suit. Copies of applications are attached to this response. (Ex. 1-6.) The Seventh Circuit has adopted the "application approach," which allows plaintiffs to file suit before receiving a response from the U.S. Copyright Office. Therefore, Alexander properly brought suit after filing her copyright applications and need not wait for registrations.

---

[1] WWE incorporated by reference the motion filed by the other defendants.  This opposition responds to all of the motions.

1

Further, Alexander did not request attorneys' fees or statutory damages in the FAC. Alexander requests actual damages, Defendants' profits attributable to the infringement, costs, and for such other relief the Court deems proper at that time. (*See* Doc. 76, ¶ 101 ("Pursuant to 17 U.S.C § 504, Plaintiff is entitled to recover actual damages and Defendants' profits attributable to the infringement."); ¶ 101(d) ("An award under 17 U.S.C. § 505 allowing recovery of the full costs of this action; and"); ¶ 101(e) ("For such and other relief as the Court deems just and proper under the circumstances.").)  Defendants continue to contend the request for damages in the FAC are "ambiguous" (Doc. 90, 3) but Alexander's request is clear. Alexander does not request attorneys' fees or statutory damages.

The FAC gives Defendants sufficient notice as to the works they infringe. Defendants have first-hand knowledge of the tattoos on the Orton character in WWE 2K16, WWE 2K17, and WWE 2K18 (the "Infringing Games") because they coded the copies into the Infringing Games and advertised or distributed the games. Defendants are also aware of the tattoos through their relationships with Randy Orton. The copyright applications provided to Defendants through discovery and attached here show the exact tattoos at issue. (Ex. 1-6.) Alexander has alleged that each Defendant played a direct, contributory, and vicarious role in the infringement. These direct, contributory, and vicarious roles were confirmed in Defendants' interrogatory responses. Pleading in the alternative is allowed under the applicable rules. *See e.g. GC2 Inc. v. Intl. Game Tech. PLC*, 255 F. Supp. 3d 812, 826 (N.D. Ill. 2017).

Yuke's and WWE are subject to specific personal jurisdiction in Illinois. Alexander does not allege that either Defendant is subject to general personal jurisdiction in Illinois. WWE's infringement-related contacts with Illinois, in particular its effective denial of Alexander's rights to her works through its $450 license offer, establish personal jurisdiction over WWE. Yuke's

knew or should have known of the sales, distribution, promotion, and marketing of the Infringing

Games through its concerted collaboration with the other Defendants, including WWE.

Alexander has submitted a prima facie case for specific personal jurisdiction over both WWE

and Yuke's due to WWE and Yuke's related activities directed at residents of Illinois. In the

alternative, Alexander is entitled to an evidentiary hearing.

## I.    PLAINTIFF'S COPYRIGHT APPLICATIONS PROVIDE JURISDICTION.

Defendants seek dismissal because Alexander has not yet received registrations for her

copyrights.  However, Defendants misstate the law of this Circuit as endorsing the "registration

approach" over the "application approach." (Doc. 90, at 5-6) ("[T]he law of **this** Circuit requires

that the Copyright Office grant or refuse the copyright application before a suit is filed.")

(emphasis in original) (citing *Gaiman v. McFarlane*, 360 F.3d 644, 654-55 (7th Cir. 2004)). But

the Seventh Circuit's decision in *Chicago Bd. of Educ. v. Substance, Inc.*, settles the debate in

favor of the application approach, as noted by other circuits. 354 F.3d 624, 631 (7th Cir. 2003);

*see e.g.  Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 615 (9th Cir. 2010) (the

Seventh Circuit "ha[s] adopted the application approach").[2] Seventh Circuit district courts

overwhelmingly follow the application approach. *See Panoramic Stock Images, Ltd. v. The*

*McGraw-Hill Cos., Inc.*, 961 F. Supp. 2d 918, 927 (N.D. Ill. 2013) ("[T]he court understands the

cases in this Circuit to adopt the application approach."); *Hard Drive Prods., Inc. v. Does 1-55*,

2011 WL 4889094, at *4 (N.D. Ill. Oct. 12, 2011) ("Defendant concedes that the Seventh Circuit

follows the application approach.").

---

[2] *See also CSS, Inc. v. Herrington*, 2016 WL 4425192, at *2 (S.D.W. Va. Aug. 18, 2016) ("The Fifth, Seventh, and Ninth Circuits have taken the "application approach," ruling that a party's filing of an application with the Copyright Office constitutes "registration" under the Act. *See Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386–87 (5th Cir. 1984); *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 631 (7th Cir. 2003); *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 621 (9th Cir. 2010)").

