IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CATHERINE ALEXANDER, )<br>)<br>)<br>　　　　Plaintiff, )<br>)<br>v. )<br>)<br>TAKE-TWO INTERACTIVE SOFTWARE, INC.; )<br>2K GAMES, INC.; 2K SPORTS INC.; )<br>WORLD WRESTLING ENTERTAINMENT, )<br>INC.; VISUAL CONCEPTS ENTERTAINMENT; )<br>YUKE'S CO., LTD.; and YUKE'S LA INC., )<br>)<br>　　　　Defendants. ) | Case no: 3:18-CV-966-SMY-MAB<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF CATHERINE ALEXANDER'S SECOND SET
OF REQUESTS FOR ADMISSIONS TO DEFENDANTS**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiff Catherine Alexander serves the following requests for admission on TAKE-TWO INTERACTIVE SOFTWARE, INC., 2K GAMES, INC., 2K SPORTS INC., and VISUAL CONCEPTS ENTERTAINMENT ("the TAKE-TWO DEFENDANTS" or "DEFENDANTS").

Definitions applying to these requests for admission are set forth in Appendix A.

**REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 37:**

Admit that the Infringing Games are authentic.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 38**

Admit that one of Defendants' goals in developing the Infringing Games was authenticity.

1

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 39**

Admit that inclusion of the Tattoos in the Infringing Games was in part to achieve authenticity.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 40**

Admit that Defendants believe that consumers' expectations for the Infringing Games is that the Infringing Games be authentic.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 41**

Admit that consumer's expectations for the Infringing Games is that they be authentic.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 42**

Admit that the Tattoos in the Infringing Games contribute to the authenticity of the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 43**

Admit that one of Defendants' goals in developing and marketing the Infringing Games was to meet or exceed consumers' expectations of authenticity.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 44**

Admit that one of Defendants' goals in developing and marketing the Infringing Games was to make design choices that would not impair the authenticity of the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 45**

Admit that Defendants' goal of authenticity was influenced in part by their desire to maximize revenue and profits of the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 46**

Admit that Defendants' goal in not making design choices that would impair the authenticity of the Infringing Games was influenced in part by their desire to maximize revenue and profits of the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 47**

Admit that a Randy Orton in-game character in the Infringing Games that had no tattoos would be less authentic than a Randy Orton character with tattoos.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 48**

Admit that a Randy Orton character in the Infringing Games that lacked the Tattoos would be less authentic than a Randy Orton character with Tattoos.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 49**

Admit that it was technically feasible to include a Randy Orton character in the Infringing Games without the Tattoos.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 50**

Admit that it was technically feasible to include a Randy Orton character in the Infringing Games with tattoos in place of the Tattoos that are different from the Tattoos.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 51**

Admit that the inclusion of the Tattoos in the Infringing Games was a design choice made at least in part by Defendants.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 52**

Admit that the Infringing Games received praise from consumers and critics for their authenticity.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 53**

Admit that the Infringing Games received criticism from consumers and critics for their lack of authenticity.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 54**

Admit that one of Defendants' goals in developing the Infringing Games was to receive praise from consumers and critics.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 55**

Admit that one of Defendants' goals in developing the Infringing Games was to avoid criticism from consumers and critics.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 56**

Admit that Defendants monitored or assessed statements from third parties, such as critics, reviewers, customers or consumers, concerning the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 57**

Admit that Defendants provided statements from third parties, such as critics, reviewers, customers or consumers, concerning the Infringing Games to employees of Defendants.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 58**

Admit that statements from third parties, such as critics, reviewers, customers or consumers, concerning the Infringing Games influenced the design and development of the Infringing Games or subsequent wrestling games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 59**

Admit that Defendants paid a tattooist or tattoo artist to create designs for inclusion in the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 60**

Admit that Defendants hold a copyright interest in the art created by a tattooist for inclusion in the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 61**

Admit that the Tattoos were included in the Infringing Games in part to avoid criticism from third parties that the Infringing Games were not authentic.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 62**

Admit that the Tattoos were included in the Infringing Games in part to maximize revenue and profit of the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 63**

Admit that the authenticity of the Infringing Games is a driver of sales of the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 64**

Admit that the authenticity of the Infringing Games is a component of the financial success of the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 65**

Admit that Defendants never calculated the percentage of the Infringing Games' computer programs that is made up of the Tattoos prior the filing of the Complaint in this litigation.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 66**

Admit that the percentage of a computer program occupied by visual elements of a video game is not a metric used by Defendants when developing video games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 67**

Admit that the percentage of the Infringing Games' computer program that is occupied by the visual display of the WWE Logo is less than 1%.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 68**

