# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
### EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| CATHERINE ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, INC., | ) | Case No. 3:18-cv-966-MJR-DGW |
| 2K GAMES, INC.; 2K SPORTS, INC.; WORLD | ) | |
| WRESTLING ENTERTAINMENT, INC.; | ) | |
| VISUAL CONCEPTS ENTERTAINMENT; | ) | |
| YUKE'S CO., LTD.; AND YUKE'S LA, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF GARY GLATSTEIN

I, Gary Glatstein, declare as follows:

      1.      I submit this declaration in support of Take-Two Interactive Software, Inc., 2K

Games, Inc., 2K Sports, Inc., and Visual Concepts Entertainment (collectively, "Take-Two").

## I.      My Tattoo Designs for Randy Orton

      2.      I am a tattooist and live in St. Louis, Missouri, which is also my hometown.

      3.      Catherine Alexander, who I understand to be the plaintiff in this case, worked at

my St. Louis tattoo shop Goldenlands Tattoos ("Goldenlands") for several years during the mid-

2000s.  I have co-owned and operated Goldenlands since 1988 and have worked with many

tattooists over the years.

      4.      I understand that Ms. Alexander is saying that the tattoos inked on the WWE

wrestler Randy Orton were all her work and her original creations.  This is not true.

      5.      One of my original tattoo designs—a distinctive tribal design—is inked on

Mr. Orton's upper back.  Mr. Orton requested this tattoo, and he and I both thought that the point

of the tattoo was to reflect his personal expression.  Another St. Louis tattooist, Daniel Daley,

inked the design onto Mr. Orton when Mr. Daley worked at Goldenlands.  The following image

depicts my original tribal design as it was inked on Mr. Orton:



      6.      I understand that Ms. Alexander is claiming to hold a copyright in changes she

claims to have made using my design, as well as five other tattoos she claims to have inked on

Mr. Orton.

TAKE-TWO_0001328

7.      I have seen an image of the modified upper back tribal tattoo.  In my review, I can

see that much of my original tribal tattoo design is still visible and the new material is a copy of

my pre-existing design, as depicted in the following images:

### My Original Tribal Tattoo Design on Mr. Orton



### My Original Tribal Tattoo Design with Ms. Alexander's Alterations



8.      Ms. Alexander did not seek my permission before using my design for

Mr. Orton's modified tattoo.  This is probably because the accepted practice in the tattoo

industry is that once a tattoo is inked on a person, the person is free to do what he wants with it,

including depicting or modifying the tattoo or authorizing others to do so.  I find Ms. Alexander

stance—that she can complain about Mr. Orton's depiction without her permission yet doesn't

need permission to use tattoo designs other tattooists inked on clients—inconsistent.

9.      In addition, I understand that Ms. Alexander claims to hold copyrights in several

of Mr. Orton's other tattoos, including tattoos of other tribal designs, a rose, skulls, a Bible verse,

and a dove.  Based on my experience in the tattoo business, these types of designs are very

common in tattoos.

TAKE-TWO_0001329

## II.      The Tattoo Industry and Clients' Ability to Display Their Tattoos

10.      From my experience as a tattooist and tattoo shop owner for over thirty years, there are certain practices in inking tattoos on clients that have become standard in the tattoo industry.  For example, at my shop Goldenlands, the practice is that the client comes in, pays for a tattoo, and leaves when the tattoo is finished.  Once that transaction ends, the client can go about his life with no strings attached.  This was the practice when Ms. Alexander worked at Goldenlands, and this is the general industry practice, as well.

11.      In other words, both at Goldenlands and across the tattoo industry, when a client is tattooed, the understanding of both tattooist and client is that the client can go about his business with the tattoo being seen or depicted as just another part of his body.  The client is free to walk down the street with the tattoo on display, to have the tattoo photographed, or to permit it to be included when the client is depicted on television, in an advertisement, or in other media.  The tattoo becomes part of his person and literally becomes part of his body.  Because of this, the client has the tattooist's permission to permit his depiction in these ways.

12.      In my years in the business and as the owner of Goldenlands, I have never heard of a tattooist ever claiming that a client needs the tattooist's permission to be depicted in the media or elsewhere showing his tattoos.  Nor have I ever heard of a tattooist claiming to deserve a profit every time the client is depicted with his tattoos.  Tattoos are very personal, and making the client get the tattooist's permission or pay the tattooist each time the client is depicted would cut against the whole idea of tattoos.

13.      Because this is accepted practice in the tattoo industry, and was certainly the practice at Goldenlands when Ms. Alexander tattooed Mr. Orton, I do not believe Ms. Alexander has the right to profit from Mr. Orton being depicted bearing his tattoos.

3

TAKE-TWO_0001330

14.     Because these principles are well understood, it would not be standard for anyone to put them in writing or to go back and find the tattooist to get additional permission.

15.     Given these industry norms, I do not believe that Mr. Orton has to get Ms. Alexander's permission to allow his tattoos to be depicted on his body in a video game, or that Ms. Alexander should receive money each time Mr. Orton is depicted with his tattoos. Ms. Alexander's lawsuit is very surprising.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27 day of November 2018.          Gary Gladstein

4

TAKE-TWO_0001331