# EXHIBIT 11

HIGHLY CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

EAST ST. LOUIS DIVISION

CATHERINE ALEXANDER,

    Plaintiff,

vs.                                    No. 3:18-cv-966-MJR-DGW

TAKE-TWO INTERACTIVE SOFTWARE, INC.,
2K GAMES, INC.; 2K SPORTS, INC.; WORLD
WRESTLING ENTERTAINMENT, INC.;
VISUAL CONCEPTS ENTERTAINMENT;
YUKE'S CO., LTD.; AND YUKE'S LA, INC.,

    Defendants.

HIGHLY CONFIDENTIAL

VIDEOTAPED DEPOSITION OF RYAN CLARK

September 12, 2019

St. Louis, Missouri

Reported by:

Pamela Watson Harrison

Job no: 26039

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

Page 39

```
 1        A.   No.
 2        Q.   So what form of damages were you
 3   evaluating in that other lawsuit or potential
 4   lawsuit?
 5        A.   It was a unique situation, but in that
 6   case, I'd call them actual damages.
 7        Q.   Other than actual damages, did you try
 8   to calculate or potentially calculate any damages
 9   in that potential lawsuit?
10        A.   Not that I recall.
11        Q.   And in the present lawsuit, to be clear,
12   you had no opinion on actual damages?
13        A.   That's correct.
14        Q.   So you agree that there are no actual
15   damages in this lawsuit?
16        A.   I have no opinion in that area.
17        Q.   So you can't say one way or the other if
18   there are actual damages in this lawsuit?
19        A.   That's correct.  I don't have an
20   opinion.  I haven't done the analysis.
21        Q.   But at trial, you're not going to offer
22   any opinion on actual damages?
23             MR. FRIEDMAN:  Objection.  Asked and
24   answered.
25        A.   That's correct.
```

Page 80

1    the market?
2        A.   I didn't believe that for the purposes
3    of what I was asked to do here from the economics
4    standpoint that that needed an analysis done.
5        Q.   Were you given restrictions on the scope
6    of your assignment?
7        A.   No.  So a market -- this is in
8    litigation, and because it's in litigation, I have
9    to assume there's liability.  And by assuming
10   there's liability, that's -- on the damages side
11   is where I focused and the criticisms of
12   Mr. Malackowski's opinions related to the
13   economics.
14       Q.   So at trial, you're not going to offer
15   any opinions on whether there's a market for
16   licensing tattoos for depiction in video games of
17   tattoos on the athletes on whom the tattoos are
18   inked in real life?
19       A.   Correct.
20       Q.   And you are not going to offer any
21   opinion on whether such a market is likely to
22   develop?
23       A.   Correct.
24       Q.   You also offer no opinion on liability,
25   right?

1      A.   Correct.
2      Q.   And here you have declined to provide
3  any percentage?
4      A.   I have not, that's correct.  I have not
5  provided -- I haven't declined.  I have disagreed
6  with Mr. Malackowski that it is zero percent.
7      Q.   That means, in your opinion, if
8  Mr. Orton's character was shown without his
9  tattoos, that would negatively impact Take-Two's
10 profits?
11     A.   Yes.
12     Q.   And people would buy -- people would
13 buy -- let me rephrase that.
14          There would be less sales of the accused
15 video games if Mr. Orton was shown without the
16 tattoos in the accused video games?
17     A.   That's not my opinion.  That's
18 Dr. Zagal's opinion that there would be less
19 sales.  But it seems like a reasonable opinion and
20 a reasonable basis for that, I believe.
21     Q.   There's some number of consumers who
22 otherwise would have purchased WWE 2K who now
23 would not purchase it if Mr. Orton was not shown
24 with his tattoos?
25     A.   I think that is a true statement