**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| CATHERINE ALEXANDER, | ) |
| Plaintiff, | ) ) ) |
| -vs- | ) ) |
| TAKE-TWO INTERACTIVE SOFTWARE, INC., 2K GAMES, INC.; 2K SPORTS, INC.; WORLD WRESTLING ENTERTAINMENT, INC.; VISUAL CONCEPTS ENTERTAINMENT; YUKE'S CO., LTD.; AND YUKE'S LA, INC., | ) ) ) ) ) ) ) CASE NO. 3:18-CV-966-SMY-MAB |
| Defendants. | ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS TAKE-TWO
INTERACTIVE SOFTWARE, INC., 2K GAMES, INC., 2K SPORTS, INC.,
AND VISUAL CONCEPTS ENTERTAINMENT'S
<u>MOTION TO EXCLUDE THE TESTIMONY OF RYAN CLARK</u>**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................... 1

**BACKGROUND** ........................................................................................................................ 3

**ARGUMENT** ............................................................................................................................... 3

    I.    MR. CLARK'S OPINIONS RELATING TO PROFITS ATTRIBUTABLE TO THE DEPICTION OF TATTOOS SHOULD BE EXCLUDED .................................................................................................................. 4

        A.    Mr. Clark's Opinions Merely Parrot the Testimony of Others and He Is Not Otherwise Qualified to Offer Them ............................................. 4

        B.    Mr. Clark's Opinions Are Unsupported *Ipse Dixit* ...................................... 6

    II.    MR. CLARK'S OPINIONS RELATING TO GROSS AND OPERATING PROFITS SHOULD BE EXCLUDED .................................................................... 8

    III.    MR. CLARK'S NEW TESTIMONY OFFERED FOR THE FIRST TIME AT HIS DEPOSITION SHOULD BE EXCLUDED ............................................ 10

**CONCLUSION** ........................................................................................................................ 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Brown v. Burlington N. Santa Fe Ry. Co.*,
765 F.3d 765 (7th Cir. 2014) ..................................................................................................6

*Chapman v. Maytag Corp.*,
297 F.3d 682 (7th Cir. 2002) ..................................................................................................4

*Ciomber v. Coop. Plus, Inc.*,
527 F.3d 635 (7th Cir. 2008) ..........................................................................................10, 11

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)..............................................................................................................1, 9

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*,
285 F.3d 609 (7th Cir. 2002) ..................................................................................................4

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)..............................................................................................................6, 8

*Gopalratnam v. Hewlett-Packard Co.*,
877 F.3d 771 (7th Cir. 2017) ..................................................................................................9

*Jones v. Lincoln Elec. Co.*,
188 F.3d 709 (7th Cir. 1999) ..................................................................................................4

*Mid–State Fertilizer Co. v. Exch. Nat'l Bank*,
877 F.2d 1333 (7th Cir. 1989) ................................................................................................6

*Minix v. Canarecci*,
597 F.3d 824 (7th Cir. 2010) ..................................................................................................6

*Salgado by Salgado v. Gen. Motors Corp.*,
150 F.3d 735 (7th Cir. 1998) ................................................................................................10

*Turubchuk v. E.T. Simonds Constr. Co.*,
No. 12 Civ. 594, 2017 WL 4784653 (S.D. Ill. Oct. 24, 2017)............................................4, 8

*United States v. Mamah*,
332 F.3d 475 (7th Cir. 2003) ..................................................................................................8

*Zenith Elecs. Corp. v. WH-T Broad. Corp.*,
395 F.3d 416 (7th Cir. 2005) ............................................................................................6, 8

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................2, 10

Fed. R. Evid. 702 ........................................................................................................1, 3, 6, 9

Fed. R. Evid. 703 ...................................................................................................................6

Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts Entertainment (collectively, "Take-Two") submit this memorandum of law in support of their motion to exclude Plaintiff Catherine Alexander ("Plaintiff") from relying on any testimony, argument, or evidence relating to the Rebuttal Report of Ryan J. Clark ("Clark Report"), as well as any opinions offered by Ryan Clark during his September 12, 2019 deposition (such opinions referred to collectively with the Clark Report as the "Clark Opinions").

