IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CATHERINE ALEXANDER,<br><br>            Plaintiff,<br><br>v.<br><br>TAKE-TWO INTERACTIVE SOFTWARE, INC., et al.,<br><br>            Defendants. | Case No.  3:18-cv-0966-SMY |

**PLAINTIFF CATHERINE ALEXANDER'S MEMORANDUM IN OPPOSITION OF DEFENDANTS TAKE-TWO INTERACTIVE SOFTWARE, INC., 2K GAMES, INC., 2K SPORTS, INC., AND VISUAL CONCEPTS ENTERTAINMENT'S MOTION TO EXCLUDE THE TESTIMONY OF JOSE ZAGAL**

Plaintiff Catherine Alexander ("Plaintiff") respectfully submits this memorandum of law in opposition of Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts Entertainment's (collectively, "Defendants") motion to exclude Plaintiff from offering testimony, argument, or evidence relating to the Opening Expert Report of Jose Zagal (the "Opening Report"); the Supplemental Expert Report of Jose Zagal (the "Supplemental Report"); the Responding Expert Report of Jose Zagal (the "Responding Report"); and any opinions offered by Jose Zagal during his August 1, 2019 deposition (such opinions referred to collectively with the Opening Report, Supplemental Report, and Rebuttal Report as the "Zagal Opinions").

**PRELIMINARY STATEMENT**

Defendants' motion to exclude should be denied. The Zagal Opinions meet the requirements for reliability under the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). The Zagal Opinions are well within Dr. Zagal's area of expertise as each of his reports and supporting deposition testimony directly relate to the

1

strategies and decision-making process employed during the development and design of videogames. Dr. Zagal's extensive educational background and professional experience in videogame development, design, and analysis make him more than qualified to opine on the potential factors considered in determining whether to include a specific feature in a game.

## ARGUMENT

Rule 702 states: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training, or education, may testify thereto in the form of an opinion or otherwise. "'Rule 702 specifically contemplates that the admission of testimony by experts whose knowledge is based on **experience**.'" *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (quoting *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591(7th Cir. 2000)(emphasis added)). Therefore, it is proper for a court to consider an expert's full range of practical experience, not just academic training, when determining whether an expert is qualified. *Id*. The *Daubert* factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999).

### I. DR. ZAGAL IS QUALIFIED TO OFFER HIS OPINIONS

A. <u>Familiarity with the WWE industry is not necessary.</u>

A lack of specialization generally does not affect the admissibility of the opinion, only its weight. *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 372 F. Supp.2d 1104, 1113 (N.D. Ill. 2005). Furthermore, courts "have allowed experts in a broader field to testify to matters that are a specific subset of their field, even though the expert did not specialize in a more specific subset." *McCloud ex. rel. Hall v. Goodyear Dunlop Tires North America, Ltd.*, 479 F. Supp.2d

882, 888 (C.D. Ill. 2007)(Holding that Defendants failed to identify any relevant difference between motorcycle and passenger vehicle tires that would make expert unqualified to offer opinions). Furthermore distinctions between specific works and works in general bears on the weight given to opinions not their admissibility. See *Fletcher v. Doig*, 196 F. Supp. 3d 817, 822 (N.D. Ill. 2016)(Holding that Art authentication expert's familiarity with painter's work in question and painters with whom the expert had more experience prior to the case bore on weight of his opinions, not admissibility)

      Here, Defendant has failed to identify any appreciable difference between video games involving the WWE and video games in general. Mr. Zagal is a game designer and teaches courses on videogame development, design and analysis. (*See* Exhibit A to Opening Expert Report of Jose Zagal, attached hereto as Ex. 1). Zagal testified that creating video games involves choices of what to create. (Ex. 2, Zagal Dep. 17:10-16.) Zagal used analogies to illustrate the importance of character recognition in game design, not on specialized knowledge of the WWE industry. For example, Zagal wrote in his opening report that "a 'Harry Potter' video game set far away from Hogwarts and featuring none of the characters from the books, would still benefit from the Harry Potter brand recognition, but less so than if it included what consumers would expect, such as characters and elements from the books." (Ex. 1, Opening Report of Jose Zagal, p. 6.) Furthermore, Dr. Zagal testified that "game culture" is "the history of games, the technology behind games, the knowledge and information about the companies that make games, the people that makes games, their history and trajectories, also player preferences and how these might change and not change over time, what its purposes are, commentary about games and also about games, trends in games, the intersection of trends in games with other things, the intersection of trends in games with player references." (Ex. 2,

Zagal Dep. at 239:1-13.)

