IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CATHERINE ALEXANDER,<br><br>    Plaintiff,<br><br>v.<br><br>TAKE-TWO INTERACTIVE SOFTWARE, INC., et al.<br><br>    Defendants. | Case No. 3:18-cv-0966-SMY<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

In Defendants' Motion for Summary Judgment, Defendants argue that Plaintiff has not presented any evidence of a "causal link" between the purported infringement and Defendants' revenues.  (*See* Doc. 142 at 20).  In the deposition of Defendant WWE, Vice-President Interactive Media Licensing Mr. Edward Kiang (Exhibit A, WWE Dep. 7:7-24) testified that WWE had an agreement with Take-Two Interactive Software, Inc. ("Take-Two") that obligated WWE to approve or disapprove of the subject video games *before* Take-Two could release and market the video games.  (Exhibit A, WWE Dep. 24:20-25; 25:1-6; 36:16-25; 37:1-8; 39:7-25; 40:1-3; 40:8-14; 40:17-18, 40:19-21; 40:24-25; 41:1-11, 43:7-12; 43:15-19; 43:24-25; 44:1.)

```
Pg. 67
1   Q  Okay. And, eventually, WWE approved the
2   Randy Orton talent model, is that right?
3   A  That's correct.
4   Q  Because without the WWE's approval, the
5   Randy Orton talent model would not have appeared
6   in the marketed video games, isn't that right?
7   A  That's correct.
```

WWE testified that part of its pre-release review process was to confirm that Randy Orton's "talent model" (the in-game representation of Randy Orton) looked like the real-life

1

Randy Orton.  (**Exhibit A,** WWE Dep. 42:6-25; 43:1; 44:1-16; 46:9-20; 49:23-25; 50:1; 50:7-11; 50:18-25; 51:1-24, 52:25; 53:1-5; 53:9-12; 65:4-25; 66:1-25; 67:1-7; 78:17-25; 79:1-11; 81:10-16; 82:4-12.)

> Pg. 49
> 23  Q Okay. So is one of the goals that WWE is
> 24  trying to achieve in its approval process
> 25  attempting to achieve an accurate representation
> 1   in comparison with the television programming? Is
> 2   that right?
> 7   A With respect to these games, I think one
> 8   of the goals is -- is to try to, again, give --
> 9   give the fans an authentic WWE experience that
> 10  represents what they're familiar with seeing in
> 11  our TV programming.

WWE's review process also included review of Randy Orton's tattoos to make sure they were accurate.  (Exhibit A, WWE Dep. 68:4-11; 72:9-12, 72:15-25; 73:1-5.)  Thus, WWE had to approve the subject video games before they could be released and sold, and that approval would have been <u>denied</u> if the tattoos on the Orton "talent model" in the video games were not accurate. (Exhibit A, WWE Dep. 67:8-10; 67:15-18; 68:9-11; 68:15-22; 68:25; 69:1-10; 69:15-18; 69:21-22; 70:6-25 71:1-5; 71:13-22.)

> Pg. 68
> 4   Q (By Mr. Friedman) Looking at the way in
> 5   which the Orton character exists in the WWE 2
> 6   Games, that Orton character contains tattoos,
> 7   isn't that right?
> 8   A That's correct.
> 9   Q So had that Orton talent model been
> 10  submitted to the WWE without any tattoos, would
> 11  WWE have approved it?
> .15 A No, it would not have been approved for
> 16  the uses that are, you know, within the standard
> 17  play of the game.
> Pg. 69
> 3   Q (By Mr. Friedman) All right. Given the
> 4   way in which the Orton character appears in the
> 5   WWE 2K Games, had that Orton character talent

2

>  6  model been submitted with tattoos that were
>  7  different from the tattoos Mr. Orton has in real
>  8  life, would the WWE have rejected that talent
>  9  model?
> 10  A That's correct.
> P. 70
>  6  Q (By Mr. Friedman) Why is it that WWE
>  7  would not have approved an Orton talent model that
>  8  lacked any tattoos?
>  9  A Because it would not have been an -- a
> 10  accurate depiction of Randy Orton the person.

Put simply, *but for* WWE's approval that the copyrighted tattoos were successfully copied on to the Orton "talent model," Take-Two could not have released and sold the infringing video games.

WWE further testified that WWE entered into an agreement with Randy Orton to use his name and likeness and WWE granted those rights to Take-Two to develop the video game. (Exhibit A, WWE Dep. 15:8-11; 15:14-19, 25:20-25; 26:2-4; 26:15-18, 29:19-22.)  WWE also testified that WWE has never sought a license for any of its wrestler's tattoos from a tattoo artist, such as Plaintiff.  (Exhibit A, WWE Dep. 31:17-21).  WWE testified that its wrestlers' tattoos are a recognizable feature by fans. (Exhibit A, WWE Dep. 76:4-6; 76:10; 76:21-23; 77:1-3.)

It is undisputed that if Take-Two had not copied the tattoos, then WWE would not have approved the release of the video games.  Therefore, absent the copying at issue here, the games could not have been released and marketed to the public and Defendants (WWE and Take-Two) would not have earned <u>any</u> revenues.  This clearly establishes the causal link required to entitle Plaintiff to Defendants' profits under 17 U.S.C. § 504(b).  *See Dash v. Mayweather*, 731 F.3d 303, 313 (4th Cir. 2013) (To survive summary judgment, Plaintiff must "provide 'more than mere speculation as to the existence of a causal link between the infringement and the claimed revenues.'") (*citing Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 520 (4th

3

Cir. 2003)); *see also Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 797 (8th Cir. 2003) (finding sufficient evidence that the infringing use contributed to the defendant's revenues to shift the burden to the defendant of showing what effect other factors had on its profits). This testimony also refutes Defendants' argument that the video game "talent model" did not need to be an authentic copy of the tattoos.

    For at least the foregoing supplemental reasons, Defendants' motion for summary judgment, including that Plaintiff has failed to show a causal link between the Defendants' infringement and profits should be denied.

Dated: August 27, 2020

Respectfully submitted,

*/s/ Anthony G. Simon*
Anthony G. Simon, IL 6209056
Anthony R. Friedman, IL 6299795
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Phone: (314) 241-2929
Fax: (314) 241-2029
asimon@simonlawpc.com
afriedman@simonlawpc.com

R. Seth Crompton
**THE HOLLAND LAW FIRM**
300 N. Tucker, Suite 801
St. Louis, Missouri 63101
scrompton@allfela.com
Phone: (314) 241-8111
Facsimile: (314) 241-5554

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was served upon all counsel of record via this Court's CM/ECF system on August 27, 2020.

*/s/Anthony G. Simon*