# **EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| CATHERINE ALEXANDER, | ) |
| Plaintiff, | ) ) ) |
| -vs- | ) ) ) |
| TAKE-TWO INTERACTIVE SOFTWARE, INC.; 2K GAMES, INC.; 2K SPORTS, INC.; WORLD WRESTLING ENTERTAINMENT, INC.; VISUAL CONCEPTS ENTERTAINMENT; YUKE'S CO., LTD.; AND YUKE'S LA, INC., | ) ) ) CASE NO. 3:18-CV-966-SMY ) ) ) ) |
| Defendants. | ) ) ) |

## DEFENDANTS' SUPPLEMENTAL RESPONSE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants moved for summary judgment that Plaintiff is not entitled to disgorgement of profits damages as a matter of law because there is no evidence in the record of a causal link between, on the one hand, the purported infringement (*i.e.*, the copying of five Tattoos that appear on Randy Orton in *WWE 2K*[1]), and on the other hand, Defendants' revenues.[2] Under the Supreme Court's *Celotex Corp. v. Catrett* decision, Plaintiff was thus required to come forward with evidence of such a causal link in response to Defendants' motion. 477 U.S. 317, 323 (1986). Plaintiff's initial opposition did not offer any relevant evidence establishing a causal

---

[1] On March 18, 2020, after Defendants submitted their motion for summary judgment, Dkt. 141, the Court dismissed Plaintiff's claim with respect to the tattoo titled "Bible Verse Design," Dkt. 176 at 6, reducing the number of tattoos at issue from six to five.

[2] Capitalized terms are given the same meaning used in Take-Two's Memorandum of Law in Support of Motion for Summary Judgment unless otherwise noted. Dkt. 142. WWE joined in Take-Two's motion. Dkt. 138.

link. Dkt. 165 at 19–20. Nor does her proposed supplemental response addressing the recent deposition of Edward Kiang, WWE's 30(b)(6) witness. Dkt. 208 ("Pl.'s Supp. Br."). Specifically, neither of these filings in opposition to Defendants' motion for summary judgment puts forward *any* evidence that *any* actual sales of *WWE 2K* were attributable to the Tattoos to refute the undisputed evidence (including a survey by expert Dr. Deborah Jay) demonstrating they were not.

While not supplying the missing causal link is fatal to Plaintiff's claim for disgorgement of profits, Mr. Kiang's deposition did show that Defendants' motion for summary judgment should be granted because he supplemented the already unrebutted testimony that (a) the purpose of including the Tattoos in *WWE 2K* was to accurately depict Mr. Orton, which is different from Plaintiff's original purpose in creating the Tattoos to reflect Mr. Orton's personal expression, and (b) there is no market for licensing the Tattoos in video games. *See* Dkt. 142 at 10, 16. This testimony buttresses Defendants' summary judgment argument that the Defendants' use of the Tattoos was fair use, not copyright infringement. Moreover, Mr. Kiang also confirmed that the Defendants are licensed rights to the Tattoos as part of Randy Orton's likeness. *Id.* at 8. Accordingly, Defendants respectfully request that their motion for summary judgment be granted in all respects.

I.      FACTUAL BACKGROUND

Plaintiff deposed WWE's corporate representative, Edward Kiang, on August 4, 2020, concerning various topics, including WWE's license with Take-Two and its rights under the license. *See* Pl.'s Supp. Br. Ex. A, at Ex. 1, p. 4 (Notice of 30(b)(6) Deposition Topics). For example, Mr. Kiang testified concerning WWE's right to approve Take-Two's use of WWE content, including "talent models, gear, arenas, lighting, music, entrance themes," and "anything that touches a WWE brand." *Id.* at 41:8–44:11. With respect to WWE's approval of the

2

wrestlers, Mr. Kiang was clear that WWE is "not looking specifically at tattoos. If we see that the model looks different than, say, reference photos that we have, we -- we'd note something's different." *Id.* at 59:4–8, 47:21–48:3 ("Typically what we're looking for is that it's an accurate representation of how that talent would appear in programming. So, you know, does the body shape look right? Is the haircut the current haircut? Is he wearing the proper gear for what his current gear is? When he's posed, is he doing a pose the way he would appear in the ring?"). Mr. Kiang further clarified that Randy Orton is but one wrestler "among the other 200 superstars in the game," *id.* at 43:5–6, and the reason that "WWE would have rejected a Randy Orton talent model that had tattoos that were different from the tattoos that Randy Orton has in real life" is simply because "it would not be an accurate depiction of Randy Orton." Pl.'s Supp. Br. 3 (quoting *id.* Ex. A at 70:11–16).

