IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CATHERINE ALEXANDER, <br><br> Plaintiff, <br><br> v. <br><br> TAKE-TWO INTERACTIVE SOFTWARE, INC., et al. <br><br> Defendants. | Case No. 3:18-cv-0966-SMY <br><br> JURY TRIAL DEMANDED |

**<u>PLAINTIFF'S RESPONSE TO DEFENDANTS' OMNIBUS MOTION IN LIMINE</u>**

# **TABLE OF CONTENTS**

I. Response to Defendants' Motion to Exclude Evidence, Testimony, or Arguments Concerning Defendants' Revenues and Profits ........................................................................ 1

II. Response to Defendants' Motion to Exclude Evidence, Testimony, or Argument Regarding Marketing, Advertising, or Critical Reception for *WWE 2K* Video Games Other than *WWE 2K16*, *WWE 2K17*, and *WWE 2K18*.................................................................................... 3

III. Response to Defendants' Motion to Exclude Evidence, Testimony, or Argument Concerning Statements Made by Randy Orton in Online Articles as Hearsay ....................... 6

IV. Response to Defendants' Motion to Exclude Evidence, Testimony, or Argument Concerning Plaintiff's 2009 Phone Call to WWE ..................................................................... 8

V. Response to Defendants' Motion to Exclude Evidence, Testimony, or Argument Concerning Randy Orton's Number of Social Media Followers............................................ 12

VI. Response To Defendants' Motion to Exclude Mr. Ryan Clark's Testimony Relying On Dr. Zagal's Expert Opinions if Defendant's *Daubert* Motion is Granted................................... 13

Plaintiff respectfully requests this Court deny Defendant's omnibus motion in limine for the reasons set forth below.

I. **Response to Defendants' Motion to Exclude Evidence, Testimony, or Arguments Concerning Defendants' Revenues and Profits**

Defendants' first motion in limine seeking to prevent Plaintiff from presenting evidence of her damages should be denied. The Copyright Act permits a plaintiff to recover an infringer's profits that are "attributable to the infringement...." 17 U.S.C. § 504(b). The Act specifies that "[i]n establishing the infringer's profits, the copyright owner is **required to present proof only of the infringer's gross revenue**, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *See Id.* (emphasis added); *Bell v. Taylor*, 827 F.3d 699, 710 (7th Cir. 2016). Defendants' contention that Defendants' revenue and profit are somehow irrelevant is contrary to the well-established tenants of copyright law.

Evidence of Defendants' gross revenue and profits, as required by 17 U.S.C. § 504(b), cannot be excluded because, although the burden rest with Plaintiff to establish a causal connection, Seventh Circuit law is clear that this burden may be met with a minimal causal connection. *Bergt v. McDougal Littell*, 661 F. Supp. 2d 916, 927 (N.D. Ill. 2009). Here, as in *Bergt*, Plaintiff has met the burden in showing a causal connection between profits and the infringement by showing, with sworn testimony of Defendant World Wrestling Entertainment Inc.'s ("WWE") 30(b)(6) witness, that WWE would not have approved *WWE 2K16*, *WWE 2K17*, and *WWE 2K18* (collectively, the "Infringing Games") for sale absent inclusion of the Dove, Rose, Skulls, Tribal, and Tribal Addition tattoos inked on Mr. Orton by Plaintiff (the "Tattoos"). (Ex. A (Kiang Dep. at 52:25–55:4)). Thus, *but for* inclusion of the Tattoos in the Infringing Games, the Infringing Games never would have been sold. In the Seventh Circuit, a causal

connection is shown when the copyright holder provides a figure limited to the profit stream resulting from the infringement and demonstrates a minimal causal connection. *Bergt*, 661 F. Supp. 2d at 927. Plaintiff has met her burden. Critically, a plaintiff **is not** required to prove that a buyer's decision to purchase the infringing work was made solely on the inclusion of the copyrighted material. *See id.* at 928 n.8 (plaintiff not required to prove that any purchasers bought the textbook because his painting was included). Plaintiff obtained, through discovery, sworn deposition testimony from Defendant WWE that the Infringing Games would not have been approved for sale absent the Tattoos. Plaintiff obtained, through discovery, revenue numbers that are limited to sale of the Infringing Games. Therefore, as a matter of law, Defendants' revenue from the Infringing Games is relevant.

