# EXHIBIT E

*Hoffman Clark* 

**HIGHLY CONFIDENTIAL**

**SUBJECT TO PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**CASE NO. No. 3:18-cv-0966 MJR-DGW**

**CATHERINE ALEXANDER,**
***Plaintiff,***

**v.**

**TAKE-TWO INTERACTIVE SOFTWARE, INC.;**
**2K GAMES, INC.; 2K SPORTS INC.;**
**WORLD WRESTLING ENTERTAINMENT, INC.;**
**VISUAL CONCEPTS ENTERTAINMENT;**
**YUKE'S CO., LTD.; and YUKE'S LA INC.,**
***Defendants.***

---

**EXPERT REBUTTAL REPORT OF RYAN J. CLARK**

**FEBRUARY 21, 2019**



# 1       INTRODUCTION

## 1.1      Qualifications

I am Ryan J. Clark, a founding Member at Hoffman Clark LLC, an integrated certified public accounting and consulting firm specializing in business, intellectual property and financial advisory services.  Hoffman Clark provides objective analyses across a broad spectrum of strategic and forensic issues from accounting and valuation to a comprehensive range of forensic evaluation services.

My expertise extends to tax and financial reporting requirements, management consulting, corporate finance and valuation.  I have also served in a variety of economic, business, and financial analyses on behalf of clients in commercial, intellectual property and forensic investigative matters.  My services in these matters include calculating lost profits, excess costs incurred, diminution of value, class action claims, and unjust enrichment.  I have also conducted forensic accounting investigations pertaining to allegations involving fraud, shareholder disputes, whistleblower complaints and improper employee activities.  I have served as an expert witness in court and arbitration matters on questions relating to economic damages and valuation subject areas.

In addition to my practice at Hoffman Clark, I have served as an Adjunct Professor on the Faculty at Washington University in St. Louis School of Law.  I have received several certifications from professional organizations.  I have received the Certified Valuation Analyst (CVA) certification from the National Association of Certified Valuation Analysts.  I have received the Accredited in Business Valuation (ABV) certification from the American Institute of Certified Public Accountants. I have received the Certified in Financial Forensics (CFF) certification from the American Institute of Certified Public Accountants.

I am a graduate of St. Louis University School of Business where I received an MBA degree and a graduate of Truman State University where I received a B.S.B.A. degree with a major in accounting.  I am a Certified Public Accountant (CPA) licensed in the State of Missouri.

My *curriculum vitae* which further describes my qualifications including my testimony for at least the last 4 years is attached hereto and incorporated herein by reference as *Exhibit A*.



## 1.2      Assignment

I have been retained by The Simon Law Firm, P.C., counsel on behalf of the plaintiff Catherine Alexander (herein referred to as "plaintiff"), to provide an analysis of the validity and reliability of the opinions of the defendants' damages expert, James E. Malackowski ("Mr. Malackowski").  This report contains my opinions concerning Mr. Malackowski's damages opinions based upon analysis of the data and information reviewed by me as of the date of this report.

I have not been retained to provide an opinion concerning liability and do not express any opinion concerning liability.  For purposes of my analyses and this report, I have been asked to presume that the Court finds in favor of plaintiff with respect to infringement.

This report is HIGHLY CONFIDENTIAL within the meaning of the Protective Order entered in this case and is intended solely for use in connection with this case and may not be inspected, copied, distributed, quoted, or otherwise used for any other purpose.

## 1.3      Investigation Performed

I have performed various tasks during the course of my investigation in this matter, including, but not limited to: discussing with counsel for plaintiff the background of the issues and the objective of the engagement; reviewing and studying documents produced in the litigation relevant to the issue of damages and remedies; reviewing the deposition transcript of Catherine Alexander; reviewing written discovery responses and disclosures;  reviewing and analyzing publicly available information; reviewing various expert reports and reviewing Mr. Malackowski's opinions of plaintiff's damages presented in his report dated February 7, 2019.

