IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CATHERINE ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-cv-966-SMY |
| | ) | |
| TAKE-TWO INTERACTIVE | ) | |
| SOFTWARE, INC. 2K GAMES, INC., | ) | |
| 2K SPORTS INC., WORLD | ) | |
| WRESTLING ENTERTAINMENT, INC., | ) | |
| VISUAL CONCEPTS | ) | |
| ENTERTAINMENT, YUKE'S CO., LTD, | ) | |
| YUKES LA INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, District Judge:**

Plaintiff Catherine Alexander filed this action against Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports Inc., World Wrestling Entertainment, Inc. and Visual Concepts Entertainment asserting copyright infringement pursuant to 17 U.S.C. § 501. This case is now before the Court for consideration of Defendants' motions to exclude the testimony of Plaintiff's experts Dr. Jose Zagal (Doc. 143) and Ryan Clark (Doc. 145). Plaintiff has filed responses (Docs. 167 and 216). For the following reasons, the motions are **DENIED**.

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702. As the gatekeeper of expert testimony, it is the Court's responsibility to assure that the proposed testimony is reliable; that is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual

rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  With respect to an expert proffered for his experience, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah,* 332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. v. Joiner,* 522 U.S. 136, 146 (1997).

Equally important to the gate-keeping function is the Court's determination as to whether the proposed testimony is relevant.  *Daubert,* 509 U.S. at 591.  Thus, even if an expert's testimony is deemed reliable, under Rule 702, it must be excluded if it is not irrelevant – not likely "to assist the trier of fact to understand the evidence or determine a fact in issue...." *United States v. Hall,* 93 F.3d 1337, 1342 (7th Cir.1996); *see also United States v. Gallardo,* 497 F.3d 727, 733 (7th Cir. 2007).  In other words, "the suggested ... testimony must 'fit' the issue to which the expert is testifying" and should help the trier of fact decide the case at bar.  *See Chapman v. Maytag Corp.,* 297 F.3d 682, 687 (7th Cir. 2002).  "If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."" *Id.* (quoting *Daubert*, 509 U.S. at 596).

## Dr. Jose Zagal

Plaintiff has disclosed Dr. Zagal as her technical expert.  Dr. Zagal is a videogame designer and scholar and holds a Ph.D. in computer science, a M.Sc. in engineering sciences, and a B.S. in industrial engineering.  He is currently an Associate Professor at the University of Utah's nationally ranked Entertainment Arts & Engineering program where he teaches courses on videogame development, design and analysis.  He has taught videogame development since 2000.

Dr. Zagal has designed numerous videogames and has served as a consultant and game designer for corporations.  Dr. Zagal testified that he has expertise with respect to the following in game culture:

> "[T]hings that have to do with games, the history of games, the technology behind games, the knowledge and information about the companies that make games, the people that makes games, their histories and trajectories, also player preferences and how these might change and not change over time, what its purposes are, commentary about games and also about games, trends in games, the intersection of trends in games with other things, the intersection of trends in games with player references…"

(Doc. 167-2, p. 239).

In reaching his opinions, Dr. Zagal reviewed case-specific materials, including the parties' written discovery responses and document production.  He also reviewed various articles and online industry material.  Based on his expertise in game culture, Dr. Zagal opined that a realistic portrayal of Randy Orton is important to the success and sales of WWE videogames.  He described how WWE videogame developers attempt to achieve what he describes as verisimilitude with Orton's videogame character in part by copying and reproducing his copyrighted tattoos. According to Dr. Zagal, the verisimilitude of the appearance of the WWE wrestlers in the videogames is important to consumers and profits from the game would suffer if, for example, Orton's appearance, including his tattoos, diverged from real life.  Dr. Zagal concludes that Take-Two chose to include certain properties or wrestlers in the videogame because it believed that the inclusion of such properties would increase the game's profits.  He also explains the various techniques used in the videogame industry to copy someone's physical appearance and describes the methods he believes Take-Two utilized to copy Orton's tattoos in the videogames.

Defendants challenge Dr. Zagal's qualifications, asserting that he has limited experience with the WWE – he is not a fan of the sport, has only watched wrestling a couple of times, and has

no affiliation with the WWE.  Defendants also argue that Dr. Zagal lacks credentials in consumer behavior, consumer psychology or marketing and is therefore not qualified to opine about what features consumers look for when they purchase *WWE 2K* or what factors would lead to decreased or increased sales of the games.

A lack of specialization in the WWE is not fatal to Dr. Zagal's qualifications.  He was not retained to opine regarding the WWE generally.  His opinions concern the creation of and motivations behind creating video games.  As a videogame designer and scholar, he is well-qualified to testify about that topic.  In his report, Dr. Zagal used analogies to illustrate the importance of character recognition in game design – specific knowledge of the WWE is unnecessary for such an analysis.  Dr. Zagal has experience in videogame development and has been involved in similar decisions by game companies to include characters in other contexts, which are applicable to videogame development strategy regardless of the target industry.  His testimony will be helpful to the jury in understanding the processes involved in videogame design and creation.

Although Dr. Zagal does not have a degree in consumer behavior, economics or business, he has the requisite experience to opine about what is important to consumers in videogames.  He has conducted studies and written academic articles where the primary data source was consumer reviews about games.   (Doc. 167-2, p. 242).  He testified that many of his papers are about analyzing games or present specific analyses of games and what consumer preferences are as they relate to videogames.  *Id*. at pp. 239-241. Dr. Zagal has also studied and instructed on trends in videogames in terms of sales, popularity of titles, and the reasons why those trends might have occurred at the particular moment in time.  *Id*.  Thus, he has sufficient experience and knowledge

regarding what is important to designers and consumers in video games and to opine regarding the impact of those preferences on sales.

