```
1                     UNITED STATES OF AMERICA
                     SOUTHERN DISTRICT OF ILLINOIS
2


3   CATHERINE ALEXANDER,              )
                                      )
4                 Plaintiff,          )
    v.                                ) No. 3:18-cv-00966-SMY
5                                     )
    TAKE-TWO INTERACTIVE SOFTWARE,    )
6   INC., et al.,                     )
                                      )
7                 Defendants.         )

8

9

10
                  TRANSCRIPT OF PRETRIAL CONFERENCE
11                      (via video conference)

12             BEFORE THE HONORABLE STACI M. YANDLE
                     UNITED STATES DISTRICT JUDGE
13
                          September 28, 2020
14

15

16

17

18

19

20

21  REPORTED BY:        Christine Dohack LaBuwi, RDR, CRR
                        Official Court Reporter
22                      301 West Main Street
                        Benton, Illinois  62812
23                      (618) 439-7725
                        Christine_Dohack@ilsd.uscourts.gov
24
    Proceedings recorded by mechanical stenography, produced by
25  computer-aided transcription.
```

```
 1   VIDEO CONFERENCE APPEARANCES:

 2   FOR PLAINTIFF:         R. Seth Crompton, Esq.
                            HOLLAND LAW FIRM
 3                          300 N. Tucker Blvd., Suite 801
                            St. Louis, MO  63101
 4                          314) 241-8111
                            scrompton@allfela.com
 5
                            Anthony R. Friedman, Esq.
 6                          Anthony G. Simon, Esq.
                            SIMON LAW FIRM, P.C.
 7                          800 Market Street, Suite 1700
                            St. Louis, MO  63101
 8                          (314) 241-2929
                            afriedman@simonlawpc.com
 9                          asimon@simonlawpc.com

10   FOR DEFENDANTS TAKE-TWO INTERACTIVE SOFTWARE, INC.; 2K
     GAMES, INC.; 2K SPORTS INC.; and VISUAL CONCEPTS
11   ENTERTAINMENT:

12                          Dale M. Cendali, Esq.
                            Christopher Ilardi, Esq.
13                          Joshua L. Simmons, Esq.
                            KIRKLAND & ELLIS, LLP
14                          601 Lexington Avenue
                            New York, NY  10022
15                          (212) 446-4800
                            dale.cendali@kirkland.com
16                          chris.ilardi@kirkland.com
                            joshua.simmons@kirkland.com
17
                            Michael J. Nester, Esq.
18                          DONOVAN ROSE NESTER, P.C.
                            151 North 1st Street, Suite A
19                          Belleville, IL  62220
                            (618) 212-6500
20                          mnester@drnpc.com

21                          Patrick K. Arnett, Esq.
                            KIRKLAND & ELLIS, LLP
22                          1301 Pennsylvania Ave. N.W.
                            Washington, DC  20004
23                          (202) 389-5200
                            patrick.arnett@kirkland.com
24

25
```

```
 1
      FOR DEFENDANT WORLD WRESTLING ENTERTAINMENT:
 2
                        Curtis B. Krasik, Esq.
 3                      K & L GATES, LLP
                        210 Sixth Avenue
 4                      Pittsburgh, PA  15222
                        9412) 355-8696
 5                      curtis.krasik@klgates.com
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1              (Video conference proceedings began at 1:30 p.m.)
2              COURTROOM DEPUTY:  The Court calls Case No.
3    18-CV-966, *Alexander versus Take-Two Interactive Software,*
4    *Inc., et al.*  This matter is called for a final pretrial
5    conference.
6              THE COURT:  Good afternoon, counsel.
7              MR. NESTER:  Good afternoon, Your Honor.
8              THE COURT:  So, counsel, I guess I've got some good
9    news and some bad news.  The -- and it depends on what side
10   -- it may be bad news to all of you.  It may be good news
11   for some of you.
12             Mr. Nester, could you mute your microphone?  I'm
13   getting some feedback.
14             MR. NESTER:  Yes.  I apologize, Your Honor.
15             THE COURT:  That's okay.
16             So, here's the deal.  And plaintiff's counsel and
17   Mr. Nester will understand where I'm coming from.
18   Unfortunately, as it relates to COVID, things are not where
19   I thought and hoped they would be on the ground here in
20   Metropolitan St. Louis and Southern Illinois.  Frankly,
21   things have not stabilized.  Certainly not in the right
22   direction.
23             Our court has mapped out a pretty solid plan for
24   managing jury trials.  And we, technically, resumed jury
25   trials on August 1st, although none have been conducted

1   yet.  You guys would be the first.
2          To be honest with you, I agonized over this.  I
3   think Mr. Nester knows me well enough to know that, you
4   know what?  I believe in getting the job done, and we are
5   all going to have to move in that direction at some point.
6   Having said that, what I had to come to terms with is that
7   I couldn't look any participant in the face, particularly
8   those of you who have to fly in from out of town and stay
9   in Southern Illinois or in the Metropolitan St. Louis area,
10  I could not look a juror in the face or any participant in
11  the face and really say that I am confident that we would
12  be reasonably safe.  I'm not.
13         And, frankly, the -- I think early on, we -- well,
14  I can speak for myself.  I felt pretty confident in relying
15  on the information, the Public Health information we had
16  coming from federal and state agencies.  I'm less confident
17  today than I was before.  I'm particularly concerned about,
18  at least -- and have been for some time -- that the virus
19  is in fact aerosol and airborne, and I don't know how
20  anybody can snatch six feet of distance out of the air
21  arbitrarily and say that's safe.  I just don't have that
22  degree of confidence right now with what's going on the
23  ground.
24         And so, even with the plans that we have in place,
25  frankly, I'm not sure I would feel reasonably safe.  And

1  I'm not going to put somebody else in that position, if you
2  understand what I'm saying.
3        The other thing is, is that it is very questionable
4  that we would actually be able to impanel a jury at this
5  point because people are, you know, wanting to be excused.
