IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CATHERINE ALEXANDER, <br><br> Plaintiff, <br><br> v. <br><br> TAKE-TWO INTERACTIVE SOFTWARE, INC., et al. <br><br> Defendants. | Case No. 3:18-cv-0966-SMY |

**<u>PLAINTIFF'S TRIAL BRIEF</u>**

## **TABLE OF CONTENTS**

FACTUAL BACKGROUND ............................................................................................. 1

LEGAL FRAMEWORK .................................................................................................... 1

    I.    Copyright Infringement ......................................................................................... 1

    II.    Fair Use ................................................................................................................. 1

    III.    De Minimis Use .................................................................................................... 2

    IV.    Implied License .................................................................................................... 4

    V.    Disgorgement of Profits ....................................................................................... 5

    VI.    Waiver .................................................................................................................. 7

    VII.    Estoppel ............................................................................................................... 8

**FACTUAL BACKGROUND**

Plaintiff filed this action on April 17, 2018, based on alleged violations of 17 U.S.C. § 501 for direct, indirect, contributory, and/or vicarious infringement of copyrights. Plaintiff is a tattoo artist who tattooed professional wrestler Randy Orton. These tattoos are the subject of this suit. Defendants have released and promoted wrestling video games titled "WWE 2K16," "WWE 2K17," and "WWE 2K18" (collectively the "Infringing Games"), all which prominently feature copies of the tattoos. Defendants never obtained permission from Plaintiff to use, reproduce, or create derivative works based on Plaintiff's copyrighted works in the Infringing Games.

**LEGAL FRAMEWORK**

  I.  **Copyright Infringement**

To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016). This Court has ruled that Defendants copied Plaintiff's work. *See Alexander v. Take-Two Interactive Software, Inc.,* No. 18-CV-966-SMY, 2020 WL 5752158, at *5 (S.D. Ill. Sept. 26, 2020). This Court has also ruled that Plaintiff has valid copyrights. *See id.* at *5, 9.

  II.  **Fair Use**

The doctrine of fair use encapsulates the limited categories of permissible copying. 17 U.S.C. § 107. Under the doctrine, using another's copyrighted work is "fair" for such purposes as "criticism, comment, news reporting, teaching, scholarship, or research" and in those limited circumstances is "not an infringement of copyright." *Id*.

1

The burden of proving fair use is on the Defendants because fair use is an affirmative defense. *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003). Congress has provided four statutory factors to consider in evaluating a fair use defense: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. These factors are not exhaustive and require a sensitive balancing of interests. Fair use is a mixed question of law and fact. *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199 (2021) (citing *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 560 (1985)). The ultimate "fair use" question of whether the facts amount to a fair use is a question of law. *Id.*

### III.     De Minimis Use

It is questionable whether the defense of *de minimis* use is recognized in the Seventh Circuit. *See Alexander v. Take-Two Interactive Software, Inc.*, No. 18-CV-966-SMY, 2020 WL 5752158, at *6 (S.D. Ill. Sept. 26, 2020). This Court has stated that it is unaware of any cases that recognize its use in the Seventh Circuit, and Defendants have otherwise failed to provide any Seventh Circuit decisions applying the defense. *See id.* Plaintiff was also unable to locate any cases. It is therefore Plaintiff's position that the defense is not recognized in the Seventh Circuit and Defendants should not be allowed to present evidence on the defense to the jury. In addition, this Court has ruled that Defendants' copying was too extensive to warrant application of the defense. *See id.* (finding that the *de minimis* use defense has not been applied to sanction wholesale copying of works in their entirety as occurred here).

To the extent Defendants are able to present evidence, the defense protects a defendant from liability for technical copyright violations if the copying is "so trivial as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying." *See Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 77 (2d Cir. 1997). When use is *de minimis*, no legal consequences follow "even where the fact of copying is conceded." *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004) (Citing *Laureyssens v. Idea Group, Inc.* 964 F.2d 131, 140 (2nd Cir. 1992)). Proving substantial similarity requires the copying is "quantitatively and qualitatively sufficient" to show that infringement has occurred. 126 F.3d at 75. The qualitative component concerns the degree of similarity between the two works, focusing on "whether an average lay observe would recognize the alleged copy as having been appropriated form the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (internal quotation marks, citation, and alterations omitted). Whether the copying is qualitatively sufficient "often turns on the level of abstraction at which the works are compared." *Id*. "The quantitative component generally concerns the amount of the copyrighted work that is copied, a consideration that is especially pertinent to exact copying." *Ringgold*, 126 F.3d at 75 (internal citation omitted). In determining whether or not the allegedly infringing work falls below the quantitative threshold of substantial similarity to the copyrighted work, courts often look to the amount of the copyrighted work that was copied, and the observability of the copyrighted work in the allegedly infringing work. *Id.*

In *Solid Oak Sketches, LLC v. 2k Games, Inc.*, defendants moved for judgement on the pleadings for *de minimis* use. *Solid Oak Sketches, LLC v. 2k Games, Inc.*, No. 16-CV-724-LTS-SDA, 2018 WL 1626145 (S.D. N.Y. 2018). Plaintiff owned copyright registrations for five tattoos in defendants' basketball simulation video game. *Id*. at 1. The court denied the

defendants' motion for *de minimis* use because there was "no objective perspective as to how the Defendants' video game is generally played, or to what extent certain game features can be or are actually utilized." *Id*. at 4.

