**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| CATHERINE ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, | ) | Case No. 3:18-cv-966-SMY |
| INC.; 2K GAMES, INC.; 2K SPORTS, INC.; | ) | |
| WORLD WRESTLING ENTERTAINMENT, | ) | |
| INC.; VISUAL CONCEPTS ENTERTAINMENT; | ) | |
| YUKE'S CO., LTD.; AND YUKE'S LA, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OMNIBUS MOTION *IN LIMINE*

## TABLE OF CONTENTS

I.   MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING DEFENDANTS' ALLEGED ACTUAL DAMAGES ....................... 1

II.  MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING DEFENDANTS' ALLEGED PROFIT DISGORGEMENT ............ 4

III. MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING THE CUSTOM SUPERSTAR FEATURE IN WWE 2K ................ 5

IV.  MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING PLAINTIFF'S ALLEGED 2009 PHONE CALL TO WWE ........... 9

V.   MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT REGARDING MARKETING, ADVERTISING, OR CRITICAL RECEPTION FOR *WWE 2K* VIDEO GAMES OTHER THAN *WWE 2K16*, *WWE 2K17*, AND *WWE 2K18* ...................................................................... 13

VI.  MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING STATEMENTS BY RANDY ORTON IN ONLINE ARTICLES ...................................................................................................... 16

VII. MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING RANDY ORTON'S NUMBER OF SOCIAL MEDIA FOLLOWERS ................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Balsley v. LFP, Inc.*,
 691 F.3d 747 (6th Cir. 2012) ................................................................................5

*Bayless v. Boston Sci. Corp.*,
 No. 20 Civ. 831, 2021 WL 2459275 (M.D. Fla. May 24, 2021) ............................11

*Bell v. Taylor*,
 827 F.3d 699 (7th Cir. 2016) ................................................................................4

*Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*,
 596 F.3d 357 (6th Cir. 2010) ................................................................................2

*Boyce v. Exec. Dir. of Cook Cty. Dept. of Corrections*,
 No. 96 Civ. 3703, 2001 WL 648951 (N.D. Ill. Jun. 4, 2001) ................................11

*Burke v. J.B. Hunt Transp. Servs. Inc.*,
 No. 04 Civ. 2678, 2006 WL 8460584 (N.D. Ill. Feb. 6, 2006) ............................11

*Campbell v. Acuff-Rose Music, Inc.*,
 510 U.S. 569 (1994) ..............................................................................................11

*Cincinnati Holding Co., LLC v. Fireman's Fund Ins. Co.*,
 No. 17 Civ. 105, 2020 WL 635655 (S.D. Ohio Feb. 11, 2020) ............................17

*Coin-Tainer Co., LLC v. Pap-R Prods. Co.*,
 No. 19 Civ. 234, 2021 WL 5998653 (S.D. Ill. Dec. 20, 2021) ............................2, 4

*Cortezano v. Salin Bank & Trust Co.*,
 680 F.3d 936 (7th. Cir. 2012) ..............................................................................17

*Cunningham Charter Corp. v. Learjet, Inc.*,
 No. 7 Civ. 233, 2012 WL 1565532 (S.D. Ill. May 2, 2012) ............................15, 20

*David v. Caterpillar, Inc.*,
 324 F.3d 851 (7th Cir. 2003) ................................................................................2

*DR Distribs., LLC v. 21 Century Smoking, Inc.*,
 513 F. Supp. 3d 839 (N.D. Ill. 2021) ....................................................................6

*ECIMOS, LLC v. Carrier Corp.*,
 971 F.3d 616 (6th Cir. 2020) ................................................................................5

*Eiben v. A. Epstein & Sons Int'l, Inc.*,
  57 F. Supp. 2d 607 (N.D. Ill. 1999) ...............................................................16, 19, 20

*Eisenstadt v. Centel Corp.*,
  113 F.3d 738 (7th Cir. 1997) ......................................................................................17

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
  772 F.2d 505 (9th Cir. 1985) ...............................................................................15, 16

*Gordon v. FedEx Freight, Inc.*,
  674 F.3d 769 (7th Cir. 2012) ......................................................................................10

*Hickman v. Taylor*,
  329 U.S. 495 (1947).......................................................................................................6

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
  No. 13 Civ. 816, 2017 WL 10844685 (S.D.N.Y. Dec. 8, 2017).......................13, 15

*Johnson v. Chi. Bd. of Educ.*,
  No. 12 Civ. 3670, 2018 WL 3208512 (N.D. Ill. June 29, 2018) ......................10, 11

*Karum Holdings LLC v. Lowe's Cos., Inc.*,
  No. 15 Civ. 380, 2017 WL 10311207 (N.D. Ill. Sept. 8, 2017)..................................2

*Kienitz v. Sconnie Nation LLC*,
  965 F. Supp. 2d 1042 (W.D. Wisc. 2013).................................................................12

*Kyles v. JK Guardian Sec. Servs., Inc.*,
  No. 97 Civ. 8311, 2000 WL 1810003 (N.D. Ill. Dec. 11, 2000) .........................5, 8

*Leonard v. Stemtech Health Scis., Inc.*,
  981 F. Supp. 2d 273 (D. Del. 2013)...........................................................................13

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*,
  No. 13 Civ. 4664, 2014 WL 3368893 (N.D. Ill. July 8, 2014) ................................12

*Moore v. Metro. Water Reclamation Dist. of Greater Chi.*,
  No. 02 Civ. 4040, 2004 WL 2958769 (N.D. Ill. Nov. 22, 2004)..............................10

*Oracle Am., Inc. v. Google Inc.*,
  No. 10 Civ. 3561, 2016 WL 1743111 (N.D. Cal. May 2, 2016) ...............................12

*Robenhorst v. Dematic Corp.*,
  No. 05 Civ. 3192, 2008 WL 1766525 (N.D. Ill. Apr. 14, 2008) ..............................16

*Rodriguez v. Texan, Inc.*,
  No. 01 Civ. 1478, 2002 WL 31061237 (N.D. Ill. Sept. 16, 2002).........................8, 9

*Stagman v. Ryan*,
    176 F.3d 986 (7th Cir. 1999) ............................................................11

*Sullivan v. Flora*,
    No. 15 Civ. 298, 2017 WL 1487624 (W.D.Wis. Apr. 25, 2017).....................................19, 20

