IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CATHERINE ALEXANDER,<br><br>                    Plaintiff,<br><br>v.<br><br>TAKE-TWO INTERACTIVE SOFTWARE,<br>INC., et al.<br><br>                    Defendants. | Case No. 3:18-cv-0966-SMY |

**PLAINTIFF'S OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE**

Plaintiff, by and through undersigned counsel, submits the following Responses to

Defendants' Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., Visual

Concepts, Inc., and World Wrestling Entertainment, Inc. Motions in Limine.

In this case, Plaintiff seeks recovery from Defendants for infringement of five

copyrighted tattoos she inked on the famous professional wrestler Randy Orton (the "Asserted

Works"). These Tattoos appear in the videogames *WWE 2K16*, *WWE 2K17*, and *WWE 2K18*

made by Defendants (the "Infringing Games"). This Court has already ruled that Plaintiff holds

valid copyrights and that Defendants copied the Asserted Works. *Alexander v. Take-Two*

*Interactive Software, Inc.*, 489 F. Supp. 3d 812, 819 (S.D. Ill. 2020).

I.     **Response to Defendant's Motion to Exclude Evidence, Testimony, or Arguments**
       **Concerning Defendants' Actual Damages.**

Defendants' arguments are a repeat of their summary judgment arguments that this Court

denied. This Court already ruled that Plaintiff's damages contain numerous factual issues for the

jury to decide. "While Alexander testified that she was not aware of any business she lost due to

the depiction of the tattoos in *WWE 2K*, she may establish actual damages using either a

hypothetical lost license fee or the value of the infringing use to the infringer…Thus, an issue of material fact exists as to whether Alexander suffered actual damages based on the value of infringing use, defeating summary judgment." *Alexander*, 489 F. Supp. 3d at 823. This is an issue of fact for the jury to decide.

The test for the value of an infringing use amounts to a determination of what a willing buyer would have been reasonably required to pay a willing seller for plaintiff's work. *Deltak, Inc. v. Advanced Systems, Inc.*, 767 F.2d 357, 362 (7th Cir. 1985). What a willing buyer would have paid for the right to copy and use of the copyrighted works in the Infringing Games is dependent on a number of issues that were identified in this Court's summary judgment order. Defendants acknowledge that consumers expect authenticity in the Infringing Games and that WWE would have rejected Orton's videogame persona if it appeared without the Asserted Works or appeared with tattoos that were different than the Asserted Works. *Alexander*, 489 F. Supp. 3d at 823. Alexander's expert addresses the importance of authenticity to drive sales and profits. *Id.* At 824. Accordingly, there is evidence as to the value of the infringed work to the infringers. Plaintiff is not claiming she lost sales as a result of Defendants' infringement. No itemization of damages is required under the substantive law and the exact amount that the jury may award as the value of the infringement to the infringers is fact issue to be determined by the jury, especially since the value will be disputed by the parties.

Further, the law is clear that substantial liberality is shown to plaintiffs in copyright infringement actions in their proof of damages. *Deltak, Inc. v. Advanced Systems, Inc.*, 767 F.2d 357, 363 (7th Cir. 1985). Absence of evidence should cut against the infringer, not against the owner of the copyrights. *Id.* Under the law, Plaintiff is entitled to the value of the infringing use to the infringer. *Id.* A defendant infringer cannot expect to pay the same price in damages as it

2

might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law. *Id.* at 363 n.5. A plaintiff is not required to establish the actual value of damages; she is only required to provide sufficient evidence of the value so that the jury does not have to resort to undue speculation in estimating actual damages. *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 567 (7th Cir. 2003). The jury is entitled to "estimate" the value of the actual damages award. *Id.* The substantive rights of the plaintiff within a federal statute cannot be modified by a local rule. *See Weibrecht v. S. Illinois Transfer, Inc.*, 241 F.3d 875, 879 (7th Cir. 2001). Here, Defendants are attempting to force Plaintiff to provide an exact numerical amount of damages in advance of rulings on motions in limine and prior to trial. The law is clear: regardless of what this Court's local rules and the Federal Rules state, under the substantive law governing copyright infringement, Plaintiff is ***not*** required to provide an exact value of actual damages sought. *McRoberts Software, Inc.*, 329 F.3d at 567.

Defendants' cited cases are inapposite. None of the cases cited by Defendants dealing with the issue of itemization are copyright cases. None of these cases interpret the Copyright Act. None of these cases interpret the copyright damages statute. None of the cases even dealt with a statute ***similar*** to the Copyright Act. None of the cases even concerned an analogous situation.

