IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| CATHERINE ALEXANDER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-cv-966-SMY |
| | ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, INC. 2K GAMES, INC., 2K SPORTS INC., WORLD WRESTLING ENTERTAINMENT, INC., VISUAL CONCEPTS ENTERTAINMENT, YUKE'S CO., LTD, YUKES LA INC., | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

**YANDLE, District Judge:**

The Court makes the following rulings regarding the deposition designations for Edward Kiang, Mark Little, and Chris Snyder:

## I. EDWARD KIANG

### A. Objections to Initial Designations

Defendants object to Plaintiff's deposition designations for Mr. Kiang as follows:

| **Defendants' Objections to Plaintiff's Designations for Mr. Kiang** | | |
|---|---|---|
| **Page/Line** | **Testimony** | **Objections** |
| 30:18 - 30:24<br>31:2 - 31:9 | Q (By Mr. Friedman) But you- -- you're welcome to review this section or any other portion. But my question is, Mr. Kiang, is it accurate that Mr. Orton is entitled to a portion of the licensed products' net receipts of the WWE 2K video games that are the subject of this litigation?<br>    A  That is correct. He would get a pro rata share of the portion of sales. | 602; lack of foundation; calls for legal conclusion.<br><br>**OVERRULED** |

| Defendants' Objections to Plaintiff's Designations for Mr. Kiang ||| 
|---|---|---|
| Page/Line | Testimony | Objections |
|  | Q (By Mr. Friedman) So is it correct that the better the games sell, the more money Mr. Orton makes?<br>A It would be correct to say that the better the game does, the better all the talent are paid inclusive of Randy. |  |
| 35:7 - 35:22 | Q (By Mr. Friedman) Okay. On page 9, WWE's response is that as of June 30, 2019, it was paid royalties on the sales of WWE 2K Games as follows.<br>    Do you see that?<br>A I do.<br>Q And for the WWE 2K16 game as of that date, WWE had received $19,232,358, is that right?<br>A That is correct.<br>Q And in connection with the WWE 2K17 game as of that date, the WWE had received $17,274,280, is that right?<br>A That's correct.<br>Q And in connection with the WWE 2K18 game as of that date, the WWE had received $13,051,966, is that right?<br>A Yes. | Pending MIL; 401; 402; 403.<br><br>**OVERRULED** |
| 40:1 - 40:3<br>40:8 - 40:9 | Q My question is, is it accurate to say that without WWE approval, Take-Two cannot have utilized WWE intellectual property?<br>A Correct. Without the license, they could not use the IP that WWE owns and controls. | 602; lack of foundation; calls for legal conclusion; calls for speculation.<br><br>**OVERRULED** |
| 40:19 - 40:21<br>40:24 - 41:14<br>41:18 - 41:21 | Q (By Mr. Friedman) okay. Is the WWE's approval required for any licensed products to be sold?<br>A If what you mean is in the development of the product, we provide approvals for how the brand is utilized, but put in place prior to going on sale.<br>Q (By Mr. Friedman) Yes. Is that the case?<br>A That's correct.<br>Q Okay. So stated another way, Take-Two needed WWE's approval for video | 602; lack of foundation; calls for legal conclusion; calls for speculation.<br><br>**OVERRULED** |

| Defendants' Objections to Plaintiff's Designations for Mr. Kiang |||
|---|---|---|
| **Page/Line** | **Testimony** | **Objections** |
|  | game content in order to sell the video games.  Is that accurate?<br>   A  Take-Two required WWE's approval in order to create WWE licensed product.  If they wanted to make a wrestling game without our IP, they could do that.<br>   Q  Okay.  And in connection with obtaining WWE's approval, what types of content did WWE have the obligation to approve?<br>   A  2K would've submitted a variety of assets including talent models, gear, arenas, lighting, music, entrance themes.  I'm sure there's more I'm missing. |  |
| 43:7 - 43:12<br>43:15 - 43:17 | Q  Right.  So is it accurate to say that when the video games were developed, given this approval requirement, it -- it was WWE that really decided whether the games could be marketed by Take-Two or not given its ability to approve WWE licensed content?<br>   A  WWE approved the elements that go into the game as well as the marketing elements that -- that Take-Two uses prior to release of the game. | Lack of foundation.<br><br>**OVERRULED** |
| 43:18 - 43:20<br>43:24 - 44:1 | Q  (By Mr. Friedman)  Okay.  So would Take-Two have released the video games without the WWE's approval?<br>A  Take -- Take-Two could not have released the game without WWE approving certain elements within the game. | Lack of foundation; speculation; improper/incomplete hypothetical.<br><br>**OVERRULED** |
| 44:2 - 44:16 | Q  (By Mr. Friedman)  Okay.  Including the depiction of Randy Orton, correct?<br>   A  That's correct.  The model -- a number of other things that get approved into the product.<br>   Q  Including the talent models, right?<br>   A  Yes.  Like I was saying before, talent models, music, arenas, you know, graphics within, you know, venue systems.  It's all -- you know, any- -- anything that touches a WWE brand is an element that -- that we would approve. | Foundation; speculation; improper/incomplete hypothetical.<br><br>**OVERRULED** |

