**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| CATHERINE ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, INC., | ) | |
| 2K GAMES, INC.; 2K SPORTS, INC.; WORLD | ) | CASE NO. 3:18-CV-966-SMY-MAB |
| WRESTLING ENTERTAINMENT, INC.; | ) | |
| VISUAL CONCEPTS ENTERTAINMENT; | ) | |
| YUKE'S CO., LTD.; AND YUKE'S LA, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND**
**<u>CONDITIONAL MOTION FOR A NEW TRIAL</u>**

## TABLE OF CONTENTS

I.     **INTRODUCTION**................................................................................................... 1

II.    **ARGUMENT** ........................................................................................................ 3

    A.    **Legal Standard** ........................................................................................ 3

    B.    **Defendants' Use was Fair Use as a Matter of Law.** ............................. 3

        1.    Factor 1: Purpose and Character of the Use.................................. 4

        2.    Factor 2: Nature of the Work ........................................................ 7

        3.    Factor 3: Substantiality of the Use............................................... 9

        4.    Factor 4: Market Harm.............................................................. 10

    C.    **Plaintiff Is Not Entitled to Actual Damages or Profits As a Matter of Law** ............................................................................................................ 12

        1.    **The Jury's Award of Actual Damages Was Unduly Speculative** ....... 13

        2.    **No Reasonable Jury Could Award Disgorgement of Defendants' Profits Because Plaintiff Failed to Show a Causal Nexus** ............................................................................................ 16

    D.    **Conditional Motion for a New Trial** ................................................... 19

III.    **CONCLUSION** ................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Authors Guild, Inc. v. HathiTrust*,
755 F.3d 87 (2d Cir. 2014)..................................................................................10

*Authors Guild .v Google, Inc.*,
804 F.3d 202 (2d Cir. 2015)................................................................................10

*Bell v. Taylor*,
827 F.3d 699 (7th Cir. 2016) ...................................................................... *passim*

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006)...............................................................................6, 7

*Blake v. Hall*,
668 F.2d 52 (1st Cir. 1981)....................................................................................4

*Bouchat v. Balt. Ravens Ltd. P'ship*,
737 F.3d 932 (4th Cir. 2013) .................................................................................6

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) .................................................................................5

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994).....................................................................................5, 9, 10

*Dash v. Mayweather*,
731 F.3d 303 (4th Cir. 2013) ...............................................................................17

*Davis v. Gap, Inc.*,
246 F.3d 152 (2d Cir. 2001)...........................................................................13, 17

*Eagle Servs. Corp. v. H2O Indus. Servs., Inc.*,
532 F.3d 620 (7th Cir. 2008) ...............................................................................17

*Gasperini v. Ctr. for Humanities, Inc.*,
518 U.S. 415 (1996)..............................................................................................19

*Google LLC v. Oracle Am., Inc.*,
141 S.Ct. 1183 (2021).................................................................................. *passim*

*Hayden v. 2K Games, Inc.*,
No. 1:17 Civ. 2635, 2022 WL 4356211 (N.D. Ohio Sept. 20, 2022).....................9

*Incredible Techs., Inc. v. Virtual Techs., Inc.*,
    400 F.3d 1007 (7th Cir. 2005) ..........................................................................8

*Kienitz v. Sconnie Nation LLC*,
    766 F.3d 756 (7th Cir. 2014) ................................................................... *passim*

*Kienitz v Sconnie Nation LLC*,
    965 F. Supp. 2d 1042 (W.D. Wis. 2013) ...........................................................7

*Leigh v. Engle*,
    727 F.2d 113 (7th Cir. 1984) ..........................................................................17

*McRoberts Software, Inc. v. Media 100, Inc.*,
    329 F.3d 557 (7th Cir. 2003) ....................................................12, 13, 15, 16

*Murray v. Chicago Transit Auth.*,
    252 F.3d 880 (7th Cir. 2001) ............................................................................3

*Neri v. Monroe*,
    No. 11 Civ. 429, 2014 WL 793336 (W.D. Wis. Feb. 26, 2014)..........................6

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ..........................................................................17

*Reeves v. Sanderson Plumbing Prods.*,
    530 U.S. 133 (2000).........................................................................................3

*Roberts v. College of the Desert*,
    870 F.2d 1411 (9th Cir. 1988) ..........................................................................4

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013) ..........................................................................8

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
    106 F.2d 45 (2d Cir. 1939)..............................................................................17

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
    709 F.3d 1273 (9th Cir. 2013) ..........................................................................6

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
    449 F. Supp. 3d 333 (S.D.N.Y. 2020)...............................................................6

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014)...............................................................................7

*Taylor v. Meirick*,
    712 F.2d 1112 (7th Cir. 1983) ........................................................................17

*Theotokatos v. Sara Lee Pers. Prods.*,
    971 F. Supp. 332 (N.D. Ill. 1997) ............................................................................7

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
    953 F.3d 638 (9th Cir. 2020) ...................................................................................9

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
    546 U.S. 394 (2006) ...............................................................................................20

*Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*,
    196 F.3d 1366 (Fed. Cir. 1999) .............................................................................17

**Statutes**

17 U.S.C. § 504(b) ...........................................................................................................17

**Rules**

Fed. R. Civ. P. 50 ........................................................................................................1, 3

Fed. R. Civ. P. 59 ...........................................................................................................1

Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., Visual Concepts Entertainment, and World Wrestling Entertainment, Inc. (together "Defendants") respectfully bring this renewed motion for judgment as a matter of law ("JMOL") under Federal Rule of Civil Procedure 50(b) on fair use and Plaintiff Catherine Alexander's ("Plaintiff") damages claims. Alternatively, if the Court denies Defendants' JMOL motion and Plaintiff requests and the Court grants Plaintiff a new trial, then Defendants ask that the Court also grant a new trial on the issues of fair use, waiver, estoppel, and license under Federal Rule 59.

