IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CATHERINE ALEXANDER,<br><br>              Plaintiff,<br><br>v.<br><br>TAKE-TWO INTERACTIVE SOFTWARE, INC., et al.<br><br>              Defendants. | Case No. 3:18-cv-0966-SMY |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1

II.  LEGAL STANDARD........................................................................................................... 1

III. ARGUMENT ........................................................................................................................ 2

    A.   Defendants' use of Plaintiff's Copyrighted Works Was Not Fair Use......................... 2

        i.   Factor One: Purpose and Character of the Use............................................... 2

        ii.  Factor 2: Nature of the Work ......................................................................... 4

        iii. Factor 3: Amount and Substantiality of the Use............................................ 5

        iv.  Factor 4: Effect on Potential Market or Value of Copyrighted Work ........... 6

    B.   Plaintiff is Entitled to Damages...................................................................................... 8

IV. CONCLUSION..................................................................................................................... 9

Case 3:18-cv-00966-SMY   Document 315   Filed 11/30/22   Page 3 of 14   Page ID #6251

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Taylor*,
  827 F.3d 699 (7th Cir. 2016) .................................................................................. 1, 8, 9

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2nd Cir. 2006) ........................................................................................ 4

*Blanch v. Koons*,
  467 F.3d 244 (2d Cir. 2006) ......................................................................................... 5

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ......................................................................................... 2, 4, 5, 6

*Castle Rock Entertainment, Inc. v. Carol Pub. Group. Inc.*,
  150 F.3d 132 (2d. Cir. 1998) ........................................................................................ 6

*Deltak, Inc. v. Advanced Systems, Inc.*,
  767 F.2d 357 (7th Cir. 1985) ........................................................................................ 1

*Estate of Escobedo v. Martin*,
  702 F.3d 388 (7th Cir. 2012) ........................................................................................ 1

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985) .................................................................................................. 2, 6

*Kienitz v. Sconnie Nation LLC*,
  766 F.3d 756 (7th Cir. 2014) .................................................................................... 3, 7

*Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distributors*,
  983 F.Supp. 1167 (N.D. Ill. 1997) ............................................................................... 5

*McRoberts Software, Inc. v. Media 100, Inc.*,
  329 F.3d 557 (7th Cir. 2003) ........................................................................................ 8

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133 (2000) ...................................................................................................... 2

*Stewart v. Abend*,
  495 U.S. 207 (1990) ...................................................................................................... 2

**Statutes**

17 U.S.C. §106 ....................................................................................................................... 2

17 U.S.C. §107 ............................................................................................................... 2, 5, 6

17 U.S.C. §504 ....................................................................................................................... 1

**Rules**

Fed. R. Civ. P. 50 ............................................................................................................................. 1

Plaintiff Catherine Alexander submits this Response in Opposition to Defendant's Motion for Judgment as a Matter of Law ("JMOL") filed by Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports, Inc., Visual Concepts Entertainment, and World Wrestling Entertainment, Inc. (collectively "Defendants").

## I.     INTRODUCTION

Defendants filed their Motion for Judgement as a Matter of Law ("JMOL") on two unrelated issues[1]. First, in spite of the jury finding contrary, Defendants reassert that their use of Plaintiff's copyrighted works was fair use as a matter of law. Second, Defendants seek to relitigate already settled issues and reverse the damages that were awarded to Plaintiff by the Jury by increasing Plaintiff's burden of proof outside of the scope of what is required by the Copyright Act or the Seventh Circuit. *See* 17 U.S.C. §504 (The "copyright owner is required to present proof only of the infringer's gross revenue"); *see also Bell v. Taylor*, 827 F.3d 699, 710 (7th Cir. 2016) (The plaintiff "must show a causal nexus between the infringement and the gross revenues"); *See also Deltak, Inc. v. Advanced Systems, Inc.*, 767 F.2d 357, 362 (7th Cir. 1985)("Value of use amounts to a determination of what a willing buyer would have reasonably required to pay to a willing seller for Plaintiff's work.").

## II.    LEGAL STANDARD

In the Seventh Circuit, JMOL is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party." Fed. R. Civ. P. 50(b); *Estate of Escobedo v. Martin*, 702 F.3d 388, 403 (7th Cir. 2012). The court is not to "weigh the evidence or the credibility of the witnesses." *Id*. The burden on the nonmoving party is minimal, requiring "a mere scintilla of evidence" in support of the nonmoving party's case to defeat JMOL. *See Id.*

---

[1] Defendants also sought a New Trial under the condition that if Plaintiff sought and was granted a new trial, they should be able to relitigate the damages portion. Plaintiff is not seeking a new trial at this time so this issue is moot.

