IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CATHERINE ALEXANDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-966-SMY |
| | ) |
| TAKE-TWO INTERACTIVE | ) |
| SOFTWARE, INC. 2K GAMES, INC., | ) |
| 2K SPORTS INC., WORLD | ) |
| WRESTLING ENTERTAINMENT, INC., | ) |
| VISUAL CONCEPTS | ) |
| ENTERTAINMENT, YUKE'S CO., LTD, | ) |
| YUKES LA INC., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Catherine Alexander is a former tattoo artist who inked six tattoos on World Wrestling Entertainment. Inc. ("WWE") professional wrestler Randy Orton between 2002 and 2008. Alexander filed suit against Defendants Take-Two Interactive Software, Inc., 2K Games, Inc., 2K Sports Inc., Visual Concepts Entertainment, and WWE asserting copyright infringement under 17 U.S.C. § 501 for the unauthorized use by Defendants of the registered tattoos in several WWE videogames. This matter proceeded to trial where a jury reached a verdict in favor of Alexander and awarded damages in the amount of $3,750.00 (Doc. 298).

The case is now before the Court for consideration of Defendants' Motion for Judgment as a Matter of Law and Conditional Motion for a New Trial (Doc. 313), which Alexander opposes (Doc. 315). For the following reasons, the motion is **GRANTED in part** and **DENIED in part**.

**Discussion**

Defendants move for judgment as a matter of law, asserting that the fair use doctrine insulates their utilization of Alexander's copyrighted tattoos in the *WWE 2K* videogames and that she failed to prove actual damages. Federal Rule of Civil Procedure 50 governs judgment as a matter of law in a jury trial, and the law imposes a high standard for overturning a jury verdict. *Pierson v. Hartley*, 391 F.3d 898, 903 (7th Cir. 2004).

In reviewing a party's motion, all reasonable inferences are drawn in favor of the nonmoving party, no credibility determinations may be made, the evidence may not be weighed, and evidence that the jury need not have believed is to be disregarded. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150–151 (2000). The verdict must stand unless no rational jury could have rendered such a verdict. *Walker v. Board of Regents of University of Wisconsin System*, 410 F.3d 387, 393 (7th Cir. 2005); *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 301 (7th Cir. 2010).

*Fair Use*

The jury found in favor of Alexander on Defendant's fair use affirmative defense. Defendants maintain, however, that their use of the copyrighted tattoos is the type of transformative, non-substitutive copying that fair use is designed to allow as a matter of law and that no reasonable jury could find otherwise.

The broad exclusive rights afforded copyright owners do not extend to certain forms of copying which are considered indispensable to education, journalism, history, criticism, humor and other informative endeavors. The doctrine of fair use encapsulates this category of permissible copying. 17 U.S.C. § 107; *see also Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 758 (7th Cir. 2014). Under the doctrine, using another's copyrighted work is "fair" for such purposes as

"criticism, comment, news reporting, teaching, scholarship, or research" and is therefore "not an infringement of copyright." *Id.*; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). The following non-exhaustive factors are considered in determining whether the fair use doctrine applies: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107; *see Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 692–93 (7th Cir. 2012).

Here, Defendants' use of the tattoos was clearly commercial. Defendants contend that, although the video games feature exact copies of the copyrighted tattoos, Take Two's use of the tattoos is "transformative" – that Defendants depicted the tattoos in *WWE 2K* to depict Orton realistically. The word "transformative" has been employed "to describe a copying use that adds something new and important." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1203, 209 L. Ed. 2d 311 (2021).

Defendants' purpose was to take the tattoos and, without altering or changing them, put them in the video games. The tattoos were included for their expressive value, rather than to merely display Orton's likeness accurately. This was evident with Defendants' "Create-A-Superstar" feature which enabled a user to take the tattoos and apply them to their own custom wrestler avatar. Thus, this usage had nothing to do with reproducing the tattoos in the video game to depict Orton most accurately. The jury saw the creation of various custom wrestlers featuring the copyrighted tattoos – none of whom resembled Orton. A reasonable jury could have found that this factor favored Alexander.