"In the absence of controlling authority from the Seventh Circuit, the court is persuaded that the application approach is correct." *Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*, 963 F. Supp. 2d 842, 849-50 (N.D. Ill. 2013). Several cases decided after the cases cited by Defendants have addressed the precise "application v. registration" issue presently before this Court, on a Rule 12(b)(6) motion to dismiss, and *chose* to follow the application approach. *See e.g. Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 845 (N.D. Ill. 2013) ("No more [than plaintiff's allegation that it had filed a copyright application] is required at this stage of the litigation."); *Panoramic Stock Images, Ltd. v. Pearson Education, Inc.*, 2013 WL 2357586 at *2 (N.D. Ill. 2013) ("Although it has yet to expressly rule on the issue, the Seventh Circuit appears to follow the application approach, whereby receipt by the Copyright Office of a complete application satisfies Section 411(a).").

The 17 U.S.C. § 411 statute "does [not] [sic] answer the question of what it means to 'register' the copyright. *Rigsby v. Am. Family Mut. Ins. Co.*, 2014 WL 1515493, at *3 (W.D. Wis. Apr. 17, 2014). Under the application approach, courts have held that the date of "registration" is the date the Copyright Office receives the copyright application. *Hard Drive Prods., Inc.*, 2011 WL 4889094, at *4. Numerous textual and policy arguments support the validity of this approach,[3] while the registration approach's strict interpretation of the text leads to a "strange scheme." *John Wiley & Sons, Inc.*, 963 F. Supp. 2d at 850. As the leading treatise on copyright explains: "[G]iven that the claimant ... will ultimately be allowed to proceed regardless of how the Copyright Office treats the application, it makes little sense to create a period of 'legal limbo' in which suit is barred." *See* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][1][a][i] (2008).

---

[3] *See Cosmetic Ideas*, 606 F.3d at 619-21.

Defendants rely on the statement in *Gaiman*, 360 F.3d at 655, that "[t]he significance of registration is that it is a prerequisite to a suit to enforce a copyright." But in *Gaiman*, the case reached the Seventh Circuit not on a motion to dismiss for lack of a registration, but after a judgment was entered on a jury verdict. *Id.*, at 648. More importantly, *Gaiman* "[was] not a suit for infringement," but was brought to determine whether the plaintiff was a joint author to certain copyrights. *Id.*, at 648, 52. Therefore, the text quoted by Defendants is dicta.[4]

Defendants further allege that assuming this Circuit follows the application approach, Alexander has not sufficiently alleged that she has taken "all necessary steps to register the copyright at issue" (Doc. 90, at 7-8, n. 5) (citing *Cosmetic Ideas*, 606 F. 3d, at 622). But Defendants have "put the cart before the horse." *Hard Drive Productions*, 2011 WL 4889094, at *4. At the pleading stage, Alexander "must only provide enough factual allegations to raise a right to relief above the speculative level," and Alexander's "allegations that [she] has filed an application with the Copyright Office satisfies the registration requirement of § 411(a)." *Id*. Defendants concede that Alexander alleged that she "submitted applications to register copyrights on each of the aforementioned works on March 15, 2018." (Doc. 76, ¶ 67.) Given that Alexander properly deposited her applications for registration with the Copyright Office prior to filing the instant suit, forcing Alexander to commence this suit anew would be "perverse and wasteful of judicial resources." *Windy City Mktg., Inc. v. Places Advert., Inc.*, 2008 WL 11399117, at *2 (N.D. Ill. Sept. 25, 2008).

---

[4] The other Seventh Circuit case cited by Defendants is also dicta because the plaintiff had registered its copyrights in that case. *Automation By Design, Inc. v. Raybestos Prod. Co.*, 463 F.3d 749, 753 (7th Cir. 2006); *see also Lead IT Corp. v. Tallapalli*, 12-CV-3099, 2013 WL 375592, at *3 (C.D. Ill. Jan. 30, 2013) (finding defendant's receipt of a certificate of registration renders it unnecessary to determine whether the application or registration approach should apply in cases for copyright infringement).

Finally, Defendants Alexander has not submitted the fee required to register the copyright. (Doc. 90, 8.) However, Alexander has submitted multiple $85 checks for the copyright registration application fee for each original work (Ex. 1-6).

## II.   PLAINTIFF'S AMENDED COMPLAINT PROPERLY COMPLIES WITH RULE 8(a).

Defendants assert that Alexander "fails to allege sufficient facts to state claims for direct, vicarious, and contributory infringement against each of the seven defendants." (Doc. 90, at 8). However, Federal Rule of Civil Procedure 8 (a) only requires that a pleading contain a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). Here, still being in the early stages of litigation, Alexander has asserted sufficient allegations of direct, indirect, contributory and/or vicarious infringement for each Defendant based on the limited information available. Notably, Defendants cite no authority that one cannot allege direct and indirect infringement against multiple Defendants.