Admit that the percentage of the Infringing Games' computer program that is occupied by the visual display of the WWE Logo is less than .01%.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 69**

Admit that the percentage of the Infringing Games' computer program that is occupied by the visual display of the WWE Logo is less than .001%.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 70**

Admit that the percentage of the Infringing Games' computer program that is occupied by the visual display of WWE Logo is less than .0001%.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 71**

Admit that Defendants' goal of achieving authenticity in the Infringing Games was to reproduce or recreate the experience of watching a wrestling event on television.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 72**

Admit that Defendants' goal of achieving authenticity in the Infringing Games was to reproduce or recreate the experience of watching a wrestling event in person.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 73**

Admit that consumers would be less likely to purchase the Infringing Games if consumers perceived the Infringing Games as not authentic.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 74**

Admit that the notion that the Tattoos are a "tiny" asset in the Infringing Games, as concluded by Dr. Bogost, is not known by most consumers.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 75**

Admit that Defendants' are not aware of any internal or public studies, data or analyses, concerning the relationship between the percentage of visual display data occupied in a computer program and consumers' perception of authenticity in video games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 76**

Admit that a portion of the value of the Tattoos to the Infringing Games comes from creating a perception of authenticity for consumers or purchasers of the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 77**

Admit that consumers who purchased the Infringing Games would react negatively if the Tattoos were not included on Randy Orton's in-game character.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 78**

Admit that when developing the Infringing Games, Defendants' believed that consumers who purchased the Infringing Games would react negatively if the Tattoos were not included on Randy Orton's in-game character.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 79**

Admit that consumers who purchased the Infringing Games would react negatively if the Tattoos were replaced by different tattoos on Randy Orton's in-game character.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 80**

Admit that when developing the Infringing Games, Defendants believed that consumers who purchased the Infringing Games would react negatively if the Tattoos were replaced by different tattoos on Randy Orton's in-game character.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 81**

Admit that consumers who purchased the Infringing Games would be dissatisfied if the Tattoos were not included in the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 82**

Admit that a component of the financial benefit attributable to the Tattoos in the Infringing Games is the avoidance of consumer dissatisfaction that would result if the Infringing Games lacked the Tattoos.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 83**

Admit that authenticity matters to consumers who purchase or purchased the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 84**

Admit that negative statements about the Infringing Games by third parties including, but not limited to, on social media, could harm sales of the Infringing Games.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 85**

Admit that Defendants did not add any new visual elements to the Tattoos before incorporation into the Infringing Games.

**RESPONSE:**

Dated: September 11, 2019    Respectfully submitted,

*/s/ Anthony R. Friedman*
Anthony G. Simon, IL 6209056
Benjamin R. Askew, IL 6291366
Anthony R. Friedman, IL 6299795
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, Missouri  63101
Phone:  (314) 241-2929
Fax:  (314) 241-2029
asimon@simonlawpc.com
basekew@simonlawpc.com
afriedman@simonlawpc.com

R. Seth Crompton
**THE HOLLAND LAW FIRM**
300 N. Tucker, Suite 801
St. Louis, Missouri 63101
scrompton@allfela.com
Phone: (314) 241-8111
Facsimile: (314) 241-5554

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all counsel of record via the Court's CM/ECF system on September 11, 2019.

*/s/ Anthony R. Friedman*

# APPENDIX A
# DEFINITIONS

As used in these requests of admission:

1. The term "Infringing Games" means videogames WWE 2K16, WWE 2K17, and WWE 2K18, the videogames that provide the basis for the copyright infringements asserted against WWE in this lawsuit.

2. The term "the Tattoos" means the copyrighted tattoos at issue in this lawsuit, specifically the Rose, Dove, Skulls, Tribal, Tribal Addition, and Bible Verse works tattooed on Randy Orton.

3. The terms "authentic" and "authenticity" mean the representation or recreation of a person or program in a video game as it appears or would appear on television. These terms are used in the same manner as Mr. Mark Little, on behalf of Defendants, used the terms when describing "goal" of creating an "authentic" Randy Orton in the Infringing Games by "trying to make [Randy Orton] look like in the game" how "he looks on programming [television]" (Dep. Tr. Little, 160:21-25; 149:9-13) and "having our game, as much as we can and as possible, represent what they [consumers or viewers] see and acknowledge in person on TV" (Dep. Tr. Little, 158:23-159:1).

4. The term "WWE Logo" means the graphic symbol used by World Wresting Entertainment, Inc., licensed to the Take-Two Defendants for incorporation into the Infringing Games, consisting of stylized text of the letter "W" and seen at, for example, TAKE-TWO_0000416 and in the Infringing Games at TAKE-TWO_0000477 at 00:53 seconds and as follows:



14