## PRELIMINARY STATEMENT

The report of Take-Two's damages expert, James E. Malackowski, showed that Plaintiff is not entitled to damages in this case because she has not suffered actual damages and none of Take-Two's profits are attributable to her alleged tattoos. Hoping to avoid Mr. Malackowski's straightforward conclusion, Plaintiff seeks to rely on her purported damages expert, Ryan Clark. The Clark Opinions, however, should be excluded in their entirety as they fail the test for admissibility established by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

*First*, Mr. Clark opined concerning whether any portion of Take-Two's profits from its sales of the video games *WWE 2K16*, *WWE 2K17*, and *WWE 2K18* (collectively, "*WWE 2K Games*") are attributable to infringement of Plaintiff's alleged copyrights in the wrestler Randy Orton's tattoos. He admitted at his deposition, however, that he is not qualified to offer an expert opinion on that issue—for each statement he acknowledged that he simply parroted back the testimony of another of Plaintiff's proffered experts in this case, Dr. Jose Zagal, and repeatedly admitted that the testimony he was offering was "***not [his] opinion. That's Dr. Zagal's opinion***." Ex. 1 (Clark Dep. Transcript) at 171:17–20 (emphasis added). As a result, these opinions are not helpful to the jury, and should be excluded for that reason alone. His lack of expertise in this area is an additional reason to grant Take-Two's motion as Mr. Clark was

unable to identify at his deposition anything in the Clark Report that supported his opinions, stating, "I simply disagree with [Mr. Malackowski]." *Id.* at 192:24–25.

*Second*, Mr. Clark opined concerning the amount of Take-Two's gross and operating profit from the sale of the *WWE 2K* Games. His opinions, however, should be excluded because the only data Mr. Clark cites to support this opinion was the profit numbers reported in Take-Two's company-wide 10-K, which he admitted at his deposition was not a proper means to determine gross and operating profits for the *WWE 2K* Games. *Id.* at 121:3–7 ("I am not representing that [Take-Two's] profit margin should what the 10-K is"; "you can't do [that] with the 10-K."). The courts in this Circuit make clear that when there is no link between the facts and data on which the expert relies and the conclusions that his testimony is intended to support, such testimony is improper. Stripping away the data from Take-Two's 10-K, however, Mr. Clark does not support his opinions with any facts or data, making them merely unsupported statements.

*Third*, during his deposition, Mr. Clark realized his report was deficient and attempted to squeeze in new opinions that were not in the Clark Report, but these opinions are improper as they had not been disclosed previously. As just one example, as to one of Mr. Clark's new criticisms of Mr. Malackowski's determination of Take-Two's gross and operating profit from the sale of the *WWE 2K* Games, Mr. Clark admitted that this "is a criticism that is not written in my report." *Id.* at 138:20–21. As these opinions were not timely disclosed when the Clark Report was served, they do not comply with Federal Rule of Civil Procedure 26 and should be excluded.

As the Clark Opinions are not admissible, Plaintiff should not be entitled to rely on Mr. Clark's testimony at summary judgment or trial.

## BACKGROUND

On February 7, 2019, Take-Two served Mr. Malackowski's damages expert report. Mr. Malackowski analyzed the facts of this case and concluded that, even if Plaintiff could establish that the tattoos she allegedly created had been infringed by the *WWE 2K* Games, Plaintiff is not entitled to damages, as there is no evidence that she suffered actual harm, and the profits of the *WWE 2K* Games are not attributable to alleged infringement of the tattoos.

On February 21, 2019, Plaintiff served Mr. Clark's eight-page rebuttal to Mr. Malackowski's report, in which he offered his opinions in this case across three total substantive pages of his report. Ex. 2 (Clark Report) at 6–8. The Clark Report does not quantify the amount of profits Mr. Clark believes are attributable to the depiction of the tattoos in the *WWE 2K* Games, the amount of gross profits earned from the sale of the *WWE 2K* Games, or the amount of operating profit earned from the sale of the *WWE 2K* Games. *Id.*

On September 12, 2019, Take-Two deposed Mr. Clark and examined the sparse opinions in the Clark Report. *See, e.g.*, Ex. 1.

## ARGUMENT

Under Federal Rule of Evidence 702, a witness who is qualified as an expert may testify in the form of an opinion or otherwise if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

I. **MR. CLARK'S OPINIONS RELATING TO PROFITS ATTRIBUTABLE TO THE DEPICTION OF TATTOOS SHOULD BE EXCLUDED**

A. <u>**Mr. Clark's Opinions Merely Parrot the Testimony of Others and He Is Not Otherwise Qualified to Offer Them**</u>

In Section 3.D of the Clark Report, Mr. Clark opines that he "disagree[s] with Mr. Malackowski's opinion that none of the profits of Take-Two are attributable to the depiction of the Tattoos in the Accused Video Games." Ex. 2 at 7. He offers no opinion on the amount of profits attributable to depicting Plaintiff's alleged copyrights in the wrestler Randy Orton's tattoos in the *WWE 2K* Games. *See id.* These opinions should be excluded because Mr. Clark admitted that in that section of the Clark Report he is merely repeating the opinions of Plaintiff's other proffered expert, Dr. Jose Zagal, and also admitted that he is not qualified to offer them.[1]