Therefore his statements that "In the case of WWE games, game companies decide which characters and events to include in their game – they do not have to include them all and they can draw on the history of the WWE not just the current wrestling stars and events" need not be based on specialized knowledge of the WWE industry. Zagal's statements are based on his experience in videogame development and similar decisions by game companies to include characters in other contexts, which are applicable to videogame development strategy regardless of the target industry.

> B. <u>Zagal is Qualified to Offer Expert Testimony on Decisions Driving Sale of Video Games</u>

An expert need not necessarily have specific experience with a particular facet of his or her expertise in order to be competent to testify as to that facet. *Loeffel Steel* at 1113. Disputes as to Dr. Zagal's credentials goes to the weight of his testimony, not its admissibility. See *Loeffel Steel*, 372 F. Supp.2d at 1114); see also *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010)(holding that financial services technology expert's testimony testimony was within scope of disclosed expert report because expert's supplemental report, combined with his original report, gave Defendants sufficient information to allow it to prepare for expert's testimony).

Here, Zagal has more experience and training than "summer work" in aspects of video game marketing. Zagal testified that his computer science degree included "industrial engineering," which means "business-related engineering things" like "statistics and finance and marketing and accounting, microeconomics, [and] economics." (Ex. 2, Zagal Dep. 11:2-25.) Zagal wrote in his opening expert report that "Videogame companies use verisimilitude to promote and sell their games – highlighting improved visuals and accuracy" and that "[t]his

4

applies to all kinds of games" including "movie tie-ins" and "sports-related videogames." (Ex. 1, Zagal Opening Report, p. 9.) Zagal has designed numerous games including Hollywood Hacker, 404Sight, Cyberheist, Vynil, Calorie Crawl Saga: The Candy Kings Cometh, Pacemaker Panic, Proppa, Organ Trail, Ouroburrets, Tree of Life, Channel Sweeper, MiniNova, Aerosfera, Disco Roller & DJ Mortis. Zagal has served as a consultant and game designer for numerous corporate entities. Additionally, Dr. Zagal testified that he has "done studies" in which "the primary data source was reviews about games, written by players." (Ex. 2, Zagal Dep. at 239:14-242:25.) Dr. Zagal did this research for years and has written academic articles in these areas. Therefore, Zagal has the requisite experience and training such that he can testify accurately as to what is important to designers and consumers in video games.

## II. Dr. Zagal's Methodology Consists of Standards Accepted in the Game Development Industry and Lack of Peer Review is Not Dispositive

Lack of peer review will rarely, if ever, be the single dispositive factor that determines the reliability of expert testimony. *Loeffel*, 372 F. Supp.2d at 1116. More flexibility is required in determining the reliability of experience-based methodology. *McCloud ex. rel. Hall*, 479 F. Supp.2d at 892. "Expert testimony 'is not unreliable simply because it is founded on [a witness's] experience rather than on data.'" *Fletcher*, 196 F. Supp.3d at 823 (quoting *Metavante*, 619 F.3d at 761). Furthermore, the Advisory Committee stated in notes to Rule 702 that "Some types of expert testimony will not rely on anything like a scientific method … Nothing in this amendment is intended to suggest that experience alone – or experience in conjunction with other knowledge, skill, training or education – may not provide a sufficient foundation for expert testimony." See Fed. R. Evid. 702, Advisory Committee Notes (2000 Amendment). Experts are to rely on their applicable experiences in drawing their conclusions. *Demouchette v. Dart*, 2012 WL 6568232 at *6 (N.D. Ill. 2012).