Mr. Kiang also testified concerning the contractual mechanism by which the WWE authorized Take-Two to depict WWE wrestlers, including Randy Orton, explaining that "WWE entered into an agreement with Randy Orton to use his name and likeness for a variety of products and video games, and we, in turn, have granted those rights to Take-Two in the development of the games of 2K Games." *Id.* Ex. A at 15:14–19.

## II. ARGUMENT

### A. Mr. Kiang's Testimony Does Not Supply the Missing Causal Link Required for Plaintiff to Pursue Disgorgement of Defendants' Profits

Plaintiff's supplemental brief argues that Mr. Kiang's testimony provides the missing causal link that would permit Plaintiff to pursue a disgorgement of profits theory. Pl.'s Supp. Br. 1–4. Plaintiff's argument is not supported by the law or what Mr. Kiang actually testified.

As to Plaintiff's legal arguments, her own cited cases underscore Plaintiff's heavy burden. As explained in *Dash v. Mayweather*, on which Plaintiff relies, where a defendant

3

argues on summary judgment that the "plaintiff has not presented sufficient evidence of a causal link between the infringement and the claimed revenues," the "plaintiff must respond by providing some 'non-speculative evidence that would . . . suggest a link between *the infringement* and the [defendant's] supposedly enhanced revenues.'" 731 F.3d 303, 330 (4th Cir. 2013) (emphasis added; quoting *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003)). Of particular note here, the court held that when the "infringing content forms only a small, incidental portion of the products that generated the claimed revenue streams, further evidence is necessary to link the claimed revenues to the infringement." *See Dash*, 731 F.3d at 332 (affirming summary judgment of no disgorgement of profit damages where there was no causal link between allegedly infringing entrance music being played during two wrestling events and consumers watching or purchasing the events).

Moreover, Plaintiff's citation to *Bouchat* is remarkable as it only serves to show why disgorgement is not available here. That case involved a football team that used a logo design on its team helmets without permission, and then the helmets were depicted on players in video games. 346 F.3d at 525–26. The Fourth Circuit affirmed a summary judgment ruling that no damages were available to the plaintiff for sale of the video games because "it defies credulity that a consumer would purchase NFL . . . video games, so as to see the [infringing] logo on the simulated Ravens players." *Id.* at 526 n.10.[3]

---

[3] The only other case Plaintiff cites in her brief is inapposite. In *Andreas v. Volkswagen of America, Inc.*, the court upheld a damages award where "[t]he infringement was *the centerpiece* of a commercial that essentially showed nothing but the [revenue-generating product]." 336 F.3d 789, 796–97 (8th Cir. 2003) (emphasis added). In sharp contrast, it is unrebutted that the Tattoos are not a centerpiece of *WWE 2K* as they rarely appear in the games and, when they do, they are smaller than in real life and dwarfed by the games' other auditory and visual elements. Dkt. 142 at 18–19.