Once liability for copyright infringement has been shown, as it has been here, § 504(b) of the Copyright Act creates an initial presumption that the infringer's "profits . . . attributable to the infringement" are equal to its gross revenue. *Francois v. Ruch*, 2006 WL 3735950, at *3 (C.D. Ill. Dec. 15, 2006). Once the copyright owner establishes the gross revenue, the burden shifts to the infringer to show that its revenue was "attributable to factors other than the copyrighted work." *See* § 504(b). *Id*. Plaintiff has shown more than required through, among other things, Defendants' own admissions that Defendants copied Plaintiff's Tattoos and reproduced them in the Infringing Games and, further, that Defendants would not have approved the sales of the Infringing Games but for such copying. (Ex. B (Take-Two Dep. (Little)) at 149:1–13; 164:23–165:3; Ex. A at 74:2–9). Defendants' first motion *in limine* should be denied on this basis alone.

Defendants' additional arguments are duplicative of their summary judgment arguments. As discussed above, Plaintiff is properly seeking damages under a "disgorgement theory" pursuant to Section 504(b). Therefore, evidence regarding Defendants' revenues is critical and

necessary for the jury to consider. As such, evidence of Defendants' revenues cannot be "confusing" to the jury. Defendants' first motion *in limine* should be denied.

**II.     Response to Defendants' Motion to Exclude Evidence, Testimony, or Argument Regarding Marketing, Advertising, or Critical Reception for *WWE 2K* Video Games Other than *WWE 2K16*, *WWE 2K17*, and *WWE 2K18***

Defendants' second motion seeking to exclude the relevant Infringing Games history, and their context in the Infringing Games' franchise, should be denied.

Defendants' second motion *in limine* ignores the fact that WWE, who had control over the WWE videogame franchise before Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts, Inc. (the "Take-Two Defendants") developed the Infringing Games, is also a Defendant in this action. It also ignores the fact that the Take-Two Defendants relied heavily on assets created for previous games by Yuke's Co. Ltd. when designing the Infringing Games. *See* (Ex. B at 68:5–17) (describing the relationship between Visual Concepts and Yuke's, the previous developer of the WWE series of games). This relationship included the Take-Two Defendants publishing and advertising games that were being developed in collaboration with Yuke's. (*Id.* at 77:6–13.) Previous marketing and advertising for the WWE series of games depicts Randy Orton. Therefore, the previous games were highly relevant **at least** to: (a) describe the development of the Infringing Games; (b) describe how the Infringing Games were advertised; (c) describe the history of the relationship between WWE and the Take-Two Defendants; (d) demonstrate the centrality of Mr. Orton to the videogame franchise and to the wrestling community; and (e) demonstrate WWE's involvement and causation of Plaintiff's damages. For these reasons, this Court should deny Defendants' motion.

Defendants further argue that Plaintiff's expert Dr. Jose Zagal's reliance upon earlier-released WWE or wrestling themed videogames "have no bearing on any issues in this Litigation." Doc. 212 at 10.  Defendants are thereby re-arguing their *Daubert* motion, to which

3

Plaintiff previously responded. This evidence should be not be excluded as not relevant. "The relevance threshold is low as the evidence need only 'tend' to make the fact of consequence more probable, thus requiring merely a rational connection between the evidence offered by the litigant and the fact of consequence the litigant intends to establish." *Int'l Merger & Acquisition Consultants, Inc. v. Armac Enter. Inc.,* 531 F.2d 821, 823 (7th Cir. 1976). Dr. Zagal's testimony regarding Mr. Orton's appearance on the cover of *WWE '12* demonstrates the importance of Randy Orton in the world of WWE videogame wrestling and his contributions to the success, sales, and profits of the *WWE 2K* videogames, including the Infringing Games. Statements by Mr. Orton regarding the development process and realism in the videogames demonstrate the importance to videogame publishers, such as the Defendants, that in-game characters be depicted as realistic as possible. The YouTube fan compilations cited by Dr. Zagal demonstrate how the appearance of Mr. Orton's videogame character relates directly to the critical reception and financial success of WWE videogames and the importance of Mr. Orton's appearance in the videogames to WWE fans and consumers. Moreover, Dr. Zagal is entitled rely on all these sources in rendering his opinions, which sources are those typically relied on for such analyses.