## 1.4      Data and Information

I have reviewed various data and information during my investigation and analysis in this matter.  My investigation included a review of certain pleadings and various data and information produced by plaintiff and defendants in this case, other discovery, and other publicly available information.  A list of data and information considered in the preparation of this report is attached hereto and incorporated herein by reference as *Exhibit B*.



## 2.    BACKGROUND

### 2.1    Copyright Infringement Damages

I understand that Catherine Alexander inked several tattoos on Randy Orton between 2003 and 2008 including an upper back tribal tattoo, tribal tattoos on Mr. Orton's forearms and upper arms, and sleeve tattoos consisting of a Bible verse design, a dove, a rose and skulls.  Reproductions of these tattoos appear in *WWE 2K16*, *WWE 2K17* and *WWE 2K18* (the "Video Games"). [1]

It is my understanding that the relevant statutory provision governing remedies for violations of the U.S. Copyright Act is 17 U.S.C. § 504 (1) (b) which states that a copyright owner is entitled to recover:

> [A]ctual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.  In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work. Id.

The copyright owner is therefore entitled to recover any profits of the infringer that are attributable to the infringement.

I understand that the Total Gross Revenues for the *WWE 2K16*, *WWE 2K17*, and *WWE 2K18* Video Games ("Accused Video Games") from April 2015 through August 2018 are $418,692,526, and the Total Net Revenues for the same period are $343,336,334. [2]

---

[1] First Amended Complaint, pp. 5-8.
[2] TAKE-TWO_0001332_HIGHLY_CONFIDENTIAL.XLSX



### 2.2    Mr. Malackowski's Damages Opinions

Mr. Malackowski's opinions are summarized below.[3]

a) Ms. Alexander has not experienced any actual damages as a result of the alleged copyright infringement by Take-Two.

b) Based in part on the opinions of Dr. Jablonski and Dr. Bogost, there is no market for licensing tattoos for depiction in video games of tattoos on the athletes on whom the tattoos are inked in real life, and such a market is unlikely to develop.

c) No revenues or profits from the sale of the accused *WWE 2K* video games are attributable to the alleged copyright infringement and there are no damages under the allowed remedy of infringer's profits.

### 3.    OPINIONS

A summary of my opinions and the bases for my opinions are outlined below.

### A. I disagree with Mr. Malackowski's calculation of Take-Two's gross profits earned from the sale of the Accused Video Games.

Mr. Malackowski calculated Take-Two earned gross profits of approximately $71.6 million or 20.9 percent of its total net revenues from the sale of the Accused Video Games from April 2015 through August 2018.[4]  Interestingly, Take-Two reported the company earned gross profits of 45.1 percent of its total net revenue for the period covering April 2015 through March 31, 2018. (*See* attached *Exhibit C, Schedule 301*).  The external development costs, license, internal royalties and internal development costs included in Mr. Malackowski's gross profits calculations are significantly higher (as a percentage of total net revenues) than the amounts reported on Take-Two's Form 10-Ks.  Furthermore, Take-Two's FY2018 Form 10-K reported that the software and development costs and royalties included $24.6 million and $21.1 million of stock-based compensation expense in 2018 and 2017, respectively.[5]  Additionally, Take-Two reported that its research and development costs increased "for the fiscal year ended March 31, 2018, as compared to the prior year, due primarily because of increased personnel expense due to (i)

---

[3] Expert Report of James E. Malackowski, Section 3.1, p. 4
[4] Expert Report of James E. Malackowski, Appendix C, Schedule 1.0.
[5] Take-Two Interactive Software Inc.'s March 31, 2018 Form 10-K., p. 29.



increased headcount, including our acquisition of Social Point, and (ii) higher stock-based compensation."[6]

Mr. Malackowski's calculation of Take-Two's gross profits erroneously includes costs not directly related to the expenses necessary to produce and sell the Accused Video Games.

**B. I disagree with Mr. Malackowski's calculation of Take-Two's operating profit earned from its sale of the Accused Video Games.**

Mr. Malackowski calculated Take-Two earned operating profits of approximately $6.3 million or 1.8 percent of its total net revenues from the sale of the Accused Video Games from April 2015 through August 2018.[7]  Take-Two reported the company earned operating profits of 4.3 percent of its total net revenue for the period covering April 2015 through March 31, 2018. (*See* attached *Exhibit C, Schedule 301*).  It is curious Mr. Malackowski calculated an operating profit margin from the sale of the Accused Video Games that is less than half or 41.2 percent of Take-Two's total company operating profit margin of 4.3 percent.