Next, Defendants argue that Dr. Zagal should be excluded because his methodology is not scientifically valid, and his opinions are not supported by sufficient facts and data. The test for reliability for nonscientific experts is flexible. *United States v. Romero*, 189 F.3d 576, 584 (7th Cir. 1999). Expert testimony "is not unreliable simply because it is founded on [a witness's] experience rather than on data; indeed, Rule 702 allows a witness to be 'qualified as an expert by knowledge, skill, *experience*, training, or education." *Metavante Corp.*, 619 F.3d at 761 (quoting Fed. R. Evid. 702). Here, Dr. Zagal reviewed the materials produced during discovery and applied his specialized knowledge of videogame design and culture to the facts of this case. The specifics of his methodology and overall strength of his opinions may be adequately challenged by Defendants at trial. *See generally Daubert,* 509 U.S. at 596.

Defendants also urge Dr. Zagal's exclusion because he testified that he did not cite every source he looked at in his report. The Federal Rules require disclosure of a written report of the opinions the expert will express and the basis and reasons for them. *See* Fed.R.Evid. 705; *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010). "The purpose of these [expert] reports is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion ... so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary." *Id. citing Walsh v. Chez,* 583 F.3d 990, 994 (7th Cir. 2009). Dr. Zagal's report cites a number of sources he utilized in formulating his opinions, including various articles, online platforms, and case-specific pleadings. There is no requirement that he list every single source that he looked at in his report and the cases cited by Defendants do not support this contention. Defendants' Motion to Exclude Dr. Zagal is **DENIED**.

**Ryan Clark**

Ryan Clark was retained by Plaintiff as a rebuttal expert to Defendants' damages expert, James Malackowski. Clark is a CPA and founding member at Hoffman Clark LLC, an integrated certified public accounting and consulting firm. He also serves as an adjunct professor at Washington University School of Law. Clark holds an MBA and a B.S.B.A. degree with a major in accounting. His expertise includes tax and financial reporting requirements, management consulting, corporate finance and valuation. He has conducted a variety of economic, business, and financial analyses on behalf of clients in commercial, intellectual property and forensic investigative matters. Clark has served as an expert witness in court and arbitration matters on questions relating to economic damages and valuation subject areas.

Clark addresses the validity and reliability of the opinions of Malackowski. In formulating his opinions, Clark reviewed written discovery, documents produced in the case relevant to the issue of damages, Plaintiff's deposition, and the parties' expert reports. He disagrees with Malackowski's calculations of Take-Two's gross profits earned from the sale of the videogames, Take-Two's operating profits earned from its sale of the videogames, and Malackowski's opinions that none of the profits of Take-Two are attributable to the depiction of the tattoos in the videogames.

Defendants contend that Clark's opinions are flawed because he merely acts as a "mouthpiece of" Dr. Zagal in reaching his conclusions. However, Clark does not simply rely on Dr. Zagal's opinions in reaching his conclusions. He considered the surveys performed by defense expert Dr. Deborah Jay as well as the expert reports of Dr. Ian Bogost, Dr. Zagal, and Malackowski. Utilizing the same data that Defendants' experts used, Clark comes to a different conclusion regarding Plaintiff's damages. As a rebuttal expert, he is not required to provide an

alternative calculation of damages when challenging the reliability of the opinions offered by an opposing expert. *United States v. Grin tjes,* 237 F.3d 876, 879 (7th Cir. 2001). Defendants may disagree with Clark's conclusions, but there is nothing unsound or unreliable about his methodology. The reliability of data and assumptions used in applying a methodology is tested by the adversarial process and determined by the jury; the court's role is generally limited to assessing the reliability of the methodology – the framework—of the expert's analysis." *See Manpower, Inc. v. Insurance Co. of Pennsylvania,* 732 F.3d 796, 808 (7th Cir. 2013). Thus, Defendants' disagreements with Clark's ultimate conclusions are not a justifiable basis to exclude his opinions. Defendants may certainly attempt to discredit Clark on cross-examination or in their own presentation of the evidence.

Defendants next assert that Clark's opinions on the profits attributable to the alleged infringement are unsupported *ipse dixit*. An expert asserts an *ipse dixit* opinion, if "the expert asserts a bottom-line conclusion but lacks any articulable facts to substantiate that conclusion or completely fails to explain the reasoning or methods employed to reach that conclusion." *United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009). Here, Clark testified that he based his opinions on, among other things, the *WWE 2K* survey reports of Dr. Jay. That is sufficient to satisfy *Daubert's* reliability standard.

Defendants also challenge the reliability of Clark's opinions concerning Take-Two's gross and operating profits. They contend the only data Clark identifies to support his opposing opinions is Take Two's U.S. Securities and Exchange Commission Form 10-K, which they maintain provides aggregate financial data for all of Take-Two's revenue across its entire business and is not tied to any specific video game. However, Clark also relied on Defendants' production of documents showing total units sold, total gross sales, net sales, COGS including Overhead

Allocation, and gross profit and gross margin for the WWE 2K series since 2015 in formulating his opinions.

The Court finds that Clark is qualified to render his opinions, his opinions are relevant, and his methodology is sound.  Accordingly, Defendants' Motion is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  September 26, 2020**

**STACI M. YANDLE**
**United States District Judge**