6  Which, again, I can't tell someone who has preexisting
7  conditions or who is fearful that I'm going to force you to
8  sit -- and even though we have got a way we can socially
9  distance enough jurors, I just -- like I said, I agonized
10 about it.  But I think I have to make a hard decision.  And
11 I apologize to you, folks, but I'm -- I don't think we're
12 prepared to proceed with a jury trial on October 13.
13       I just wouldn't want to put you, folks, at risk.  I
14 wouldn't want to put myself at risk.  I think the jurors
15 would be more at risk because even though we can socially
16 distance them, and even during deliberations, it's -- I
17 just don't have the degree of comfort that I would want to
18 have.  And I apologize, to the extent that that
19 inconveniences anyone.  But there it is.
20       And so I've got -- and so we need -- I'm going to
21 continue the trial.  I've got some dates that we can go
22 over.  I will go ahead and -- I will go ahead and rule on
23 the ripe motions in limine ahead of time, but I'm going to
24 reset the final pretrial date and trial date.  And, if
25 anybody else has anything else we need to deal with, we can

1  deal with that today.
2           But again, to the extent like I have been -- I have
3  been where you guys are.  I hate uncertainty, once I get it
4  ready and start getting ready, but it's -- it's not a
5  stable -- it doesn't feel like a stable situation to me.  I
6  don't know how you guys feel about it but, you know -- so
7  that's where we are.
8           MR. SIMON:  Your Honor, this is Tony Simon on
9  behalf of the plaintiffs.  Certainly, no need to apologize.
10 There's lots of uncertainty.  We understand and fully
11 respect your decision.  Not a problem.
12          THE COURT:  It's very difficult because I think the
13 one thing -- the one thing that is frustrating for me, and
14 I'm sure for you, all, is while I can say I don't think
15 we're there now, I'm not -- I don't have that comfort
16 level, it's the fact that none of us can look forward and
17 say, okay we -- you know, certainly by this time we'll be
18 -- you know, that's the frustration.  Because at some point
19 in time, we gotta continue.  And, you know, there's no 100
20 percent guarantee, so there would be some risk at any point
21 in time.  I just think there's more risk now, and maybe
22 it's largely due to uncertainty.  And frankly, to be
23 totally honest with you, because of the lack of
24 trustworthiness of the -- even the science that we're
25 getting now, you know.

1            We all know it's been politicized so it's like, you
2    know, when the CDC one day finally comes out, six months
3    later, and says it is aerosol, which I think most of us
4    suspected, and two days later say that they put that out by
5    mistake, it -- you know, it doesn't really raise
6    confidence.  And so to that extent, I just -- I just think
7    it's more risk involved today, and would be on October
8    13th, and, frankly, I'm not willing to put anybody through
9    it.  I might be a little scarier than most.  But there it
10   is.
11           COURTROOM DEPUTY:  Mr. Nester, you are muted.
12           MR. NESTER:  Okay.
13           THE COURT:  No.  You are unmuted now, Mike.
14           MR. NESTER:  Your Honor, I know you well enough to
15   understand that you would have agonized over this decision.
16   And I respect that and I respect that it's a very difficult
17   decision for you to make, given the circumstances.  I will
18   also tell you, personally, that I thank you because you
19   know how old I am.  I have three grandchildren and it's an
20   uncertain time and no one knows how things are going to
21   play out.
22           I think you know Fr. Clyde Grogan?
23           THE COURT:  I do.
24           MR. NESTER:  Fr. Clyde and I had a conversation
25   last week.  And someone told me that when this began, it

1  would not become personal to you until you lost someone
2  that you know to COVID.  And we talked about Dr. Ed Rose,
3  who died last week, and Jim Kassly of Kassly Funeral Home,
4  he died last week, and so it's become personal for me, as
5  well, in that regard because those were two friends of
6  mine.
7          So, thank you for making a tough decision, a
8  difficult call.  Much appreciated and absolutely no apology
9  is necessary, Your Honor.
10         THE COURT:  I ended up -- I was actually -- we
11 actually had a criminal case scheduled, that I finally had
12 to pull the trigger on Friday.  You know, and those are
13 constitutional issues.  But I know that one day we will be
14 in a better position.  The frustration is, we don't know
15 when.  And, you know, life has to go on.  Business has to
16 go on.
17         I think our court and courts across the country
18 have done a really good job in, you know, coming up with
19 alternative plans during criminal -- even criminal case --
20 proceedings by zoom, doing what we can to keep the business
21 of the court moving forward.  And, you know, trials are the
22 last stage of that and, frankly, probably up until Friday I
23 was hell bent that I was ready to move forward.
24         But I -- you know, it's like, no.  No.  And really,
25 I thought about all the folks that have to travel.  Because

1  again, I realize I might be more risk adverse in this
2  situation than a lot of people because, I mean, I took it
3  seriously from the beginning.  I'm -- you know, I've got an
4  84-year-old mother that I try to, you know, have contact
5  with.  And for a couple of months, I didn't.  And, frankly,
6  you know, I have a chronic illness myself that puts me at
7  risk.  So, I might be a little risk adverse, but I know I'm
8  still not -- I still have not been willing to get on a
9  plane so, you know.  But there it is, so there's enough of
10 that.
11         So, let's talk about some dates.  I'm going to give
12 you guys a listing real quick of jury trial dates and final
13 pretrial dates.  Now, we can be flexible on the final
14 pretrial dates.  But I'm going to go through 'em and then,
15 while we're here, let's just sit -- to the extent you have
16 access to your calendar and if we can come up with a date
17 today without having to poll everybody, that would be
18 great.
19         So, the first trial date would be January 25th.
20 The final pretrial would be January 13th at 1:30.
21         The second date is February 8th with a January 27th
22 final pretrial date.
23         Stacie, you've got February 27 on here.  I assume
24 you meant January 27.  Is that correct?
25              COURTROOM DEPUTY:  That is correct.