A plaintiff alleging copyright infringement need prove *only* "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pub., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *see also Harris Custom Builders, Inc. v. Hoffmeyer,* 92 F.3d 517, 519 (7th Cir.1996). The Seventh Circuit has held that a plaintiff only needs to show that the defendant has used her property; the burden of proving that the use was authorized falls squarely on the defendant. *I.A.E.*, 74 F.3d at 775.

## IV. Implied License

A copyright owner has the exclusive rights to copy or distribute copies of the work. 17 U.S.C. § 106. The copyright owner may authorize another person to do so through an exclusive written license or a nonexclusive oral or implied license. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). In the present case, it is undisputed that Mr. Orton did not receive a written or oral express license for the Tattoos to appear in video games. If there is a license, it must be an implied license. Defendants argue that there exists an implied license from Plaintiff to Mr. Orton, and that Mr. Orton, in turn, was impliedly authorized to sublicense rights to Defendant WWE, who, in turn, was impliedly authorized to sublicense rights to Defendant Take-Two. Dkt. 142 at 5, 7-9.

To establish an implied license, Defendants must prove that: (1) a person (the licensee) requests the creation of the work; (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it; and (3) the licensor intends that the licensee-requestor copy and distribute the work. *Id.* at 776. An implied license does not transfer ownership of the

4

copyright to the licensee, it simply permits the use of the copyrighted work to be used in a particular manner. *Id.* at 775. The burden of proving the existence of such a license rests with the accused infringer. *Muhammad*, 832 F.3d at 760. A factfinder may look to objective evidence of the copyright owner's intent in determining the existence of an implied license. *Alexander*, 489 F. Supp. 3d at 820 (citing *I.A.E.*, 74 F.3d at 776)). This Court held that the evidence raises a triable issue of fact as to the existence and scope of an implied license. *Alexander*, 2020 WL 5752158, at *4.

Implied nonexclusive licenses, as a form of copyright transfer, are rare and a "narrow exception to the writing requirement." *Effects, Inc.*, 908 F.3d at 41. There is little authority on whether implied nonexclusive licenses may further authorize implied nonexclusive sublicenses. In *Catalogue Creatives, Inc. v. Pacific Spirit Corp.*, the district court called an implied sublicense a "legal impossibility" and "decline[d] to expand that 'narrow' circumstances under which a party may grant an implied license to use copyrighted materials." No. 03-cv-966-MO, 2005 WL 1950231 at *2 (D. Or., Aug. 15, 2005). In a case of first impression, recognizing it was "for the most part in uncharted waters," the First Circuit recently recognized the possibility of an implied sublicense when "the initial license is in writing, is highly detailed, and expressly contemplates sublicensing." *Photographic Illustrator's Corp. v. Orgill, Inc.*, 983 F.3d 56, 63 (1st Cir. 2000). Plaintiff is not aware of any cases from the Seventh Circuit authorizing an implied sublicense following an implied license.

V.     **Disgorgement of Profits**

17 U.S.C. § 504(b) entitles a copyright owner to the infringer's profits upon a jury's finding that copyright infringement has occurred. In determining the infringer's profits, "the copyright owner is required to present proof only of the infringer's gross revenue, and the

infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). A plaintiff need only show a reasonable relationship or causal nexus between gross revenue and the infringement. *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983). Copyright infringement is an intentional tort, and by forcing the infringer to disgorge his profit should it exceed the copyright owner's loss the law discourages infringement and encourages the would-be infringer to transact with the copyright owner rather than "steal" the copyrighted work. *Id.* at 1120.

The Seventh Circuit has required only a minimal connection between revenue and infringement in direct profit cases. *Id*. Direct profits are "those that are generated by selling an infringing product." *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002). Direct profit cases include those where the copyrighted work is sold as a whole, *see Taylor*, 712 F.2d at 1117 (finding that plaintiff could recover profits from defendant's sale of unauthorized copies of plaintiff's copyrighted maps), or where the copyrighted work is included as a part of a larger whole, *see On Davis v. Gap, Inc.*, 246 F.3d 152, 160 (2d. Cir. 2001)(using a poem in an anthology of poetry to illustrate the plaintiff's burden of providing "evidence of the revenues realized from the sale of the [product] containing the infringing [work]").