*TCF Inventory Fin., Inc. v. Northshore Outdoor, Inc.*,
    No. 11 Civ. 85, 2012 WL 2576367 (N.D. Ohio July 3, 2012).................................2

*Toney v. Rosewood Care Ctr., Inc.*,
    No. 98 Civ. 693, 2002 WL 992642 (N.D. Ill. May 15, 2002) ..................................2

*U.S. v. Richardson*,
    No. 90 Crim. 345, 1990 WL 91514 (N.D. Ill. June 21, 1990)................................13

*Vital Pharms., Inc. v. Monster Energy Co.*,
    No. 21 Civ. 13264, 2022 WL 3083273 (11th Cir. Aug. 3, 2022) (*per curiam*)........................2

*West v. Perry*,
    No. 07 Civ. 200, 2008 WL 5071109 (E.D. Tex. Nov. 25, 2008).....................................11, 16

**Statutes**

17 U.S.C. § 504(b) ....................................................................................4

**Rules**

Fed. R. Civ. P. 26 ................................................................................. *passim*

Fed. R. Civ. P. 37 ....................................................................................2

Fed. R. Evid. 401 ................................................................................. *passim*

Fed. R. Evid. 402 ...................................................................................16

Fed. R. Evid. 403 ................................................................................. *passim*

Fed. R. Evid. 801 ................................................................................. *passim*

Fed. R. Evid. 802 ...............................................................................9, 10, 16

Fed. R. Evid. 803 ....................................................................................9

Fed. R. Evid. 804 ....................................................................................9

Local Rule 16.2(b)(3)(I)............................................................................1, 5

Rule 37(c)(1) ......................................................................................2, 8

Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., Visual Concepts, Inc. (collectively, "Take-Two") and World Wrestling Entertainment, Inc. ("WWE"; together with Take-Two, "Defendants") hereby move *in limine* to exclude certain testimony, evidence, or argument that Defendants anticipate Plaintiff Catherine Alexander ("Plaintiff") will seek to introduce at trial in the above-captioned litigation (the "Litigation"). As discussed in greater detail below, the anticipated evidence is inadmissible under the Federal Rules of Evidence (the "Rules"), and therefore Defendants respectfully request an order barring Plaintiff from submitting such evidence at trial.

## I.   MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING DEFENDANTS' ALLEGED ACTUAL DAMAGES

Defendants respectfully move *in limine* to preclude Plaintiff from offering evidence, testimony, or argument that she is entitled to actual damages. Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), Plaintiff was required to provide "a computation of each category of damages claimed" as well as "the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." This Court's Case Management Procedures emphasize that "Federal Rule of Civil Procedure 26 shall be strictly enforced." Case Management Procedures of Judge Staci M. Yandle 2. In addition, this Court's Local Rules and its Case Management Procedures specifically require an itemization of all damages sought at trial. *See* S.D. Ill. Local Rule 16.2(b)(3)(I) (final pretrial order must include "itemized statements of all damages by all parties"); Case Management Procedures of Judge Staci M. Yandle 6 ("Counsel shall jointly prepare a Final Pretrial order using Judge Yandle's approved form," which is available at http://www.ilsd.uscourts.gov/documents/SMYFPTOrder.docx, and which states that the "parties should insert here . . . an itemization of all damages sought in this case."). An itemization of damages is not merely the

type of damages.  Rather, as the court in *Toney v. Rosewood Care Ctr., Inc.* held, it is the "amounts [the plaintiff] would be asking the jury to award."  No. 98 Civ. 693, 2002 WL 992642, at \*2 (N.D. Ill. May 15, 2002).

A party that "fails to provide information" required by Rule 26 "is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Karum Holdings LLC v. Lowe's Cos., Inc.*, No. 15 Civ. 380, 2017 WL 10311207, at \*3 (N.D. Ill. Sept. 8, 2017) ("the 'sanction of exclusion' of damages evidence, pursuant to Rule 37(c)(1), is 'automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless'" (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003))).  Thus, courts in this and other Circuits regularly exclude evidence of damages when a party fails to disclose a corresponding computation.  *See Coin-Tainer Co., LLC v. Pap-R Prods. Co.*, No. 19 Civ. 234, 2021 WL 5998653, at \*4 (S.D. Ill. Dec. 20, 2021) (granting motion *in limine* to preclude all "evidence of damages" for failure to provide a computation); *see also Vital Pharms., Inc. v. Monster Energy Co.*, No. 21 Civ. 13264, 2022 WL 3083273, at \*3 (11th Cir. Aug. 3, 2022) (*per curiam*) (excluding damages where plaintiff had "identified categories of damages and produced financial records, [but] it never presented the required computation of lost sales or loss of goodwill, much less how those damages might be computed."); *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 369 (6th Cir. 2010) (excluding "evidence of lost-profits damages" where plaintiff failed to compute damages); *TCF Inventory Fin., Inc. v. Northshore Outdoor, Inc.*, No. 11 Civ. 85, 2012 WL 2576367, at \*4 (N.D. Ohio July 3, 2012) (granting motion *in limine* "to preclude defendants from presenting damage evidence as to 'lost profits'" where

"defendants did not provide TCF with a computation of alleged lost profits in their initial Rule

26 disclosures" and did not disclose a "'computation' of their alleged lost profits").

Despite multiple opportunities, Plaintiff has never disclosed the required computation or

itemization of any damages.  In Plaintiff's Rule 26 disclosures served in 2018 and never

supplemented since then, for the required "computation of each category of damages," Plaintiff

simply contended that she is "is entitled to an award of damages resulting from Defendants'

infringement of Plaintiff's tattoo designs" including "actual damages and Defendants' profits

attributable to the infringement."  Ex. 1 (Pl.'s Rule 26 Disclosures), at 2.  She further asserted

that her "damages claim will be described in further detail by the parties and will be the subject

of expert testimony," and she "will make the required damages and expert disclosures according

to the deadlines set forth in the Rule 26(f) Discovery Plan."  *Id.*  In Plaintiff's 2019 response to

Take-Two's Interrogatory (the most recent response) seeking a description of, "in dollars, any

damage alleged by PLAINTIFF to have resulted from DEFENDANTS' conduct, including

without limitation any revenue lost by PLAINTIFF," Plaintiff responded that she is "entitled to

Defendants' gross revenues from the sales of the infringing products" and that she "intends to

rely on experts to respond to the extent Defendants contend through expert testimony that she is

not entitled to such damages."  Ex. 2 (Pl.'s Resp. Take-Two's Interrog. No. 19), at 11.  Yet,

despite repeatedly deferring to her forthcoming expert reports, Plaintiff's only damages expert,

Ryan Clark, admitted that he is "not going to offer any opinions on actual damages" and is "not

providing an opinion on the amount of profits that are attributable to the copyrights in this case."