Defendants cite *Toney v. Rosewood Care Center, Inc* to show that it is necessary for Plaintiff to state an exact numerical amount for the jury. *Toney v. Roosewood Care Center,* 2002 WL 992642, at *2 (N.D. Ill. May 15, 2002). In that case, plaintiffs missed several deadlines, including the due date for the final pretrial order, completion of expert discovery, responses to motions to compel, and status hearings. *Id.* The case was dismissed for failure to meet deadlines several times throughout the case, not merely because plaintiffs failed to provide an itemized list

of damages. *Id.* In addition the *Toney* case is an employment discrimination case, not a copyright case. *Id.*

*Karum Holdings, LLC*, cited by Defendants, is a non-binding breach of contract case. *Karum Holdings LLC v. Lowe's Companies, Inc.*, No. 15 C 380, 2017 WL 10311207, at *1 (N.D. Ill. Sept. 8, 2017). In *Karum Holdings*, the information on which the damages calculation was based was previously available to the parties. *Id.* at * 4. Here, Plaintiff is not even required to present an exact number at trial and cannot know what value will be ascribed to actual damages by the jury. *David v. Caterpillar, Inc.*, does not involve Rule 26(a)(1)(A)(iii) disclosures. *See generally* 324 F.3d 851 (7th Cir. 2003). In *Coin-Trainer Co., LLC*, another non-binding breach of contract case, the calculation of damages was a "matter of simple arithmetic." *Coin-Tainer Co., LLC v. Pap-R Prod. Co.*, No. 3:19-CV-234-DWD, 2021 WL 5998653, at *1, 3 (S.D. Ill. Dec. 20, 2021). This is unlike the present matter where Plaintiff is only required to provide sufficient evidence of the value so that the jury does not have to resort to undue speculation in estimating actual damages. *McRoberts Software, Inc*, 329 F.3d at 567.

*Vital Pharmaceuticals, Inc.*, is an unpublished, out of circuit, and non-binding trademark and trade dress infringement case. *Vital Pharms., Inc. v. Monster Energy Co.*, No. 21-13264, 2022 WL 3083273, at *1 (11th Cir. Aug. 3, 2022). *Bessemer & Lake Erie R.R. Co.*, which was also out of circuit and nonbinding, was an admiralty action. *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 360 (6th Cir. 2010). *TCF Inventory Finance, Inc.*, again out of circuit, unpublished, and nonbinding, was a breach of contract action. *TCF Inventory Fin., Inc. v. Northshore Outdoor, Inc.*, No. 1:11 CV 85, 2012 WL 2576367, at *1 (N.D. Ohio July 3, 2012). In sum, none of Defendants' cases support its proposition that a plaintiff in a ***copyright***

infringement action, where the substantive law differs substantially from all of their cited cases, must disclose an exact number of the actual damages it will seek prior to trial.

Defendants' Motion should be denied.

## II.    Response to Defendants' Motion to Exclude Evidence, Testimony, or Arguments Concerning Defendants' Profit Disgorgement.

This Motion is also a re-assertion Defendants' argument from their Motion for Summary Judgment which was denied. This Court previously rejected Defendants' arguments that Plaintiff failed to put forth sufficient evidence to demonstrate entitlement to Defendants' profits. *Alexander*, 489 F. Supp. 3d at 823.

Once liability for copyright infringement has been shown, as it has been here, 17 U.S.C. § 504(b) creates an initial presumption that the infringer's "profits . . . attributable to the infringement" are equal to its gross revenue. *Francois v. Ruch*, 2006 WL 3735950, at *3 (C.D. Ill. Dec. 15, 2006). In establishing the infringer's profits, the copyright owner is required to present proof *only* of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work. 17 U.S.C. § 504(b). Once the copyright owner establishes the gross revenue, the burden shifts to the infringer to show that its revenue was "attributable to factors other than the copyrighted work." *See* 17 U.S.C. § 504(b). Plaintiff does not have the burden of proof on this issue and Defendants are trying to shift the burden using a procedural rule. Plaintiff's expert has provided his opinions on Defendants' claimed deductions and Defendants took his deposition. It is error to force the plaintiff to distinguish profits due to the infringement from the elements of profit attributable to factors other than the copyrighted work. *Deltak, Inc.*, 767 F.2d at 360.

Seventh Circuit law is clear that Plaintiff's burden may be met with a minimal causal connection. *Bergt v. McDougal Littell*, 661 F. Supp. 2d 916, 927 (N.D. Ill. 2009). This Court has already found that Plaintiff has sufficient evidence to meet its burden. *Alexander*, 489 F. Supp. 3d at 823–24. Plaintiff has met its burden in showing a causal connection between profits and the infringement by showing, with sworn testimony of Defendant World Wrestling Entertainment Inc.'s ("WWE") 30(b)(6) witness, that WWE would not have approved the Infringing Games for sale absent copying of the Asserted Works into the Infringing Games. *Alexander*, 489 F. Supp. 3d at 823. Thus, but for inclusion of the copies of the Asserted Works in the Infringing Games, the Infringing Games would not have been released for sale and Defendants would not have sold a single Infringing Game. Plaintiff presented evidence that consumers did purchase *WWE 2K* for its authenticity to the wrestlers' appearance. *Alexander*, 489 F. Supp. 3d at 823. Defendants also admitted that consumer response is a consideration to the development of the Infringing Games and that consumers expect authenticity. *Id.* Further, Plaintiff's expert will testify regarding the importance of authenticity to drive sales and profits. *Id.* at 824. In the Seventh Circuit, a causal connection is shown when the copyright holder provides a figure limited to the profit stream resulting from the infringement and demonstrates a minimal causal connection. *Bergt*, 661 F. Supp. 2d at 927. Plaintiff has met her burden. Critically, a plaintiff is not required to prove that a buyer's decision to purchase the infringing work was made solely on the inclusion of the copyrighted material. *See id*. at 928 n.8 (plaintiff not required to prove that any purchasers bought the textbook because his painting was included).