| Defendants' Objections to Plaintiff's Designations for Mr. Kiang | | |
|---|---|---|
| **Page/Line** | **Testimony** | **Objections** |
|  | Q Okay. Thank you.  Okay. Now, does there exist a formal approval process within the WWE to approve WWE licensed content with respect to the WWE 2K Games?  A Yes. |  |
| 52:25 - 53:5  53:9 - 53:12 | Q (By Mr. Friedman) Okay. I think you used the phrase "accurate representation" earlier. So let's try and understand what -- what would WWE do in the event that it received from Take-Two or 2K a talent model product that was under review that was not an accurate representation in WWE's view?  A If we received a submission that looked inaccurate, we would -- again, assuming that we noticed it, we would flag it for comment and -- and -- and have to make an adjustment. | Calls for speculation; vague; incomplete/improper hypothetical.  **OVERRULED** |
| 56:23 - 57:22 | Q (By Mr. Friedman) Yeah. What's the -- isthere a connection to sales of the video games in -- in WWE's protection of its intellectual property? What's the point? What's the point of protecting WWE's intellectual property in the video games?  A Well, it -- it -- you know, we look at video games as an extension of the brand. It -- it's part of the -- the brand experience to our fans. And we think it's important that when -- when someone buys a WWE product that -- that they feel like it's -- it's -- it's an officially licensed product that has a -- you know, meets a certain quality bar for -- for the overall game play experience.  Part of that could be inclusive of -- of proper representation of the brand as well as just, you know, a -- a, you know, fun game experience. You know, I -- I -- I think above and beyond just the -- the sales of our games is that, you know, it's -- it's a -- you know -- you know, we -- we find that video games are a good way to interact and engage with fans, you know, | 401; 402; 403; compound.  **OVERRULED** |

| Defendants' Objections to Plaintiff's Designations for Mr. Kiang |||
| Page/Line | Testimony | Objections |
| --- | --- | --- |
|  | outside of the -- the -- the weekly tentpole programming that we have on TV. |  |
| 57:23 - 57:24<br>58:2 - 58:10 | Q  Okay.  Do fans of the video games expect accurate representations of the WWE talent models?<br>A  I -- you know, I -- I -- I can't be certain with respect to all audiences.  You know, I think that -- and certainly within, as I've noted before, you know, we do have different games that have different art styles.  But with respect to these games, I -- I think that, yeah, there's a -- there's an expectation that -- that the models look similar to what they're used to seeing on TV. | 401; 402; 403; calls for speculation; foundation; vague; improper opinion.<br><br>**SUSTAINED; CALLS FOR SPECULATION** |
| 60:21-23<br>61:4-9<br>61:13-21<br>61:23-24 | If WWE were reviewing a talent model of Brock Lesnar and his signature knife tattoo was absent, do you think WWE would approve that model?<br>A  If we were to see a model that was missing the knife tattoo and, presumably, our -- our reviewers would note if it -- a disconnect with his reference photos and would flag that.<br>Q  (By Mr. Friedman)  Okay.  Would WWE approve something like that?<br>A  As mentioned before, it really just depends on the context.  You know, there -- there may be certain instances where there is a -- a -- a story line where we're going, you know, back into historicals and, you know, before he had certain tattoos, or it is a story line for the future where he's saying he covered his tattoos with something new.  It -- it really just depends on the context.<br>A  But we would certainly flag it to -- to your point. | 401; 402; 403; 602; speculation; improper/incomplete hypothetical; scope.<br><br>**OVERRULED** |
| 67:4 - 67:6<br>67:7 - 67:7 | Q  Because without the WWE's approval, the Randy Orton talent model would not have appeared in the marketed video games, isn't that right?<br>A  That's correct. | 401; 402; 403; improper/incomplete hypothetical; speculation; calls for a legal conclusion.<br><br>**OVERRULED** |