## I.    INTRODUCTION

Defendants seek JMOL on two grounds.  ***First***, Defendants' use of the five tattoos at issue (the "Tattoos") in *WWE 2K16*, *WWE 2K17*, and *WWE 2K18* ("*WWE 2K*") is a fair use as a matter of law.  Although juries may decide subsidiary factual questions, the ultimate question of fair use is for the Court to decide, not the jury.  Based on the admitted and undisputed facts and consistent with both Supreme Court and Seventh Circuit law, this is precisely a scenario in which fair use applies.  As to **Factor 1**, *WWE 2K* is not a substitute for the Tattoos.  The evidence shows consumers would not, and did not, buy *WWE 2K* instead of the Tattoos.  And Defendants' purpose in including the Tattoos in *WWE 2K* is different from Plaintiff's purpose in creating them.  As to **Factor 2**, tattoos are bound up with the rights of the individuals on whom they are inked, and unlike paintings or other artwork, are permanent parts of a person's body.  This makes them far from the core of what copyright law is designed to protect.  Further, these particular Tattoos were copied from pre-existing sources and used common tropes, making them not creative, and were inked on a famous wrestler on whom they are regularly observed in public. As to **Factor 3**, Defendants used only as much of the Tattoos as necessary to further their transformative purpose.  Finally, as to **Factor 4**, Defendants' use did not harm the market for the Tattoos, because, as Plaintiff's testimony showed, ***there is no market*** for licensing the Tattoos in

video games.  In fact, there is a public benefit from allowing tattooed people to show freely and allow others to show their bodies.  All four factors thus favor a finding of fair use, and Defendants are entitled to judgment on this issue as a matter of law.

**Second**, Plaintiff closed her case-in-chief without presenting legally sufficient evidence to prove actual damages or disgorgement of profits, on which she bore the burden of proof.  With regard to **actual damages**, Plaintiff failed to articulate *any* measure of actual damages that was not based on undue speculation.  Plaintiff specifically did not offer any evidence of a decrease in value of the copyrighted works, the profits she would have made without the infringement, or what a willing buyer would have paid to obtain a license from Plaintiff for Defendants' use in *WWE 2K*.  In fact, Plaintiff admitted she could not identify any business or clients that she lost due to Mr. Orton's tattoos.  As a result, Plaintiff's counsel invited the jury in his closing to speculate about what actual damages Plaintiff might have suffered.  That is not evidence, and no reasonable jury could have awarded any actual damages in this case, because there was no evidence for it to do so.  With regard to **disgorgement**, as the jury recognized, Plaintiff failed to present any evidence of a causal nexus between the alleged infringement and her claim for Defendants' profits.  There is no evidence in the record that anyone bought *WWE 2K* for the Tattoos, and in fact, all of the evidence in the record indicates the opposite.  Although the jury's verdict shows that it recognized no such causal nexus existed, the lack of any proof whatsoever further warrants judgment as a matter of law in favor of Defendants.

Moreover, although Defendants do not believe Plaintiff is entitled to a new trial, if Plaintiff requests one and the Court grants it, Defendants respectfully request that the new trial include all of Defendants' defenses, including (1) fair use; (2) waiver; (3) estoppel; and (4) license.  Not only is the fair use verdict against the weight of the evidence, but to the extent

Plaintiff is permitted to retry her damages case, Defendants should be able to submit additional evidence on these defenses.

## II.     ARGUMENT

### A.     <u>Legal Standard</u>

Judgment as a matter of law ("JMOL") is appropriate if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(b); *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 889 (7th Cir. 2001) (affirming grant of motion for judgment as a matter of law where plaintiff failed to establish a "legally sufficient basis for a reasonable jury" to find in her favor). In considering a motion for JMOL, the Court should review all of the evidence in the record. *See, e.g.*, *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000). The Court must draw all inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence. *Id.*

### B.     <u>Defendants' Use was Fair Use as a Matter of Law.</u>

Defendants' use of Mr. Orton's tattoos in *WWE 2K* is ***precisely*** the type of transformative, non-substitutive copying that fair use is designed to allow as a matter of law, consistent with both the Supreme Court's decision in *Google LLC v. Oracle Am., Inc.*, 141 S.Ct. 1183 (2021), and the Seventh Circuit's guidance in *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756 (7th Cir. 2014). No reasonable jury could find otherwise. *See* Fed. R. Civ. P. 50. Indeed, the so-called "subsidiary factual questions" to the fair use analysis are, here, not questions at all—the overwhelming evidence in the record, including admissions by Plaintiff and her experts, demonstrates that there are no disputes as to the subsidiary facts in this case, and that they support a finding of fair use. *See Google*, 141 S.Ct. at 1200. Thus, there is "no legally sufficient evidentiary basis" to conclude that ***any*** of the four fair use factors favor Plaintiff. *See* Fed. R.

Civ. P. 50.

Critically, this Court should decide the ultimate question of fair use as a matter of law and in doing so does not usurp the proper function of the jury.  Deciding fair use as a matter of law is consistent with the Supreme Court's holding in *Google* that the "ultimate question" of fair use is a legal question ***for the court*** to decide, not the jury.  141 S.Ct. at 1199 (finding fair use "primarily involves legal work," including a review of cases that "provide legal interpretations of the fair use provision," and concluding that there is no right to have a jury resolve a fair use defense).  The jury's role in the fair use analysis, by contrast, is to decide "subsidiary" factual questions, such as "how much of the copyrighted work was copied," where those questions are in dispute.  *Id.* at 1200.  Here, the jury was not instructed on these subsidiary factual questions, despite Defendants' objections, and did not clearly decide them.[1]  Tr. 753–757.  On the admitted and undisputed facts, Defendants are entitled to JMOL on fair use.