The court must draw all reasonable inferences in favor of the nonmoving party while reviewing all evidence in the record. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). As a result, "although the court should review the records as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.*

### III. ARGUMENT

#### A. Defendants' use of Plaintiff's Copyrighted Works Was Not Fair Use

Defendants have failed to establish that their use of Plaintiff's works was fair use as a matter of law. The fair use doctrine acts as an "equitable rule of reason which permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity that law is designed to foster." *Stewart v. Abend,* 495 U.S. 207, 236 (1990) (internal citations omitted). In *Harper & Row Publishers, Inc. v. Nation Enterprises*, the Supreme Court found that "Fair use is a mixed question of law and fact." 471 U.S. 539, 560 (1985). 17 U.S.C. §107 lists a non-exhaustive list of fair use purposes including "purposes such as criticism, comment, news reporting, teaching… scholarship, or research." The statute further lists four factors that must be considered when evaluating fair use. Each of the statutory factors in 17 U.S.C. §107 (1–4) are discussed below. As this Court has noted, the statute does not require the submission of factors outside the statute to the jury even though the statute is non-exclusive.

##### i. Factor One: Purpose and Character of the Use

The first fair use factor may break down into two sub-factors evaluating both: (1) transformative use and (2) commercial use. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578–79 (1994). Although transformative use was mentioned in *Campbell* the Seventh Circuit has expressed that "asking exclusively whether something is transformative not only replaces the list in §107 but also could override 17 U.S.C. §106(2), which protects derivative works." *Kienitz v.*

*Sconnie Nation LLC*, 766 F.3d 756, 758 (7th Cir. 2014). The Seventh Circuit rather "think[s] it best to stick with the statutory list." *Id.* The jury was tasked for this factor with evaluating "the purpose and character of defendants' use, including whether defendants' use is of a commercial nature or is for nonprofit educational purposes" Tr. 794:10–12. Defendants do not dispute that their use was commercial.

Defendants argue instead that their use of Plaintiff's works was so transformative that it superseded the commercial purpose and makes the first factor weigh in their favor. However, the analysis is out of place. Defendants misstate what the Seventh Circuit held in *Kienitz*. Although Defendants are correct that when applied to the fourth factor a substituting use is less likely to be fair use than a complementing use, the *Kienitz* court wanted to avoid looking to whether the use was transformative in evaluating the first factor at all. *Kienitz* 766 F.3d at 758. Rather the Seventh Circuit looks at the first factor as whether the use was commercial or non-profit. *Id.* at 758–59. Here, there is no dispute that Defendants use was commercial. Tr. 826:13:19. A reasonable jury could have readily found that with Defendants own concession that their use was commercial that this factor weighed against fair use.

Defendants argue that their use of Plaintiff's copyright is for a different purpose than that to which Plaintiff intends, and thus should qualify as transformative. However, Defendants misconstrue what makes a work "transformative" and the jury did not find Defendants' work transformative. Dr. Zagal's testimony gave the jury a clear look at the purpose behind the inclusion of Plaintiff's works in the infringing games. Tr. 126: 12–127:8 ("They know the character needs to look the way Randy Orton, the real person, looks like in the [sic] real life. In order to do so, they need to make sure he shows up in the game with the tattoos.") Defendants' purpose in using the tattoos was "to create an exciting interactive WWE experience that looked

3

just like a live WWE event, in real – as if you were there in real life or watching it on television." Tr. 825:21–24. This is not a transformative purpose, in fact Defendant's purpose is to be as non-transformative as possible. Unlike in *Bill Graham Archives*, where the Second Circuit held that using old concert posters in a book to document the history of a band was fair use, Defendants' use is meant to capture the exact purpose that the Tattoos were originally intended to serve. *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609–611 (2nd Cir. 2006). As Mr. Orton himself put it, "I remember wanting them to kinda even out all the junk that I had on my back and upper arms. I think, at this point, I was trying to kinda make everything kinda rhyme a little bit on my body, or make sense, or flow." Tr. 375:18–22. The purpose of the tattoos Plaintiff created was "an effort to begin the long process of making [Mr. Orton] comfortable with the tattoos that [he] had." Tr. 375:25–376:2. Defendants' purpose was to take those tattoos that made Mr. Orton comfortable with his likeness and without altering or changing them put them in the video game, so fans could experience the tattoos as if they were in person at a WWE event or watching the same on TV. This is not a transformative purpose and weighs against fair use.