The second factor focuses on the nature of the copyrighted work. 17 U.S.C. § 107(2). "In general, the more creative the work, the more protection it should be accorded from copying; correlatively, the more informational or functional the plaintiff's work, the broader should be the scope of the fair use defense." (internal quotation omitted). *Neri v. Monroe*, 2014 WL 793336, at *7 (W.D. Wis. Feb. 26, 2014) *aff'd,* 567 Fed.Appx. 465 (7th Cir. 2014). Defendants argue the tattoos are not, or at best minimally, protected by copyright law. Alexander has a copyright for five of Orton's tattoos. The art of creating a tattoo naturally entails creative and expressive efforts. Alexander testified about the creative process she utilized to ink the tattoos. Therefore, there was sufficient evidence for a reasonable fact finder to conclude that the tattoos were sufficiently expressive and creative, which also favors Alexander.

The third factor involves consideration of the portion of the work used by the alleged infringers "in relation to the copyrighted work as a whole" in order to determine whether the portion used was reasonable given the purpose of copying. 17 U.S.C. § 107(3). *See*, *Campbell*, 510 U.S. at 586–87 ("the extent of permissible copying varies with the purpose and character of the use."). The question is not on how much of the work was taken, but the extent to which the protected elements were copied from the original and whether that amount was needed to further the purpose of the use. *Neri*, 2014 WL 793336, at *7. Defendants assert that it was necessary to copy each tattoo in its entirety to depict real life accurately. But this assertion is belied by the "Create-a-Star" feature and by evidence produced at trial establishing that Defendants previously altered tattoos of wrestlers to avoid infringing on others' intellectual property. A reasonable factfinder could find for Alexander on this factor.

The fourth factor, the effect of the use upon the potential market for or value of the copyrighted work, requires consideration of not only the extent of market harm caused by the

particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original. *Campbell*, 510 U.S. at 590. The "market" in fair use cases includes the potential market for not only the original work, but also derivative uses and licensing rights. *Red Label Music Publ'g, Inc.*, 388 F. Supp. 3d at 987.

Alexander testified that she had never licensed her tattoos for video games or any other medium. Defense expert James Malackowski also provided unrebutted testimony that a market for licensing tattoos in videogames does not exist and was unlikely to be developed. Although the fourth factor favored Defendants, the other factors weighed against a finding of fair use and the Court does not find that it was unreasonable for the jury to conclude that Defendants were not entitled to their fair use affirmative defense. Accordingly, Defendants' motion for judgment as a matter of law regarding the fair use defense is denied.

### *Damages*

Defendants contend that, even if their utilization of the copyrighted tattoos was not fair use, they are entitled to judgment as a matter of law on Alexander's claims for damages because the jury award was based on undue speculation. "The Copyright Act permits a copyright owner to recover actual damages suffered as a result of the infringing activity and any profits of the infringer resulting from the infringement that are not otherwise taken into account in calculating actual damages." *Bell v. Taylor,* 827 F.3d 699, 709 (7th Cir. 2016) (quoting *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003)). Actual damages are "usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." *Id.* A jury may consider either a hypothetical lost license fee or the value of the infringing use to the infringer

to determine actual damages, provided the amount is not based on "undue speculation." *Id.* At a minimum, the plaintiff must prove a causal connection or nexus between the infringement and defendant's gross revenues. *See Bell,* 827 F.3d at 710.

Alexander presented no evidence at trial that would support the jury's damages award. There was no evidence of either a hypothetical lost license fee or the value of the infringing use to the infringer. Alexander's expert, Dr. Jose Zagal testified that he believed a portion of the sales and profits of the video games were attributable to the five tattoos because Defendants needed Orton as a character in his game and he needed to have his tattoos. However, Dr. Zagal did not conduct an analysis of how much the video games' sales or profits were attributable to the tattoos. Ryan Clark, Alexander's expert, also offered no opinion regarding damages. Further, Alexander testified that she has never licensed a tattoo for use in any medium, and that she could not identify any business or clients that she lost due to Orton's tattoos.

Because Alexander failed to present evidence of the tattoos' value, the jury had to engage in undue speculation in awarding damages. Accordingly, Defendants are entitled to judgment as a matter of law on Alexander's damages award.

## Conclusion

For the foregoing reasons, Defendants' motion for judgment as a matter of law pursuant to Rule 50(b) (Doc. 313) is **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

**DATED:  September 25, 2024**

**STACI M. YANDLE**
**United States District Judge**