### A.   Plaintiff's Amended Complaint Clearly Identifies the Copyrighted Works at Issue

Alexander's FAC describes her works in a clear and unambiguous way. The complaint specifically states that Alexander created tattoos consisting of a bible verse, a dove, a rose, skulls and tribal tattoos. (Doc. 76, ¶¶ 50-60.) As Defendants note, "a determination of infringement often turns on the details and particular elements of the plaintiff's work." (Doc. 90, at 9). Defendants are aware of the specific details and elements of Alexander's works because they copied them, *with specific detail*, into the Infringing Games. To resolve any confusion, Alexander previously attached her copyright applications, which include photo representations illustrating Alexander's expressive work to the court (Doc. 57: 1-6.)  Alexander, again, attaches

these copyright applications to this response. (Ex. 1-6). These were also provided to Defendants with Alexander's Rule 26 disclosures.

Defendants contend that the FAC should be dismissed because they lack sufficient notice of any wrongdoing and argue that the FAC is "vague" and "confusing." (Doc. 90, 9.) However, Alexander's claim is quite simple: Defendants copied Alexander's original works into the Infringing Games without Alexander's consent.

B.     **Given The Early Stage of Litigation, Alexander's Amended Complaint Includes Sufficient Statements for Claims of Direct, Contributory, and Vicarious Infringement**

Based on the evidence available to Alexander at this time, she has sufficiently asserted direct, contributory, and/or vicarious infringement claims for each Defendant. At this time, Alexander cannot specifically describe the in-depth role of each Defendant nor does the law require it. Alexander's assertions are sufficient given that "a plaintiff's pleading burden should be commensurate with the amount of information available to them." *Bausch v. Stryker Corp.,* 630 F.3d 546, 561 (7th Cir. 2010).

Based on jurisdictional discovery responses, each Defendant had either a developmental, marketing, or promotional role in the Infringing Games. (*See* Doc. 76, ¶¶ 16-22.)  Defendants argue that each defendant has a right to know what they specifically did wrong. (Doc. 90, at 10) (citing *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).) Alexander has met this requirement. Further, the plaintiff in *Bank of Am., N.A.*, amended their complaint twice before the court dismissed the case. 725 F.3d., at 818; s*ee Brooks v. Ross,* 578 F.3d 574, 582 (7th Cir. 2009) (noting that collective pleading is permissible where it is clear that the plaintiff is directing their allegations "at all of the defendants"). Here, Alexander has alternatively plead direct and indirect liability against all defendants. *See GC2 Inc. v. Intl. Game Tech. PLC*, 255 F. Supp. 3d

7

812, 826 (N.D. Ill. 2017) (permitting plaintiff to plead alternative, or even inconsistent, direct and vicarious copyright infringement claims). Defendants cite no cases holding this is improper.

Further, Defendants assert that the FAC "fails to suggest how these [Defendants' titles] translate to infringing conduct." (Doc. 90, 12.) The FAC is clear: the Defendants Yuke's LA and Co. wrote code for the Infringing Games and provided programming, sound and animation, bug correction and basic testing services for the Infringing Games, Take-Two played a developing, publishing, and marketing role for the Infringing Games, 2K Games and 2K Sports helped publish the Infringing Games, WWE played a role in creating and promoting the Infringing Games, and Visual Concepts helped develop the Infringing Games (Doc. 76, ¶ 41-43; ¶16-20.)

Defendants rely on *Holman v. Indiana*, 211 F.3d 399, 406-07 (7th Cir. 2000) where the court affirmed the dismissal "where the allegations were pleaded in tandem rather than as alternative theories.") (Doc. 90, 12 at 13.) There, the court reasoned that the context of alternative pleading "need not use particular words to plead in the alternative..[plaintiff] must use a formulation from which can be reasonable inferred that this is what they are doing…generally an alternative claim is drafted in the form of 'either-or.' " 211 F.3d 406-07. Here, Alexander's FAC is distinguishable. The complaint specifically states "Count One is an action under 17 U.S.C. § 501 for direct, indirect, contributory and/or vicarious infringement of copyrights as against the Defendants named in this Complaint." (Doc. 76, ¶ 91.) Based on the analysis below this Court can reason that each form of liability is adequately pled in the FAC.

### 1.     Direct Copyright Infringement

Direct copyright infringement claims require: (1) ownership of a valid copyright in the work and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 1286, 1295 (1991). Alexander's original works have

already been submitted to this court. (Doc. 57: 1-6; Ex. 1-6) The copyright applications make clear that the tattoo works at issue are original. (*Id*.) Next, the FAC alleges that the tattoos created by Alexander are the result of a meticulous effort to copy Alexander's work onto the Infringing Games. (Doc. 76, ¶¶ 76, 80, 84.) The Infringing Games were developed by Take-Two, Visual Concepts, Yuke's, Yuke's LA, (*Id*., ¶¶ 16, 20-22), and promoted, distributed, marketed, and published by Take-Two, 2K Games, 2K Sports and WWE, (*Id*., ¶¶ 16-19.). Further, WWE's Affidavit admits that WWE has an interactive licensing team that was responsible for the Infringing Games. (*See* Doc. 52-1, ¶ 12.) Therefore, every Defendant is directly liable for their infringing activities.