"In assessing reliability, a court must ensure that the proffered expert testimony is 'well-grounded in methods and procedures' of the expert's technical discipline." *Turubchuk v. E.T. Simonds Constr. Co.*, No. 12 Civ. 594, 2017 WL 4784653, at *2 (S.D. Ill. Oct. 24, 2017) (quoting *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)). Further, a proffered expert may not act as a "mouthpiece of a[n expert] in a different specialty" by "just parroting the opinion" of that expert. *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613–14 (7th Cir. 2002); *see also Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723–24 (7th Cir. 1999) (holding that district court should have barred material scientist from testifying about conclusions that "were rooted in medical knowledge and training which [he] did not have" and that were "derived primarily, if not completely" from a physiologist).

Mr. Clark's opinions in Section 3.D should be excluded because in offering them, he

---

[1] Dr. Zagal's opinions are the subject of a separate *Daubert* motion filed concurrently herewith.

merely acts as a "mouthpiece of" Dr. Zagal. *See Dura Auto. Sys.*, 285 F.3d at 614.  Mr. Clark was questioned at length during his deposition about each statement in Section 3.D, and he readily admitted that each statement merely repeated Dr. Zagal's testimony and that Mr. Clark was not offering any of his own opinions that rely on his own experience.[2]  In fact, when asked to identify one opinion in this section of the Clark Report that did not merely repeat Dr. Zagal, Mr. Clark pointed only to a single quote that he pulled from a newspaper article:

> Q. Then can you list for me what within Section 3D is not you just saying what another expert said?
>
> A. The quote from LeBron James' declaration.

Ex. 1 at 192:11–15.  "The quote from LeBron James' declaration," however, is not offered as information relevant to Mr. Clark's own opinions. *Id.*  Mr. Clark cites it only to opine that "Lebron James agrees with Dr. Zagal['s]" opinion because Mr. James had previously said, "[m]y tattoos are a part of my persona and identity." Ex. 2 at 7.  In other words, Mr. Clark is repeating what Dr. Zagal said, and then saying that LeBron James agrees with Dr. Zagal without offering his own analysis.  Moreover, this quote is about a different video game: Mr. James is a basketball

---

[2]  This is not debatable. *Compare* Ex. 2 at 7 (opining that "realism is a key driver of consumer demand"), *with* Ex. 1 at 46:25–47:3 (admitting that he is "not offering any of [his] own opinion on whether realism drives consumer demands"); *compare* Ex. 2 at 7 (opining that "[o]ne way that the developers of the Video Games attempted to achieve realism is the realistic portrayal of the video game characters"), *with* Ex. 1 at 164:21–25 (admitting that "[i]n that sentence, [he's] not providing any additional opinion or expertise beyond what's already been stated in this case"); *compare* Ex. 2 at 7 (opining that "the Orton Character was a design choice that consisted of copying and reproducing the copyrighted Tattoos"), *with* Ex. 1 at 54:21–23 (admitting that "[he] ha[sn't] done an analysis of the numerous design choices and their impact on profits"); *compare* Ex. 2 at 7 (opining that "Dr. Zagal's opening report stated that a portion of the sales and profits of the *WWE 2K* Video Games are attributable to the copyrighted works" and "[w]ithout the copyrighted tattoos, Orton's character in the Accused Video Game would be perceived as phony or unrealistic and the sales of the Video Games would suffer"), *with* Ex. 1 at 55:13–17 (admitting that [i]t's Dr. Zagal who has opinions on the design choices in the game and the impact those design choices would have on the game itself as well as sales and profits of those games).

player who is not depicted in the *WWE 2K* Games, and he is not a party to this case. Mr. Clark also admitted that he is not offering any opinion on what the quote means, agreeing that, "[a]s for Mr. Orton, [he has] no opinion on whether his tattoos are part of his persona and identity." Ex. 1 at 86:8–11.[3] As Mr. Clark acknowledges that each opinion in Section 3.D of the Clark Report is the mere restatement of other individuals' opinions, his opinions should be excluded.