Dr. Zagal wrote in his supplemental report that there are three techniques used in the videogame industry to copy someone's physical appearance. One method "is to use a few high resolution photographs of the subject and manipulate these directly (scaling/resizing, masking, cropping, rotating, etc.) in the computer using specialized software to create a texture that can then be wrapped on a 3D model." (Ex. 3, Zagal Supp. Report, p. 1.) Dr. Zagal wrote that "[t]his technique is well-known and there are even demonstrations of it available online." *Id.* Dr. Zagal wrote in his supplemental report that "certain features present in the original actor could be changed or removed – for example, moles, pimples, wrinkles, tattoos and more could be (and often are) digitally removed or new features could be added." *Id.* at 1-2. Zagal then wrote that, "from … the documents provided by Take-Two, … Take-Two followed one of the methods I outlined above for copying Randy Orton's tattoos and reproducing them into a usable game-ready character in the WWE Video Games." *Id.* Such explanation will assist the trier of fact with its analysis of any of the issues involved in the case as they endeavor to understand the methods employed by the Defendants in creating the game. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

Additionally, *Makor*, the case Defendants rely upon, is distinguishable from this case. In *Makor*, the challenged expert, Dr. Brody, did not review most of the documents provided to him during discovery. *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 2010 WL 2607241 at *5 (N.D. Ill. June 23, 2010). However, in this case, Zagal cited to Take-Two_0000001-Take-Two_0000496 in Section III of his Opening Expert Report. Furthermore, Dr. Zagal considered both Defendants' and Plaintiff's discovery requests and responses. Opening Expert Report of Jose Zagal at p. 3. Upon Dr. Zagal's extensive review of these documents, he applied his specialized knowledge of video games and his extensive practical experience in the field, which

includes game design, to the facts of this case.  See *Demouchette* at *5, (holding that correctional health care expert's opinions regarding security were reliable because he reviewed medical records, policies, and investigation documents and then applied his specialized knowledge to the facts of the case).

As a consequence, Dr. Zagal's methodology was consistent with standards accepted in the game development industry and adequately supported by his education and experience such that there is no justification for excluding his opinions.

### III. An Expert May Choose The Facts And Data Upon Which He Relies To Reach His Opinions, And There Is Nothing Inappropriate In Facts And Data Upon Which Dr. Zagal Relies.

Federal Rule of Evidence 703 states that "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Furthermore, when addressing whether expert testimony is reliable, a court should not consider the factual underpinnings of the expert's testimony.  *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).  The court's role as gatekeeper is strictly limited to an examination of the expert's methodology.  *Id.* at 718. "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Id.* (citing *Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.")). *Theofanis v Boston Scientific Corporation*, No. IP 01-752-C-Y/K, 2005 WL 3832049, at *2 (S.D.Ind. Mar. 16, 2005).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

First, for the same reasons, stated above, it is not necessary for Dr. Zagal to play WWE 2K extensively to be familiar with the operation of the game as it relates to this case. Defendants would have the Court take issue with how many hours Dr. Zagal did or did not devote to playing this game prior to rendering opinions on the impact of the copyright infringement at issue here. The law sets no such minimum standard for an expert. Similarly, the law does not require Dr. Zagal to interview Randy Orton, conduct or review any surveys of fans of the WWE, or conduct or review any surveys of the fans of Randy Orton as specialized knowledge in the WWE is not required for Dr. Zagal to offer his expert opinion.

Dr. Zagal cited to the materials he reviewed that emphasized the relative importance of Randy Orton and of the accurate depiction of Randy Orton in the game:

> Wrestlers deemed more valuable will, for example, be selected to feature on the cover of the games as well as appear in other promotional materials such as ads, television commercials, and the like. For example, Orton's videogame representation appears in commercials for WWE2K16, WWE2K17, and WWE2K18 as seen in TAKE-TWO_0000178.mp4, TAKE-TWO_0000180.mp4, and TAKETWO_0000473.mp4 respectively.

(Ex 1, Zagal Opening Report, p. 6). His report includes references to various industry materials that describe generally and specifically criticisms of video games where those games were deemed to fail to accurately or in detail represent the real-world individuals that they represent. (Ex. 1, Zagal Opening Report, p. 8-10).