4

As in *Dash* and *Bouchat*, the unrebutted evidence in this case shows that there is no causal link between the Tattoos' designs and the Defendants' sales. As Dr. Jay's unrebutted survey establishes, no consumers purchased *WWE 2K* because of the Tattoos. Dkt. 142-10, at App. A, p. 22. Mr. Kiang's testimony does not provide the missing causal link as he merely testified that WWE, like Take-Two, is focused on depicting real life accurately in *WWE 2K*. Pl.'s Supp. Br. Ex. A at 47:21–48:3 (WWE is focused on creating an "accurate representation"). Even his testimony that WWE would not approve *WWE 2K* if they were not accurate, Pl.'s Supp. Br. 3, does not tie purchases of *WWE 2K* to Plaintiff's Tattoo designs. As Mr. Kiang testified, Mr. Orton is one of "200 superstars in the game," *id.* Ex. A. at 43:5–6, and the wrestlers are one of many different in-game elements that are subject to WWE approval, including "gear, arenas, lighting, music, entrance themes," and "anything that touches a WWE brand." *Id.* at 41:8–44:11. The law is clear that this is insufficient to support a causal link. *See Bouchat*, 346 F.3d at 516–17 (NFL developed the infringing logo and granted rights for it to appear in the video game and "every aspect of the Ravens' activities"). Thus, Plaintiff has come forward with no evidence establishing a causal link between the Tattoos and any sales of *WWE 2K*. Based on her own cited cases, Plaintiff's claim for disgorgement of profits fails as a matter of law. *Dash*, 731 F.3d at 332; *Bouchat*, 346 F.3d at 525–26.[4]

Moreover, in addition to lacking a causal link, Plaintiff did not rebut Defendants' evidence "that all of the claimed revenues are attributable to factors other than the infringement."

---

[4] Plaintiff also argues that "WWE testified that its wrestlers' tattoos are a recognizable feature by fans." Pl. Supp. Br. 3. But being "recognizable" also does not support a causal link. The defendants in *Bouchat* did not dispute that the infringed NFL logo was "recognizable," indeed it was their "primary identifying symbol," *Bouchat*, 346 F.3d at 517, yet they were still entitled to summary judgment of no disgorgement of profits because the logo did not lead to the profits that the plaintiff sought to disgorge. *Id.* at 525–26.

5

*Dash*, 731 F.3d at 331.  Defendants presented fact and expert testimony, as well as unrebutted survey evidence showing that *WWE 2K* was purchased for numerous reasons, none of which were the tattoos.  Dkt. 142, at 20.  Mr. Kiang's testimony does not address this point.  As Plaintiff failed to rebut Defendants' evidence, Defendants' motion should be granted for this independent reason.  *See Dash*, 731 F.3d at 331("If the revenues have some reasonable causal link to the infringement, but the evidence shows that they are attributable to other factors, the plaintiff will have satisfied his burden of demonstrating a causal link but failed to rebut the defendants' evidence that the revenues are not attributable to the infringement.").

### B. Mr. Kiang's Testimony Supports Granting Summary Judgment to Defendants

In addition to not providing Plaintiff with the causal link that she needs to survive Defendants' motion for summary judgment on damages, Mr. Kiang's testimony also underscores why Defendants' motion should be *granted* on liability for two separate and independent reasons.

*First*, as Take-Two explained in its summary judgment brief, it depicted the Tattoos in *WWE 2K* to depict Mr. Orton as he looks in real life, and their inclusion is incidental to the underlying goal of realism.  Dkt. 142 at 10.  Because that purpose was different than Plaintiff's purpose in reflecting Mr. Orton's personal expression, it supports a finding of transformativeness and fair use.  *See Neri v. Monroe*, No. 11 Civ. 429, 2014 WL 793336, at *6 (W.D. Wis. Feb. 26, 2014) (purpose of sculpture to "beautify" different from defendant's use to "document"); *Kienitz v. Sconnie Nation LLC*, 965 F. Supp. 2d 1042, 1050 (W.D. Wis. 2013) (plaintiff's candid, serious photograph served different purpose from defendant's use for "sophomoric humor"), *aff'd*, 766 F.3d 756 (7th Cir. 2014).  Mr. Kiang's testimony confirms that depicting real life accurately in *WWE 2K* was Defendants' goal as evidenced by WWE basing its approval, in part, on whether

6

the games accurately represented WWE wrestling and are "an accurate representation of how that talent would appear in programming." Pl.'s Supp. Br. Ex. A at 47:21–23. Depicting Randy Orton differently than he appears in real life—including without his tattoos, which are part of Mr. Orton's "likeness," *id.* at 29:19–22—"would not be an accurate depiction." *Id.* at 70:11–16.