Defendants also incorrectly argue that Dr. Zagal's references to earlier-released WWE videogames are likely to confuse the jury into believing that "the entire lineup of WWE video games since the early 2000s is attributable to the Take-Two Defendants" or "that Plaintiff is asserting copyright claims against those games." Doc. 212 at 11. Dr. Zagal makes clear in his discussion of the earlier-released videogames that they are published by a separate company and not the Take-Two Defendants. Dr. Zagal does not claim that videogames released by any separate company or earlier-released games are attributable to the Take-Two Defendants but rather uses the games to emphasize importance of a true-to-life portrayal of Mr. Orton to satisfy

4

consumer demand and launch a successful videogame. Dr. Zagal's discussion of the earlier-released games will further illuminate to the jury the relationship between an accurate and faithful portrayal of the Tattoos in WWE videogames and the critical reception and success of those games, including the Infringing Games. At the very least, this alleged source of confusion may be easily and completely dealt with via cross examination at trial by Defendants' skilled counsel.

Defendants also contend that discussion of the earlier-released games would unfairly prejudice Defendants by "suggesting that Defendants also owe damages for the appearance of the Tattoos on Mr. Orton" in the earlier-released games. Rule 403 requires exclusion only where the evidence's probative "value is substantially outweighed by a danger of unfair prejudice." FED. R. EVID. 403. This lenient standard favors the admission of evidence. S*ee United States v. Krenzelok*, 874 F.2d 480, 482 (7th Cir. 1989) ("[W]hen the trial judge is in doubt, Rule 403 requires admission."). As stated previously, Dr. Zagal's discussion of the earlier-released games does not suggest that the Take-Two Defendants owe damages for the appearance of the Tattoos on Mr. Orton in those games, and Dr. Zagal does not use the evidence for that reason. Rather, the purpose of the discussion of earlier-released games is to demonstrate to the factfinder that an accurate depiction of Mr. Orton, including the Tattoos, is critical to the positive reception and commercial success of WWE videogames. The probative value (which is very high) of this evidence is not outweighed by the danger of unfair prejudice (which is low) as Dr. Zagal's testimony does not suggest what Defendants claim. Defendants' second motion in limine should be denied.

### III.  Response to Defendants' Motion to Exclude Evidence, Testimony, or Argument Concerning Statements Made by Randy Orton in Online Articles as Hearsay

Defendants' motion seeking to exclude statements by Randy Orton—a critical third party in this litigation—on relevant topics should be denied.

As an initial matter, Mr. Orton's statements, relied upon by Plaintiff's expert Dr. Zagal, are relevant. Evidence is relevant if "it has a tendency to makes a fact [at issue] more or less probable that it would be without the evidence." FED. R. EVID. 401(a). Dr. Zagal relies on Mr. Orton's statements to illustrate the extent to which consumers care about Mr. Orton's appearance in the videogames, and the efforts videogame publishers, such as Defendants, will take to satisfy the demand for realism. Such evidence also provides some data on the extent to which consumers are perceived to care about the appearance of WWE Superstars in the *WWE 2K* Games. Mr. Orton's perceptions of his character relate directly to the critical reception and commercial success of WWE videogames, including the Infringing Games.

Defendants' Rule 403 argument to exclude Mr. Orton's statements also fails. Evidence is "unfairly prejudicial," only if it will induce the jury to decide case on an improper basis, commonly an emotional one, rather than on evidence presented. *See* FED. R. EVID. 403 advisory committee's note to 1972 amendment. Dr. Zagal makes clear when discussing Mr. Orton's statement concerning an earlier-released videogame published by THQ that the videogame was published by THQ. Dr. Zagal does not claim that this videogame or other earlier-released videogames are attributable to the Take-Two Defendants and will not do so at trial. Rather, Mr. Orton's statement is included to exemplify to the jury the importance of a realistic representation of Mr. Orton in WWE-themed videogames. Therefore, the risk of prejudice is low and the probative value is high.