Mr. Malackowski included $4.5 million of marketing team expenses in the operating expenses related to the sale of the Accused Video Games for the period covering April 2015 through March 31, 2018. Id.  It is unclear as to what supporting documentation Mr. Malackowski reviewed or what independent analysis he performed to support the inclusion of $4.5 million of untracked *WWE* marketing team expenses as direct operating expenses attributable to the Accused Video Games.  Further, Mr. Malackowski included $5.4 million of publishing and general and administrative expenses in the operating expenses related to the sale of the Accused Video Games for the period covering April 2015 through March 31, 2018.[8]

Mr. Malackowski's calculation of Take-Two's operating profit erroneously includes allocated operating expenses not directly related to the expenses necessary to produce and sell the Accused Video Games.

---

[6] Take-Two Interactive Software Inc.'s March 31, 2018 Form 10-K., p. 30.

[7] Expert Report of James E. Malackowski, Appendix C, Schedule 1.0.

[8] Publishing costs includes support from senior Take-Two publishing executives.  General and administrative expenses include support for *WWE 2K* from Take-Two teams including finance, legal, human resources, information technology and security.  [Expert Report of James E. Malackowski, p. 28.]



**D.  I disagree with Mr. Malackowski's opinion that none of the profits of Take-Two are attributable to the depiction of the Tattoos in the Accused Video Games.**

I understand that in the video game industry, and specifically the sports video game industry, realism is a key driver of consumer demand. One way that the developers of the Video Games attempted to achieve realism is the realistic portrayal of the video game characters, including the Orton Character.  I understand that the Orton Character was a design choice that consisted of copying and reproducing the copyrighted Tattoos. [9]  Mr. Malackowski disregards Dr. Jay's survey data in which 3% of the respondents to the survey stated that the games' realism or life-like characters was the main reason for buying the game.[10] Additionally, four respondents, or about 1%, of respondents, identified the depiction of Mr. Orton's appearance as one of the reasons the *WWE 2K* game was purchased.[11]

Dr. Zagal's opening report stated that a portion of the sales and profits of the *WWE 2K* Video Games are attributable to the copyrighted works.  Without the copyrighted tattoos, Orton's character in the Accused Video Game would be perceived as phony or unrealistic and the sales of the Video Games would suffer.[12]  Lebron James agrees with Dr. Zagal regarding the importance of the realistic portrayal of athletes with their tattoos in video games as reported by the New York Times, "My tattoos are a part of my persona and identity… If I am not shown with my tattoos, it wouldn't really be a depiction of me."[13]

The deliberate inclusion of the tattoos in video games shows that they are a significant element of a video games achievement of realism and according to Dr. Zagal are also a driver of consumer demand.  Therefore, I disagree with Mr. Malackowski's opinion that none of the profits of Take-Two are attributable to the depiction of the Tattoos in the Accused Video Games.

**4.      COMPENSATION**

Compensation for my time is $425 per hour.

---

[9] Opening Expert Report of Jose Zagal on Behalf of Catherine Alexander, November 14, 2018, p. 4.
[10] *WWE 2K* Survey Report, E. Deborah Jay, Ph.D., January 7, 2019, p. 11.
[11] *WWE 2K* Survey Report, E. Deborah Jay, Ph.D., January 7, 2019, p.19.
[12] Opening Expert Report of Jose Zagal on Behalf of Catherine Alexander, November 14, 2018, p.5.
[13] *Athletes Don't Own Their Tattoos. That's a Problem for Video Game Developers*, Jason M. Bailey, December 27, 2018.



**5.    POTENTIAL ADDITIONAL ANALYSIS**

This report contains my opinions concerning damages based upon analysis of the data and information available to me as of the date of this report.  It is my understanding that discovery in this matter is ongoing.  If any additional information that is relevant to the assessment of damages is discovered, I may supplement or amend this report and my opinions should additional relevant information come to my attention or as otherwise necessary.