```
 1              THE COURT:  All right.  You were just trying to
 2   make sure I wasn't sleeping after lunch or something, I
 3   wouldn't pick that up; right?
 4              COURTROOM DEPUTY:  Yes.
 5              THE COURT:  Okay.  The next date is February 16th,
 6   with a final pretrial date of February 3rd at 1:30.
 7              The next date is March 15th, with a final pretrial
 8   of March 3rd at 9:30.
 9              Next is March 22nd, final pretrial March 10th.
10              And next is March 29th, final pretrial March 17th.
11              Miss Cendali, how did your argument go?
12              MS. CENDALI:  Thank you, Your Honor, for asking.
13              We won the Second Circuit.  We are waiting on the
14   Fourth Circuit.  And you are very kind, Your Honor, giving
15   me time for the Supreme Court argument.  That's October
16   7th.  And it's the first day of the term and everybody -- I
17   think I can say that, Your Honor, we're all shell-shocked
18   because of Ruth Bader Ginsburg's demise.  We don't know
19   what the heck it's going to mean for anything.
20              And my -- as soon as we're done with this call, I'm
21   jumping back into prep for that argument.  So, all I wanted
22   to say -- Mr. Nester eloquently spoke for us -- but thank
23   you.
24              THE COURT:  That's a loss and things are kinda, you
25   know, kinda ramped up.  So, good luck with that.
```

1         MS. CENDALI:  If you can make that an order, Your
2   Honor, I would appreciate it.
3         THE COURT:  No, I don't think they're listening to
4   me.
5         MS. CENDALI:  No comment.
6         THE COURT:  You know what?  They're trying really
7   hard to have you with a full court by then.  I wouldn't put
8   it past them.
9         So, okay.  Well, why don't we do this?  I'm going
10  to start with the dates.  And I know this feels like
11  grammar school, but raise your hand if you got a problem.
12        Are you watching, Chris?
13        THE REPORTER:  Yes.
14        THE COURT:  Anybody have a conflict with January
15  25th?
16        MR. SIMON:  (Nonverbal response.)
17        THE COURT:  Okie-doke.  February 8th?
18        MR. KRASIK:  (Nonverbal response.)
19        MS. CENDALI:  (Nonverbal response.)
20        THE COURT:  February 16th?  (Pause.)  Ding.  Ding.
21        Mr. Simon, did you have your hand up?
22        MR. SIMON:  No, Your Honor.  I was just unmuting.
23        THE COURT:  All right.  Well, we got a winner.
24  We're going to go with February 16th, which is the day
25  after Presidents Day.