After a plaintiff shows gross revenue, the burden shifts to the defendant to prove deductible expenses and the elements of profit attributable to factors other than the copyrighted work. 17 U.S.C. § 504(b). A plaintiff can challenge a defendant's calculation of fixed and variable expenses, and the jury determines who is correct. *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 568 (7th Cir. 2003) (the jury did not err in reasonably finding the defendant's calculation of expenses was unsubstantiated). Apportionment of the infringer's profits between the infringement and any other factors a defendant may present is highly fact-

specific and should be left to the jury. *Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789, 798 (8th Cir. 2003); *Bergt v. McDougal Littell*, 661 F.Supp. 2d 916, 929 (N.D. Ill. 2009). While the law is unclear on whether the amount of disgorged profits a plaintiff is entitled to is a judge or jury decision, at the very least, the question should at least be presented to the jury for an advisory verdict. *Motorola Sols., Inc. v. Hytera Commc'ns Corp.,* 495 F.Supp.3d 687, 708 (N.D. Ill. 2020); *GC2 Inc. v. Int'l Game Tech, IGT, Doubledown Interactive LLC*, 391 F.Supp.3d 828, 848 (N.D. Ill. 2019) (where the court held the jury's apportionment verdict was not against the weight of the evidence and would not be disturbed).

### VI. Waiver

"A valid waiver of statutory rights must be knowing, voluntary, and intentional." *Cothron v. White Castle Sys., Inc.*, No. 19 CV 00382, 2020 WL 3250706, at *4 (N.D. Ill. June 16, 2020)(internal quotations omitted). The doctrine of waiver acknowledges that a right may be taken away from its holder as a penalty for failure to assert it in a clear and timely manner. *Myers v. Harold*, 279 F. Supp. 3d 778, 779 (N.D. Ill. 2017) (quotations and citations omitted). Although mere silence may be enough for waiver when a legal duty to speak exists, waiver must be manifested in an unequivocal manner. *Isringhausen Imp., Inc. v. Nissan N. Am., Inc.*, No. 10-CV-3253, 2011 WL 6029733, at *3 (C.D. Ill. Dec. 5, 2011)

The burden of proving waiver rests on the party asserting the affirmative defense. *See, e.g., Soos & Assocs., Inc.*, 425 F. Supp. 3d at 1011–12. Because the issue of waiver requires fact-specific determinations regarding whether a party intentionally failed to assert its rights in a timely manner, it is the province of the jury. *See Nat'l Council of United States Soc'y of St. Vincent de Paul, Inc. v. St. Vincent de Paul Cmty. Ctr. of Portage Cty., Inc.*, No. 16-CV-423-BBC, 2017 WL 6759411, at *16 (W.D. Wis. Dec. 29, 2017) (holding that "defendant has failed

7

to offer sufficient evidence to allow a reasonable jury to find in its favor on the affirmative defenses of acquiescence, waiver, equitable estoppel and abandonment"); *Neva, Inc. v. Christian Duplications Int'l, Inc.*, 743 F. Supp. 1533, 1540 (M.D. Fla. 1990) (submitting the issues of affirmative defenses of laches, estoppel, waiver and the statute of limitations to the jury).

### VII. Estoppel

The defense of estoppel applies only where a copyright owner "engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on the copyright owner's deception." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684–85, (2014). In such a case, "the doctrine of estoppel may bar the copyright owner's claims completely, eliminating all potential remedies." *Id*. The Supreme Court has recently instructed that the "gravamen of estoppel … is misleading and consequent loss," further stating that "[d]elay may be involved, but is not an element of the defense." *Id.* at 684-85.

The four elements of equitable estoppel in copyright are (1) the copyright owner's knowledge of the alleged infringer's infringing conduct; (2) the copyright owner's intention that his conduct be acted on or so acted that the alleged copyright infringer had a right to believe it was so intended; (3) the alleged copyright infringer was ignorant of the true facts; and (4) the alleged copyright infringer detrimentally relief on the copyright owner's conduct. *Shanlian Quan v. Ty, Inc.*, No. 17 C 5683, 2019 WL 1281975, at *2 (N.D. Ill. Mar. 20, 2019) (citing 18 Am. Jur. 2d Copyright & Literary Prop. § 268*; Nat'l Bus. Lists, Inc. v. Dun & Bradstreet, Inc.*, 552 F. Supp. 89, 96 (N.D. Ill. 1982)).

Estoppel applies only if the copyright owner is aware of the infringing conduct yet acts in a way that induces the infringer reasonably to rely upon such action to his detriment. *Bourne v. Hunter County Club, Inc.,* 990 F.2d 934, 937 (7th Cir. 1993).

The burden of proving the affirmative defense of equitable estoppel rests on the alleged infringer. *Shanlian Quan*, 2019 WL 1281975, at *7.

Dated: September 3, 2021                                  Respectfully submitted,

/s/ Anthony G. Simon
Anthony G. Simon, IL 6209056
Anthony R. Friedman, IL 6299795
Paul J. Tahan
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Phone: (314) 241-2929
Fax: (314) 241-2029
asimon@simonlawpc.com
afriedman@simonlawpc.com
ptahan@simonlawpc.com

R. Seth Crompton
**THE HOLLAND LAW FIRM**
300 N. Tucker, Suite 801
St. Louis, Missouri 63101
scrompton@allfela.com
Phone: (314) 241-8111
Facsimile: (314) 241-5554

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all counsel of record via this Court's CM/ECF system on September 3, 2021.

/s/ Anthony G. Simon