Ex. 3 (R. Clark Dep. Tr.), at 39:17–25, 17:13–16.

Finally, first in the Parties' jointly submitted 2020 Pretrial Order, and then again in the

2021 First Amended Pretrial Order submitted a year later, Plaintiff made clear that—despite the

initial disclosure and Local Rules' requirements to do so—she would not be computing or itemizing damages.  In those pretrial orders, over Defendants' objection, Plaintiff specifically stated that she believed she was required to state only "that she is seeking (1) disgorgement of profits and (2) actual damages, pursuant to 17 U.S.C. § 504(b)."  Ex. 4 (Sept. 25, 2020 Pretrial Order), at 9 n.11; Ex. 5 (Aug. 27, 2021 First Amended Pretrial Order), at 9 n.9 (same).

Plaintiff's failure to disclose any computation of damages is neither justified nor harmless to Defendants.  As to justification, Defendants have repeatedly requested a computation and itemization, and Plaintiff has repeatedly refused to provide it, despite numerous opportunities to do so.  Further, it is Plaintiff's burden to prove actual damages.  *See Bell v. Taylor*, 827 F.3d 699, 710 (7th Cir. 2016) (holding "it was [plaintiff's] burden to prove damages, and defendants were not required to produce any evidence showing a lack of damages").  As to harm to Defendants, fact and expert discovery are closed, the parties are on the eve of trial, and Defendants have had no opportunity to take discovery on Plaintiff's computation or itemization of alleged actual damages—because she has never provided them.  Indeed, Defendants have no idea how Plaintiff would attempt to prove actual damages because she has never produced a shred of evidence in support of this claim.  *Supra* 3.  This is a classic example of prejudice.  *See Coin-Tainer*, 2021 WL 5998653, at *4 (prejudice to defendant where it had "not had an opportunity to develop evidence to rebut Coin-Tainer's evidence of damages").  The appropriate remedy is to exclude Plaintiff from offering evidence related to actual damages.  *Id.*

## II.    MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING DEFENDANTS' ALLEGED PROFIT DISGORGEMENT

Defendants respectfully move *in limine* to preclude Plaintiff from offering evidence, testimony, or argument that she is entitled to disgorge Defendants' profits.  As explained in detail above, Plaintiff has never computed or itemized any monetary relief.  *See supra* 1.  That

includes the amount that Plaintiff seeks to disgorge from Defendants, despite the Federal and Local Rules requirement that she do so.  For the reasons explained above, she also should be precluded from presenting evidence or argument seeking to disgorge Defendants' profits.

Plaintiff may contend that, with respect to disgorgement of profits, she is required to present only proof of Defendants' gross revenue.  But this does not excuse her failure to compute or itemize according to the rules of this Court.  *Supra* 1 (citing S.D. Ill. Local Rule 16.2(b)(3)(I); Case Management Procedures of Judge Staci M. Yandle 6).  Defendants are aware of no case, and Plaintiff has never cited any from this Court, in which the required "itemization of all damages sought" can be satisfied by a mere request for "disgorgement of profits."[1]

## III.   MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING THE CUSTOM SUPERSTAR FEATURE IN WWE 2K

Defendants respectfully move *in limine* to exclude testimony, evidence, or argument related to the Custom Superstar feature in the *WWE 2K* Games.[2]  Plaintiff apparently intends to present evidence that this specific function in the *WWE 2K* Games infringes her alleged copyrights in tattoos on Randy Orton but did not disclose this theory during fact or expert discovery, despite being specifically asked to disclose all infringement theories.  In fact, it was not until exhibits were exchanged during final pretrial exchanges that Plaintiff revealed her new theory.  As a result, it should be excluded.

The Federal Rules' disclosure requirements exist "to prevent trial by ambush."  *Kyles v.*

---

[1]   Moreover, when Plaintiff argued in the pretrial order that she does not need to compute or itemize profit-disgorgement, she relied on cases from outside of this Circuit that recite the burdens of proof for disgorgement of profits.  *See* Ex. 4 (Sept. 25, 2020 Pretrial Order), at 9 nn.10–11 & Ex. 5 (Aug. 27, 2021 First Amended Pretrial Order), at 8-9 nn. 7–9 (citing *Balsley v. LFP, Inc.*, 691 F.3d 747, 767 (6th Cir. 2012) & *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616 (6th Cir. 2020)).  These cases are irrelevant as they do not concern the issue here, which is that this Court has clear rules requiring the specific itemization of damages.  *Supra* 1.

[2]   This feature is also sometimes referred to as Create a Superstar in *WWE 2K*.

*JK Guardian Sec. Servs., Inc.*, No. 97 Civ. 8311, 2000 WL 1810003, at *3 (N.D. Ill. Dec. 11, 2000); *see DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 973 (N.D. Ill. 2021) ("The gravamen of the Federal Rules of Civil Procedure is to eliminate trial by ambush . . . ." (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947))).  Likewise, Federal Rule of Civil Procedure 26(e) requires that "[a] party . . . who has responded to an interrogatory, request for production, or request for admission [] must supplement or correct its disclosure or response [] in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect" and not "otherwise . . . made known to the other parties."

Defendants requested the complete basis for and documents supporting Plaintiff's infringement claim multiple times during discovery, and she consistently and repeatedly maintained that the basis for her claim was only Take-Two's depiction of tattoos *on Randy Orton*:

- ***First***, Take-Two propounded an interrogatory that asked Plaintiff to "STATE the factual and legal basis for [her infringement] contention, including without limitation ***each use of*** the ASSERTED WORKS in the ACCUSED PRODUCTS that PLAINTIFF contends represents an instance of infringement of PLAINTIFF's copyrights."  Ex. 2 (Pl.'s Resp. Take-Two Interrog. No. 6) (emphasis added).  Plaintiff's response identified her Federal Rule of Civil Procedure 26 initial disclosures and referred Take-Two to the "allegations in Complaint."  *Id.*  Her disclosures did not identify what Plaintiff accused of infringement.  *See generally* Ex. 1 (Pl.'s Rule 26 Disclosures).  The Complaint, in turn, alleged that Take-Two infringes because of "***[t]he tattoos on Mr. Orton*** that appear in WWE 2K16 are the same or substantially similar to Plaintiff's copyrighted works."  Dkt.