Plaintiff has shown more than required through, among other things, Defendants' own admissions that Defendants copied Plaintiff's Asserted Works and reproduced them in the Infringing Games and, further, that Defendants would not have approved the sale of the

Infringing Games but for such copying. Ex. B (Take-Two Dep. (Little)) at 149:1–13; 164:23–165:3; Ex. A (Kiang Dep.) at 74:2–9. Defendants are improperly attempting to shift the burden to Plaintiff on this issue. Defendants' motion *in limine* should be denied.

III.   **Response to Defendants' Motion in Limine to Exclude Evidence, Testimony, or Argument, Concerning the Custom Superstar Feature in *WWE 2K.***

Defendants' third motion *in limine* misstates Plaintiff's Complaint, discovery responses, and seeks to exclude a portion of the Infringing Games that have always been at issue in this case. Plaintiff complied with Rule 26. *See Weiland v. Linear Const., ltd.,* 2002 WL 31307622, No. 00-C-6172, *2 (N.D. Il 2002) (Rule 26(e) requires parties to supplement *if* the party learns that in some material respect the information disclosed was incomplete or incorrect and the additional information has not otherwise been made known to the other parties during the discovery process or in writing); *see also Havenfield Corp. v. H &R Block, Inc.*, 509 F.2d 1263, 1272 (8th Cir. 1975) (holding a party is only under a duty to seasonably amend if that party obtains information that makes a response incomplete or untrue). The Create Your Own Superstar feature ("the Feature") was at issue in this case since its inception as part of the Infringing Games and was included in Plaintiff's theory of infringement. This Feature allows game players to use copies of Plaintiff's copyrighted works and apply them to other wrestler characters in the Infringing Games.

The copying and use of the Asserted Works in the Infringing Games has always been the basis of Plaintiff's accusations against Defendants. The Complaint states "The tattoos on Mr. Orton **that appear in WWE 2k16** are the same or substantially similar to Plaintiff's copyrighted works." Complaint at ¶ 65 Filed April 17, 2018 (ECF No. 1). This sentence clearly references the Asserted Works that appear in the Infringing Games is what is claimed as infringement. *WWE*

*2K16* is the only Infringing Game where the Feature allows use of the infringing copies of the Asserted Works to be applied to wrestlers other than the depiction of Mr. Orton.

The subsequent two Infringing Games included the Feature but did not allow a gameplayer to apply copies of the Asserted Works on other characters (these latter two games still include the infringing use of the Asserted Works on the depiction of Mr. Orton in the game). For *WWE 2K17* and *WWE 2K18*, the Complaint states respectively, "*WWE 2K17* also includes the meticulous reproduction of Plaintiff's copyrighted works" and "*WWE 2K18* also includes clear, detailed, and unauthorized reproductions of Plaintiff's tattoos." Complaint at ¶¶70, 74. Allegations for both *2K17* and *2K18* thus also reference the entirety of their respective Infringing Games. The Complaint does not in any way limit infringement to the Asserted Works to instances when they are present on a depiction of Mr. Orton in the Infringing Games. Rather, the Complaint states that any and all reproductions of Plaintiff's copyrighted Works **in the Infringing Games** is infringing. The Asserted Works are tattoos. The infringing works are the games because the games include copies of the Asserted Works. The Complaint clearly references the entirety of the Infringing Games, which includes the Feature.

Defendants argue that Plaintiff's response to Defendants' Interrogatory No. 6 does not include the Feature that is part of the Infringing Games. This is incorrect. Plaintiff's response to Defendants' Interrogatory No. 6 states "See Plaintiff's Fed. R. Civ. P. 26 disclosures served on July 10, 2018, and see allegations in Complaint [including the allagations above]. The Asserted Works are in the copyright applications previously produced…. The Accused Products include *WWE 2K16*, *WWE 2K17*, and *WWE 2K18*." Pltf's. Obj. and Resp. to Def. Interrogatories No. 6, attached as Ex. E. Plaintiff alleged throughout this litigation that the use of copies of Plaintiff's Asserted Works in the Infringing Games was the basis of her infringement claims.

Defendants also argue that Plaintiff failed to disclose the Feature in Ms. Alexander's Deposition. The question cited by Defendant asked, "[s]o other than the tattoos -- the use of the tattoos in the *WWE 2K* video games depicting Mr. Orton, are you aware of any other instance where you believe your rights with regard to the tattoos [Plaintiff] inked on Mr. Orton were infringed[.]" Doc. 263-7 (Alexander Dep. Tr.) 26:23–27:4. Plaintiff's response was "I'm not familiar enough to answer properly." *Id* at 27:4. Defendants then followed up by saying "But sitting here today, you don't know of anything?" to which Plaintiff responded that she did not. *Id*. at 27:4–27:7. The Infringing Games that are subject of this action include numerous infringing reproductions of the Asserted Works, both on Mr. Orton and elsewhere, including the Feature.  It is incomprehensible to assume that Plaintiff was complaining about some of the copies of her work in the Infringing games but not other copies. Each and every copy of the Asserted Works in the Infringing Games is an infringement. In Ms. Alexander's deposition, Defendants did not ask whether she believed the Asserted Works that appear in Feature infringed alongside the Asserted Works elsewhere in the game, and with good reason, as no such distinction has been made, and Plaintiff has nowhere suggested that she only considers certain reproductions infringing and others not. Defendants asked a poor question and did not follow up.