| Defendants' Objections to Plaintiff's Designations for Mr. Kiang | | |
|---|---|---|
| Page/Line | Testimony | Objections |
| 67:8 - 67:10<br>67:15 - 67:18 | Q Okay. If -- if Take-Two had submitted a Randy Orton talent model that had -- that had no tattoos on it, would the WWE have approved it?<br>A Similar to the Brock Lesnar response, we -- we would've flagged it and asked for rationale for why we should approve it within our brand guidelines. | 401; 402; 403; improper/incomplete hypothetical; speculation.<br><br>**OVERRULED** |
| 68:9 - 68:11<br>68:15 - 68:17 | Q So had that Orton talent model been submitted to the WWE without any tattoos, would WWE have approved it?<br>A No, it would not have been approved for the uses that are, you know, within the standard play of the game. | 401; 402; 403; improper/incomplete hypothetical; speculation.<br><br>**OVERRULED** |
| 68:19 - 68:22<br>68:25 - 69:2 | Had the Orton talent model been submitted with tattoos that were different from the tattoos that Mr. Orton has in real life, would the WWE have approved that talent model?<br>A Again, without further context, we would've flagged it for further comment and tried to ascertain why they would've made that change. | 401; 402; 403; improper/incomplete hypothetical; speculation.<br><br>**OVERRULED** |
| 69:3 - 69:10 | Q (By Mr. Friedman) All right. Given the way in which the Orton character appears in the WWE 2K Games, had that Orton character talent model been submitted with tattoos that were different from the tattoos Mr. Orton has in real life, would the WWE have rejected that talent model?<br>A That's correct. | 401; 402; 403; improper/incomplete hypothetical; speculation.<br><br>**OVERRULED** |
| 69:15 - 69:18<br>69:21 - 69:22 | Q (By Mr. Friedman) Had Take-Two submitted a Randy Orton talent model in which his tattoos were all blurred out, do you think WWE would've approved that talent model?<br>A I -- we would not have approved it unless we had a reason to approve it. | 401; 402; 403; improper/incomplete hypothetical; speculation.<br><br>**OVERRULED** |
| 70:6 - 70:23 | Q (By Mr. Friedman) Why is it that WWE would not have approved an Orton talent model that lacked any tattoos? | 401; 402; 403; improper/incomplete hypothetical; speculation.<br><br>**OVERRULED** |

| Defendants' Objections to Plaintiff's Designations for Mr. Kiang |||
|---|---|---|
| **Page/Line** | **Testimony** | **Objections** |
| | A  Because it would not have been an -- a accurate depiction of Randy Orton the person.<br>    Q  Why is it that the WWE would have rejected a Randy Orton talent model that had tattoos that were different from the tattoos that Randy Orton has in real life?<br>    A  Again, it -- it would not be an accurate depiction of Randy Orton.<br>  Q  Okay.  Thank you.<br>    And similarly, why is it that the WWE would have rejected a Randy Orton talent model in which the character's tattoos were blurred out?<br>    A  It would not have been an accurate depiction of Randy Orton as he appears in our program. | |
| 71:13 - 71:22 | Q  Okay.  But the tattoos on Randy Orton were important enough that without accurate representation of the tattoos, the Orton talent model would not have been approved, isn't that right?<br>A  Presumably.  Again, it -- it's hard -- it's hard to speculate unless we know the difference that we're talking about.  Some things might go unnoticed depending on the resolution and -- and type of change but -- | 401; 402; 403; improper/incomplete hypothetical; speculation; mischaracterizes testimony.<br>**OVERRULED** |
| 75:21 - 75:24 | Do you think that -- WWE fans know and understand, you know, who their favorite WWE wrestlers are, right?<br>    A  Yes. | 401; 402; 403; 602; speculation; improper opinion; foundation; scope.<br><br>**OVERRULED** |
| 76:4 - 76:6<br>76:10 - 76:10 | Q  (By Mr. Friedman)  In addition, do you think that WWE fans know what their favorite wrestlers look like?<br>    A  Yes. | 401; 402; 403; 602; speculation; improper opinion; foundation; scope.<br>**OVERRULED** |
| 76:21 - 76:23<br>77:1 - 77:2 | Q  Okay.  Would you agree, too, then, that WWE fans generally would know what their favorite wrestler's tattoos look like?<br>    A  I -- I think, you know, some would recognize more than others | 401; 402; 403; 602; speculation; improper opinion; foundation; scope.<br><br>**OVERRULED** |