## 1.     Factor 1: Purpose and Character of the Use

The first fair use factor is "the purpose and character of the defendants' use, including whether defendants' use is of a commercial nature or is for nonprofit educational purposes."  Tr. 794:10–12 (Jury Charge).

**Different Purposes**:  In assessing Factor 1, the Seventh Circuit considers differences in the purposes, specifically analyzing whether "the contested use is a complement to the protected work (allowed) rather than a substitute for it (prohibited)."  *Kienitz v. Sconnie Nation*, 766 F.3d

---

[1]     There is no way for the Court to tell which, if any, of the predicate facts were decided by the jury because the jury was not instructed as to what facts to consider or their relevance to the analysis.  In analogous circumstances involving the application of equitable relief by the court, where matters at law involved common issues that had been decided by a jury, courts have found they are ***not*** limited by the jury's findings.  *Blake v. Hall*, 668 F.2d 52, 54 (1st Cir. 1981); *Roberts v. College of the Desert*, 870 F.2d 1411, 1418 (9th Cir. 1988).

756 at 758; *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 693 (7th Cir. 2012) (comparing defendants' purpose in copying a YouTube video to the purpose for which the video was originally created).

Plaintiff admitted that she is not in competition with Defendants, and the evidence shows that *WWE 2K* is ***not*** a substitute for the Tattoos, as no customer would purchase *WWE 2K* instead of the Tattoos.  Tr. 270:17–22 (Alexander) (Q: "And you don't consider yourself to be in competition with Take-Two, do you?"  A: "No, ma'am"); Tr. 546:1–11 (Brody) (explaining how the tattoos are incidental and consumers did not buy *WWE 2K* for the tattoos); Tr. 635:21–636:4 (Jay).  The size and context in which the Tattoos appear in *WWE 2K* on Mr. Orton make this obvious—they appear affixed to his body, smaller than in real life, and surrounded by other expressive material that makes them less prominent and less able to substitute for the original. *See* Tr. 520:3–9 (Brody); Pl.'s Ex. 155.  The Create-A-Superstar feature in *WWE 2K16*, which allows a user to take Mr. Orton's entire arm or back and apply it to a custom wrestler to creatively mix and match real world body parts in that mode, including those of other wrestlers, is also non-substitutive.  Like the other use of the Tattoos, this body-part swapping feature, which allows a user to use parts from a real-world wrestler in a game that is about WWE wrestling, does not substitute for personalized Tattoos that Ms. Alexander inked permanently on Mr. Orton's body to further his expression.  *See* Tr. 434:13–435:21 (Kiang) (describing the Create-A-Superstar feature).  Under *Sconnie Nation*, this weighs this factor in favor of fair use. 766 F.3d 756 at 758.

Moreover, the Supreme Court further instructs that the first fair use factor requires consideration of whether the use is "transformative."  *Google*, 141 S.Ct. at 1202–03.  That is, whether the copying merely "supersedes the objects of the original creation," or instead "adds

something new, with a further purpose or different character." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578–79 (1994).  It is widely acknowledged that the depiction of an artistic work for purposes of representing reality ***is a fundamentally different, transformative purpose*** from the original "expressive" purpose of that work.  *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609–611 (2d Cir. 2006) (purpose of depicting expressive posters to show "actual occurrence" was different from the posters' original expressive purpose); *see also Bouchat v. Balt. Ravens Ltd. P'ship*, 737 F.3d 932, 940 (4th Cir. 2013) (transformative to use, "'not for its expressive content, but rather for its[] factual content'" and as a "'historical guidepost'"); *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013) (using *Ed Sullivan Show* clip "as a biographical anchor" within the fictional musical *Jersey Boys* constituted transformative use); *Solid Oak Sketches, LLC v. 2K Games, Inc.* is directly on point. 449 F. Supp. 3d 333, 343–45 (S.D.N.Y. 2020) (showing tattoos on real people in video games was different purpose); *Neri v. Monroe*, No. 11 Civ. 429, 2014 WL 793336, at *1 (W.D. Wis. Feb. 26, 2014) (photograph of hallway showing sculpture in it was different purpose from the original expressive purpose of the sculpture).

Defendants' purpose in including Mr. Orton's tattoos on Mr. Orton in *WWE 2K* was for the sake of accuracy.  *See*, *e.g.*, Tr. 537:20–23, 540:24–541:7 (Brody) (Take-Two included tattoos on wrestlers "because they exist on the wrestlers' bodies"); Tr. 596:16–22 (Bogost) ("2K's expressive goal was to create a realistic game").  Plaintiff admitted that "defendants copied Mr. Orton's tattoos onto a character in the *WWE 2K* [G]ames in order to make the character resemble Mr. Orton in real life."  Tr. 652:5–16 (RFA).  As a matter of law, Defendants' undisputed purpose is transformative and different from Plaintiff's purpose in inking the tattoos. *See Neri*, 2014 WL 793336, at *6 (purpose of sculpture to "beautify" different from use to

"document").[2]

**Commercial Use**: The Supreme Court cautioned that, although the fact that a use is non-commercial might favor fair use, "the inverse is not necessarily true," as "many common fair uses are indisputably commercial." *Google*, 141 S.Ct. at 1204. Thus, the Seventh Circuit has soundly rejected the idea that commercial motivation should outweigh a transformative purpose in the absence of significant substitutive competition with the original. *See e.g.*, *Kienitz v Sconnie Nation LLC*, 965 F. Supp. 2d 1042, 1049–50 (W.D. Wis. 2013) (fair use even where use was "part [of] a commercial venture"). There is no evidence that Defendants and Plaintiff were in competition. Rather, Plaintiff admitted that she does not consider herself to be in competition either with Take-Two or WWE. Tr. 270:17–21 (Alexander). In light of the transformative purpose and the parties' lack of competition, commerciality does not tip the scales. Based on the admitted evidence, the first fair use factor favors Defendants as a matter of law.