Since a reasonable jury could have found, as the jury did here, that Defendants use was commercial and non-transformative, the first factor weighs against fair use.

      ii.      **Factor 2: Nature of the Work**

For the second factor, the jury was tasked with evaluating "the nature of the copyrighted works." Tr. 794:13. This factor "calls for the recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. The jury considers: (1) whether the work is expressive or creative, or more factual, with a greater leeway allowed for a claim of fair use where the work is factual or informational; and (2) whether the work is

published or unpublished, with the scope of fair use involving unpublished works considerably narrower. *Blanch v. Koons,* 467 F.3d 244, 253 (2d Cir. 2006). There is no dispute that the works are published so the jury would only have to consider whether the work was more creative or factual in nature.

Plaintiff's testimony provided ample evidence to support the jury's finding that this factor weighs against fair use. First, Plaintiff is a tattoo artist, which by her own definition, which was undisputed at trial, "would be someone who is accomplished in art. They are familiar with different, you know, ways to put art on skin, and that's what they do, is, is custom art." Tr. 200:19–22. The designs of the tattoos did not exist prior to Plaintiff's creative design and artwork. Tr. 202:3–6. Plaintiff had to contend with the realities of art being on a human body. Tr. 202:12–16 (Body structure is one of the major challenges in applying a custom tattoo). There is sufficient evidence to support the jury's finding that these tattoos are directly the kind of expressive work that copyright was meant to protect. Therefore, this factor weighs against fair use.

      iii.      **Factor 3: Amount and Substantiality of the Use**

The third fair use factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. §107(3). The relevant question for the jury is whether "the quantity and value of the materials used, are reasonable in relation to the purpose of the copyright." *Campbell,* 510 U.S. at 586 (citation omitted). Courts routinely conclude that copying a work entirely weighs against fair use. *See, e.g., Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distributors,* 983 F. Supp. 1167, 1176 (N.D. Ill. 1997) (Third factor weighing in favor of plaintiff because the court determined defendant "copied the first three volumes in their entirety").

Defendants seek to excuse their wholesale use of the tattoos by again relying on a transformative use. However, the jury was not required to accept that argument. There is no dispute that Defendants copied Plaintiff's copyrighted works in their entirety. Defendants asked Mr. Orton directly, "Would it be an accurate representation of how you look in real life, if it didn't have tattoos?" to which Mr. Orton replied, "well, no." Tr. 393:22–24. Defendants argue that their wholesale appropriation of Plaintiff's work was necessary to accomplish some legitimate purpose, but simultaneously the jury was shown that Defendants would alter tattoos of other wrestlers to avoid infringing on others' intellectual property. *See* Ex. 161 (Showing that Defendants altered another WWE superstar's tattoos when put in the infringing games). The jury had sufficient evidence to determine that Defendants' use, which constituted a full copying of Plaintiff's work, was not justified by their purpose.

      iv.      **Factor 4: Effect on Potential Market or Value of Copyrighted Work**

The fourth factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. §107(4). The Supreme Court has stated that, in general, when a use is commercial, market harm to the copyright owner is presumed. *Campbell,* 510 U.S. at 591. This means that Defendants had the burden of showing that there was no market harm for their use. *See Id.* "To negate fair use, one need only show that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work." *Harper & Row Publishers,* 471 U.S. at 568. Market impact can be shown even when Plaintiff does not exploit the market for derivative works or cannot show that the infringing work diminishes the work's profitability. *See Castle Rock Entertainment, Inc. v. Carol Pub. Group. Inc.,*150 F.3d 132, 145–146 (2d. Cir. 1998). (Nothing that although the plaintiff had little interest in exploiting the market for derivative works based on the copyrighted material, "the copyright law must

6

respect that creative and economic choice.") The Seventh Circuit looks to whether the infringing use disrupts plans to license the copyrighted works or may injure plaintiff's "long range financial opportunities," regardless of whether it reduces the value derived from a particular copyright. *See Kienitz v. Sconnie Nation LLC,* 766 F.3d 756, 759 (7th Cir. 2014). Thus, a jury need only find that there was a potential impact on a future use by Plaintiff for this factor to weigh against fair use.