### 2.    Contributory Infringement

Contributory infringement occurs when the defendant, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing activity of another party. *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 638, 649 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003). At this early stage of pleading, it is appropriate to assert a claim of contributory infringement against each Defendant because each Defendant played a role in bringing the Infringing Games to market.

Alexander's FAC states that Alexander contacted WWE in 2009 about the reproduction of Mr. Orton's tattoos and WWE offered Alexander $450 for rights to reproduce the tattoos, which Alexander declined. (Doc. 76, ¶¶ 68-70.) The Infringing Games were released to the public beginning in 2015, (*id*., ¶ 72), and WWE's Interactive Licensing team was responsible for the Infringing Games. (*See* Doc. 52-1, ¶12.) Therefore, WWE induced, caused, or materially contributed to the infringing activity of the other Defendants, with knowledge of the infringing activity.

Defendants urge this court to prematurely dismiss this case because they believe Alexander fails to allege specific facts. (*See* Doc. 90 at 14). Alexander alleges that "Defendants knew or should have known that the copyrighted works were original works of authorship." (Doc. 76, ¶ 86.) Further, Alexander alleges that Defendants developed, produced, marketed and published the Infringing Games. (*See id.* at ¶¶ 16-18; 20-22.) Defendants' public websites do not divulge specific operational procedures or the specific titles in relation to the Infringing Games. However, as developers, producers, marketers, and publishers, Defendants would be actively involved in copying Alexander's works and knowledgeable about the infringement.

Defendants cite *Design Basics, LLC v. Best Built, Inc.,* 2016 WL 4691601, at *2 (E.D. Wis. Sept. 7, 2016) (dismissing claim where plaintiff failed to allege sufficient claim for joint, contributory, or vicarious infringement). The present case is distinguishable. In *Design Basics, LLC,* plaintiff's complaint contained only one factual allegation against the defendant. *Id.* Here, multiple factual allegations in Alexander's Complaint support Defendants' knowledge of and contribution to the Infringing Games. (Doc. 76, ¶¶ 68-70; 72; 77; 71; 86.) Thus, Alexander's FAC sufficiently alleges claims of contributory infringement.

### 3.    Vicarious Infringement

Vicarious infringement occurs where the defendant has a controlling relationship with the infringer and benefits financially from the infringement. *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.,* 955 F.2d 1143, 1150 (7th Cir. 1992); *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971). Defendants released and promoted the Infringing Games. (Doc. 76, ¶¶ 72, 77, 81.) Therefore, this Court may reasonably infer that Defendants exercised control over the infringing activity and benefited financially therefrom.

10

Defendants cite *Cinema Concepts Theatre Serv. Co. v. Filmack Studios,* where the court dismissed contributory and vicarious infringement claims because "no factual allegations" were established. 1989 WL 55092, at *1-2 (N.D. Ill. May 17, 1989). There, plaintiff could not connect several individual defendants to the larger organization that infringed plaintiff's rights. Unlike *Filmack Studios*, Defendants here are business organizations that have a direct connection with the creation and distribution of the Infringing Games. (Doc. 76, ¶¶ 16-22.) Defendants developed, promoted, distribute, and marketed the Infringing Games, so Defendants activities are directly connected to Alexander's assertions of infringement. Defendants also rely on *Rehabcare Grp. E., Inc., v. CC Care, LLC*, 2016 WL 2595108, at *6 (N.D. Ill. May 4, 2016) (dismissing promissory estoppel claim where plaintiff alleged 'defendants' made general promises). Here, Alexander clearly identifies the Infringing Games in her single count of copyright infringement.

Consequently, Alexander has described her copyright claim in sufficient detail to give the Defendants "fair notice of what the…claim is and the grounds upon which it rests." *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007).

## III.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS YUKE'S AND WWE

If the court rules on a 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Courts "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the

11

exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). Any dispute concerning relevant facts is resolved in the plaintiff's favor. *Id.* at 782–83; s*ee Johnson v. Barrier*, 15-CV-03928, 2016 WL 3520157, at *4 (N.D. Ill. June 28, 2016) (Defendant submitted affidavit refuting plaintiff's allegations; the court allowed jurisdictional discovery.).

> **A.    This Court Has Proper Specific Personal Jurisdiction Over WWE**

In their motion to dismiss Alexander's FAC, WWE claims that despite their full responses to Alexander's jurisdictional discovery and the subsequent FAC, she did "nothing to cure the jurisdictional defects that WWE previously identified." (Doc 90, 1.) This is because WWE failed to adequately respond to Alexander's discovery requests. WWE's responses to these requests are nothing more than boilerplate objections and unsupported denials. Despite these deficient responses, Alexander has still established a basis for personal jurisdiction in Illinois. WWE is subject to personal jurisdiction because it expressly aimed its infringing activity at Alexander in Illinois and otherwise purposely availed itself of Illinois residents.