      **B.**      **Mr. Clark's Opinions Are Unsupported *Ipse Dixit***

Mr. Clark's opinions on the profits attributable to the alleged infringement also should be excluded as unsupported *ipse dixit*. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137 (1997). An expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elecs. Corp. v. WH-T Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). Further, it is well established that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Id.* (quoting *Mid–State Fertilizer Co. v. Exch. Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989)). Courts thus routinely exclude expert opinions that are not based on sufficient evidence. *See Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772–73 (7th Cir. 2014) (finding that "subjective impressions" were not sufficient facts and data under Federal Rule of Evidence 702 and 703); *Minix v. Canarecci*, 597 F.3d 824, 834–35 (7th Cir. 2010) (upholding exclusion of expert report where expert did not cite

---

[3]    The only other information provided in this section of the Clark Report is Mr. Clark's recital of statistics from the survey conducted by Dr. E. Deborah Jay, an expert retained in this case to conduct a survey on the reasons why consumers purchase the *WWE 2K* Games. Ex. 2 at 7. Yet, Mr. Clark admitted that he is not offering any opinion on the reliability of Dr. Jay's survey. Ex. 1 at 181:9–11 ("Q. In your opinion, is Dr. Jay's survey reliable? A. I don't have an opinion on it.").

any standards or principles in support of her conclusions).

Yet, at his deposition Mr. Clark was unable to identify anything in Section 3.D of the Clark Report for which his expertise was actually needed, instead identifying only a vague expertise. Specifically, when pressed to identify anything besides the LeBron James declaration that was not just him saying what another expert said, he invoked his "simpl[e] disagree[ment]":

> Q. Is there anything else?
>
> A. And everything else is my understanding of the facts in the case, my understanding of the opinions of both sides in the case, and the survey data in the case. And I disagree with Mr. Malackowski that it's zero contribution to profits. I have not quantified it. ***I simply disagree with him***.

Ex. 1 at 192:18–25 (emphasis added); *see also id.* at 191:7–14 ("Q. Is Section 3D within your area of expertise? A. Yes. Because it's -- it relates to the profits. I disagree that it's zero. Mr. Malackowski is [sic] just concluded that, that it's zero, and ***I believe that it's not*** because it's -- ***because of the other testimony available in the case***." (emphasis added)).

Mr. Clark offered no justification for why he should be allowed to offer his mere disagreement with Mr. Malackowski; indeed, he acknowledged that he performed ***no analysis*** to reach his conclusion, admitting that he "ha[sn't] done an analysis on how the depiction of the . . . tattoos in the accused video games impacts Take-Two's profits[.]" *Id.* at 76:1–5. In fact, when asked whether "[t]here would be less sales of the accused video games if Mr. Orton was shown without the tattoos in the accused video games[,]" he stated, "***[t]hat's not my opinion. That's Dr. Zagal's opinion***." *Id.* at 171:14–20 (emphasis added). Whether there are "some people who buy *WWE 2K* because of the tattoos that appear on Mr. Orton" was also "outside of [his] area of [his] opinions." *Id.* at 172:10–13.[4] Mr. Clark also admitted that he has no basis to

---

[4] *See also id.* at 190:3–19 ("Q. So it's not your opinion that consumers purchased the game because of Mr. Orton's tattoos? A. I don't have -- that's -- my opinions are right here. So I

offer the opinions that Dr. Zagal offered regarding whether any of Take-Two's profits were attributable to Mr. Orton's tattoos in the *WWE 2K* games, because he stated that was an opinion "for the video game experts," *id.* at 190:16–19, and frankly admitted he is "not a video game expert." *Id.* at 44:10–11. Rather, he is offered as a financial expert, albeit one who admitted that he conducted no financial analysis.

In other words, the only thing that Mr. Clark was able to identify in Section 3.D as his opinion was his bottom line conclusion, but "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Zenith Elecs. Corp.*, 395 F.3d at 419. This provides an additional basis to exclude the Clark Opinions.

## II.  MR. CLARK'S OPINIONS RELATING TO GROSS AND OPERATING PROFITS SHOULD BE EXCLUDED

The remaining opinions in the Clark Report—those in Sections 3.A and 3.B[5]—concern Take-Two's gross and operating profits. These opinions should be excluded because Mr. Clark provides no "link between the facts or data [he] has worked with and the conclusion [his] testimony is intended to support." *Turubchuk*, 2017 WL 4784653, at *2 (quoting *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec.*, 522 U.S. at 146)).