Second, the soundness of the factual underpinnings of Dr. Zagal's opinion and the correctness of his conclusions is a matter for the trier of fact to determine. Defendants' attacks on the sufficiency of the underpinnings of Dr. Zagal's opinions, that he did not do independent surveys or interview Randy Orton, may be of interest to a jury, but those criticisms are not of the type that implicate the gatekeeper function of the Court. It is for a jury to decide whether the facts than an expert relies upon are sufficiently persuasive to warrant them giving meaning to his

testimony. "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Smith*, 215 F.3d at 718.

Because the Defendants have failed to show that Dr. Zagal has anything other than the type information that is relied upon by other experts in his field in forming an opinion on the same subject, their criticisms of the factual underpinnings of his opinions are for the jury and provide no justification for excluding any of his opinions.

### IV. Dr. Zagal Did Not Have to Disclose Bases for His Conclusions in His Reports

Federal Rule of Evidence 705 states that "Unless the court orders otherwise, an expert may state an opinion – and give the reasons for it – without first testifying to the underlying facts or data." Rule 705 further provides that "[t]he expert *may* be required to disclose those facts or data on cross-examination." (emphasis added). "'The purpose of these [expert] reports is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion ... so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary.'" *Metavante*, 619 F.3d at 762 (quoting *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir.2009)).

Defendants' claim that there were bases for Dr. Zagal's opinions that were not disclosed in his report is not even factually correct. Defendants' complaint is that Dr. Zagal "looked at" or materials that were not included as bases for his opinions in his report. Doc. 144, p. 17. But Dr. Zagal was not required to deem everything he saw a basis for his report, and Dr. Zagal was not required to cite each of the underlying facts informing his opinions in his reports. With regard to the specific issues at hand, Dr. Zagal chose and disclosed as relied upon the articles he deemed most representative. (Ex. 2, Zagal Dep., p210.) Rule 705 contemplates that testimony under

9

cross-examination will require an expert to discuss matters not expressly stated in his report by referencing cross-examinations. Where a deposition has been had and a party has been allowed to learn the bases of an expert's opinion, that the material was not included in an expert's report does not indicate reason to exclude the witness or its opinion. *Paradigm Sales, Inc. v. Weber Marking Sys., Inc.*, 880 F. Supp. 1247, 1251 (N.D. Ind. 1995). In *Paradigm*, the court found that the alleged infringer's failure to timely disclose a document in patent infringement case did not require exclusion of portion of damages expert's testimony based on that document, where patentee had ample opportunity to take expert's deposition and inquire into bases of his opinion. In this case, Defendants cannot even point to an undisclosed document—instead Defendants characterizes Dr. Zagal's admission that he read documents that were not included as relied upon in his report. There is no unfair surprise that an expert has looked at materials but did not include them in his materials relied upon when an expert does not intend to present those materials as the basis of his opinions.

Defendant falsely asserts that it should have been allowed to "determine the weight to which Dr. Zagal's opinion is entitled." Rather, "[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Smith*, 215 F.3d at 718 (citing *Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.")). Analyzing *Daubert*, The Seventh Circuit has explained that the factual underpinnings of expert testimony may be subject to counter-attack, and suggested that vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking expert testimony where the factual underpinnings are at issue. *Walker v. Soo Line R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000).

Exclusion of the opinion is not appropriate under those circumstances; the issue is merely one of weight for the jury. *Id.*

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Exclude the Testimony of Dr. Zagal should be denied.

Dated:  December 9, 2019                              Respectfully submitted,

*/s/ Anthony G. Simon*
Anthony G. Simon, IL 6209056
Benjamin R. Askew, IL 6291366
Anthony R. Friedman, IL 6299795
THE SIMON LAW FIRM, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri  63101
Phone:  (314) 241-2929
Fax:  (314) 241-2029
asimon@simonlawpc.com
basekew@simonlawpc.com
afriedman@simonlawpc.com

R. Seth Crompton
THE HOLLAND LAW FIRM
300 N Tucker, Suite 801
St. Louis, Missouri 63101
scrompton@allfela.com
Phone: (314) 241-8111
Facsimile: (314) 241-5554

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all counsel of record this 9th day of December, 2019 via the Court's CM/ECF system.

*/s/ Anthony G. Simon*