Take-Two also explained that *WWE 2K* makes fair use of the Tattoos because there is no market for licensing the Tattoos in a video game, as the unrebutted testimony of Take-Two's video game, tattoo, and damages experts reflects. Dkt. 142, at 16. Mr. Kiang's testimony that WWE has never "sought a license for any of its wrestler's tattoos from a tattoo artist . . . within the scope of video games licensing," Pl.'s Supp. Br. Ex. A, at 31:17–21, only underscores that no such market exists and, thus, summary judgment of fair use is appropriate. *Neri*, 2014 WL 793336, at *9 ("[D]efendants' activities could not have affected a non-existent market.").

*Second*, Mr. Kiang's testimony confirms that the Defendants are licensed rights to the Tattoos. As he testified, "Mr. Orton's tattoos [are] part of his likeness," Pl.'s Supp. Br. Ex. A at 29:19–22, and "WWE entered into an agreement with Randy Orton to use his name and likeness for a variety of products and video games, and we, in turn, have granted those rights to Take-Two in the development of the games of 2K Games." *Id.* at 15:14–19. Thus, Defendants are licensed to the Tattoos, and Plaintiff is foreclosed from bringing an infringement claim. *Great Minds v. FedEx Office & Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996).

### III. CONCLUSION

To the extent that this Court considers Mr. Kiang's testimony in deciding Defendants' motion for summary judgment, Defendants respectfully submit that it actually shows that Plaintiff's copyright claim fails as a matter of law, and that Defendants are entitled to summary judgment with respect to the issue not only of liability but also with respect to the issue of

damages and profits. Accordingly, Defendants respectfully request that the motion for summary judgment be granted in its entirety.

Dated: September 10, 2020

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

*/s/ Dale M. Cendali*
Dale M. Cendali (admitted *pro hac vice*)
Joshua L. Simmons (admitted *pro hac vice*)
Christopher T. Ilardi (admitted *pro hac vice*)
Miranda D. Means (admitted *pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com
miranda.means@kirkland.com

Michael J. Nester (#02037211)
Donovan Rose Nester P.C.
15 North 1st Street, Suite A
Belleville, Illinois 62220
Telephone: (618) 212-6500
mnester@drnpc.com

*Attorneys for Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts Entertainment*

*/s/ Jerry McDevitt* (with consent)
Jerry McDevitt (admitted *pro hac vice*)
Curtis Krasik (admitted *pro hac vice*)
K&L Gates LLP
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-8608
jerry.mcdevitt@klgates.com
curtis.krasik@klgates.com

        Michael J. Nester (#02037211)
Donovan Rose Nester P.C.
15 North 1st Street, Suite A
Belleville, Illinois 62220
Telephone: (618) 212-6500
mnester@drnpc.com

*Attorneys for World Wrestling Entertainment, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| CATHERINE ALEXANDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) |
| TAKE-TWO INTERACTIVE SOFTWARE, INC., | ) |
| 2K GAMES, INC.; 2K SPORTS, INC.; WORLD | ) Case No. 3:18-cv-966-SMY |
| WRESTLING ENTERTAINMENT, INC.; | ) |
| VISUAL CONCEPTS ENTERTAINMENT; | ) |
| YUKE'S CO., LTD.; AND YUKE'S LA, INC., | ) |
| | ) |
| Defendants. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2020, I electronically filed the foregoing **Defendants' Supplemental Response In Support Of Defendants' Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Anthony G. Simon | asimon@simonlawpc.com |
| Benjamin R. Askew | baskew@simonlawpc.com |
| Anthony R. Friedman | afriedman@simonlawpc.com |
| Carrie L. Roseman | croseman@simonlawpc.com |
| R. Seth Crompton | scrompton@allfela.com |
| Tracey Blasa | tblasa@allfela.com |
| Jerry McDevitt | jerry.mcdevitt@klgates.com |
| Curtis Krasik | curtis.krasik@klgates.com |

*/s/ Dale M. Cendali*
Dale M. Cendali (admitted *pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
dale.cendali@kirkland.com

*Attorney for Defendants 2K Games, Inc., 2K Sports, Inc., Take-Two Interactive Software, Inc., Visual Concepts Entertainment*