Mr. Orton's statements are not hearsay. Plaintiff are not offering them for the truth of the matters asserted. Rather, they would be used to demonstrate their effect on the videogames and the importance of wrestler perceptions to broader consumer approval.

In addition, the level of control over Mr. Orton enjoyed by WWE demonstrates that Mr. Orton was an agent of the WWE. Defendants argue that Mr. Orton's statements in Dr. Zagal's expert report are "inadmissible hearsay (and hearsay within hearsay) under Rules 801 and 802." Doc. 212 at 12. Defendant states that "Mr. Orton is not . . . an employee of WWE," (Doc. 212 at 12), however, Mr. Orton is at least an independent contractor of WWE.[1] (Ex. C (Randal Orton WWE Booking Contract) ¶ 13.1 (the "Booking Contract")). Under Rule 801(d)(2)(D), a statement is not hearsay if it was made by the party's agent or employee on a matter within the scope of that relationship, while it existed. Independent contractors may be agents, and an agent does not have to be an employee. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013); *see also Howard v. Abdellatif,* No. 2:05-CV-81, 2008 WL 5411775, at *4 (W.D. Mich. Dec. 23, 2008) (holding that physician's statements still counted as admissions because employment status as an independent contractor does not preclude him from role of agent). "An independent contractor can be an agent if, and to the extent that, the contractor acts for the benefit of another and under its control in a particular transaction." *State Police Ass'n of Massachusetts v. Comm'r*, 125 F.3d 1, 7 (1st Cir. 1997); *see also* Restatement (Second) of Agency §§ 2, 14N (1957). Per the Booking Contract, Mr. Orton may not work or perform in any

---

[1] This Court need not reach the issue of whether or not Mr. Orton is actually an employee of the WWE to resolve this motion in Plaintiff's favor. However, Plaintiff notes that the extensive control exerted over Mr. Orton by the WWE and the nature of the relationship depicted in the Booking Contract are more consistent with that of an employer/employee relationship than an independent contractor relationship. *See*, *e.g.*, Ex. C ¶ 5.1 (exclusivity agreement between Orton and the WWE); *Id*. ¶ 7.1 (providing for payment of a salary to Mr. Orton); *Id*. ¶¶ 8.1–8.4 (obligating the WWE to obtain licenses to conduct professional wrestling exhibitions involving Mr. Orton; pay for overhead costs of performances, exploitation of footage, and merchandising activities; schedule events and book Mr. Orton to appear at the events, including selecting the time and place of such events); *Id.* ¶ 9.14 (a second exclusivity agreement).

capacity for any other martial arts or wrestling organization or entity not owned or controlled by WWE. Ex. C ¶ 9.14. WWE is granted exclusive worldwide rights to Mr. Orton's services, appearances, and performances in the entertainment industry. *Id.* ¶ 5.1. WWE has the sole discretion to book Mr. Orton in wrestling matches and other events. *Id.* ¶ 8.3. In order to participate in other appearances, Mr. Orton may only do so with WWE's express and written approval. *Id.* ¶ 5.2. The tight control WWE retains over Mr. Orton in his contractual obligations support a determination that an agency relationship exists between Mr. Orton and WWE. *See State Police Ass'n of Massachusetts*, 125 F.3d at 7 (finding that police association had an agency relationship with outside firms because it retained very tight control over the method and manner of solicitation, the ingredients of the sales pitch, the identity of the solicitors, the financial aspects of the arrangement, the use of its name, and the advertising formats). Given that the statements by Mr. Orton were made while contracted by WWE and discussing WWE videogames (a topic on which he was authorized, and sometimes required, to speak), the statements are not hearsay under Federal Rule of Evidence 801(d)(2)(D).

**IV.     Response to Defendants' Motion to Exclude Evidence, Testimony, or Argument Concerning Plaintiff's 2009 Phone Call to WWE**

Defendants' fourth motion in limine seeking to exclude evidence regarding a phone call made between Plaintiff and Defendant WWE prior to this litigation. Plaintiff's call to WWE is (1) relevant; (2) not hearsay; (3) not prejudicial; and (4) certainly not a settlement negotiation that would be excluded by Federal Rule of Evidence 408.