**8.    SIGNATURE AND DATE**

Ryan J. Clark, MBA, CPA, CVA, ABV, CFF

February 21, 2019

# EXHIBIT A

*Hoffman Clark* 

### RYAN J. CLARK
#### CURRICULUM VITAE

**RANGE OF
EXPERIENCE**

Ryan J. Clark is a founding Member of Hoffman Clark LLC, an integrated certified public accounting and consulting firm specializing in business, intellectual property and financial advisory services. Hoffman Clark provides objective advice across a broad spectrum of issues from accounting and strategy to a comprehensive range of forensic evaluation services.

Mr. Clark has a broad range of experience in tax and financial reporting requirements, management consulting, corporate finance, and valuation. His work includes a variety of economic, business, and financial analyses on behalf of clients in commercial, intellectual property, and forensic investigative matters. He quantifies financial damages in commercial and intellectual property disputes involving lost profits, excess costs incurred, diminution of business value, class action claims and unjust enrichment. He also conducts forensic accounting investigations pertaining to allegations involving fraud, shareholder disputes, whistleblower complaints, and improper employee activities.

Mr. Clark is a Certified Public Accountant (CPA) licensed in the State of Missouri. He has also received several other certifications from professional organizations. He has received the Certified Valuation Analyst (CVA) certification from the National Association of Certified Valuation Analysts. He has received the Accredited in Business Valuation (ABV) certification from the American Institute of Certified Public Accountants. He has received the Certified in Financial Forensics (CFF) certification from the American Institute of Certified Public Accountants.

Mr. Clark has served as an Adjunct Professor on the Faculty at Washington University School of Law. He has served as an expert witness in court and arbitration matters on questions related to economic damages and valuation subject areas.

Mr. Clark is a graduate of St. Louis University School of Business where he received a Master of Business Administration (MBA) degree and a graduate of Truman State University where he received a Bachelor of



**Ryan J. Clark**
Page 2

Science in Business Administration (B.S.B.A.) degree with a major in accounting.

| | |
|---|---|
| **POSITION** | Member, Hoffman Clark LLC |
| **CONTACT INFORMATION** | 8000 Maryland Avenue, Suite 820<br>St. Louis, Missouri 63105 USA<br>Telephone: 314-863-8777<br>Email: rclark@hoffmanclark.com |
| **EDUCATION** | Master of Business Administration (MBA),<br>St. Louis University John Cook School of Business, 2003.<br><br>Bachelor of Science in Business Administration (B.S.B.A),<br>Truman State University with a major in Accounting and Business Administration, 1998. |
| **FACULTY** | Adjunct Professor,<br>Washington University School of Law, Appointed 2008. |
| **PROFESSIONAL CERTIFICATION** | Certified Public Accountant (CPA),<br><br>    Missouri State Board of Accountancy, Certificate Number 156963, issued May 25, 2000.<br><br>Certified Valuation Analyst (CVA),<br><br>    National Association of Certified Valuation Analysts, Certificate Number 990627, issued January 16, 2006.<br><br>Accredited in Business Valuation (ABV),<br><br>    American Institute of Certified Public Accountants, Certificate Number 3585, issued March 31, 2009.<br><br>Certified in Financial Forensics (CFF),<br><br>    American Institute of Certified Public Accountants, Certificate Number 3459, issued June 30, 2009. |
| **PROFESSIONAL AFFILIATION** | National Association of Certified Valuation Analysts (NACVA),<br>Member: 2004-present. |



**Ryan J. Clark**
Page 3

Association of Certified Fraud Examiners St. Louis Chapter (ACFE),
Member: 2004-present.

American Institute of Certified Public Accountants (AICPA),
Member: 1998-present.

Missouri Society of Certified Public Accountants (MSCPA),
Member: 1998-present.

**PROFESSIONAL HISTORY**

Hoffman Clark LLC, 2003-present.

MPP&W P.C., 1998-2003.