```
 1              So, let me just go through and see if we have
 2   anything else and then I will actually be able to check on
 3   preferences.  So, we've got February 16th for sure.
 4              Anybody got a conflict with March 15th?
 5              MR. NESTER:  Your Honor?  I have -- I apologize for
 6   sharing this with you because it's not going to be good
 7   news.  I have a problem with the entire month of March
 8   because I'm scheduled in a case in St. Clair County.  It's
 9   probably going to take three to four weeks to try.  It's a
10   products liability case.
11              THE COURT:  It will probably take five months.
12              MR. NESTER:  Your Honor --
13              THE COURT:  Unless my home has changed greatly.
14              MR. NESTER:  That would probably be true, if Rex
15   were trying the case on behalf of the plaintiff.
16              THE COURT:  You got that one right.
17              Okay, so let's go with February 16th.  We will move
18   the trial date to February 16th and the final pretrial --
19   anybody got a problem with the final pretrial conference on
20   February 3rd at 1:30?  (Pause.)  Okay.  All right.
21              And I have been to -- I intend to -- I don't care
22   what's going on, I mean, this has gotten to be so easy that
23   unless someone has an objection, particularly with all the
24   folks we have from out of town, we'll do the final pretrial
25   by Zoom.
```

1        MR. NESTER:  Okay.  Thank you, Your Honor.
2        THE COURT:  Does that work for everybody?
3        MS. CENDALI:  We appreciate that very much, Your
4    Honor.
5        THE COURT:  All right.  Well, it's good seeing you
6    guys.
7        MR. SIMON:  Your Honor?  This is Tony Simon.  Could
8    I ask one quick question?
9        THE COURT:  Sure.
10       MR. SIMON:  So, we have a couple motion in limine
11   we are withdrawing.  Would you like us to just file
12   something withdrawing those, or let you know now?
13       THE COURT:  You can let us know now and -- my law
14   clerk is on the line and she'll enter an Order withdrawing.
15       MR. SIMON:  Okay.  Tony, which ones were those, 1
16   and 2?
17       MR. FRIEDMAN:  That is correct.
18       MR. SIMON:  Your Honor, we'd like to withdraw
19   motions in limine No. 1 and 2 from the plaintiff.
20       THE COURT:  You got that, Michelle?
21       LAW CLERK:  Got it.
22       MR. SIMON:  Your Honor, I had one other question,
23   and this relates to our exchange of voir dire, so we can
24   question, so we can make sure it's -- it's my understanding
25   from the rules that you are going to allow us to conduct

1  some potential jury questioning during voir dire.  And I
2  wasn't sure if you wanted us to submit all our questions to
3  you in advance, or just the ones we would like you to ask?
4         THE COURT:  Right.  So, as you guys know, I believe
5  in letting people try their cases.  So, other than the
6  background, straight background questions, I allow counsel
7  to conduct their voir dire.
8         And I'm only asking you for -- you know, in some
9  cases there are questions that are sensitive for one reason
10 or another that the -- that counsel feels more comfortable
11 having the Court ask, rather than putting it on one side or
12 the other to ask a awkward or sensitive question.  So, that
13 would be the only type of questions that I would ask for
14 you to submit; anything that you want me to ask in
15 particular.
16        MR. SIMON:  Okay.  Very good, Your Honor.  Thank
17 you.
18        THE COURT:  And, you know, and I will tell you
19 this, as far as -- we'll talk about it at the final
20 pretrial, but as far as -- I don't put a time limitation on
21 you.  I believe that folks know what's reasonable.  All of
22 you are experienced.  I'll leave it to you to figure out
23 when you are pissing the jurors off, or if you want to back
24 off or if you want to keep pushing it.  But if it gets too
25 much, I will cut -- I mean, if you go too far overboard, I