6

76 (Am. Compl.) ¶¶ 75, 79 ("*WWE 2K17* also prominently features Mr. Orton"), 84 ("*WWE 2K18* also prominently features Mr. Orton").

- ***Second***, Plaintiff was asked whether, "other than . . . the use of the tattoos in the WWE 2K video games depicting Mr. Orton," she was "aware of any other instance where you believe your rights with regard to the tattoos you inked on Mr. Orton were infringed[.]" Ex. 6 (Alexander Dep. Tr.) 26:23–27:4.  She responded that she was not.  *Id.*

- ***Third***, Plaintiff was asked to produce (1) "DOCUMENTS sufficient to show which of the ASSERTED WORKS allegedly appears in which of the ACCUSED PRODUCTS," to which she responded she "was not withholding any documents at this time," and (2) "All DOCUMENTS upon which PLAINTIFF intends to rely in connection with this LITIGATION," to which she directed Defendants to the "pleadings in this matter and copyright applications previously produced."  Ex. 7 (Pl.'s Resp. Take-Two RFP Nos. 28, 60) at 16, 32.[3]

Despite these clear responses to Take-Two's requests, after the close of discovery, Plaintiff apparently decided to add a new infringement theory when the parties were preparing for trial.  Specifically, when the parties exchanged physical exhibits, Plaintiff included a previously undisclosed video and various screenshots from *WWE 2K16* of a "Custom Superstar" with Randy Orton's tattoos.  For example, Plaintiff's Trial Exhibit 68 (attached hereto as Exhibit 9) is a series of counsel-generated screenshots of a "Custom Superstar" having Randy Orton's body parts, and thus tattoos, added to it, such as the image below showing the sleeve of tattoos that Randy Orton has on his left arm:

---

[3]   Plaintiff's technical expert, Dr. Zagal, also never disclosed a theory of infringement beyond the depiction of tattoos on Randy Orton.  Ex. 8 (Zagal Op. Rpt.).



Excerpt from Plaintiff's Trial Exhibit 68

Federal Rule of Civil Procedure 37(c)(1) instructs that, if a party fails to provide information or identify a witness as required by Rule 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See Rodriguez v. Texan, Inc.*, No. 01 Civ. 1478, 2002 WL 31061237, at *1 (N.D. Ill. Sept. 16, 2002) (excluding on motion *in limine* exhibits "not disclosed during discovery" that nevertheless appeared on "the list of the parties' proposed trial exhibits"). To the extent that Plaintiff intends to argue that use of tattoos in "Custom Superstar" represents an instance of infringement of her alleged copyrights, she failed to disclose that theory during discovery. Moreover, she has offered no explanation or justification for this late disclosure. *See Kyles*, 2000 WL 1810003, at *3 (excluding evidence due to "plaintiffs failure to show substantial justification for not updating its vague interrogatory responses").

Further, Defendants would be significantly prejudiced were Plaintiff now allowed to present the new theory at trial. *Id.* ("The conduct of plaintiffs' counsel just prior to and during trial strongly suggests an intent to surprise Guardian and enjoy a resulting tactical advantage. That is *unfair* prejudice."). Because Plaintiff failed to disclose this theory during discovery, Defendants had no opportunity to conduct discovery on this feature, including to ask Plaintiff questions about it at her deposition, to ask Dr. Zagal questions about it during his deposition, or

to have its own video game expert, Dr. Bogost, provide his expert opinion of this feature.

Accordingly, any testimony, evidence, or argument related to the Custom Superstar feature

should be excluded or Plaintiff should be precluded from arguing or introducing evidence at trial

that such use of the tattoos is not "on Mr. Orton," as reflected in Plaintiff's Complaint.  *See, e.g.*,

*Rodriguez*, 2002 WL 31061237, at *2 ("When a party makes a formal discovery request under

those Rules, it is entitled to rely on the adversary's equally formal response . . . .").

## IV.    MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING PLAINTIFF'S ALLEGED 2009 PHONE CALL TO WWE

Defendants respectfully move *in limine* to exclude testimony, evidence, or argument

concerning an uncorroborated phone call Plaintiff purportedly placed in 2009 to an unidentified

person in WWE's legal department regarding rumors that WWE allegedly planned to sell nylon

sleeves depicting Mr. Orton's tattoos as merchandise.  The conversation that supposedly took

place on this call should be excluded because (1) statements made by Plaintiff or the unknown

person on the other end of the call are inadmissible hearsay, meeting no exception under Rules

801–804; (2) the subject matter of the call, even if Plaintiff is taken at her word as to the truth

and accuracy of its contents, is irrelevant to any issue in this Litigation under Rule 401; and

(3) this evidence would be confusing and unfairly prejudicial under Rule 403.

By way of background, Plaintiff claims that in 2009—more than a decade before she

filed this lawsuit—she heard a rumor from someone she could not recall that WWE supposedly

was planning to sell nylon sleeves depicting Orton's tattoos as merchandise.  In response to this

rumor, Plaintiff testified that she called a phone number she found through a Google search for

"WWE legal" and spoke to "an authority of legal matters for WWE," though she could not

remember with whom she spoke or whether the person was actually a lawyer.  Ex. 6 (Alexander

Dep. Tr.) at 28:10–24.  Plaintiff further testified that she introduced herself as "Randy Orton's

tattoo artist," asked if the "faux sleeves" were a planned product, and offered to, "if they wanted

to use the images, negotiate a percentage of any reproductions of [her] work." *Id.* at 30:10–

31:11.  She then testified that the voice at the other end of the line "assumed [she] was a stupid

hick from the Midwest that doesn't know any better," "laughed at [her] and said [she] had no

grounds, and they could do what they want with [Orton's] images." *Id.*  Plaintiff has produced

no documents, correspondence, e-mail, or notes to corroborate these allegations.  WWE also has

no record of this alleged phone call and disputes that it ever occurred, let alone that anyone

affiliated with WWE made the statements Plaintiff alleges.  *See* Ex. 10 (WWE Resps. & Objs. to

1st Rogs) at 3–5.