Defendants argue that Plaintiff failed to produce documents supporting the allegation. This is false. The Infringing Games, that is the items alleged to infringe, including *WWE 2K16*, were produced in discovery in this case. The games were identified by name. Defendants cite no authority that Plaintiff was required to print out every one of the multitudes of copies of the Asserted Works in the infringing works and produce them to the Defendants or produce to Defendants every single possible permutation of the potentially limitless ways each game can be played and each Asserted Work may be reproduced.

9

The prospect that Defendants did not know that the Asserted Works appear throughout their own video games is not credible. Defendants produced the games in discovery. Defendants made the Infringing Games, painstakingly copied and reproduced each Asserted Work for reproduction not just on Mr. Orton, but also for reproduction on innumerable create-your-own characters. The Feature—a unique selling point of the video games—is a significant part of the consumer experience, which allows consumers to customize their unique wrestler persona's journey throughout game play. Defendants chose what to include, and what not to include, in the Infringing Games. And Defendants had complete control over the content of the Infringing Games. The Asserted Works were included in the Feature, along with a limited number of other tattoo options. Plaintiff did nothing to limit the plain accusations in her Complaint which plainly accuses the Infringing Games of including illegal copies of her copyrighted works. That the same Asserted Works are alleged to infringe in the Feature is obvious and no surprise.

Plaintiff has consistently alleged that the use of her Asserted Works in the Infringing Games is infringement. The Infringing Games include the Feature. Any implication that Plaintiff failed to disclose this to Defendants is simply untrue.

Defendant's third motion *in limine* should be denied.

## IV.  Response to Defendants' Motion to Exclude Evidence, Testimony, or Argument Concerning Plaintiff's 2009 Call to WWE.

Defendants' fourth motion in limine seeks to exclude evidence regarding a phone call between Plaintiff and Defendant WWE prior to this litigation. Plaintiff's call to WWE is (1) relevant; (2) not hearsay and; (3) not prejudicial. Defendants' bases for exclusion are Federal Rules of Evidence 801–804, 401, and 403.

Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence

10

in determining the action. Evidence of the phone call is directly relevant to Defendants' defenses of implied license, waiver, and estoppel.

An implied license is created when: (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute her work. *Alexander*, 489 F. Supp. 3d at 820. A factfinder may look to objective evidence of the copyright owner's intent in determining the existence of an implied license. *Id.*

Plaintiff will testify that WWE offered to pay Plaintiff to license the Asserted Works. This refutes any argument that there was an implied license because it is objective evidence that she did not intend to provide a license to Mr. Orton for him to use the Asserted Works for all purposes and thus is certainly relevant. The phone call concerned the WWE's use of the very Asserted Works at issue in this lawsuit. Defendants also contend that there is no market for licensing Tattoos. The fact that WWE offered her money in exchange for a license to use the Asserted Works defeats this argument. Defendants' concerns regarding lack of corroboration go to the weight given to the evidence, not the admissibility.

The evidence is also relevant to Defendants' defense of estoppel. When a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on the copyright owner's deception, the doctrine of estoppel may bar the copyright owner's claims completely, eliminating all potential remedies. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684, 134 S. Ct. 1962, 1977, 188 L. Ed. 2d 979 (2014). Evidence of the phone call rebuts this assertion because it demonstrates that Plaintiff did not consent to WWE's use of the Asserted Works.

11

The call is further relevant to the defense of waiver. Waiver applies when a plaintiff fails to assert a right in a clear and timely manner. *Soos & Assocs., Inc. v. Five Guys Enters., LLC*, 425 F. Supp. 3d 1004, 1012 (N.D. Ill. 2019). The call demonstrates that Plaintiff did not fail to assert her rights in a clear and timely manner as she consistently either (1) notified the infringer of infringement as soon as she learned of it or (2) sued quickly after learning of infringement.

Defendants rely on *West v. Perry* to claim that evidence concerning a defendant's "other works" is "not probative" and should therefore be excluded. However, Defendants' assertion that the faux sleeves are "other works" is not in accord with *West's* holding. In *West*, the issue was whether defendants could offer their own other copyright registrations in their defense to plaintiff's copyright infringement claim. *West v. Perry*, No. 2:07CV200, 2008 WL 5071109, at *3 (E.D. Tex. Nov. 25, 2008). The court held defendant's other copyright registrations to be irrelevant as those did not pertain to the issues being litigated, and therefore, evidence of defendant's "other works" (defendant's own copyrights) was not probative and were irrelevant. *Id.*

Here, the phone call does not relate to the same type of "other works" of the Defendants as described in *West*. The phone call relates to the Asserted Works in this case as well as WWE's contemplated creation of the faux sleeves and its offer to license the Asserted Works from Plaintiff.