| **Defendants' Objections to Plaintiff's Designations for Mr. Kiang** | | |
|---|---|---|
| **Page/Line** | **Testimony** | **Objections** |
| 80:21 - 81:2 | Q (By Mr. Friedman) All right. Let's take a look at this one as an example, Exhibit 4. I see a submission number up at the top left. "Licensee name. Take-Two Interactive Software, Incorporated." That's the defendant in this case, correct? Right?<br>    A That's correct. | 401; 402; 403; improper opinion; foundation; scope.<br><br>**OVERRULED** |
| 81:11 - 81:16 | With respect to this product submission, what piece of product content is -- is -- is -- is discussed in this product submission document?<br>    A The Randy Orton model for Xbox One and PlayStation 4. | 401; 402; 403; foundation; scope.<br><br>**OVERRULED** |
| 82:4 - 82:12 | Q And then the second line in that "attached files" box says, I mean, "WWE16 XB1_PS4, what -- what does all that refer to? Could you decipher all that for me?<br>    A A- -- a- -- a- -- again, they -- so these would've been assets for approval for the Randy Orton model. So in particular for the WWE 2K16 game in use for the Xbox One and PS4 consoles as opposed to Xbox 360 or PS3. | 401; 402; 403; foundation; scope.<br><br>**OVERRULED** |
| 88:17 - 89:2 | Q Okay. All right. Thank you, Mr. Kiang. You can put Exhibit 4 down. I'd like to get another one of these product submission pages. And if we could take a look at WWE 207, we'll mark that as Exhibit 5.<br>    A I have it in front of me.<br>    Q Okay. Thank you.<br>       Okay. Have -- have you -- have you seen this document before?<br>    A I have reviewed it in preparation for today. | 401; 402; 403; foundation; scope.<br><br>**OVERRULED** |
| 96:6 - 97:3 | Q (By Mr. Friedman) All right. Exhibit 6, which we've just marked as WWE_Alexander 112 through 119.<br>       And this is another product submission packet, isn't that right, Mr. Kiang?<br>    A That is correct. | 401; 402; 403; improper opinion; foundation; incomplete; scope.<br><br>**OVERRULED** |

| Defendants' Objections to Plaintiff's Designations for Mr. Kiang | | |
|---|---|---|
| **Page/Line** | **Testimony** | **Objections** |
| | Q And it looks like this is in reference to "WWE16 Character Renders." You see that down in the description.<br>    Do you see that?<br>    A Yes.<br>    Q Okay. All right. Let's turn to the last page, 119. One of the internal comments, which is on this page, the last page here on Exhibit 6, by Joe Giorno, there's a statement here that says, "I believe image of Randy Orton is no longer approved by him. Confirm with creative."<br>    Do you see that?<br>    A I do. Yes.<br>    Q Do -- do you know what -- whether or not -- or do you know what the reference is here to Randy Orton's ability to approve the -- this particular talent model? | |
| 97:10 - 97:14<br>97:18 - 98:15 | A I'm saying I am not certain with respect to this particular comment.<br>    Q (By Mr. Friedman) Like you said, you're not aware generally of -- of Mr. Orton having the ability to approve or reject talent models, right?<br>A Yeah. So -- so in general, our -- our talent did not have the right -- or at least Randy Orton does not have the right to approve or reject images. We will take into account any feedback that he gives us. I am -- I am not certain whether or not this particular comment was with respect to maybe the -- the gear he was wearing.<br>    Oftentimes, our talent will change their apparel, and so the color schemes may get noted by our brand assurance team saying that, you know, Randy doesn't like that pose anymore, you know. So -- but that -- that wouldn't be video game specific. That would be just be comments that -- and -- and I think that's why they're -- they're pointing to, you know, confirming with -- with creative services that those are the guys that -- that kind of | 401; 402; 403; foundation; incomplete; scope; speculation.<br><br>**OVERRULED** |