### 2. Factor 2: Nature of the Work

The second fair use factor is "the nature of the copyrighted works." Tr. 794:13 (Jury Charge). On this factor, the Supreme Court found that where copyrightable material is "bound up with uncopyrightable material, copyright protection is 'thin.'" *Google*, 141 S.Ct. at 1198 (finding the nature of certain computer programs, which were more functional than other types of works, favored fair use). Moreover, protection does not extend to any part of the work that uses unauthorized pre-existing material, *Theotokatos v. Sara Lee Pers. Prods.*, 971 F. Supp. 332,

---

[2]   That both Defendants and Plaintiff "showed" the tattoos does not make the purposes the same—in nearly every instance of fair use involving visual works, the defendant's purpose is to ***show*** the work in some way. Yet fair use can apply, even where the original work is shown in its ***entirety***. *See, e.g.*, *Bill Graham*, 448 F.3d at 609–611; *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014) (secondary use "can be transformative in function or purpose [even] without altering or actually adding to the original work."). This is just such an instance.

340 (N.D. Ill. 1997), or consists of tropes that are "standard in the treatment of [the] given topic," *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1012 (7th Cir. 2005). Where a work is published, particularly where it is widely disseminated, this fact favors fair use. *See Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013).

In *Google*, the Supreme Court focused heavily on this factor, recognizing that the nature of works at issue was far from the "core" of copyright. 141 S.Ct. at 1202. Tattoos, too, are distinctively distant from the core of copyright. Tattoos are unique because they are fixed not on paper or canvas, but on people. By their nature, tattoos are "bound up" with intrinsically unprotectable material, inextricable from the likeness of the person on whom they are **permanently** fixed. Tr. 230:12–14 (Alexander) ("Now that they're there, it's hard to imagine Randy without his tattoos."); Tr. 346:1–7 (Orton) ("Likeness is, is me. It's everything from the color of my eyes to the size of my feet to the tattoos that have been permanently etched in my skin."); Tr. 490:10–13 (Jablonski) ("Tattoos are about communicating your identity and what is really important to you. And they're there, they're in your face, they're permanent. You just can't miss them."). This is consistent with Mr. Orton's account of the inking process, in which he provided direction on tattoos that were customized to his personal musculature, and during which he remained "in control of what was going to end up on my body." Tr. 376:3–24 (Orton); *see also* Tr. 266:9–17 (Alexander) (tattooed people can freely modify and remove their tattoos). The medium of tattoos thus uniquely weighs this factor in favor of fair use as a matter of law. *See Google*, 141 S.Ct. at 1202 (finding fair use where the work was bound up with uncopyrightable elements, and where its value came from those who do not hold the copyrights).

The evidence in the record is clear that the Tattoos were not creative. It is undisputed that Plaintiff copied the Upper Back Tribal Design and Tribal Arm Design from a pre-existing

tattoo without authorization.  Tr. 131:6–15, 152:9–21 (Zagal); Tr. 204:23–205:22, 265:2–266:10

(Alexander) (admitting to following "the same style as the original" in inking the addition); Pl.'s

Ex. 84; Defs.' Exs. 259 & 303.  Moreover, they consisted of common tropes that, at most,

reflected Mr. Orton's expression.  *See* Tr. 490:24–491:1, 492:9–493:9 (Jablonski).  Given that

the Tattoos were inked on a famous wrestler, they were widely disseminated in such a way that

weighs this factor against fair use.  *See Hayden v. 2K Games, Inc.*, No. 1:17 Civ. 2635, 2022 WL

4356211, at *7 (N.D. Ohio Sept. 20, 2022) (finding tattoos were published when tattooed people

left establishment with tattoos affixed on their bodies).  Thus, based on the admitted and

undisputed evidence, factor two favors fair use as a matter of law.

### 3.      Factor 3: Substantiality of the Use

The third fair use factor is "the amount and substantiality of the portion used in relation to

the copyrighted works as a whole."  Tr. 794:14–15 (Jury Charge).  The Supreme Court held that

copying of even a large amount of material can fall within the scope of fair use where it is

"central to a copier's valid purpose."  *Google*, 141 S.Ct. at 1205; *see also Campbell*, 510 U.S. at

588.  Thus, the Supreme Court concluded that factor three "will generally weigh in favor of fair

use where [] the amount of copying was tethered to a valid, and transformative, purpose."

*Google*, 141 S.Ct. at 1205; *see also Campbell*, 510 U.S., at 586–587, 114 S.Ct. 1164 (explaining

that this "enquiry will harken back to the first of the statutory factors, for . . . the extent of

permissible copying varies with the purpose and character of the use").  Courts also consider

whether the copied material is "embedded" in a "larger, transformative" work in assessing this

factor.  *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651

(9th Cir. 2020).

Although Defendants copied the entirety of the Tattoos, the amount used must be

considered in light of the purpose of the use.  *Google*, 141 S. Ct. at 1205.  Here, the testimony of

both Plaintiff and Mr. Orton was that Defendants needed to include the entirety of the Tattoos to depict them accurately.  Tr. 230:12–15 (Alexander); Tr. 346:1–7 (Orton).  With regard to the Create-A-Superstar feature, Defendants again used the amount necessary to further the purpose of a feature that allowed for the interchange of real wrestlers' body parts.  Also, the Tattoos are part of a much larger work, *WWE 2K*, which is composed of numerous other elements.  Tr. 223:7–224:14; Pl.'s Ex. 155.  In light of the transformative purpose and the extensive other elements in *WWE 2K*, factor three does not weigh against fair use.