      Here the jury's verdict is supported by the evidence that Plaintiff's ability to license her works would be harmed by Defendants unlicensed use. Dr. Zagal testified that "tattoos are an important part of WWE; that WWE values them, they think they're interesting, they think they're worth highlighting when their athletes have them, they think they are worth commenting on." Tr. 101:19–22. Despite the assertions of Mr. Kiang that he had never sought a license for a tattoo to be put into a video game, a reasonable jury could have found that just because no market has existed for this type of work prior, does not mean that the appropriation was justified. Tr. 437: 14–438:5. In addition, Defendants' witness testified that a market for the use of artwork as tattoos in videogames *did* exist and that they had licensed artwork for use as tattoos previously. Tr. 544:11–19. In fact, absent the unauthorized copying of Defendants, they would have had to negotiate a license to use Plaintiff's work, or find an alteration that was acceptable, Defendant WWE would not have approved the game at all. Tr. 443:11–13. This means that absent the unauthorized copying of Plaintiff's tattoos there would be a market to license the tattoos for just this sort of use. A reasonable jury could have found that this was enough market harm to find this factor was against fair use.

7

As such, the fourth factor also weighs against fair use. With all factors disfavoring fair use and supported by evidence at trial, there is no basis to overturn the jury finding that there was no fair use by Defendants.

**B.     Plaintiff is Entitled to Damages**

The Seventh Circuit has recognized that "The Copyright Act permits a copyright owner to recover actual damages suffered as a result of the infringing activity and any profits of the infringer resulting from the infringement that are not otherwise taken into account in calculating actual damages." *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003). The jury had ample evidence to support the damages.

In determining actual damages, "it is not improper for a jury to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages" *Bell*, 827 F.3d at 709. The jury must have enough evidence that they do not need to resort to "undue speculation" in determining the value of the actual damages. *Id*. The jury was ample evidence to support its determination regarding the amount of actual damages to award. To start, the jury was told how much Mr. Orton paid Plaintiff to put the tattoos on his body in the first place. Tr. 387: 14–16 ("11 or 12 grand, maybe"). Second, the Jury was shown by Dr. Zagal that the tattoos were integral to the sales of the video games and that other IP was regularly licensed in the game. Tr. 116:19–23, 126:12–127:8. Third, Mr. Kiang also testified that the games would not have been sold if the tattoos were not included on Mr. Orton's character. Tr. 430:14–17. Finally, Plaintiff herself testified that in 2009 WWE had offered her $450 to license her works which she rejected. Tr. 259:4–7. Armed with those pieces of evidence and the rest of the evidence at trial, the jury validly determined actual damages. This amount was not based on "undue speculation."

Although the jury did not award Plaintiff any disgorgement of profits, Defendants argue that the issue should not have been submitted to the jury. Defendants fail to explain how they were prejudiced by submission of the issue to the jury, and it is unclear how Defendants were prejudiced given that the jury found for Defendants on this issue. The Seventh Circuit has held that Plaintiff "must show a causal nexus between the infringement and the gross revenues." *Bell*, 827 F.3d at 710. The jury was given ample evidence to find a causal nexus between Defendants' infringement and the profits they received.

First, Mr. Kiang testified that absent the unlawful reproduction of Plaintiff's works, Defendants would have made no money at all. Tr. 430:14–17. If there was no infringement WWE would not have given approval for Take-Two to sell and distribute the Infringing Games. *See Id.* Additionally, Dr. Zagal showed how important the tattoos were to the goals and purposes that Defendants sought to achieve in their Infringing Games. Tr. 67:22–68:20 (Testifying why Companies will license IP in the creation of video games) Tr. 72:16-18 (WWE games must embody the WWE experience) Tr. 76:9-11(The games are marketed based on their realism and authenticity). There was ample evidence of a causal nexus that showed the jury that absent the infringement of Plaintiff's copyrights, there would have been no profits to Defendants.

### IV.   CONCLUSION

For the reasons cited herein, Plaintiff respectfully requests that this Court denies Defendants' motion for JMOL and not disturb the well-founded verdict by the jury.

Dated: November 30, 2022                    Respectfully submitted,

                                            */s/ Anthony G. Simon*
                                            Anthony G. Simon, IL 6209056
                                            Anthony R. Friedman, IL 6299795
                                            Paul J. Tahan
                                            **THE SIMON LAW FIRM, P.C.**
                                            800 Market Street, Suite 1700
                                            St. Louis, Missouri 63101
                                            Phone: (314) 241-2929
                                            Fax: (314) 241-2029
                                            asimon@simonlawpc.com
                                            afriedman@simonlawpc.com
                                            ptahan@simonlawpc.com

                                            R. Seth Crompton
                                            **THE HOLLAND LAW FIRM**
                                            300 N. Tucker, Suite 801
                                            St. Louis, Missouri 63101
                                            scrompton@allfela.com
                                            Phone: (314) 241-8111
                                            Facsimile: (314) 241-5554

                                            *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon all counsel of record via this Court's CM/ECF system on November 30, 2022.

                                            */s/ Anthony G. Simon*