> **1.    This Court Has Proper Specific Personal Jurisdiction Over WWE Under The *Calder* Effects Test Because WWE Has Purposefully Directed Its Activities at Illinois**

The *Calder v. Jones* "effects test" is used to determine if personal jurisdiction is proper in cases of intentional actions. 465 U.S. 783 (1984). In order to satisfy the *Calder* "effects test," and effectuate personal jurisdiction, three requirements must be met. There must be (1) intentional conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt – that is, the plaintiff would be injured – in the forum state. *Felland v. Clifton,* 682 F.3d 665, 674-675 (7th Cir. 2012). WWE claims that copyright infringement is not an intentional tort. *See* (Doc. 92, 16.)  However the

Seventh Circuit has held that it is. *Bucklew v. Hawkins, Ash, Baptie & Co., LLP, and HAB, Inc.*, 329 F.3d 923, 931 (7th Cir. 2003).

WWE committed an intentional tort in Illinois by playing a central role in facilitating the creation, advertising, and selling of the Infringing Games. By holding live promotional events and selling the Infringing Games to residents in Illinois, WWE expressly directed its activities toward Illinois. Further, Alexander explicitly contacted WWE regarding their reproduction of her work. (Doc. 76, ¶ 68.) In that conversation, WWE offered Alexander a mere $450.00 for the rights to use her works. (Doc. 76, ¶ 69.)  Based on this interaction, this Court may reasonably infer that WWE knew Alexander's injury would be felt in Illinois. (*See Id*.) WWE's assertion of its rights over Alexander's, knowing its infringing activities would harm Alexander in Illinois, amounts to intentional actions aimed at the forum state. Therefore, under *Calder*, WWE is subject to personal jurisdiction in Illinois.

WWE claims *Johnson v. Barrier* is a "particularly instructive" authority on "expressly aimed" activities. *See* (Doc 92, 18.) However, *Johnson* is distinguishable. There, Defendant's sole contact with Illinois was sales to Illinois residents through its website. *Johnson v. Barrier*, 2016 WL 3520157 at *5 (N.D. Ill. 2016). The court dismissed the case because sales through defendant's website "cannot, alone, establish specific personal jurisdiction." *Id.* Here, WWE has done more that make sales to Illinois residents through its website. WWE has purposefully availed itself to the Illinois consumer base through its ongoing promotional events within the state. These systematic and ongoing events in Illinois demonstrate that WWE's connection to Illinois does not constitute the "random, fortuitous, or attenuated" contacts, which courts have deemed insufficient to confer personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 286

13

(2014). Further, WWE was communicating with Alexander at the time of infringement when it offered her $450.00 for the rights to her works. Taken together, these actions satisfy *Calder*.

WWE asserts that it had no reason to know that the effects of its actions would be felt by Alexander in Illinois even though Alexander contacted WWE about the Infringing Games from Illinois. (*See* Doc. 92, 18.) To support this notion, WWE references *Telemedicine*, which held that a cease and desist letter was not sufficient to show "express aiming" at a forum state. *Telemedicine Solutions LLC v. WoundRight Technologies, LLC*. 27 F.Supp.3d 883, 897 (N.D. Ill. 2014). However, in *Telemedicine*, the court was specifically referring to the "expressly aiming activities" prong of the *Calder* Effect's test. This holding bears little weight on the knowledge prong of the test. As noted above, the "expressly aiming activities" prong is satisfied here by the promotional events WWE has held and continues to hold in Illinois and its sales to Illinois residents.

WWE would like to convince this Court that Alexander's principle basis for personal jurisdiction in Illinois is the fact that she is an Illinois resident. (Doc. 92, 4.) This contention is simply false. In fact, personal jurisdiction is proper in Illinois primarily because Alexander contacted WWE in 2009 regarding WWE's infringing activities. (Doc 76, ¶ 68.) WWE contends that unless Alexander explicitly informed WWE that she was calling from Illinois, WWE would have no basis to know she resided there and therefore *Calder* would not apply. This is a far stretch from the law. In *Felland,* the court held that defendant's contact with plaintiff was enough to fulfil the knowledge prong for the *Calder's* "effects test." *Felland v. Clifton,* 682 F.3d 665, 676 (7th Cir. 2012). There, a real estate developer met a couple from Wisconsin, convinced them to purchase a condominium in Arizona, and sent them several letters, emails, and phone calls to assuage their doubts about the prospects of the development. *Id*. at 671. The couple filed

14

suit in Wisconsin. *Id.* at 671. Based on this correspondence, the circuit court found "no doubt that [defendant] knew the alleged harm would be felt in Wisconsin." *Id.* at 675.  Similarly here, there is no doubt that WWE knew its actions would be felt by Alexander in Illinois. At the time of contact, WWE either knew or should have known that Alexander resided in Illinois. Therefore, they knew that their actions would be felt by Alexander in Illinois. WWE would like this Court to believe that Edward M. Kiang, WWE's Vice President of Interactive Media Licensing, was not aware that Alexander lived in Illinois. (Doc 92-1, ¶ 11). Despite this contention, WWE offers no evidence contradicting the assertion that Alexander contacted WWE in 2009 regarding the Infringing Games and that somebody from the enterprise offered her $450.00 for her works. Under *Felland*, WWE's communication with Alexander establishes WWE's knowledge that the effects of its actions would be felt in Illinois.