Mr. Clark offers two opinions with respect to Take-Two's gross and operating profits associated with the *WWE 2K Games*: (1) he "disagree[s] with Mr. Malackowski's calculation of Take-Two's gross profits earned from the sale of the Accused Video Games," and asserts that

---

disagree with Mr. Malackowski's opinion that none of the profits of Take-Two are attributable to the depiction of tattoos in the accused video games. Q. And you don't have any opinion, one way or the other, whether that has anything to do with people purchasing the games because of the tattoos? A. That's right. Because that's out -- ***that's out of my area of expertise. That's -- that's for the video game experts***, their opinions, their testimony. That's outside of my area." (objection omitted) (emphasis added)).

5  Mr. Clark's report omits Section 3.C.

Mr. Malackowski "erroneously includes costs not directly related to the expenses necessary to produce and sell the Accused Video Games"; and (2) he "disagree[s] with Mr. Malackowski's calculation of Take-Two's operating profit earned from its sale of the Accused Video Games," and asserts that Mr. Malackowski "erroneously includes allocated operating expenses not directly related to the expenses necessary to produce and sell the Accused Video Games."  Ex. 2 at 5–7.  Each opinion is disconnected from the data cited in the Clark Report.

The only data that Mr. Clark identifies to support his "disagree[ments]"—and indeed the only thing cited in Sections 3.A and 3.B other than Mr. Malackowski's report—is Take-Two's U.S. Securities and Exchange Commission Form 10-K.  Ex. 2 at 5–7.[6]  The Form 10-K, however, provides aggregate financial data for all of Take-Two's revenue across its entire business; it is not tied to any specific Take-Two video game, of which there are many, and certainly not tied to the *WWE 2K* Games.  *E.g.*, Ex. 1 at 145:19–23 (Mr. Clark acknowledging "about 10 different titles" other than *WWE 2K* that were released in 2018 and listed in Take-Two's Form 10-K).  For this reason, Mr. Clark admitted at his deposition that it is improper to draw any conclusions between Take-Two's gross and operating profits reported for the company as a whole as reported in the Form 10-K and Take-Two's gross and operating profits for the specific *WWE 2K* Games at issue.  In fact, Mr. Clark admitted that "**you can't do it with the 10-K**," and that he is "not representing that [Take-Two's] profit margin should [be] what the 10-K is[,] ***I want to be clear on that***."  *Id.* at 121:3–7 (emphasis added).[7]

---

[6]  When asked about the statements in these sections of his report, Mr. Clark acknowledged the only data cited was Take-Two's Form 10-K.  *E.g.*, Ex. 1 at 138:22–140:21.

[7]  He also acknowledged that a Form 10-K is not a document that he has ever relied on to conduct this type of analysis, despite initially contending that he had.  Ex. 1 at 120:8–11 (Q. Well, you said in another case you used a 10-K to do that, right? A. I clarified that and said that I used the companywide financial statements.").

Stripping away this sole data point, there is no other support for Mr. Clark's opinions in Sections 3.A and 3.B, as he does not cite to anything else or disclose any other basis for his opnions. His opinions thus fail Federal Rule of Evidence 702's requirement that expert testimony be "based on sufficient facts or data," because they are based on no facts or data. Fed. R. Evid. 702(b); *see also Daubert*, 509 U.S. at 589 ("Proposed testimony must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known."); *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017) ("In the 'quantitative' sense, 'sufficient facts or data' means 'that the expert considered sufficient data to employ the methodology.'").

## III. MR. CLARK'S NEW TESTIMONY OFFERED FOR THE FIRST TIME AT HIS DEPOSITION SHOULD BE EXCLUDED

Realizing that the Clark Report failed to satisfy the requirements for expert testimony, during Mr. Clark's deposition he attempted to inject new opinions into this case. His attempt should be rejected because Federal Rule of Civil Procedure 26(a)(2)(B) requires that a party who intends to rely upon the testimony of an expert witness "furnish . . . a report containing, among other information, 'a complete statement of all opinions' the retained expert will provide, 'and the basis and reasons for them.'" *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008). "[It] must include 'how' and 'why' the expert reached a particular result, and not merely the expert's conclusory opinions." *Id.* (quoting *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)). "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony. The purpose of Rule 26(a)(2) is to provide notice to opposing counsel—before the deposition—as to what the expert witness will testify." *Id.* at 642.

For example, when Mr. Clark was questioned about his opinion that "Mr. Malackowski's calculation of Take-Two's gross profits erroneously includes costs not directly related to the

expenses necessary to produce and sell the" *WWE 2K* Games, Mr. Clark offered a new opinion that the "cost[]" that he was referring to was "overhead allocation." Ex. 2 at 6; Ex. 1 at 137:13–18. He admitted, however, that this "is a criticism that is **not written in my report**." Ex. 1 at 138:9–21 (emphasis added).