The call between Plaintiff and a representative of WWE is clearly relevant to this matter under the "any tendency" standard described in Federal Rule of Evidence 401. Defendants argue this evidence concerns a "completely different work in a completely different context." Doc. 212 at 10. This is incorrect and Defendants omitted the critical fact that Plaintiff will testify that

8

WWE offered to pay Plaintiff to license her Tattoos. The phone call concerned the WWE's use of **the very Tattoos at issue in this lawsuit**. Defendants' contention that Defendant WWE's offer to pay money to license the very Tattoos at issue in this lawsuit is irrelevant is not credible when Defendants now contend there is no market for licensing Tattoos.

Defendants rely on *West v. Perry* to claim that evidence concerning a defendant's "other works" is "not probative" and should therefore be excluded. Doc. 212 at 14. However, Defendants' assertion that the faux sleeves are "other works" is not in accord with *West's* holding. In *West*, the issue was whether defendants could offer their own other copyright registrations in their defense to plaintiff's copyright infringement claim. *West v. Perry*, No. 2:07CV200, 2008 WL 5071109, at *3 (E.D. Tex. Nov. 25, 2008). The court held defendant's other copyright registrations to be irrelevant as those did not pertain to the issues being litigated, and therefore evidence of defendant's "other works" (defendant's own copyrights) were not probative and irrelevant. *Id*.

Here, the phone call does not relate to the same type of "other works" of the Defendants as described in *West*. The phone call relates to the Tattoos (the copyrighted Tattoos at issue in this case) as well as WWE's contemplated creation of the faux sleeves and its offer to license the Tattoos from Plaintiff. Additionally, the faux sleeve does not constitute "other works" as described in *West* as those are not Defendants' copyrights.

Defendants further argue that the phone call is not relevant to their fair use defense. Plaintiff contends that Defendants' infringement does not fall under the fair use doctrine, but nevertheless, the phone call tends to rebut it. The reason is that Defendants too narrowly define the market for the copyrighted works (the fourth fair use factor) as the licensing of tattoos for use in videogames. The Supreme Court has made clear, however, that the inquiry of harm to the

market must take into account the original work, as well as the markets for derivative works. *Campbell v. Acuff-Rose Music, Inc.* 510 U.S. 569, 590 (1994) (citing *Harper & Row*, 471 U.S. at 569). The market is thus broader and includes licensing tattoo works generally, not just for videogames. Defendants' narrow construction of the market does not consider derivative works and how those markets would be harmed. The phone call tends to show that derivative markets for tattoo works exist and, indeed, show an example of Plaintiff's attempted entrance into that market. The phone call between Plaintiff and WWE is relevant to at least the fair use analysis as it is probative of the following facts: (1) a market for licensing tattoos; (2) Plaintiff's awareness of the market and desire to capitalize on it; (3) harm to Plaintiff, and the market, through Defendants' infringing activities; and/or (4) Defendants' acknowledgement that such a market or markets exist.

Second, the phone call, or more specifically what was said by the WWE representative to Plaintiff, is not hearsay, as Defendants contend. Evidence is only hearsay if it is offered to prove the truth in the matter asserted. FED. R. EVID. 801(c)(2). Here, Plaintiff is not offering evidence of the phone call to prove truth of the matter asserted. Rather, Plaintiff is offering evidence of the call to describe her own experiences with attempting to license her Tattoos, her experiences in the market (or nascent market) for licensing tattoos for faux sleeves, and to describe her earliest experiences with the WWE. Additionally, under Fed. R. Evid. 801(d)(2), any statements made in the phone call to Plaintiff by the representative of WWE is clearly an opposing party's statements and not hearsay.

Third, evidence of the phone call will not confuse the jury or cause unfair prejudice, contrary to Defendants' contention. Specifically, Defendants argue that introduction of the call (and in turn the faux sleeve) will cause the jury to confuse the issues between the contemplated

faux sleeve and the infringing works. This is not credible as the differences between the Infringing Games and apparel are self-evident.