**UNIVERSITY TEACHING**

Washington University School of Law

Adjunct Professor, Appointed 2008.

Accounting For Lawyers, 2008-2012.

Valuation and Licensing of Intellectual Property: Guest Lecturer,
Management and Evaluation of Intellectual Property Assets
Course, 2007-2008.

Taxation Implications of Licensing Intellectual Property: Guest
Lecturer: Business Licensing Course, 2004–2006.

**PRESENTATIONS AND SPEECHES**

"Assessing Misrepresentations in Financial Statements,"
National Business Institute, Clayton, Missouri, 2016.

"Valuing Closely Held Companies,"
National Business Institute, Clayton, Missouri, 2015.

"Exploring Forensic Accounting and Fraud Examinations,"
American Society of Women Accountants – St. Louis Chapter, St. Louis,
Missouri, 2012.

"Successfully Recovering Losses Due to Fraud,"
Institute of Management Accountants – St. Louis Chapter, St. Louis,
Missouri, 2011.

"Assessing Damages in a Business Dispute,"
National Business Institute, Clayton, Missouri, 2010.



**Ryan J. Clark**
Page 4

"Accounting 101 for Attorneys, Analyzing Financial Statements,"
National Business Institute, Clayton, Missouri, 2010.

"Business Valuation, Methods and Approaches,"
National Business Institute, Clayton, Missouri, 2009.

"Valuation and Licensing of Intellectual Property,"
Washington University, Guest Lecturer: Management and Evaluation
of Intellectual Property Assets Course, 2007-2008.

"Taxation Savings Strategies During Acquisition,"
Buying and Selling a Business Seminar, National Business Institute,
Clayton, Missouri, 2007.

"Taxation Implications of Licensing Intellectual Property,"
Washington University, Guest Lecturer: Business Licensing Course,
2004–2006.



**EXPERT TESTIMONY**

| Matter | Court | Type | Work Performed |
|---|---|---|---|
| [A] Arbitration, [D] Deposition, [T] Trial | | | |
| <u>Dan Baerthel, et al.</u> v. Robert K. Zeitler, Sr. et al. Case No. 15SL-CC01384 [D, T] | Circuit Court of St. Louis County, Missouri | Breach of Fiduciary Loyalty, Unjust Enrichment, Piercing the Corporate Veil, Violation of Missouri Securities Act, and Fraudulent Nondisclosure | Valuation Analysis and Damages Analysis |
| Steven T. Huff Family, LLC v. <u>The Monarch Cement Company and City Wide Construction Company</u> Case No. 6:15-cv-03214-BP [D] | U.S. District Court, Western District of Missouri | Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Promissory Estoppel in the Alternative, Conversion, and Unjust Enrichment | Damages Analysis |
| Bruce Huelskamp v. <u>Alliance Tax and Accounting Services LLC,</u> et al. Cause No. 1411-CC01073 [T] | Circuit Court of St. Charles County, Missouri | Breach of Contract | Accounting Analysis |
| <u>Bull Moose Tube Company, et al.</u> v. John K. Martin, et al. Case No. 4:14-cv-00705-JCH [D] | U.S. District Court, Eastern District of Missouri | Breach of Contract, Fraudulent Misrepresentation, and Tortious Conversion | Forensic Accounting and Damages Analysis |
| Ricky L. Rushing, Sr. v. <u>Turn Key Tool & Die, Inc.</u> Cause No. 12AB-CC00141 [D] | Circuit Court of Franklin County, Missouri | Breach of Contract | Valuation Analysis |
| Chavis Van & Storage of Myrtle Beach, Inc. v. <u>United Van Lines, LLC,</u> | U.S. District Court, Eastern | Breach of Contract | Damages Analysis |