```
 1   will rein you back in.  But I don't set any artificial time
 2   --
 3           MR. SIMON:  Thank you, Your Honor.
 4           THE COURT:  -- time limits.  You know when you are
 5   feeling the heat coming from the other side, when the eyes
 6   start rolling.  If you want to keep going, I'll let you
 7   have at it.
 8           MR. SIMMONS:  Your Honor, I -- this is Mr. Simmons.
 9           I had a question about timing.  There is one
10   deadline on Friday that keyed off of the filing of the
11   26(a)(3) materials.  Did you still want us to make that
12   filing on Friday, or should we wait until closer to the
13   trial?  That's the objections to exhibits, objections to
14   deposition designations, and objections to --
15           THE COURT:  How about this?  How about this?  I
16   don't want that just to be hanging out there, you know.
17   But at the same time, since we're not pressed for time, how
18   about I give you another two weeks or so to respond to
19   that?  So, you know, you're not pressed for time but let's
20   -- you know, let's get as much squared away as we can
21   before the final -- the actual final pretrial so it may
22   just be, you know, a formality.
23           MR. SIMMONS:  Thank you, Your Honor.
24           THE COURT:  Okay?  Anything else?
25           MR. NESTER:  I don't believe so, Your Honor.
```

```
 1              THE COURT:  Okay.
 2              MS. CENDALI:  Your Honor?  One more quick question.
 3    Forgive me, Your Honor.  This is Miss Cendali.
 4              Is your normal practice to pre-admit exhibits so we
 5    can then use in openings?  Any guidance, while you think
 6    about it, would be appreciated.
 7              THE COURT:  I don't pre-admit exhibits.  But in
 8    terms of anything you want to use in opening, if it's not
 9    something that's objected to on the 26(a)(3)'s, I would
10    just suggest you check with opposing counsel and make sure
11    they have no objections to it.  If I need to rule on it, I
12    will.  But I don't typically pre-admit exhibits.
13              MS. CENDALI:  Thank you, Your Honor.
14              THE COURT:  I'd rather things happen organically
15    during the course of the evidence.
16              MR. NESTER:  Judge, this is Michael Nester.
17              Along those lines in terms of practical issues that
18    come up in trial, I have several to address with the Court.
19    But not now, given the circumstances.  Would you suggest
20    that I contact someone at your office, one of your law
21    clerks, perhaps the law clerk to whom this case is
22    assigned, to pose those questions to him or her?  And I
23    think probably on the other side of the aisle, Tony will
24    have similar questions.  I think some of them are very
25    basic.
```

```
 1            THE COURT:  Like logistical things?
 2            MR. NESTER:  They're like:  What do you prefer in
 3   terms of our presentation of the evidence?  Do you want us
 4   tethered to counsel table or to a podium, or are we free to
 5   walk around the room?  Things of that nature, Your Honor.
 6            THE COURT:  Yeah, well, I think you probably should
 7   wait until we get closer in time because that has changed.
 8   Initially, before COVID, again, if you wanted to stand on
 9   top of your head on counsel table, if the jury will let you
10   get away with it, I have no problems with it.  You can be
11   anywhere in the courtroom you would want to be, except
12   sitting next to me on the bench.  But with our plan with
13   COVID, you know, that's a little different.
14            So, I would say, you know, even 30 days out from
15   the final pretrial if you want to check with Michelle
16   Hayde, who is my law clerk, who is the clerk assigned to
17   this case, because it's really -- it really is going to
18   depend on where we are with that.
19            MR. NESTER:  Understood, Your Honor.
20            THE COURT:  Okay.  Anything else?
21            MR. SIMON:  Not for the plaintiff, Your Honor.
22   Thank you.
23            MR. NESTER:  Judge, thank you.
24            THE COURT:  Everybody, be safe and stay well.
25            (Court adjourned at 1:57 p.m.)
```

```
 1                    REPORTER'S CERTIFICATE

 2          I, Christine Dohack LaBuwi, RDR, CRR, Official

 3   Court Reporter for the U.S. District Court, Southern

 4   District of Illinois, do hereby certify that I reported

 5   with mechanical stenography the proceedings contained in

 6   pages 1-19; and that the same is a full, true, correct and

 7   complete transcript from the record of proceedings in the

 8   above-entitled matter.

 9

10          DATED this 21st day of October, 2020,

11

12                   s/Christine Dohack LaBuwi, RDR, CRR
                     _____
13                   Christine Dohack LaBuwi, RDR, CRR
```