The conversation should be excluded for multiple reasons.  ***First***, every aspect of these

allegations constitutes inadmissible hearsay (and hearsay upon hearsay) under Rules 801 and

802.  As an initial matter, Plaintiff's testimony that she heard a "rumor" about such an alleged

product from some unidentified person is hearsay because it is being offered for the truth of the

matter asserted—namely, that she was told WWE was making the product.  *See Gordon v.*

*FedEx Freight, Inc.*, 674 F.3d 769, 774–75 (7th Cir. 2012) (holding that plaintiff's testimony

regarding a rumor for which "she could not remember who gave her the information" constituted

inadmissible hearsay); *Moore v. Metro. Water Reclamation Dist. of Greater Chi.*, No. 02 Civ.

4040, 2004 WL 2958769, at *8 (N.D. Ill. Nov. 22, 2004) (excluding evidence on the basis of

hearsay where it was based on "rumors" and "gossip").  Likewise, Plaintiff's testimony about her

alleged call to WWE is inadmissible hearsay because it again is being offered for the truth of the

matter asserted — namely, that the phone call supposedly occurred and the person from WWE

supposedly said what she attributes to him.  *See Johnson v. Chi. Bd. of Educ.*, No. 12 Civ. 3670,

2018 WL 3208512, at *3 (N.D. Ill. June 29, 2018) (finding Board employee's statement on

telephone call "is inadmissible hearsay"); *Boyce v. Exec. Dir. of Cook Cty. Dept. of Corrections*, No. 96 Civ. 3703, 2001 WL 648951, at *10 (N.D. Ill. Jun. 4, 2001) ("Insofar as the statement is offered to prove the truth of the matter asserted (i.e., that the conversation actually occurred and what was said), it is hearsay and inadmissible."). The Northern District of Illinois' decision in *Johnson* is squarely on point here. In that case, the district court excluded as hearsay testimony concerning an alleged telephone call where the plaintiff offered "no evidence at all about who was on the other end of the phone call."[4]

**Second**, the 2009 conversation is irrelevant under Rule 401 because it pertained to products, concepts, and timeframes unrelated to any issue in this Litigation. This lawsuit is based on solely the *WWE 2K* Games, not "faux sleeves" that were never actually produced. Dkt. 76 (Am. Compl.) ¶ 16; Ex. 6 (Alexander Dep. Tr.) at 26:6–27:19. Purported evidence concerning a hypothetical product that, even if it did ever exist, would have been a completely different product in a completely different product category has no conceivable relevance the *WWE 2K* Games at issue here. *See West v. Perry*, No. 07 Civ. 200, 2008 WL 5071109, at *2–3 (E.D. Tex. Nov. 25, 2008) (excluding evidence concerning defendant's "other works" as "not probative"); *see also Bayless v. Boston Sci. Corp.*, No. 20 Civ. 831, 2021 WL 2459275, at *2 (M.D. Fla. May 24, 2021) (excluding evidence about a completely unrelated product). Nor is this evidence relevant to fair use, the analysis for which considers whether the use will "result in a substantially adverse impact on the potential market for the original." *Campbell v. Acuff-Rose*

---

[4]   Ms. Alexander's testimony also establishes that the statements she seeks to introduce are not party admissions under Rule 801(d)(2) because there is no evidence from which to conclude that the person who supposedly answered the phone had authority to speak on the matter about which he allegedly spoke. *See Stagman v. Ryan*, 176 F.3d 986, 997 (7th Cir. 1999) (excluding statement because plaintiff failed to introduce evidence that it was made within scope of authority or employment); *see also Burke v. J.B. Hunt Transp. Servs. Inc.*, No. 04 Civ. 2678, 2006 WL 8460584, at *2 (N.D. Ill. Feb. 6, 2006) (excluding statement allegedly made by anonymous employee because plaintiff failed to establish declarant had personal knowledge or authority over subject matter of offered statement).

*Music, Inc.*, 510 U.S. 569, 590 (1994) (internal quotation marks omitted).  The key consideration in this Litigation is whether the market for licensing tattoos in video games is harmed by Defendants' use, *not* whether there is a market for licensing tattoos for faux arm sleeves, or whether *that* use requires a license.  *See Oracle Am., Inc. v. Google Inc.*, No. 10 Civ. 3561, 2016 WL 1743111, at *2–3 (N.D. Cal. May 2, 2016) (granting motion *in limine* to exclude evidence related to plaintiff's product markets that were not at issue, as it was not relevant to the fourth fair use factor); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, No. 13 Civ. 4664, 2014 WL 3368893, at *10 (N.D. Ill. July 8, 2014) (finding fair use where copyright holder was in the market for "licensing [a] photo as a wallposter or other photo suitable for display" whereas defendant was in the market for "news about current events and gossip," and therefore no evidence in the record demonstrated a market impact for plaintiff's use); *Kienitz v. Sconnie Nation LLC*, 965 F. Supp. 2d 1042 (W.D. Wisc. 2013) (considering whether the plaintiff would have licensed the photograph *at issue* for the *same* purpose as the defendant in assessing market harm).

*Third*, the risk of confusing the jury and unfairly prejudicing Defendants is high in these circumstances.  Plaintiff alleges, without a shred of corroborating evidence, that the person she allegedly spoke to at the WWE about the alleged faux tattoo sleeves "assumed [she] was a stupid hick from the Midwest" and laughed at her.  Ex. 6 (Alexander Dep. Tr.) at 30:10–31:11.[5] Allowing this evidence to be presented risks biasing the jury against WWE because it would lead them to believe that the WWE does not care about small businesspersons from southern Illinois. It is also irrelevant.  It is undisputed that the alleged faux tattoo sleeves were never sold by

---

[5]    This allegation is also inconsistent with Plaintiff's allegation in the Complaint that the WWE offered her $450 to use and reproduce the tattoos.  *See* Dkt. 76 (Am. Compl.) ¶ 69.