Defendants further argue that the phone call is not relevant to their fair use defense. The phone call is relevant to fair use. Defendants claim there is no market for the licensing of tattoo artwork and that tattooed individuals are free to sell copies of their tattoos to others. The phone call rebuts both of these claims.

The inquiry of harm to the market in the fair use defense must take into account the original work, as well as the markets for derivative works. *Campbell v. Acuff-Rose Music, Inc*. 510 U.S. 569, 590 (1994) (citing *Harper & Row*, 471 U.S. at569). The potential market is thus broad and includes licensing tattoo works generally, not just for use in videogames. Defendants' narrow construction of the market improperly excludes derivative works and how potential markets would be harmed. The phone call tends to show that derivative markets for tattoo works exist and, indeed, shows an example of Plaintiff's (and Defendants') attempted entrance into that market. The phone call between Plaintiff and WWE is relevant to at least the fair use analysis as it is probative of the following facts: (1) a market for licensing tattoos; (2) Plaintiff's awareness of the market and desire to capitalize on it; (3) harm to Plaintiff, and the market, through Defendants' infringing activities; and/or (4) Defendants' acknowledgement that such a market or markets exist.

In addition, the admissions by the WWE representative to Plaintiff are not hearsay for at least two reasons. To start, under Fed. R. Evid. 801(d)(2), any statements made in the phone call to Plaintiff by the representative of WWE are clearly admissions and not hearsay. Second, evidence is only hearsay if it is offered to prove the truth in the matter asserted. FED. R. EVID. 801(c)(2). Here, Plaintiff is not offering evidence of the phone call to prove the truth of the matter asserted. Rather, Plaintiff is offering evidence of the call to show her state of mind that she had not granted an express or implied license to copy her works and her experiences in the market (or nascent market) for licensing tattoos, and to describe her earliest experiences with the WWE.

*Gordon v. FedEx Freight, Inc.*, is inapposite. In *Gordon, **the declarant** heard the statement from another person, McDaniel, who heard it from a third person. *Id.* at 774. McDaniel

testified that she did not know whether the person she heard the information from knew that the rumor was "for a fact." *Id.* Here, in contrast, Plaintiff heard the statements she intends to introduce into evidence firsthand. As her testimony will be that the statements came directly from someone at WWE Legal, she has every reason to believe the statement was true. The statement also came from an agent of Defendant WWE. To the extent that Defendants doubt the veracity of Plaintiff's testimony, they can attack that on cross exam.

*Johnson v. Chicago Board of Education* is also distinguishable. To start, *Johnson* is not binding on this Court. It is an unpublished decision from the Northern District of Illinois. Further, Plaintiff **has** offered evidence about who was on the other end of the phone call. Plaintiff has testified, and will testify, that she called a number for WWE legal in Connecticut and spoke to someone who was an authority of legal matters for WWE.

Defendants argue that introduction of the call (and in turn the faux sleeve) will cause the jury to confuse the issues between the contemplated faux sleeve and the Infringing Games. This is not credible as the differences between the Infringing Games and faux sleeves are self-evident.

Under Federal Rule of Evidence 403, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. In support of their argument on this point, Defendants cite *John Wiley and Sons*, which found that given the staggering number of infringing works the jury was already asked to wade through, it would have confused the jury to introduce additional book titles that were not at issue. *John Wiley and Sons v. Book Dog Books, LLC.*, 2017 WL 10844685, at *3 (S.D.N.Y. Dec. 8, 2017). Unlike *John Wiley*, however, it is clear here that the introduction of the phone call into evidence would not cause sufficient confusion to substantially outweigh

14

the probative value of the evidence because there is not already "a staggering number" of infringing works in this case. Further, the faux sleeves are a categorically different product type than videogames, unlike in *John Wiley* where all products at issue were books. Additionally, while copyright infringement by the faux sleeves is not at issue in this case, evidence of the phone call is key portion of Plaintiff's case-in-chief and highly probative of at least Plaintiff's attempted entrance into the market for licensing her tattoos and, indeed, of the market for licensing tattoos itself.

Therefore, for the above stated reasons, Defendants' motion to exclude evidence, testimony, and arguments relating to the 2009 phone call between Plaintiff and WWE should be denied.

**V.      Response to Defendants' Motion to Exclude Evidence, Testimony or Argument Regarding Marketing Advertising or Critical Reception for *WWE 2K* Video Games Other than *WWE 2K16, WWE 2K17* and *WWE 2K18*.**

Defendants' fifth motion seeks to exclude the relevant history of the Infringing Games and their context in the Infringing Games' franchise under Federal Rules of Evidence 401 and 403. The motion should be denied.