| Defendants' Objections to Plaintiff's Designations for Mr. Kiang |||
| Page/Line | Testimony | Objections |
| --- | --- | --- |
|  | speak to him with respect to the brand and other creative uses for it for his look.<br>   Q  (By Mr. Friedman)  Okay.  But sitting here today, you don't know what it was that Randy Orton maybe had a comment about or -- or in the words of this one, "no longer approved," right?<br>   A  I -- I do not know. |  |
| 115:15 - 115:23 |    Q  Okay.  Thank you.<br>     All right.  Exhibit 7 for the record bears<br>Bates stamps WWE_Alexander 94 through 98.<br>     Mr. Kiang, have you seen this email before?<br>   A  I have in preparation to this.<br>   Q  Okay.  Are you the Ed Kiang on the "To" line of the lead email here?<br>   A  Indeed. | 401; 402; 403.<br><br>**OVERRULED** |
| 116:17 - 117:18 |    Q  All right.  It looks like what Mr. Yang is -- is sending you in this email, he writes: "First screens of Randy Orton are going into Mediabox now.  Attached."<br>     What -- what -- what is Mr. Yang sending to you in this email?<br>   A  So Bryce is send- -- or Bryce Yang is sending screen shots within the -- within the game, I believe, featuring John Cena and Randy Orton.<br>   Q  Okay.<br>   A  And he's uploading it to Mediabox which was the precursor to WWE Source.<br>   Q  Is this for -- for the purpose of dov- -- -- of -- of gaining WWE's approval for the media?<br>   A  I believe so.  Yes.<br>   Q  Okay. And is this for assets that are to be incorporated into the video games?<br>   A  Not to be put into the game.  These -- these are screen captures of the game to be used for marketing of the game.<br>   Q  Okay.  So then is it accurate to say that the screen shots of Randy Orton and John Cena from the game are being used | 401; 402; 403.<br><br>**OVERRULED** |

10

| Defendants' Objections to Plaintiff's Designations for Mr. Kiang | | |
|---|---|---|
| **Page/Line** | **Testimony** | **Objections** |
| | for purposes of marketing the game?  Is that -- is that what's happening here?<br>    A  That's correct. | |

## II.     MARK LITTLE

### A.  Objections to Initial Designations

Defendants object to Plaintiff's deposition designations for Mr. Little as follows:

| Defendants' Objections to Plaintiff's Designations for Mr. Little | | |
|---|---|---|
| **Page/Line** | **Testimony** | **Objections** |
| 49:6 - 49:8<br>49:12 - 50:11 | Has Take-Two Interactive Software ever obtained a license for a tattoo for inclusion in a video game?<br>THE WITNESS:  As Visual Concepts, I believe we have paid a tattooist to create designs for us for inclusion in the game.<br>        BY MR. FRIEDMAN:<br>   Q.   And what game was that?<br>   A.   I do not recall offhand which one it was.<br>   Q.   Was it a WWE game?<br>   A.   Yes.<br>   Q.   Was it one of the WWE 2K16, 17, or 18 games?<br>   A.   I would have to go back and look to be certain.<br>   Q.   Was it a game that you developed in your capacity as a producer at Visual Concepts?<br>A.   Yes.<br>   Q.   Was it a tattoo that appears on a in-game character?<br>   A.   No.<br>   Q.   Okay.  Where did the licensed tattoo appear in the game?<br>   A.   The tattoos would appear in the created content section of the game, so that users that wanted to create their own version of themselves would have tattoo art to pick from to put on their characters. | 401; 402; 403; 602; calls for speculation.<br><br>**OVERRULED** |

| Defendants' Objections to Plaintiff's Designations for Mr. Little | | |
|---|---|---|
| Page/Line | Testimony | Objections |
| 166:17 - 166:20 | Q.  Okay.  Were Mr. Orton's tattoos reproduced into WWE video games?<br>    A.  Yes.  Randy Orton appears with tattoos in our video game | Calls for a legal conclusion.<br><br>**OVERRULED** |

### III.     CHRIS SNYDER

####     A.  Objections to Initial Designations

Defendants object to Plaintiff's deposition designations for Mr. Snyder as follows:

| Defendants' Objections to Plaintiff's Designations for Mr. Snyder | | |
|---|---|---|
| Page/Line | Testimony | Objections |
| 17:1 – 17:5 | Q.  Okay.  I'm going to hand you what's been previously marked as Exhibit 2., and that is titled "Master License Agreement."<br>    Have you seen that document before?<br>    A.  No | 602; lack of foundation.<br><br>**OVERRULED** |
| 33:17 - 33:23 | Q.  Okay.  So all of the sales and marketing that involve the WWE video games, including the 16, 17, 18 video games, was done by Take-Two and 2K Games; is that correct?<br>    A.  Correct.<br>        MR. FRIEDMAN:  Okay.  All right.  I'm going to mark another exhibit.  This is Exhibit 9. | 106; 32(a)(6); 401; 402; 403; pending MIL.<br><br>**OVERRULED** |
| 34:2 - 34:14 | Q.  Mr. Snyder, have you seen this document before?<br>    A.  This is a section of a bigger document; correct?  Yes.<br>    Q.  And the title of this document, or a portion of the spreadsheet, is "WWE 2K Franchise Sales Since April 2015."<br>    Mr. Snyder, did you prepare this document?<br>    A.  No.<br>    Q.  Do you know who did?<br>    A.  Yes.<br>    Q.  Who?<br>    A.  Barry Charleton. | 106; 32(a)(6); 401; 402; 403; pending MIL.<br><br>**OVERRULED** |

| Defendants' Objections to Plaintiff's Designations for Mr. Snyder | | |
|---|---|---|
| Page/Line | Testimony | Objections |
| 36:7 – 36:8 | MR. FRIEDMAN: I've marked Exhibit 10 which bears Bates Nos. 983. | 401; 402; 403; Pending MIL. |
| 36:19 – 36:21 | And now I'm going to show you and mark Exhibit 11. | 401; 402; 403; Pending MIL. |
| 36:23 - 36:24 | MR. FRIEDMAN: Which had the Bates No. TAKE-TWO_1332. And this is a larger spreadsheet. | 401; 402; 403; not a question/testimony; pending MIL. |
| 37:3 - 37:4 | THE WITNESS: It's really kind of confusing this way. | 401; 402; 403; not a question/testimony.<br><br>**SUSTAINED** |
| 43:12 - 43:19 | So it's your understanding that Exhibit 10 describes sales and other financial aspects of the 2K16 game; right?<br>  A. Yes.<br>  Q. Okay. All right. Can you tell me what was the total gross revenue for the WWE 2K16 game throughout the time period captured by Exhibit 10?<br>  A. $152,673,781. | 401; 402; 403; Pending MIL.<br><br>**OVERRULED** |
| 44:1 - 44:8 | BY MR. FRIEDMAN:<br>  Q. All right. So you said $152,673,781; right?<br>  A. Yes.<br>  Q. Okay. And that is reflected in Column B for the time period between April 2015 and March 2016; right?<br>  A. Yes, I think so. | 401; 402; 403; Pending MIL.<br><br>**OVERRULED** |
| 44:24 - 45:10 | Q. Now, you're telling me, just so I get this right, Column B involves sales of 2K16?<br>A. Yes.<br>  Q. And Column C involves sales of 2K17?<br>  A. Yes, that is my understanding.<br>  Q. Column D describes sales of 2K18?<br>  A. Yes.<br>  Q. All right. What is Column E?<br>  A. Column E, I believe, is sales from '18 into fiscal year '19.<br>  Q. Of what?<br>  A. Of -- of 2K18. | 401; 402; 403; Pending MIL<br><br>**OVERRULED** |

| **Defendants' Objections to Plaintiff's Designations for Mr. Snyder** | | |
|---|---|---|
| Page/Line | Testimony | Objections |
| 47:10 - 48:5 | Okay.  What are the gross revenues for the WWE 2K17 game?<br>A.  Gross revenues for WWE 2K17 was 145,035,743.<br>Q.  And what are the gross revenues for the WWE 2K18 game?<br>A.  $134,581,096.<br>Q.  Okay.  And this figure here of total gross sales or gross revenue of 10,130,615 in the last column, what was that?<br>A.  I'm not sure.<br>Q.  Okay.  All right.  Are gross revenues the same as total gross sales?<br>A.  I don't know how you're defining that. Sorry.<br>Q.  Okay.  Well, I asked you what the gross revenues were, and then you read from the row that appears to be titled "Total Gross Sales."<br>A.  Yes.<br>Q.  Those are equivalent terms?<br>A.  Yes. | 401; 402; 403; Pending MIL.<br><br>**OVERRULED** |
| 60:23 – 60:24 | Q.  So neither Exhibit 10 nor 9 nor 11 capture any sales information past August 2018; is that correct? | 401; 402; 403; Pending MIL.<br><br>**OVERRULED** |
| 61:6 – 61:7 | A.  Capture anything after August 2018?  That looks to be true, yes. | 401; 402; 403; Pending MIL.<br><br>**OVERRULED** |

**IT IS SO ORDERED.**

DATED:  September 21, 2022

**STACI M. YANDLE**
**United States District Judge**

14