### 4.    Factor 4: Market Harm

The fourth fair use factor is "the effect of the use upon the potential market for or value of the copyrighted works."  Tr. 794:16–17 (Jury Charge).  This factor requires considering whether the defendant's use will "result in a substantially adverse impact on the potential market for the original."  *Campbell*, 510 U.S. at 590 (internal quotation marks omitted).  In the Seventh Circuit, the fourth fair use factor is "the most important usually."  *Sconnie Nation,* 766 F.3d at 758.  In particular, the Seventh Circuit in *Sconnie Nation* held that the fourth factor favored fair use where the products at issue were not substitutes, and where the plaintiff could not say "that defendants disrupted a plan to license" the work or that defendants "reduced the demand for the original work."  *Sconnie Nation*, 766 F. 3d at 759; *Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015) (considering "whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original"); *see also id.* at 214 (fair use as use does not "serve as a substitute"); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014) (finding fair use where defendant does not provide "a substitute").

Consistent with *Google*, the question of whether there was harm to actual or potential

markets" is a subsidiary factual question that may be decided by the jury.  141 S.Ct. at 1200.  In this case, no reasonable jury could find that market harm exists.  Plaintiff admitted she has never licensed a tattoo for use in a video game, or any other medium for that matter.  Tr. 271:6–12 (Alexander).  Moreover, she admitted that she does not consider herself to be in competition with either WWE or Take-Two.  Tr. 270:17–22 (Alexander).  She could not identify any business she had lost due to the tattoos in WWE 2K.  Tr. 269:19–270:4 (Alexander).  And in fact, Plaintiff admitted that some people came to her because they heard she had inked Mr. Orton's tattoos.  2022-09-27 Tr. 270:13–270:16 (Alexander).  This is consistent with Defendants' own licensing practices: Alfredo Brody testified that Take-Two has never paid a tattoo artist for the right to depict tattoos that appear on a wrestler in real life in WWE 2K.  Tr. 547:6–9 (Brody).

Moreover, James Malackowski provided unrebutted expert testimony that a market for licensing tattoos in video games does not exist and is not likely to develop.  Tr. 661:12–664:21 (Malackowski) ("[T]here is no market for the tattoos at issue . . . .").  Indeed, he explained how such a market was not practical and therefore unlikely to develop, including because there is "no valuation standard," "no accounting ability to quickly come back to a tattoo artist," and "because it's a permanent part of you."  *Id.*  Thus, on this most critical factor, deemed one of the most important in *Sconnie Nation*, all of the evidence was that there was no market for the use of tattoos in video games, and that no such market is reasonably likely to develop.  No reasonable jury would have sufficient evidence to find otherwise.

In considering factor four, the Supreme Court in *Google* also held that "we must take into account the public benefits the copying will likely produce," including benefits related to copyright's "concern for the creative production of new expression."  141 S. Ct. at 1206.  In this case, not only is there no market harm from the use of Mr. Orton's tattoos in *WWE 2K*, but there

11

is a public benefit in allowing the free depiction of persons in creative works as they really look, tattoos and all.  Permitting such use promotes the creation of works that realistically depict people as they actually look, which itself is an expressive choice, as Dr. Ian Bogost explained. Tr. 603:16–20 (explaining how realism can be the developer's creative goal).  Another public benefit is that free depiction of tattoos on the people who bear them ensures that it is up to *tattooed person* to decide how they depict themselves to the world.  To find infringement here would also impede self-expression by limiting people's ability to show permanent parts of their body.  People who get tattoos to express themselves would suddenly be unable to show, and allow others to show, their bodies confidently, without fear of a lawsuit.  Thus, Defendants' use promotes the creation of new works as required by the Constitution, rather than suppressing them.  See *Google*, 141 S. Ct. at 1208 (fair use where copyright would harm the public by increasing costs and creating other difficulties for the creation of new works).  Factor four weighs strongly in favor of fair use as a matter of law.  Accordingly, as all of the fair use factors militate toward fair use, JMOL on that issue is appropriate here.

### C.    Plaintiff Is Not Entitled to Actual Damages or Profits As a Matter of Law

Even if the Court determines that Defendants' use of the Tattoos was not fair use, the Court should grant Defendants JMOL on Plaintiff's claims for damages.  "The Copyright Act permits a copyright owner to recover actual damages suffered as a result of the infringing activity and any profits of the infringer resulting from the infringement that are not otherwise taken into account in calculating actual damages."  *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003).  No reasonable jury could have awarded actual damages because any amount was necessarily based on undue speculation, and Defendants' profits were not available due to the insufficient evidence of a causal nexus between them and the copying.

1.      __The Jury's Award of Actual Damages Was Unduly Speculative__

Plaintiff failed to articulate a measure of actual damages that was not based on undue

speculation and therefore JMOL is required in Defendants' favor.  Under Seventh Circuit law,

Plaintiff may recover her actual damages, which "are 'usually determined by the loss in the fair

market value of the copyright, measured by the profits lost due to the infringement or by the

value of the use of the copyrighted work to the infringer.'"  *Bell v. Taylor*, 827 F.3d 699, 709

(7th Cir. 2016) (quoting *McRoberts Software*, 329 F.3d at 566).  "It is not improper for a jury to

consider either a hypothetical lost license fee or the value of the infringing use to the infringer to

determine actual damages . . . ."  *Bell*, 827 F.3d at 709 (quoting *McRoberts Software*, 329 F.3d at

566).  The amount of actual damages, however, must not be based on "undue speculation," and a

plaintiff's subjective belief as to the value of the work is not sufficient to prove actual damages.