WWE claims that Alexander "did not even attempt to address" that internet sales were not enough to establish personal jurisdiction. (Doc. 92, 5-6.) This assertion is a rudimentary attempt to discount Alexander's assertions regarding personal jurisdiction. It is clear that she does not rely solely on WWE's internet sales for her argument. Further, she does not rely solely on the fact that she is a resident of Illinois to establish personal jurisdiction. Although these are contributing factors, there are other reasons personal jurisdiction in Illinois is proper. WWE has held 38 live promotional events in Illinois in the past three years, featuring Randy Orton, the likeness of which is the subject of this dispute. Also, despite WWE's contentions, Alexander contacted WWE in 2009 regarding the Infringing Games. (Doc 76, ¶ 68.) These facts, along with the fact that WWE sells the Infringing Games in Illinois and the fact that Alexander is a resident of Illinois, make personal jurisdiction in this state proper.

    **2.**     **Assuming WWE Does Not Meet the *Calder* Effect's Test, Personal Jurisdiction Is Still Proper Because Plaintiff Has Made A Sufficient Prima Facie Case For Specific Personal Jurisdiction Over WWE**

WWE submitted an affidavit rejecting the notion that it has played any "role in the distribution or sale of the Video Games through retail outlets." (Doc 92-1, ¶ 6.) However, even if WWE played no role in the sale of the Infringing Games in *retail* outlets, WWE has purposefully availed itself to the residents of Illinois through other outlets. Apart from denying retail sales, WWE makes no assertions in its affidavit disputing its role in the production, advertising, marketing, and sale of the Infringing Games. WWE admitted to selling the Infringing Games in Illinois. In their Interrogatory response, WWE states that it "was not provided information regarding the number of units of the WWE 2K Games sold or shipped to persons or entities in Illinois." Without this information, Alexander must rely on other connections WWE has to Illinois in order to make out a prima facia case for specific personal jurisdiction.

WWE relies on *Weller v. Flynn* to argue lack of specific personal jurisdiction. (*See* Doc. 92, 8, 9, 10, 12.) There, defendants stated in affidavits that they made no creative contributions to the infringing products, exercised no control over its production, never visited Illinois in connection with the infringing product, and played no role in distributing or advertising the infringing product. *Weller v. Flynn*, 2018 WL 2299240 *1 (N.D. Ill. 2018). Based on these facts, the court determined that plaintiff failed to make out a prima facie case for personal jurisdiction. *Id.* at *7. Here, unlike in *Weller*, WWE has taken specific actions toward Illinois. WWE admits that it offered the Infringing Games for sale on its website and makes no mention in its affidavit about its role in the development, production, or advertising of the Infringing Games. (*See* Doc. 92-1, ¶ 7.)  WWE (while knowing of Alexander's claim of copyright ownership) allowed the

other Defendants to use WWE's name and trademarks, as well as Mr. Orton's likeness, on the Infringing Games.  This inference should be drawn in Alexander's favor.

Further, WWE admits in its affidavit that the company held 13 promotional events in 2016, 14 promotional events in 2017, and 11 promotional events in 2018. (Doc 92-1, ¶ 9.) That is a total of 38 promotional events in Illinois in the past three years. These systematic and ongoing events make clear that WWE has a strong consumer base with residents of Illinois. Under the "purposeful availment" standard set out by *Burger King Corp. v. Rudzewicz*, these events and WWE's website fulfil the requirements to satisfy specific personal jurisdiction. 471 U.S. 462 (1985).

WWE claims these promotional events "have nothing to do with the Video Games at issue." (Doc 92, 5). To support this position, WWE cites to *Brystol-Myers*. That case is distinguishable because it dealt with out-of-state plaintiffs suing in a state that was unconnected to the underlying litigation. *Brystol-Myers Squibb Co. v. Superior Ct. of Cal.,* 137 S. Ct. 1773, 1781 (2017). Furthermore, the only connection defendant had to the forum state was a research facility that produced a medication unrelated to the lawsuit. *Id.*

Here, not only is plaintiff a resident of the forum state but there is a substantial connection between WWE's activities in Illinois and the underlying litigation. As previously mentioned, WWE systematically held promotional events in Illinois for an extended period of time. For an enterprise like WWE to hold 38 live events in a state in a matter of three years and then say these events are wholly unrelated to the sale of their video games in that state is unpersuasive. Any reasonable person can see the obvious connection between promotional events and the effect those events would have on the sale of video games in that state, particularly when the videogames in question are essentially reenactments of the promotional

events themselves. Further, a quick google search would indicate that many, if not all, of these promotional events in Illinois headlined Randy Orton, the likeness of which is the subject of this litigation. His prominence in the industry and frequent display at promotional events throughout Illinois for the past three years is far from unrelated to his likeness being displayed in the Infringing Games. If anything, his appearance at these events for the last three years *contributed* to WWE's sale of the games in Illinois. Therefore, by holding these events in Illinois, WWE has purposefully availed itself to the consumer base of the state.