The same thing happened when Mr. Clark responded to questions about his opinions on operating profits:

> Q. ***Are there other criticisms of Mr. Malackowski's opinion that you have that you did not include in your report but you plan to testify to at trial?***
>
> A. ***Yes.*** Under second opinion B, where I disagree with Mr. Malackowski's calculation of Take-Two's operating profit earned from its sale of accused video games. And to explain, I've notated that he's included . . . general/administrative expenses, and I believe he's included indirect expenses in his calculation. So, therefore, his calculation of operating profit is incorrect.
>
> Q. ***Is that opinion written in your report?***
>
> A. Yeah. But it's footnoted and ***implied***.

*Id.* at 134:19–135:8 (emphasis added).

Tellingly, when Mr. Clark was asked if he believed "that by saying Mr. Malackowski's calculation is wrong, you are now allowed to testify at trial as to any reason you think that's wrong regardless of whether that reason appears in your report?" he responded that, "I think as long as it is **within the opinion of my opinion** on [Mr. Malackowski's] calculation of gross profit and explanation of why it's incorrect, **yes, I believe I can provide an explanation for that**." *Id.* at 130:24–131:7 (emphasis added). Such undisclosed opinions cannot save the Clark Report. As the Seventh Circuit has held, experts are not allowed to testify at trial as to material not contained in their reports as to do so would be an attempt to circumvent the rule that "[a] complete report must include the substance of the testimony which an expert is expected to give on direct

- 11 -

examination together with the reasons therefor." *Ciomber*, 527 F.3d at 641.  Thus, Take-Two respectfully requests that the Court issue an order precluding Mr. Clark from testifying outside the bounds of his written report, including but not limited to precluding Mr. Clark from offering any testimony concerning:

- specific "costs" or "allocated operating expenses," which Mr. Clark opined on in his deposition and asserted were erroneously included in Mr. Malackowski's calculation, but that he failed to identify in the Clark Report, including "overhead allocation." Ex. 1 at 137:13–18; and

- "implied" opinions, including Mr. Clark's opinion that Mr. Malackowski improperly "included indirect expenses" in his analysis of operating profits. *Id.* at 134:19–135:8.

## **CONCLUSION**

Given that none of the opinions contained in the Clark Report satisfy Federal Rule of Evidence 702 or the *Daubert* standard, Take-Two respectfully requests that the Court exclude the Clark Opinions in their entirety.

Dated: November 8, 2019                     Respectfully submitted,

                                                        */s/ Dale M. Cendali*
                                                       Dale M. Cendali (admitted *pro hac vice*)
Joshua L. Simmons (admitted *pro hac vice*)
Christopher T. Ilardi (admitted *pro hac vice*)
Miranda D. Means (admitted *pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com
miranda.means@kirkland.com

Michael J. Nester (#02037211)
Donovan Rose Nester P.C.
15 North 1st Street, Suite A
Belleville, Illinois 62220
Telephone: (618) 212-6500
mnester@drnpc.com

*Attorneys for Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts Entertainment*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | |
|---|---|
| CATHERINE ALEXANDER, | ) |
| Plaintiff, | ) ) ) |
| -vs- | ) ) |
| TAKE-TWO INTERACTIVE SOFTWARE, INC., 2K GAMES, INC.; 2K SPORTS, INC.; WORLD WRESTLING ENTERTAINMENT, INC.; VISUAL CONCEPTS ENTERTAINMENT; YUKE'S CO., LTD.; AND YUKE'S LA, INC., | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

CASE NO. 3:18-CV-966-SMY-MAB

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2019, I electronically filed the foregoing **Memorandum of Law in Support of Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts Entertainment's Motion to Exclude the Testimony of Ryan Clark** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Anthony G. Simon  asimon@simonlawpc.com
Benjamin R. Askew  baskew@simonlawpc.com
Anthony R. Friedman  afriedman@simonlawpc.com
Carrie L. Roseman  croseman@simonlawpc.com
R. Seth Crompton  scrompton@allfela.com
Tracey Blasa  tblasa@allfela.com
Jerry McDevitt  jerry.mcdevitt@klgates.com
Curtis Krasik  curtis.krasik@klgates.com

/s/ Dale M. Cendali
Dale M. Cendali (admitted *pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022

*Attorney for Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts Entertainment*