In support of their argument, Defendants cite *John Wiley and Sons,* which found that given the staggering number of infringing works the jury was already asked to wade through, it would have confused the jury to introduce additional book titles that were not at issue. *John Wiley and Sons v. Book Dog Books, LLC*., 2017 WL 10844685, at *3 (S.D.N.Y. Dec. 8, 2017). Unlike *John Wiley*, however, it is clear here that the introduction of the phone call into evidence would not cause sufficient confusion to substantially outweigh the probative value of the evidence because there is not already "a staggering number" of infringing works in this case. Further, the faux sleeves are a categorically different product type than videogames, unlike in *John Wiley* where all products at issue were books. Additionally, while copyright infringement by the faux sleeves is not at issue in this case, evidence of the phone call is key portion of Plaintiff's case-in-chief and highly probative of at least Plaintiff's attempted entrance into the market for licensing her tattoos and, indeed, of the market for licensing tattoos itself.

Finally, Defendants contend the phone call was part of settlement negotiations and as such should be inadmissible under Federal Rule of Evidence 408. They base this on the fact that Plaintiff testified that she made the call to negotiate payment for WWE's use of the Tattoos. However, this is an incorrect interpretation of the law governing the admissibility of settlement negotiations. The actions by Plaintiff in calling WWE do not constitute negotiating settlement because: (1) no claim had arisen when Plaintiff made the phone call, see *Big O Tire Dealers, Inc. v. Goodyear Tires and Rubber Co*. 561 F.2d 1365, 1373 (10th Cir. 1977) (holding that simple "business negotiations" absent threatened litigation is not a settlement negotiation because no claim has arisen); (2) Plaintiff approached WWE unilaterally, see *Lee Middleton Original Dolls,*

*Inc. v. Seymour Mann. Inc.*, 299 F.Supp.2d 892, 895-96 (E.D. WI 2004) (holding one party approaching the other without the second party's knowledge of settlement negotiations is not settlement negotiations); and (3) there is no evidence that Plaintiff was speaking with someone who had the power to negotiate and settle claims. In fact, WWE's claim that it has no recollection of the call shows it never perceived or understood this call to be a settlement offer. Therefore, evidence of this phone call should not be deemed inadmissible under Rule 408 as a settlement negotiation.

Therefore, for the above stated reasons, Defendants' motion to exclude evidence, testimony, and arguments relating to the 2009 phone call between Plaintiff and WWE should be denied.

V. **Response to Defendants' Motion to Exclude Evidence, Testimony, or Argument Concerning Randy Orton's Number of Social Media Followers**

Defendants' fifth motion in limine is yet another tired attempt to relitigate its pending *Daubert* motion and should be denied. Facts regarding Randy Orton's social media presence, especially his number of followers, are relevant under Federal Rule of Evidence 401 because they tend to make more probable the fact that Randy Orton is an extremely popular wrestler and individual, especially when compared with other publicly accessible social media metrics. Popularity and prominence of a wrestler (and videogame character) is relevant to that wrestler's appeal to the consuming public and ultimately to sales.  As Plaintiff's expert wrote in his opening expert report, "[v]ideogame companies use verisimilitude [realism] to promote and sell their games – highlighting improved visuals and accuracy." Ex. D, (Zagal Opening Report) at 9. Although perhaps an imperfect metric, the number of social media followers Mr. Orton enjoys has a tendency to make more or less likely that fans would notice (or care) if the Tattoos were not accurately reproduced. The more fans who are familiar with and care about Mr. Orton's

appearance, the more important Mr. Orton is to the wrestling universe as a whole. Testimony of Defendants' own witnesses establishes the importance of realism to the *WWE 2K* Games. (Ex. B at 99:23–100:2, 159:19–16:14; Ex. A at 49:15–51:10).