Ryan J. Clark

Page 6

**EXPERT TESTIMONY**

| Matter | Court | Type | Work Performed |
|---|---|---|---|
| Transportation Services Group, Inc., and Unigroup, Inc. Case No. 4:11CV1299 RWS [D] | District of Missouri | | |
| Evantigroup, LLC v. Mangia Mobile, LLC, et al. Case No. 4:11CV01328 [D] | U.S. District Court, Eastern District of Missouri | Trademark Infringement | Lost Profits Damages Analysis |
| Susan Lovegreen v. Doris Lovegreen Revocable Trust Case No. 10SL-PR02733 [D] | Circuit Court of St. Louis County, Missouri | Breach of Fiduciary Duty | Trust Accounting |
| Meir v. Meir Cause No. 08SL-DR02339-03 [D, T] | Circuit Court of St. Louis County, Missouri | Financial Statement Analysis | Accounting Analysis |
| Corrigan v. Sun Container, Inc., et al. [D, A] | United States Arbitration and Mediation of St. Louis, Missouri | Breach of Contract | Valuation Analysis and Damages Analysis |
| Cord Forwarders, Inc. v. Weekends Only, Inc. Cause No. 05CC-005041 [D, T] | Circuit Court of St. Louis County, Missouri | Breach of Contract | Lost Profits Damages Analysis |



**Ryan J. Clark**
Page 7

**EXPERT TESTIMONY**

| Matter | Court | Type | Work Performed |
| --- | --- | --- | --- |
| Eugene Keith et al. v. Jim Thompson et al. Case No. 4:05CV02268 HEA [D] | U.S. District Court, Eastern District of Missouri | Breach of Contract | Valuation Analysis and Damages Analysis |
| Traffic Control Company v. Able Industries [D] | United States Arbitration and Mediation of St. Louis, Missouri | Breach of Contract | Damages Analysis |

# EXHIBIT B



**Data and Information**
**Catherine Alexander v. Take-Two Interactive Software, Inc. et al.**

- Complaint
- First Amended Complaint
- Plaintiff Catherine Alexander's Objections and Responses To Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts Entertainment's Second Set of Interrogatories to Plaintiff Catherine Alexander
- Plaintiff's Objections and Supplemental Responses to Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts Entertainment's First Set of Interrogatories to Plaintiff Catherine Alexander
- World Wrestling Entertainment, Inc.'s Objections and Responses to Plaintiff's First Set of Interrogatories
- Defendants Yuke's Co., Ltd. and Yuke's LA, Inc.'s Objections and Responses to Plaintiff Catherine Alexander's First Set of Interrogatories
- Plaintiff's Objections and Responses to Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts Entertainment's First Set of  Interrogatories to Plaintiff Catherine Alexander
- Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts Entertainment's Objections and Responses to Plaintiff Catherine Alexander's First Set of Interrogatories
- Defendant World Wrestling Entertainment, Inc.'s Objections to Plaintiff's Second Set of Interrogatories
- Defendants Yuke's Co., Ltd. and Yuke's LA, Inc.'s Objections and Responses to Plaintiff Catherine Alexander's Second Set of Interrogatories
- January 15, 2019 Deposition of Catherine Alexander
- TAKE-TWO_0000982
- TAKE-TWO_0000983
- TAKE-TWO_0001332
- Opening Expert Report of Jose Zagal on Behalf of Catherine Alexander, November 14, 2018
- WWE 2K Survey Report, E. Deborah Jay, PH.D., January 7, 2019
- Expert Report and Declaration of Nina Jablonski, PH.D., January 24, 2019
- Supplemental Expert Report of Jose Zagal on Behalf of Catherine Alexander, February 4, 2019
- Expert Report and Declaration of Ian Bogost, PH.D., February 5, 2019
- Expert Report of James E. Malackowski, February 7, 2019
- Responding Expert Report of Jose Zagal on Behalf of Catherine Alexander, February 21, 2019
- Take-Two Interactive Software Inc.'s March 31, 2018 Form 10-K
- Take-Two Interactive Software Inc.'s March 31, 2017 Form 10-K
- *Athletes Don't Own Their Tattoos. That's a Problem for Video Game Developers*, Jason M. Bailey, December 27, 2018.