WWE.  Plaintiff also alleges, again without a shred of corroborating evidence, that she heard a rumor that WWE was considering producing such a product more than ten years before this lawsuit was filed.  Such a hypothetical product in a different product category years before the release of the videogames at issue here risks misleading the jury into thinking that the alleged faux sleeves are among the allegedly infringing works, or that the sleeves were tie-ins or related products, when there is no evidence that they have any relation to the games at issue.  Given the propensity of this evidence to confuse the jury as to the "issues they must resolve," it should be excluded.  *See U.S. v. Richardson*, No. 90 Crim. 345, 1990 WL 91514, at *6 (N.D. Ill. June 21, 1990); *John Wiley & Sons, Inc. v. Book Dog Books, LLC,* No. 13 Civ. 816, 2017 WL 10844685, at *3 (S.D.N.Y. Dec. 8, 2017) (excluding evidence of other works by defendant not at issue in the litigation as "confusing and unnecessary"); *accord Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 280 (D. Del. 2013) (excluding evidence related to licensing of plaintiff's photographic images not at issue in the litigation).

## V.   MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT REGARDING MARKETING, ADVERTISING, OR CRITICAL RECEPTION FOR *WWE 2K* VIDEO GAMES OTHER THAN *WWE 2K16*, *WWE 2K17*, AND *WWE 2K18*

Defendants respectfully move *in limine* to exclude testimony, evidence, or argument related to the marketing, advertising, and critical reception of WWE video games other than those at issue in this Litigation, as such evidence (1) poses an undue risk of jury confusion and unfair prejudice under Rule 403, and (2) inadmissible as irrelevant to any issues the jury must decide under Rule 401.

To be clear, Plaintiff brought this lawsuit based on *only* three video games:  *WWE 2K16*, *WWE 2K17*, and *WWE 2K18* (together, the "*WWE 2K* Games").  Dkt. 76 (Am. Compl.) ¶ 16. Nevertheless, it is relevant, for example to Defendants' license defense, that tattoos have been

13

included in earlier WWE video games going back decades.  That is because Plaintiff never imposed restrictions on Mr. Orton when she inked him, even though tattoos appeared preceding the inking of tattoos on Mr. Orton, and throughout the 2003 to 2008 time period in which Plaintiff inked Mr. Orton.  Dkt. 142 (Defs.' Mem. Supp. Mot. Summ. J.) at 1.  This goes to her intent in inking the tattoos.

Plaintiff, however, seeks to go beyond this evidence to documents and argument concerning the marketing, advertising, and critical reception of earlier-released WWE video games developed or published by Take-Two, such as *WWE 2K14* or *WWE 2K15* (the "Other Take-Two Games"), and WWE video games developed or published by *other* unrelated entities not before this Court, such as *WWE '12*, *Monday Night Raw*, and *SmackDown vs. Raw 2009*, published by THQ (the "THQ Games").  For example, Plaintiff's putative video game expert purports to provide opinions on marketing, advertising, and criticism related to these earlier-released THQ Games and Other Take-Two Games, more often than not failing to differentiate them from the *WWE 2K* Games.  Ex. 8 (Zagal Op. Rpt.), at 7, 10–11; Ex 11 (Zagal Resp. Rpt.), at 1–2.  For the reasons below, Take-Two respectfully asks that the Court exclude the evidence, argument, and testimony identified in Appendix A, attached hereto.[6]

This evidence is inadmissible for several reasons.  ***First***, evidence of marketing for unrelated games is likely to confuse the jury into believing, incorrectly, that the entire lineup of WWE video games since the early 2000s, and the attendant advertising, marketing, and promotional material pertaining to those games, is attributable to Take-Two.  Indeed, Dr. Zagal's

---

[6]    Plaintiff has not included in its First Amended Rule 26(a)(3) Disclosures, filed August 23, 2021, exhibits corresponding to various YouTube videos and websites cited in Dr. Zagal's reports.  Dkt. 253.  Should Plaintiff amend its exhibit list to include additional YouTube videos and websites from Dr. Zagal's reports that fall within the same categories of information described within this MIL, Defendants would move to exclude those as well.

reports reference such evidence as "the video games," the "games" or the "WWE games." Furthermore, this indiscriminate mixing of marketing, advertising, and criticism related to the *WWE 2K* Games with the unrelated and earlier-released THQ Games and Other Take-Two Games would unfairly prejudice Defendants by suggesting that Defendants also owe damages for the appearance of the Tattoos on Mr. Orton in those irrelevant games or their ancillary marketing and advertising materials. *See John Wiley* 2017 WL 10844685, at *3 (excluding evidence of defendants' other works not at issue in this litigation as "confusing and unnecessary"); *Cunningham Charter Corp. v. Learjet, Inc.*, No. 7 Civ. 233, 2012 WL 1565532, at *2 (S.D. Ill. May 2, 2012) (excluding evidence that was "unfairly prejudicial and misleading to the jury").

**Second**, such evidence is irrelevant under Rule 401 because advertising, marketing, and critical reception for the earlier-released THQ Games and Other Take-Two Games have no bearing on any issues in this Litigation. Dr. Zagal's reports focus on works that Plaintiff does not contend infringe her alleged copyrights, for example: (1) Mr. Orton's appearance on the cover of *WWE '12* (by THQ), Ex. 8 (Zagal Op. Rpt.), at 7; (2) interviews with Mr. Orton promoting the THQ Games, *id.* at 10–11; (3) YouTube fan compilations centered on unrelated WWE video games dating back to 2002, before Plaintiff inked the Tattoos on Mr. Orton, *id.*; *see also* Dkt. 165 (Pl.'s Mem. Opp. Defs.' Mot. Summ. J.), at 2; and (4) online criticism of the appearance of ***other wrestlers*** in ***other games*** not at issue in this case, Ex. 11 (Zagal Resp. Rpt.), at 1–2. But advertising and marketing efforts by unrelated parties as to the THQ Games, or by Take-Two for the Other Take-Two Games, cannot be used to demonstrate Plaintiff has been harmed by, or is entitled to any damages as a result of, the appearance of the Tattoos on Mr. Orton's body in the games that actually are the subject of this Litigation. *See Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 772 F.2d 505, 514 n.8 (9th Cir. 1985) (affirming exclusion

of evidence concerning "other Broadway shows" not at issue, as they did not show damages to a

market for the work at issue); *Eiben v. A. Epstein & Sons Int'l, Inc.,* 57 F. Supp. 2d 607, 613–14