Evidence is relevant if it has any tendency to make a fact of consequence more or less likely than it would be without the evidence. Fed. R. Evid. 401. WWE, which had control over the WWE videogame franchise before, during, and after Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts, Inc. (the "Take-Two Defendants") developed the Infringing Games, is also a Defendant in this action. Games other than those related to the Take-Two Defendants are clearly relevant as they are all WWE games. The Take-Two Defendants relied heavily on assets created for previous games by Yuke's Co. Ltd. when designing the Infringing Games. *See* Ex. B at 68:5–17 (describing the relationship between

Visual Concepts and Yuke's, the previous developer of the WWE series of games). This relationship included the Take-Two Defendants publishing and advertising games that were being developed in collaboration with Yuke's. *Id.* at 77:6–13. Previous marketing and advertising for the WWE series of games depicts Randy Orton. Therefore, the previous games were highly relevant **at least** to: (a) describe the development of the Infringing Games; (b) describe how the Infringing Games were advertised; (c) describe the history of the relationship between WWE and the Take-Two Defendants; (d) demonstrate the centrality of Mr. Orton to the videogame franchise and to the wrestling community; (e) demonstrate the WWE's history of making videogames; and (f) demonstrate WWE's involvement and causation of Plaintiff's damages. For these reasons, this Court should deny Defendants' motion.

Defendants further argue that Plaintiff's expert Dr. Jose Zagal's reliance upon earlier released WWE or wrestling themed videogames "have no bearing on any issues in this Litigation." Defendants are thereby re-arguing their Daubert motion, which Plaintiff previously responded to, and which this Court denied. The relevance threshold is low as the evidence need only "tend" to make the fact of consequence more probable, thus requiring merely a rational connection between the evidence offered by the litigant and the fact of consequence the litigant intends to establish. *Int'l Merger & Acquisition Consultants, Inc. v. Armac Enter. Inc.*, 531 F.2d 821, 823 (7th Cir. 1976). Dr. Zagal's testimony regarding Mr. Orton's appearance on the cover of *WWE '12* demonstrates the importance of Randy Orton in the world of WWE videogames and his contributions to the success, sales, and profits of the *WWE 2K* videogames, including the Infringing Games. Presumably, if Mr. Orton did not contribute to the success of the games or was not important to them, he would not be on the cover. Statements by Mr. Orton regarding the development process and realism in the videogames demonstrate the importance to videogame

publishers, such as the Defendants, that in-game characters be depicted as realistic as possible. The YouTube fan compilations cited by Dr. Zagal demonstrate how the appearance of Mr. Orton's videogame character relates directly to the critical reception and financial success of WWE videogames and the importance of Mr. Orton's appearance in the videogames to WWE fans and consumers. Moreover, Dr. Zagal is entitled rely on all these sources in rendering his opinions, which sources are those typically relied on for such analyses. These earlier games and fan reactions also provide vital context showing that earlier games were deemed not as authentic by wrestling fans and were criticized for it, which bears directly on the value of Ms. Alexander's work to Defendants and, therefore, her damages.

Defendants' argument regarding jury confusion should be rejected. Dr. Zagal makes clear in his discussion of the earlier-released videogames that they are published by a separate company and not the Take-Two Defendants. Dr. Zagal does not claim that videogames released by any separate company or earlier-released games are attributable to the Take-Two Defendants but rather uses the games to emphasize importance of a true-to-life portrayal of Mr. Orton to satisfy consumer demand and launch a successful videogame. Dr. Zagal's discussion of the earlier released games will further illuminate to the jury the relationship between an accurate and faithful portrayal of the Asserted Works in WWE videogames and the critical reception and success of those games, including the Infringing Games. At the very least, this alleged source of confusion may be easily and completely dealt with via cross examination at trial.

*Frank Music Corp.* is inapposite. In *Frank Music Corp.*, the issue was not the whether the separate works were relevant to show the importance of a character within the works to a franchise, which is the precise issue at hand. *See generally Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985). Rather, the issue was whether evidence of

17

royalties other Broadway shows had earned in Las Vegas productions was relevant. *Id.* at 514 n.8. *Eiben* as cited likewise dealt with relevance of other revenue numbers. *Eiben v. A. Epstein & Sons Int'l, Inc.*, 57 F. Supp. 2d 607, 613–14 (N.D. Ill. 1999). *West v. Perry* dealt with the relevance of other copyright registrations owned by defendants. No. 2:07CV200, 2008 WL 5071109, at *3 (E.D. Tex. Nov. 25, 2008). Here, Plaintiff is not seeking to introduce evidence of other copyrights owned by Defendants.

Defendants also contend that discussion of the earlier-released games would unfairly prejudice Defendants by "suggesting that Defendants also owe damages for the appearance of the Tattoos on Mr. Orton" in the earlier-released games. Doc. 263 at 20. Rule 403 requires exclusion only where the evidence's probative "value is substantially outweighed by a danger of unfair prejudice." FED. R. EVID. 403. This lenient standard favors the admission of evidence. *See United States v. Krenzelok*, 874 F.2d 480, 482 (7th Cir. 1989) ("[W]hen the trial judge is in doubt, Rule 403 requires admission."). As stated previously, Dr. Zagal's discussion of the earlier-released games does not suggest that the Take-Two Defendants owe damages for the appearance of the Asserted Works on Mr. Orton in those games, and Dr. Zagal does not use the evidence for that reason. Rather, the purpose of the discussion of earlier-released games is to demonstrate to the factfinder that an accurate depiction of Mr. Orton, including the Asserted Works, is critical to the positive reception and commercial success of WWE videogames. The probative value (which is very high) of this evidence is not outweighed by the danger of unfair prejudice (which is very low) as Dr. Zagal's testimony does not suggest what Defendants claim. Moreover, the Court's Jury Instructions will clearly state which video games are accused of infringement and the gross revenues that will be in evidence (*see* 17 U.S.C. § 504) are limited to only the Infringing Games.