*Bell*, 827 F.3d at 709 (Plaintiff's "subjective belief as to the fair market value of his photo is not

enough to prove damages" (citing *Davis v. Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001) ("The

question is not what the owner would have charged, but rather what is the fair market value.")))  .

Plaintiff bears the burden of proving her actual damages.  *Id.* at 710.

Consistent with this case law, the jury was instructed on three "[e]xamples of actual

losses from copyright infringement," which are:

> [1]  A decrease in the market value of the copyrighted work caused by the
> infringement.
>
> [2]  Profits that Plaintiff proves she would have made without the infringement.
> Profits are the revenue Plaintiff would have made on sales she would have made
> without the infringement, less any additional expenses she would have incurred
> in making the sales.
>
> [3]  What a willing buyer reasonably would have paid Plaintiff to obtain a license to
> copy Plaintiff's copyrighted works.

Tr. 795:11–19 (Jury Charge).  Plaintiff admitted that she had no evidence of actual damages

under the first two theories: she testified that she has never licensed a tattoo for use in any medium, that she is not in competition with Take-Two, and that she could not identify any business or clients that she lost due to Mr. Orton's tattoos.  Tr. 269:19–270:4, 270:17–22, 271:6–12 (Alexander).  In fact, Plaintiff admitted that she gained business because people had heard she tattooed Mr. Orton.  *Id.* 270:13–16.

In view of this evidence, Plaintiff's counsel conceded during closing arguments that Plaintiff was ***only*** seeking actual damages under the Court's third example.  Tr. 804:18–805:12 (Pl.'s Closing Argument) ("Here's what we're claiming for actual damages.  Number three.").  Yet, Plaintiff presented no evidence, let alone non-speculative evidence, of "[w]hat a willing buyer reasonably would have paid Plaintiff to obtain a license to copy Plaintiff's copyrighted works."  Tr. 795:18–19 (Jury Charge).  As to Plaintiff, she admitted that she had never licensed a tattoo she had inked and failed to identify evidence of how much such a license would be.  Tr. 271:6–12 (Alexander).  Plaintiff's video game expert, Dr. Jose Zagal, admitted that he is "not a licensing expert at all" and he has "never negotiated a license for a video game."  Tr. 144:1–7 (Zagal).  Although Dr. Zagal testified generally that video game companies sometimes obtain licenses to intellectual property to use in their video games, *id.* at 64:12–16, and that the *WWE 2K* Games use licensed intellectual property, *id.* at 70:15–18, he identified no comparable licenses nor provided any guidance as to how the jury would determine the value of such a license.  Plaintiff's damages expert, Mr. Ryan Clark, likewise offered no evidence or opinion that Plaintiff has actual damages of any kind.  Tr. 697:20–23 (Clark).

In view of this of lack of evidence, Plaintiff's counsel admitted during closing arguments that Plaintiff was asking the jury to determine actual damages based on speculation.  Plaintiff's counsel argued to the jury, "***[w]e're not going to tell you what [the] number should be***.  You're

the judges of the facts and we trust your judgment." Tr. 811:10–11 (Plaintiff's Closing

Argument) (emphasis added).  That statement notwithstanding, Plaintiff's counsel then argued,

without any evidence to support it, that a "willing buyer would have reasonably paid two dollars

a game." *Id.* 811:18–20.[3]  Yet, at no point during closing arguments, or during the presentation

of evidence, did Plaintiff ever identify ***any*** evidence to support the request for a license fee of

two dollars a game, nor any evidence to support a license of any value.

In fact, the only non-speculative value of a hypothetical license was presented by

Defendants, even though they "were not required to produce any evidence showing a lack of

damages." *Bell*, 827 F.3d 699, 710 (7th Cir. 2016) (citing *McRoberts Software*, 329 F.3d at 568).

Defendants' evidence proved that no willing buyer would reasonably have paid Plaintiff to

obtain a license to the Tattoos.  Mr. Malackowski offered unrebutted expert testimony that, after

"research[ing] extensively," he found no evidence of payments for real-life tattoos in video

games.  Tr. 662:16–18 (Malackowski).  He also testified that (1) there is no market for the

depiction of for real life tattoos in video games, so there is no valuation standard that could be

used for actual damages; (2) obtaining such a license would be impractical because tattooists do

not keep records of the tattoos they have inked on individuals; and (3) tattoos are a permanent

part of a tattooed person's identity, making the idea that there would be a market for real-life

---

[3]   Plaintiff's sudden disclosure of this previously undisclosed number runs counter to the
Court's prior understanding that Plaintiff was not going to request a specific figure from the
jury.  *See* Final Pretrial Conference Tr. 16:20–17:23.  As Defendants explained in its motions
*in limine* and trial brief, Plaintiff was required to itemize her damages prior to the trial and in
any event that she needed to present evidence at trial to support any amount of actual
damages she sought.  *See* Dkt. 263 (Defs.' Mot. Limine), at 1–4; Dkt. 272 (Defs.' Tr. Br.), at
9–12.  Although the Court denied Defendants' motions *in limine*, it clearly anticipated that
Plaintiff would not offer an undisclosed damages request to the jury.  *See* Final Pretrial
Conference Tr. 17:22–23.  Plaintiff's decision to disregard the Court's admonition is an
independent basis to deny her requested relief.

depiction of a person showing their tattoos unlikely and impractical.  *Id.* at 663:20–664:10.

Thus, he testified that there are no actual damages in this case.  *Id.* 666:19–667:1.