WWE admissions in its affidavit combined with Alexander's FAC provide sufficient basis for a prima facie showing of specific personal jurisdiction. For these reasons, WWE's motion to dismiss Alexander's FAC for lack of personal jurisdiction should be denied.

### B.     This Court Has Proper Specific Personal Jurisdiction Over Yuke's

Defendant Yuke's has not submitted any evidence in its motion. Therefore, Alexander does need not go beyond the pleadings to support the exercise of jurisdiction. The pleadings show, and Yuke's does not dispute, that Yuke's developed, promoted, distributed, and marketed the Infringing Games. (Doc. 76, ¶ 30). This Court may infer that Yuke's knew or should have known of the sales, distribution, promotion, and marketing of the Infringing Games through its concerted collaboration with the other Defendants.

### 1.     Defendant Yuke's Has Availed Itself of Illinois Though Developing And Producing The Infringing Games

In their motion to dismiss Alexander's FAC, Yuke's states that "despite having the benefit of discovery," Alexander fails to establish any additional jurisdiction facts. (Doc. 90, 20.) It is true that in the FAC, Alexander does not establish compelling facts related to personal jurisdiction. However, "having the benefit of discovery" is a gross overstatement. Yuke's and the other defendants failed to adequately respond to her discovery requests. In response to

18

Interrogatory 2 regarding the sale of the Infringing Games in Illinois, Yuke's said it did not know how many games were sold in Illinois. Further, Yuke's responses to Alexander's First Request for Admission were full of boilerplate objections and unsupported denials of requests. Due to these deficient responses, Alexander was forced to file the FAC with the limited information Yuke's provided. Despite Yuke's deficient responses to Alexander's jurisdictional discovery requests, she has successfully made out a prima facia showing of personal jurisdiction in Illinois.

Although Yuke's acknowledges Plaintiff's personal jurisdiction allegations, it nonetheless argues that Alexander has plead no facts to establish specific jurisdiction over Yuke's. (Doc. 90, 20, 21.) Yuke's then proceeds to cite Seventh Circuit cases in which the court lacked jurisdiction over defendants with contacts supposedly greater than those Alexander alleges with respect to Yuke's. *Weller v. Flynn*, cited by Defendants, is easily distinguishable. 2018 WL 2299240, at *7. As Defendants note, the producers of the TV show at issue made no creative contributions to the film's storyline, exercised no control over the film's production, never visited Illinois in connection with the film, and played no role in distributing or advertising the film. *Id.* at 7. Here, Alexander has alleged that Yuke's developed, promoted, distributed, and marketed the Infringing Games, including the copies of the tattoos. (Doc. 76, ¶ 30.) Therefore, Yuke's has purposely availed itself of the U.S. market, including Illinois. Further, Yuke's directly harmed Alexander in Illinois through its infringing activities.

Yuke's role in distributing the Infringing Games and its knowledge of Alexander's tattoos acquired through its relationship with WWE preclude dismissal. In *Colo'n v. Akil*,[5] plaintiff alleged that a television episode produced by defendants infringed plaintiff's copyright. 449 Fed. Appx. 511, 512 (7th Cir. 2011). The court rejected allegations of intentional copyright

---

[5] Yuke's does not cite this case in its motion to dismiss.

infringement because none of the defendants had anything to do with the Indiana broadcast of the episode and none had heard of plaintiff before her lawsuit. *Id*. Therefore she could not show that defendants acted with the knowledge that they might cause harm to plaintiff in Indiana. *Id*. at 514. Unlike in *Colo'n*, at least one of the Defendants, WWE, had specific knowledge of Alexander's tattoos in 2009, well before the infringing activity alleged in the Complaint. (Doc. 76, ¶¶ 68-69.)

### 2. Defendant Yuke's Is Likely Subject to Jurisdiction In Illinois Under Fed. R. Civ. P. 4(k)(2)

Rule 4(k)(2) serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process. *Snap-On Inc. v. Robert Bosch, LLC*, 2013 WL 5423844, at \*6 (N.D. Ill. Sept. 26, 2013) (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1296 (Fed. Cir. 2009)). Rule 4(k)(2) permits a court to exercise personal jurisdiction over a defendant if: (1) the plaintiff's claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with due process. *Synthes*, 563 F.3d, at 1293-94. Rule 4(k)(2) allows the plaintiff to aggregate a defendant's contacts with the entire nation as opposed to an individual forum state. *Id*; *see also ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001), as amended (July 2, 2001) (Rule 4(k)(2) recognizes the greater powers of the United States as a whole.).