Introducing evidence of Randy Orton's social media followers will not result in the jury having to make a speculative leap. To begin with, even if it did, circumstantial evidence is admissible to the same extent as direct evidence, as "[d]irect and circumstantial evidence are the same in principle." *Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997). Further, Defendants' characterization of Dr. Zagal's report misrepresents the point of Dr. Zagal's argument and use of social media metrics. Popularity of a wrestler is indisputably an important factor in making the determination as to whether or not to include that wrestler in the Infringing Games. However, popularity is an amorphous concept that cannot be directly measured. Therefore, in order to demonstrate the not-even-disputed popularity of Mr. Orton, and thus his importance to the Infringing Games, Dr. Zagal looks to external and organic metrics such as social media presence. Such information will not lead to jury confusion because it does not suggest other potential sources of liability for Defendants or provide evidence to the jury that will bias it towards Defendants. Indeed, standing alone, evidence regarding Mr. Orton's social media following is certainly not outcome determinative. Like much of the other evidence Defendants seek to omit through their motions in limine, thoughtful advocacy by counsel during cross examination is the proper method for dealing with any alleged confusion, not a pretrial ruling.

**VI.    Response To Defendants' Motion to Exclude Mr. Ryan Clark's Testimony Relying On Dr. Zagal's Expert Opinions if Defendant's *Daubert* Motion is Granted**

Defendants' sixth motion in limine is contrary to established Seventh Circuit law on the evidence experts may rely on and should be denied.

13

Mr. Clark's expertise is in the field of financial reporting requirements, management consulting, corporate finance, and valuation. He should be permitted to rely on Dr. Zagal's opinion, even if Dr. Zagal is excluded, for two reasons: (1) experts may rely on inadmissible evidence, including inadmissible expert testimony, and (2) Mr. Clark does not rely solely on Dr. Zagal's opinion when forming his opinions.

Experts may rely on inadmissible evidence. Here, Mr. Clark is offering analysis of the validity and reliability of the opinions of Defendants' damages expert, James Malackowski. Seventh Circuit law is clear: Mr. Clark is permitted to rely on the opinions of other experts in forming his opinion, even if said experts cannot testify at trial. *See, e.g.*, *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, No. 12-CV-5836, 2017 WL 2178504, at *4–5 (N.D. Ill. May 16, 2017) (valuation expert permitted to rely on opinion of other expert who would not testify at trial where valuation expert would use other opinion within valuation expert's area of expertise); *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) ("Now it is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert; and it is apparent from the wording of Rule 703 that there is no general requirement that the other expert testify as well."). In addition, it is clear that there is no prejudice to Defendants by allowing Mr. Clark to rely on the portions of Dr. Zagal's opinion that he does because they are independently verified by Defendants' own witnesses. *Compare* (Ex. E (Ryan Clark Rebuttal Expert Opinion) at 7 *with* Ex. B at 160:4-25 and Ex. C at 70:6–71:5). Mr. Clark should be permitted to rely on the opinion of Dr. Zagal.

In addition, Mr. Clark did not purely rely on the opinions of Dr. Zagal; Mr. Clark conducted his own independent research into the importance to consumers of tattoo realism.

14

Therefore, while Mr. Clark and Dr. Zagal produce similar opinions regarding realism driving demand, Mr. Clark is not simply "parroting" Dr. Zagal. Mr. Clark's opinions are also independently supportable.

      Therefore, to the extent that Dr. Zagal's opinion is excluded, Mr. Clark should not be prohibited from offering his testimony regarding realism being a driver of consumer demand, and in turn, his opinion that Defendants profited from inclusion of the Tattoos in the Infringing Games. Defendants' motion to exclude Mr. Ryan Clark's testimony in the event Dr. Zagal's testimony is excluded should be denied.

Dated: September 18, 2020                          Respectfully submitted,

                                                           */s/ Anthony G. Simon*
Anthony G. Simon, IL 6209056
Anthony R. Friedman, IL 6299795
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Phone: (314) 241-2929
Fax: (314) 241-2029
asimon@simonlawpc.com
afriedman@simonlawpc.com

R. Seth Crompton
**THE HOLLAND LAW FIRM**
300 N. Tucker, Suite 801
St. Louis, Missouri 63101
scrompton@allfela.com
Phone: (314) 241-8111
Facsimile: (314) 241-5554

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all counsel of record via this Court's CM/ECF system on September 18, 2020.

/s/ Anthony G. Simon