# EXHIBIT C

HIGHLY CONFIDENTIAL

**Take-Two Interactive Software, Inc.**
**Consolidated Statements of Operations**
**For the Fiscal Years Ended March 31, 2016 through 2018**

Schedule 301

(in thousands)

| | 2016 | 2017 | 2018 | 2016-2018 | 2016 | 2017 | 2018 | 2016-2018 |
|---|---|---|---|---|---|---|---|---|
| Net revenue | $1,413,698 | $1,779,748 | $1,792,892 | $1,662,113 | 100.0% | 100.0% | 100.0% | 100.0% |
| *Cost of goods sold* | | | | | | | | |
| Internal royalties | $328,610 | $330,782 | $383,020 | $347,471 | 23.2% | 18.6% | 21.4% | 20.9% |
| Product costs | $200,206 | $255,914 | $203,301 | $219,807 | 14.2% | 14.4% | 11.3% | 13.2% |
| Software development costs and royalties | $223,512 | $335,675 | $191,400 | $250,196 | 15.8% | 18.9% | 10.7% | 15.1% |
| Licenses | $61,545 | $100,588 | $120,590 | $94,241 | 4.4% | 5.7% | 6.7% | 5.7% |
| Total cost of goods sold | $813,873 | $1,022,959 | $898,311 | $911,714 | 57.6% | 57.5% | 50.1% | 54.9% |
| Gross profit | $599,825 | $756,789 | $894,581 | $750,398 | 42.4% | 42.5% | 49.9% | 45.1% |
| *Operating expenses* | | | | | | | | |
| Selling and marketing | $198,309 | $285,453 | $256,092 | $246,618 | 14.0% | 16.0% | 14.3% | 14.8% |
| General and administrative | $192,452 | $211,409 | $247,828 | $217,230 | 13.6% | 11.9% | 13.8% | 13.1% |
| Research and development | $119,807 | $137,915 | $196,373 | $151,365 | 8.5% | 7.7% | 11.0% | 9.1% |
| Business reorganization | $71,285 | $0 | $14,742 | $28,676 | 5.0% | 0.0% | 0.8% | 1.7% |
| Depreciation and amortization | $28,800 | $30,707 | $43,969 | $34,492 | 2.0% | 1.7% | 2.5% | 2.1% |
| Total operating expenses | $610,653 | $665,484 | $759,004 | $678,380 | 43.2% | 37.4% | 42.3% | 40.8% |
| Income (loss) from operations | ($10,828) | $91,305 | $135,577 | $72,018 | -0.8% | 5.1% | 7.6% | 4.3% |
| *Interest and other, net* | | | | | | | | |
| Interest income (expense) and other, net | ($29,239) | ($15,690) | $1,048 | ($14,627) | -2.1% | -0.9% | 0.1% | -0.9% |
| Foreign currency exchange gain (loss) | ($1,407) | $0 | $0 | ($469) | -0.1% | 0.0% | 0.0% | 0.0% |
| Other | $441 | $0 | $0 | $147 | 0.0% | 0.0% | 0.0% | 0.0% |
| Total interest and other, net | ($30,205) | ($15,690) | $1,048 | ($14,949) | -2.1% | -0.9% | 0.1% | -0.9% |
| Gain on long-term investments, net | $2,683 | $1,350 | $0 | $1,344 | 0.2% | 0.1% | 0.0% | 0.1% |
| Loss on extinguishment of debt | $0 | $0 | $0 | $0 | 0.0% | 0.0% | 0.0% | 0.0% |
| Gain on convertible note hedges and warrants, net | $0 | $0 | $0 | $0 | 0.0% | 0.0% | 0.0% | 0.0% |
| Income (loss) before income taxes | ($38,350) | $76,965 | $136,625 | $58,413 | -2.7% | 4.3% | 7.6% | 3.5% |
| | | | | | 0.0% | 0.0% | 0.0% | 0.0% |
| (Benefit from) provision for income taxes | ($30,048) | $9,662 | ($36,908) | ($19,098) | -2.1% | 0.5% | -2.1% | -1.1% |
| Net income (loss) | ($8,302) | $67,303 | $173,533 | $77,511 | -0.6% | 3.8% | 9.7% | 4.7% |

*Source:*
Take-Two Interactive, Inc.'s 2017-2018 Form 10-Ks.