(N.D. Ill. 1999) (granting motion *in limine* to exclude evidence not related to the alleged

infringement); *see also West*, 2008 WL 5071109, at *2–3  (granting motion *in limine* and

excluding evidence concerning party's "other works" as "not probative").[7]

## VI.   MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING STATEMENTS BY RANDY ORTON IN ONLINE ARTICLES

Defendants respectfully move *in limine* to exclude testimony, evidence, or argument

related to prior statements by Randy Orton concerning video games other than the *WWE 2K*

Games.  Such evidence includes numerous newspaper articles written by non-parties, purporting

to contain statements by Mr. Orton about the THQ Games and Other Take-Two Games.  The

evidence should be excluded for two reasons.  ***First***, it would cause the jury to incorrectly

attribute the entire lineup of WWE games since the early 2000s to Take-Two and also incorrectly

suggest that Defendants owe damages for the earlier games.  *See supra* 14.  The evidence

therefore should be excluded under Rules 401–03.  *Id.*

***Second***, these statements should be excluded as inadmissible hearsay (and hearsay within

hearsay) under Rules 801 and 802.  *See Robenhorst v. Dematic Corp.*, No. 05 Civ. 3192, 2008

WL 1766525, at *11 (N.D. Ill. Apr. 14, 2008) (excluding hearsay and preventing "plaintiff's

---

[7]   Plaintiff may contend that advertising for the earlier games demonstrates Mr. Orton's "importance" to wrestling video games in general and, thus, to causation of Plaintiff's damages.  But, even if true, general statements about Mr. Orton's popularity, or his appearance on the cover of a game from nearly a decade ago, do not tend to make it any more probable that Take-Two leveraged Plaintiff's asserted tattoos to increase the revenue of the *WWE 2K* Games.  *Eiben*, 57 F. Supp. 2d at 613–14; *Frank Music*, 772 F.2d at 514 n.8.

Plaintiff also may contend that advertising for the earlier games is relevant to the development of the *WWE 2K* Games or the history of the relationship between WWE and Take-Two.  That same evidence, however, can be elicited from Take-Two and WWE witnesses without the same risk of prejudice posed by advertising for the earlier games.  Moreover, Defendants are not moving to exclude prior games themselves, which also could be used to demonstrate their development.

expert from becoming the 'de facto spokesman for the declarants of [] out-of-court statements'").
The alleged statements of Mr. Orton in the newspaper articles are being offered for the truth of
the matter asserted, namely, that Mr. Orton actually said what is attributed to him in the
newspaper articles.  *See* Ex. 8 (Zagal Op. Rpt.), at 9–11 (for example, citing Mr. Orton's
Instagram post declaring "WOW #wwe2k19 f@ck you too!" next to a screenshot for the
proposition that Mr. Orton "has complained when his WWE video game character appears
inauthentic"); *see id.* (quoting Mr. Orton purportedly declaring "I like the way [my facial hair]
looks on me in real life, so of course I like how it looks in" *WWE '12*, for the proposition that
Mr. Orton made that statement and that his appearance in the videogames is important to him).
Thus, both these statements and the articles in which they appear are quintessential hearsay and
hearsay within hearsay and should be excluded.  *See Eisenstadt v. Centel Corp.*, 113 F.3d 738,
742 (7th Cir. 1997) (finding newspaper article was "hearsay: an out-of-court statement offered to
prove the truth of its contents—to prove, that is, that Centel or its investment bankers made the
comments attributed to them"); *Cortezano v. Salin Bank & Trust Co.*, 680 F.3d 936, 942 (7th.
Cir. 2012) (holding that an email containing minutes of a meeting in which statements were
attributed to the defendant was inadmissible hearsay because "its only possible use is to show
that the bank did in fact make those statements").

To the extent that Plaintiff argues Mr. Orton's statements are admissible because he was
acting as an agent of WWE, her argument fails as Mr. Orton's statements make clear that he was
not making a statement "concerning a matter within the scope of the agency or employment."
Fed. R. Evid. 801(d)(2)(D).  Mr. Orton is an independent contractor and not an employee of
WWE.  In fact, Mr. Orton's booking agreement with WWE provides that he shall not have the
authority to bind WWE in any respect.  Dkt. 220-3; *see also Cincinnati Holding Co., LLC v.*

*Fireman's Fund Ins. Co.*, No. 17 Civ. 105, 2020 WL 635655, at *4 (S.D. Ohio Feb. 11, 2020)

(independent contractor's statements inadmissible under Rule 801(d)(2)(D) because they were

not within scope of relationship).  Thus, the statements should be excluded.

## VII.   MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING RANDY ORTON'S NUMBER OF SOCIAL MEDIA FOLLOWERS

Defendants respectfully move *in limine* to exclude testimony, evidence, or argument

concerning Randy Orton's number of social media followers as (1) irrelevant under Rule 401

whether standing alone or in comparison with other social media accounts, and (2) likely to

confuse the jury under Rule 403.

This lawsuit is about the depiction of Randy Orton in the *WWE 2K* Games, including

with his Tattoos; it is not about the number of followers that Mr. Orton has or had on social

media at some point in time.  Dr. Zagal's report, however, relies heavily on Mr. Orton's social

media followers.  Specifically, he argues that Mr. Orton is an "important character" in the *WWE

2K* Games based on the number of social media users who follow him, using his Twitter profile

as a supposed "proxy for measuring" his popularity.  *See* Ex. 8 (Zagal Op. Rpt.), at 4, 6–7.  There

is no evidence in the record explaining why the number of social media followers supposedly is a

suitable "proxy for measuring" popularity in these circumstances, and Dr. Zagal has provided no

such explanation.[8]  Nevertheless, Dr. Zagal purports to assess Mr. Orton's "social media

presence in comparison with other social media metrics."  *Id.* at 7.  To make this comparison,

Dr. Zagal observed (apparently around the time of preparing his report prior to November 14,

---

[8]   Indeed, like anyone on social media, a wrestler's number of followers is influenced by any number of factors not addressed by Dr. Zagal's analysis, including the wrestler's personality, frequency and content of posts, appearance of interacting directly with fans, and general social media savvy on the part of the wrestler or his or her social media team.