Defendants' reliance on *John Wiley* is misplaced. Unlike in *John Wiley*, Plaintiff will not rely on the other works as proof that Defendants are chronic and continuing copyright infringers. *John Wiley*, 2017 WL 10844685 at *3. Rather, Plaintiff will rely on the information as described above. *Cunningham Charter Corp.* is also irrelevant, as it is a non-binding, unpublished case that does not deal with copyright infringement. *Cunningham Charter Corp. v. Learjet, Inc.*, No. 07-CV-233-DRH-DGW, 2012 WL 1565532 (S.D. Ill. May 2, 2012). Defendants' fifth motion in limine should be denied.

## VI.   Response to Defendants' Motion to Exclude Evidence, Testimony, or Argument Concerning Statements Made by Randy Orton in Online Articles as Hearsay

Defendants' motion seeking to exclude statements by Randy Orton, a critical third party and witness for the Defendants in this litigation, on relevant topics should be denied.

Mr. Orton's statements, relied upon by Plaintiff's expert Dr. Zagal, are relevant. Evidence is relevant if "it has a tendency to makes a fact [at issue] more or less probable that it would be without the evidence." FED. R. EVID. 401(a). Dr. Zagal opinions on Mr. Orton's statements illustrates the extent to which consumers care about Mr. Orton's appearance in the videogames, and the steps videogame publishers, such as Defendants, will take to satisfy the demand for realism. Such evidence also provides relevant data on the extent to which consumers are perceived by Defendants to care about the appearance of WWE Superstars in the *WWE 2K* Games. Mr. Orton's perceptions of his character relate directly to the critical reception and commercial success of WWE videogames, including the Infringing Games.

Defendants' Rule 403 argument to exclude Mr. Orton's statements also fails. Evidence is "unfairly prejudicial," only if it will induce the jury to decide case on an improper basis, commonly an emotional one, rather than on evidence presented. *See* FED. R. EVID. 403 advisory committee's note to 1972 amendment. Dr. Zagal makes clear when discussing Mr.

19

Orton's statement concerning an earlier-released videogame published by THQ that THQ published the videogame. Dr. Zagal does not claim that this videogame or other earlier-released videogames are attributable to the Take-Two Defendants and will not do so at trial. Rather, Mr. Orton's statement will show to the jury the importance of a realistic representation of Mr. Orton in WWE-themed videogames. Therefore, the risk of prejudice is low, and the probative value is high.

Mr. Orton's statements are not hearsay. Plaintiff is not offering them for the truth of the matters asserted. Rather, they would be used to demonstrate their effect on the videogames and the importance of wrestler perceptions to broader consumer approval. In addition, the level of control over Mr. Orton enjoyed by WWE demonstrates that Mr. Orton was an agent of the WWE. Defendants argue that Mr. Orton's statements in Dr. Zagal's expert report are "inadmissible hearsay (and hearsay within hearsay) under Rules 801 and 802." Doc. 263 at 21. Mr. Orton is at least an independent contractor of WWE.[1] Ex. C (Randal Orton WWE Booking Contract) ¶ 13.1 (the "Booking Contract"). Under Rule 801(d)(2)(D), a statement is not hearsay if it was made by the party's agent or employee on a matter within the scope of that relationship, while it existed. Independent contractors may be agents, and an agent does not have to be an employee. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013); *see also Howard v. Abdellatif,* No. 2:05-CV-81, 2008 WL 5411775, at *4 (W.D.

---

[1] This Court need not reach the issue of whether or not Mr. Orton is actually an employee of the WWE to resolve this motion in Plaintiff's favor. However, Plaintiff notes that the extensive control exerted over Mr. Orton by the WWE and the nature of the relationship depicted in the Booking Contract are more consistent with that of an employer/employee relationship than an independent contractor relationship. *See, e.g.*, Ex. C ¶ 5.1 (exclusivity agreement between Orton and the WWE); *Id*. ¶ 7.1 (providing for payment of a salary to Mr. Orton); *Id.* ¶¶ 8.1–8.4 (obligating the WWE to obtain licenses to conduct professional wrestling exhibitions involving Mr. Orton; pay for overhead costs of performances, exploitation of footage, and merchandising activities; schedule events and book Mr. Orton to appear at the events, including selecting the time and place of such events); *Id.* ¶ 9.14 (a second exclusivity agreement).