      This is like *Bell v. Taylor*, except that Plaintiff's claim of actual damages here is even

more speculative than the evidence presented in that case, where the Seventh Circuit affirmed the

district court's finding that, as a matter of law, the plaintiff "could not prove damages."  827 F.3d

at 708.  In that case, the plaintiff owned a photograph that was depicted on the defendants'

website and argued that actual damages were $200 because "he 'believes that the price of $200 is

fair and reasonable and represents the fair market value,'" but produced no "evidence supporting

his assertion that he has sold the photo for $200."  *Id.* at 709–10.  Thus, this value was "based on

undue speculation" and plaintiff could not prove actual damages as a matter of law.  *Id.*

Plaintiff's purported evidence of actual damages in this case is even less.  She produced ***no***

evidence of the Tattoos' value and, thus, the jury necessarily had to engage in undue speculation

to come up with any number.[4]  Because the jury would have had to resort to undue speculation to

determine actual damages in this case, Defendants respectfully request that the Court grant

JMOL that Plaintiff may not recover actual damages.

      2.      <u>No Reasonable Jury Could Award Disgorgement of Defendants'</u>
                <u>Profits Because Plaintiff Failed to Show a Causal Nexus</u>

      Plaintiff also failed to present sufficient evidence of a causal nexus between the alleged

---

[4]   Plaintiff has argued during this case that "[a] plaintiff is not required to establish the actual value of damages; she is only required to provide sufficient evidence of the value so that the jury does not have to resort to undue speculation in estimating actual damages."  Dkt. 271 (Pl.'s Tr. Br.), at 11 (citing *McRoberts Software*, 329 F.3d at 567).  In *McRoberts*, however, the plaintiff "presented the jury with several ways of measuring actual damages," including evidence of five specific values.  329 F.3d at 566–67.  The plaintiff also presented "substantial evidence" of the value of the plaintiff's copyrighted work to the defendant.  *Id.* at 567.  Here, by contrast, Plaintiff presented the jury with no way to measure actual damages, and under *McRoberts*, any award of actual damages would therefore amount to "undue speculation."  *Id.* at 567.

infringement and her claim for profit disgorgement, and therefore Defendants request JMOL on her claim for profit disgorgement damages. "The Copyright Act permits a plaintiff to recover an infringer's profits that are 'attributable to the infringement . . . .'" *Bell*, 827 F.3d at 710 (quoting 17 U.S.C. § 504(b)). The Seventh Circuit has held that this means that "a plaintiff must show a causal nexus between the infringement and the gross revenues." *Bell*, 827 F.3d at 710. In *Bell*, for example, the Seventh Circuit held that no causal nexus could be shown where "[t]here is no evidence suggesting that [defendant] attracted more clients because of [plaintiff's] photo." *Id.*, 710–11; *see Eagle Servs. Corp. v. H2O Indus. Servs., Inc.*, 532 F.3d 620, 623 (7th Cir. 2008) (granting judgment as a matter of law and holding "[i]t is doubtful that profits from the sale of noninfringing goods or services . . . can be attributed to a copyright infringement with enough confidence to support a judgment"); *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) ("If General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits."); *see also Leigh v. Engle*, 727 F.2d 113, 138 (7th Cir. 1984) ("The owner of a copyright may recover the infringer's profits, but only those attributable to the infringement and not to the infringer's own efforts and talents." (citing *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 49 (2d Cir. 1939))).[5]

---

[5]   Outside the Seventh Circuit, numerous appellate courts have concluded that a copyright owner must show a causal nexus between the infringement and the gross revenue figure presented. *See, e.g.*, *Davis*, 246 F.3d at 159 (plaintiff "failed to show any causal connection between the infringement and the defendant's profits"); *Dash v. Mayweather*, 731 F.3d 303, 309 (4th Cir. 2013) (plaintiff "failed to present evidence demonstrating a causal link between the alleged infringement and the enhancement of any revenue stream claimed"); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 712 (9th Cir. 2004) (noting plaintiff's "statutory obligation to demonstrate a causal nexus between the infringement and the profits sought"); *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1375 (Fed. Cir. 1999) (plaintiff "had the burden to show . . . connection" between revenue and infringement).

Here, as the jury's verdict shows, the evidence that Plaintiff's own witnesses presented demonstrate there is no causal nexus. Dr. Zagal admitted "that people don't buy *WWE 2K* because of the tattoos" and that he is not "aware of anyone who purchased *WWE 2K* because of one of Mr. Orton's tattoos." Tr. 130:15–20 (Zagal). He also admitted that he would not "tell the jury a dollar amount of Take-Two's profits that [he] think[s] are attributable to Mr. Orton's tattoos." Tr. 134:5–8 (Zagal). Likewise, Mr. Clark offered no opinion on the amount of profits allegedly attributable to the Tattoos. Tr. 689:4–697:11, 705:3–17 (Clark).

Consistent with Plaintiff's witnesses, Defendants' witnesses also established that there is no causal nexus. Dr. Jay, Defendants' survey expert, testified based on the results of her survey that nobody purchased *WWE 2K* because of the Tattoos. Tr. 625:17–627:2, 635:21–636:4 (Jay). This survey was ***unrebutted***. And Mr. Malackowski testified that, based on the results of that survey, Mr. Orton's tattoos did not contribute to Defendants' profits and, thus, there are no profits attributable to the Tattoos. Tr. 674:25–675:8 (Malackowski).

Plaintiff has made several arguments throughout this case for why she has demonstrated causal nexus, but all of them fail. For example, Plaintiff has argued about the "importance of authenticity to drive sales and profits." Dkt. 266 (Pl.'s Opp. Defs.' Mot. Limine), at 6. But the causal nexus must be "between the infringement and the gross revenues." *Bell*, 827 F.3d at 710. As Dr. Zagal admitted, people do not purchase *WWE 2K*—and thus contribute to revenues— because of the alleged infringing act, *i.e.*, depicting the Tattoos on Mr. Orton. Tr. 130:15–20 (Zagal).