Even if Yuke's has not purposely availed itself of Illinois, its contacts with the United States support personal jurisdiction in Illinois under Rule 4(k)(2). Alexander's copyright claims arise under federal law and Yuke's has not admitted that it is subject to personal jurisdiction in another U.S. state, satisfying the first two prongs of Rule 4(k)(2). The due process analysis under

20

the third prong Rule 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis,

the only difference lies in that the forum under analysis shifts to the United States as a whole.

*Fraserside IP L.L.C. v. Netvertising Ltd.*, 902 F. Supp. 2d 1165, 1179 (N.D. Iowa 2012)

(granting jurisdictional discovery in copyright infringement suit where information concerning

Hungarian defendants' contacts with the United States were available to plaintiff only through

discovery). Through jurisdictional discovery, Alexander knows that Yuke's wrote code, provided

programming, sound and animation, bug correction, and basic testing for the Infringing Games

sold in the U.S. (*See* Doc 76, ¶¶ 41-43.) Therefore, Yuke's has purposefully availed itself of

benefits in the (U.S.) forum through U.S. sales of the Infringing Games. Finally, Yuke's could

reasonably foresee suit in the U.S., the largest market for the Infringing Games.

### 3. Since Alexander Has Made A Prima Facie Case For Personal Jurisdiction Over Yuke's, An Evidentiary Hearing Is Required Before Dismissal

If material facts about personal jurisdiction are in dispute, the court "must hold an

evidentiary hearing to resolve them." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912

(7th Cir. 2015). Therefore, if the Court is inclined to grant Yuke's motion to dismiss, Alexander

requests an evidentiary hearing to determine whether Yuke's is subject to personal jurisdiction.

*See Kraft Chemical Company v. Salicylates and Chemicals Private Limited*, 149 F.Supp.3d 897

(N.D. Ill. 2015) (requiring evidentiary hearing to resolve, on motion to dismiss for lack of

personal jurisdiction, whether an Indian corporation's alleged breach of the agreement allowed

Illinois court to exercise specific jurisdiction).

An evidentiary hearing would allow Alexander to further scrutinize Yuke's role in

creating, developing, publishing, distributing, promoting, advertising, marketing, and selling of

the games in the U.S. It would also allow Alexander to scrutinize other connections Yuke's has

to the U.S. that she would not be able to do though discovery requests. This includes whether Yuke's maintains any offices, employees, or equipment in the U.S.

## CONCLUSION

Alexander stated a claim for copyright infringement against Defendants. The Seventh Circuit has adopted the "application approach," which allows plaintiffs to file suit before receiving a response from the U.S. Copyright Office. Alexander's Complaint gave Defendants sufficient notice as to the infringement.

Further, Alexander has properly plead direct, contributory, and vicarious liability. At the pleading stage, these allegations sufficiently notify Defendants of their infringing activities as required by Rule 8(a). Therefore, Alexander requests this Court to deny Defendants' motion to dismiss Alexander's FAC.

This Court has specific personal jurisdiction over Defendants Yuke's and WWE. Yuke's has not provided an affidavit contradicting Alexander's jurisdictional allegations in her Complaint and Alexander lacks further knowledge of Yuke's contacts with Illinois or with the U.S. Therefore, Alexander requests this Court to deny Yukes' motion to dismiss for lack of personal jurisdiction, or, in the alternative, order an evidentiary hearing to resolve this dispute.

This Court has specific personal jurisdiction over WWE under the *Calder* "effects test." Alexander has demonstrated that WWE took intentional actions expressly aimed at the residents of Illinois with knowledge that Alexander would feel the effects of WWE's actions in Illinois. Alternatively, Alexander has established a prima facie case of specific personal jurisdiction over WWE through its role in distributing the game including though website sales to Illinois residents and through promotional activities specifically directed at Illinois residents. Alexander requests the Court to deny WWE's motion to dismiss FAC for lack of personal jurisdiction. In

the alternative, Alexander requests this Court orders an evidentiary hearing. Alexander respectfully requests all other relief this Court deems proper.

Dated:  November 21, 2018                      Respectfully submitted,

                                               /s/ Anthony G. Simon
                                               Anthony G. Simon, IL 6209056
                                               Benjamin R. Askew, IL 6291366
                                               Anthony R. Friedman, IL 6299795
                                               **THE SIMON LAW FIRM, P.C.**
                                               800 Market Street, Suite 1700
                                               St. Louis, Missouri  63101
                                               Phone:  (314) 241-2929
                                               Fax:  (314) 241-2029
                                               asimon@simonlawpc.com
                                               basekew@simonlawpc.com
                                               afriedman@simonlawpc.com

                                               R. Seth Crompton
                                               **THE HOLLAND LAW FIRM**
                                               300 N Tucker, Suite 801
                                               St. Louis, Missouri 63101
                                               scrompton@allfela.com
                                               Phone: (314) 241-8111
                                               Facsimile: (314) 241-5554

                                               *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served upon all counsel of record this 21st day of November 2018 via the Court's CM/ECF system.

                                               */s/ Anthony G. Simon*

23