2018, well after the *WWE 2K* Games were introduced) that Mr. Orton maintained "an official Twitter profile" with approximately 5.9 million followers.  *Id.*  That number presumably differs from the number of followers Mr. Orton had when the games were released.  Yet, Dr. Zagal compared that number to the number of followers of the WWE's official Twitter account (at the time, 10.3 million) and the Twitter page for *WWE 2K19* (a game not at issue in this Litigation) in an attempt to ascribe to Mr. Orton an outsized popularity as compared with the WWE.  *Id.*

This evidence should be excluded for several reasons.  ***First***, evidence of Mr. Orton's social media followers, whether introduced through Dr. Zagal or another witness, is inadmissible as irrelevant under Rule 401, as it does not tend to make any fact of consequence in this Litigation more or less probable.  *See Sullivan v. Flora*, No. 15 Civ. 298, 2017 WL 1487624, at *1 (W.D.Wis. Apr. 25, 2017).  Plaintiff is entitled to damages resulting from only the ***alleged infringement*** of certain tattoos on Mr. Orton: in other words, she must show that the expressive content of the tattoos at issue resulted in increased sales of the *WWE 2K* Games because consumers attributed value to the content of the Tattoos.  *Id.* (excluding evidence and argument on damages theories where evidence bore no "causal connection or nexus" to the alleged infringement); *Eiben*, 57 F. Supp. 2d at 612–14 (excluding speculative assertions of a work's value to the alleged infringer).  Mr. Orton's purported popularity on social media, or even his general importance in the WWE or the wrestling world more broadly, does not tend to show one way or the other whether his ***tattoos*** contributed to sales of a video game.

If evidence of Mr. Orton's Twitter followers is introduced, Plaintiff will ask the jury to make three speculative leaps: first, that the relative number of Mr. Orton's social media followers meaningfully correlates with his "popularity" in comparison to other wrestlers, the WWE itself, and *WWE 2K19* (a separate *WWE 2K* videogame not at issue in this case), *see* Ex. 8

(Zagal Op. Rpt.), at 7; second, that Mr. Orton's comparative popularity was a cause of Take-Two's inclusion of Mr. Orton's *tattoos* in the *WWE 2K* Games, *see id.* at 7–8; and finally, that customer interest in the fact that the tattoos appear on Mr. Orton drove some unspecified increase in revenue for the *WWE 2K* Games, *see id.* at 9–10. Even under Dr. Zagal's flawed methodology, *see* Dkt. 144 (Defs.' Mem. Supp. Mot. Exclude Jose Zagal), at 10–16, Mr. Orton's number of social media followers would not show that the ***design*** of Mr. Orton's tattoos had some value or that Plaintiff's designs resulted in sales of the *WWE 2K* Games. Thus, the evidence should be excluded. *See Sullivan*, 2017 WL 1487624, at *1.

***Second***, these comparisons between the relative social media followers of Mr. Orton, WWE, and *WWE 2K19* create a significant risk of jury confusion. Based on a comparison of the number of Twitter users who follow the accounts of Mr. Orton, the WWE, and the videogame *WWE 2K19*—a title not at issue in this case—Dr. Zagal concludes that Mr. Orton is "more than half as popular the [*sic*] whole WWE and more than 6 times as popular as the latest WWE video game." Ex. 8 (Zagal Op. Rpt.), at 7. It is far from clear what it even means for an individual to be "more than half as popular" as an organization of which he is a member, or to be "more than 6 times as popular" as a video game. *Id.* These "apples-to-oranges" comparisons are likely to confuse the jury by conflating matters that are, at best, peripheral to the case (such as Mr. Orton's popularity on Twitter in 2019) with those that are directly at issue, including the damages theories Dr. Zagal's testimony is offered to support. Therefore, in addition to lacking probative value, this evidence creates a serious risk of misleading the jury and confusing the issues. *See Eiben*, 57 F. Supp. 2d at 611–12 (excluding evidence under Rule 403 where arguments took a "cart-before-the-horse position" and relied on works not at issue); *Cunningham* 2012 WL 1565532, at *2 (excluding "unfairly prejudicial and misleading" evidence).

20

Dated: August 24, 2022

Respectfully submitted,

*/s/ Dale M. Cendali*

Dale M. Cendali (admitted *pro hac vice*)
Joshua L. Simmons (admitted *pro hac vice*)
Christopher T. Ilardi (admitted *pro hac vice*)
Miranda D. Means (admitted *pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com
miranda.means@kirkland.com

Michael J. Nester (#02037211)
Donovan Rose Nester P.C.
15 North 1st Street, Suite A
Belleville, Illinois 62220
Telephone: (618) 212-6500
mnester@drnpc.com

*Attorneys for Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts Entertainment*

*/s/ Jerry McDevitt* (with consent)

Jerry McDevitt (admitted *pro hac vice*)
Curtis Krasik (admitted *pro hac vice*)
K&L Gates LLP
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-8608
jerry.mcdevitt@klgates.com
curtis.krasik@klgates.com
Michael J. Nester (#02037211)
Donovan Rose Nester P.C.
15 North 1st Street, Suite A
Belleville, Illinois 62220
Telephone: (618) 212-6500
mnester@drnpc.com

*Attorneys for World Wrestling Entertainment, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| CATHERINE ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, INC., | ) | |
| 2K GAMES, INC.; 2K SPORTS, INC.; WORLD | ) | Case No. 3:18-cv-966-SMY |
| WRESTLING ENTERTAINMENT, INC.; | ) | |
| VISUAL CONCEPTS ENTERTAINMENT; | ) | |
| YUKE'S CO., LTD.; AND YUKE'S LA, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2022, I electronically filed the foregoing **Defendants' Omnibus Motion in Limine** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Anthony G. Simon | asimon@simonlawpc.com |
| Benjamin R. Askew | baskew@simonlawpc.com |
| Anthony R. Friedman | afriedman@simonlawpc.com |
| Carrie L. Roseman | croseman@simonlawpc.com |
| R. Seth Crompton | scrompton@allfela.com |
| Tracey Blasa | tblasa@allfela.com |
| Jerry McDevitt | jerry.mcdevitt@klgates.com |
| Curtis Krasik | curtis.krasik@klgates.com |

*/s/ Dale M. Cendali*
Dale M. Cendali (admitted *pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
dale.cendali@kirkland.com

*Attorney for Defendants 2K Games, Inc., 2K*
*Sports, Inc., Take-Two Interactive Software, Inc.,*
*Visual Concepts Entertainment*