Mich. Dec. 23, 2008) (holding that physician's statements still counted as admissions because employment status as an independent contractor does not preclude him from role of agent). An independent contractor can be an agent if, and to the extent that, the contractor acts for the benefit of another and under its control in a particular transaction. *State Police Ass'n of Massachusetts v. Comm'r*, 125 F.3d 1, 7 (1st Cir. 1997); *see also* Restatement (Second) of Agency §§ 2, 14N (1957). Per the Booking Contract, Mr. Orton may not work or perform in any capacity for any other martial arts or wrestling organization or entity not owned or controlled by WWE. Ex. C ¶ 9.14. WWE is granted exclusive worldwide rights to Mr. Orton's services, appearances, and performances in the entertainment industry. *Id.* ¶ 5.1. WWE has the sole discretion to book Mr. Orton in wrestling matches and other events. *Id.* ¶ 8.3. In order to participate in other appearances, Mr. Orton may only do so with WWE's express and written approval. *Id.* ¶ 5.2. The tight control WWE retains over Mr. Orton in his contractual obligations support a determination that an agency relationship exists between Mr. Orton and WWE. *See State Police Ass'n of Massachusetts*, 125 F.3d at 7 (finding that police association had an agency relationship with outside firms because it retained very tight control over the method and manner of solicitation, the ingredients of the sales pitch, the identity of the solicitors, the financial aspects of the arrangement, the use of its name, and the advertising formats). Given that the statements by Mr. Orton were made while contracted by WWE and discussing WWE videogames (a topic on which he was authorized, and sometimes required, to speak), the statements are not hearsay under Federal Rule of Evidence 801(d)(2)(D).

Further, even if the statements are hearsay, Plaintiff's expert is entitled to rely on them. *Tilstra v. BouMatic LLC*, 791 F.3d 749 (7th Cir. 2015).

**VII.    Defendants' Motion to Exclude Evidence, Testimony, or Argument Concerning Randy Orton's Number of Social Media Followers**

Defendants' seventh motion in limine is yet another attempt to relitigate its *Daubert* motion, which this Court denied, and should be denied. Facts regarding Randy Orton's social media presence, especially his number of followers, are relevant under Federal Rule of Evidence 401 because they tend to make more probable the fact that Randy Orton is an extremely popular wrestler and individual, especially when compared with other publicly accessible social media metrics. Popularity and prominence of a wrestler (and videogame character) are relevant to that wrestler's appeal to the consuming public and ultimately to sales. As Plaintiff's expert wrote in his opening expert report, "[v]ideogame companies use verisimilitude [realism] to promote and sell their games – highlighting improved visuals and accuracy." Ex. D, (Zagal Opening Report) at 9. The number of social media followers Mr. Orton enjoys has a tendency to make more or less likely that fans would notice (or care) if the Asserted Works were not accurately reproduced as it demonstrates his popularity. Mr. Orton is more than half as popular as the WWE as a whole based on respective numbers of social media followers. Likely customers of the WWE 2K series of games are fans of Mr. Orton and the WWE. Mr. Orton's Twitter handle even appears in the accused games. The more fans who are familiar with and care about Mr. Orton's appearance, the more important Mr. Orton is to the wrestling universe as a whole. Testimony of Defendants' own witnesses establishes the importance of realism to the *WWE 2K* Games. Ex. B at 99:23–100:2, 159:19–16:14; Ex. A at 49:15–51:10. Therefore, the evidence is relevant.

In addition, introducing evidence of Randy Orton's social media followers will not result in the jury having to make a speculative leap. To begin with, even if it did, circumstantial evidence is admissible to the same extent as direct evidence, as "[d]irect and

circumstantial evidence are the same in principle." *Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997). Further, Defendants' characterization of Dr. Zagal's report misrepresents the point of Dr. Zagal's argument and use of social media metrics. Popularity of a wrestler is indisputably an important factor in making the determination as to whether or not to include that wrestler in the Infringing Games. However, popularity is an amorphous concept that cannot be directly measured. Therefore, in order to demonstrate the not-even-disputed popularity of Mr. Orton, and thus his importance to the Infringing Games, Dr. Zagal looks to external and organic metrics such as social media presence. Such information will not lead to jury confusion because it does not suggest other potential sources of liability for Defendants or provide evidence to the jury that will bias it towards Defendants. Indeed, standing alone, evidence regarding Mr. Orton's social media following is certainly not outcome determinative. The evidence is especially relevant given the fact that the Defendants are arguing Mr. Orton is a small part of the Infringing Games. Like much of the other evidence Defendants seek to omit through their motions in limine, thoughtful advocacy by counsel during cross examination is the proper method for dealing with any alleged confusion, not a pretrial ruling.

Dated: September 7, 2022

Respectfully submitted,

*/s/ Anthony G. Simon*

Anthony G. Simon, IL 6209056
Anthony R. Friedman, IL 6299795
Paul J. Tahan
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Phone: (314) 241-2929
Fax: (314) 241-2029
asimon@simonlawpc.com
afriedman@simonlawpc.com
ptahan@simonlawpc.com

R. Seth Crompton
**THE HOLLAND LAW FIRM**
300 N. Tucker, Suite 801
St. Louis, Missouri 63101
scrompton@allfela.com
Phone: (314) 241-8111
Facsimile: (314) 241-5554

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all counsel of record via

this Court's CM/ECF system on September 7, 2022.

*/s/Anthony G. Simon*

24