Plaintiff has also argued that causal nexus is shown because "WWE would not have approved the Infringing Games for sale absent copying of the Asserted Works into the Infringing Games." Dkt. 266 (Pl.'s Opp. Defs.' Mot. Limine), at 6. That too fails to demonstrate causal

nexus.  Mr. Kiang, WWE's corporate representative at trial, testified that the WWE's approval of

Mr. Orton's model in the *WWE 2K* Games was based on depicting Mr. Orton accurately, not his

Tattoos.  Tr. 429:10–430:17 (Kiang).  Moreover, Mr. Kiang testified that WWE would not have

approved Mr. Orton's model in the *WWE 2K* Games for any number of different inaccuracies —

tattoos were not a unique reason for the disapproval of Mr. Orton's model and therefore not

evidence of a causal nexus.  *See id.*  As Mr. Malackowski explained, Plaintiff's reliance on the

WWE's approval is a "hold-up value" whereby she would attempt to prevent the release of the

game because of her tattoos.  Tr. 665:15–25 (Malackowski).  Further, Mr. Kiang never testified

that *WWE 2K* would not have been made without the Tattoos.  His testimony does not

demonstrate causal nexus between the alleged infringement and Defendants' revenues.  Thus, as

in *Bell*, "[t]here is no evidence suggesting that [Defendants]" made more sales "***because*** of" the

five tattoos on Mr. Orton at issue in this case, and thus she has failed to set forth sufficient

evidence of a causal nexus.  827 F.3d at 710–11.

### D.  Conditional Motion for a New Trial

Defendants do not believe Plaintiff entitled to a new trial, as she has already had a fair

opportunity to present evidence of damages and failed to do so.  That said, if Plaintiff requests

and the Court grants a new trial on damages, Defendants respectfully request that the Court grant

a new trial on all of Defendants' defenses, including (1) fair use; (2) waiver; (3) estoppel; and

(4) license.  With regard to fair use, the jury verdict is contrary to the overwhelming weight of

the evidence, as described in detail above, which is grounds to grant a new trial on this issue.

*See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996) (a new trial may be granted

where verdict is contrary to "weight of the evidence").

With regard to the other defenses, Defendants contend that the Court erred when it

granted Plaintiff's JMOL on license and dismissed Plaintiffs' waiver and estoppel defenses *sua*

*sponte*.  There was extensive evidence of objective intent to license in the record, which Defendants contend that the Court disregarded, and which could be further developed in a new trial.  Tr. 709–710.  In the event that a new trial is granted on other issues, Defendants request that a new trial be granted on these defenses as well, which would give Defendants an opportunity to submit additional evidence and which would avoid the burden of holding yet ***another*** new trial in the event that the Court's decisions to dismiss these defenses are subsequently reversed on appeal.  *See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006) (encouraging submission of issues to the jury to avoid a new trial following appeal).

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant JMOL to Defendants on fair use and Plaintiff's damages.  If the Court declines to do so and grants Plaintiff a new trial, Defendants ask that the Court grant a new trial on the issues of fair use, waiver, estoppel, and license.

Dated: October 31, 2022                    Respectfully submitted,

*/s/ Dale M. Cendali*
Dale M. Cendali (admitted *pro hac vice*)
Joshua L. Simmons (admitted *pro hac vice*)
Christopher T. Ilardi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com
miranda.means@kirkland.com

Miranda D. Means (admitted *pro hac vice*)
miranda.means@kirkland.com
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 385-7500
Facsimile: (617) 552-5900

Michael J. Nester (#02037211)
Donovan Rose Nester P.C.
15 North 1st Street, Suite A
Belleville, Illinois 62220
Telephone: (618) 212-6500
mnester@drnpc.com

*Attorneys for Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., and Visual Concepts Entertainment*

*/s/ Curtis Krasik* (with consent)
Jerry McDevitt (admitted *pro hac vice*)
Curtis Krasik (admitted *pro hac vice*)
K&L Gates LLP
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-8608
jerry.mcdevitt@klgates.com
curtis.krasik@klgates.com
Michael J. Nester (#02037211)
Donovan Rose Nester P.C.

21

15 North 1st Street, Suite A
Belleville, Illinois 62220
Telephone: (618) 212-6500
mnester@drnpc.com

*Attorneys for World Wrestling Entertainment,
Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| CATHERINE ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, INC., | ) | |
| 2K GAMES, INC.; 2K SPORTS, INC.; WORLD | ) | Case No. 3:18-cv-966-SMY-MAB |
| WRESTLING ENTERTAINMENT, INC.; | ) | |
| VISUAL CONCEPTS ENTERTAINMENT; | ) | |
| YUKE'S CO., LTD.; AND YUKE'S LA, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2022, I electronically filed the foregoing **Defendants' Motion for Judgment As A Matter Of Law And Conditional Motion For A New Trial** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Anthony G. Simon          asimon@simonlawpc.com
Benjamin R. Askew         baskew@simonlawpc.com
Anthony R. Friedman       afriedman@simonlawpc.com
Carrie L. Roseman         croseman@simonlawpc.com
R. Seth Crompton          scrompton@allfela.com
Tracey Blasa              tblasa@allfela.com
Jerry McDevitt            jerry.mcdevitt@klgates.com
Curtis Krasik             curtis.krasik@klgates.com

*/s/ Dale M. Cendali*
Dale M. Cendali (admitted *pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
dale.cendali@kirkland.com

*Attorney for Defendants 2K Games, Inc., 2K Sports, Inc., Take-Two Interactive Software, Inc., Visual Concepts Entertainment*